Julie Gutman Dickinson (SBN 148267) – *designated for service*
jgd@bushgottlieb.com
Jennifer A. Abruzzo *(Pro hac vice forthcoming)*
jabruzzo@bushgottlieb.com
Hector De Haro (SBN 300048)
hdeharo@bushgottlieb.com
Luke Taylor (SBN 338327)
ltaylor@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Proposed Intervenor
International Brotherhood of Teamsters

(additional counsel on next page)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | Case No. 2:25-cv-02979-TLN-CKD |
| Plaintiff, | Memorandum In Support of Proposed Intervenor International Brotherhood of Teamsters' Unopposed Motion to Intervene |
| vs. | |
| STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD, | Judge:    Hon. Troy L. Nunley<br>Date:     December 18, 2025<br>Time:     2:00 p.m.<br>Crtrm.:   2 |
| Defendant. | |
| | Trial Date:              None<br>Discovery Cutoff:      N/A<br>Motion Cutoff:         N/A |

David O'Brien Suetholz
dsuetholz@teamster.org
Clement Tsao
ctsao@teamster.org
Willie J. Burden
wburden@teamster.org
INTERNATIONAL BROTHERHOOD OF TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 624-6847

Edward M. Gleason, Jr.
ed@hsglawgroup.com
HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL, PLLC
128 C Street NW
Washington, D.C. 20001
Phone: (202) 978-3507

Pamela M. Newport *(Pro hac vice forthcoming)*
pamela@hsglawgroup.com
HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL, PLLC
600 Vine Street | Suite 2720
Cincinnati, OH 45202
Phone: (513) 381-2224

Richard Griffin
rgriffin@bredhoff.com
BREDHOFF & KAISER, PLLC
805 15th Street NW Ste. 1000
Washington, DC 20005
Phone: (202) 842-2600

Jeanne Mirer
jmirer@julienmirer.com
JULIEN MIRER & ASSOCIATES, PLLC
1 Pierrepont Plaza, 12th Floor
Brooklyn, NY 11201
Phone: (212) 231-2235

Ian Hayes
ihayes@hayesdolce.com
HAYES DOLCE LLP
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
Phone: (716) 534-8388

Attorneys for Proposed Intervenor International
Brotherhood of Teamsters

1328323v1  11135-35004

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................1

BACKGROUND .......................................................................................................................4

    I.      The Challenged Legislation ...................................................................................4

    II.     The NLRB's Lawsuit .............................................................................................5

    III.    The Proposed Intervenor ........................................................................................6

ARGUMENT.............................................................................................................................9

    I.      The IBT is entitled to intervene as of right. ...........................................................9

          A.      The IBT's motion is timely.......................................................................10

          B.      The IBT has a "significantly protectable" interest in the subject matter of this action. ...............................................................................10

          C.      The disposition of this matter may, as a practical matter, impair the IBT's ability to protect its interest. ...........................................................12

          D.      The existing parties may not adequately represent the IBT's interests. ..................................................................................................13

    II.     Alternatively, permissive intervention should be granted. ....................................17

CONCLUSION........................................................................................................................20

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Federal Cases**                                                                                              **Page(s)**

4    *Air Conditioning Trade Ass'n v. Baker*,
5        2012 WL 3205422 (E.D. Cal. July 31, 2012) ..................................................................15, 16

6    *Alameda Newspapers, Inc. v. City of Oakland*,
        95 F.3d 1406 (9th Cir. 1996) ...................................................................................................15

7    *Allied Concrete & Supply, Co. v. Baker*,
8        904 F.3d at 1067 (9th Cir. 2018) .....................................................................................11, 14

9    *Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
        107 F.4th 934 (9th Cir. 2024) ...................................................................................................20

10

11   *Amazon v. NLRB*,
        No. 25-886 (9th Cir., appeal filed Feb. 11, 2025)...................................................................2, 7

12   *Amazon.com Services LLC v. New York State Public Employment Relations*
        *Board, et al.*,
13       1:25-cv-05311-EK-MMH (E.D.N.Y, Complaint filed Sept. 22, 2025)....................4, 6, 19, 20

14   *Amazon.com Servs. LLC v. NLRB*,
15       No. 2:24-CV-09564-SPG-MAA, 2025 WL 1766349 (C.D. Cal. June 9, 2025).......................7

16   *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*,
        No. CV2005193DDPJEMX, 2020 WL 4501792 (C.D. Cal. Aug. 5, 2020).................9, 17, 18

17
     *Arakaki v. Cayetano*,
18       324 F.3d 1078 (9th Cir. 2003) .................................................................................................16

19   *Ass'n of Conn. Lobbyists LLC v. Garfield*,
20       241 F.R.D. 100 (D. Conn. 2007)..............................................................................................16

21   *Associated Builders & Contractors of S. Cal., Inc. v. Nunn*,
        356 F.3d 979 (9th Cir. 2004) ...................................................................................................15

22   *Associated Dog Clubs of N.Y. v. Vilsack*,
23       44 F.Supp.3d 1 (D.D.C. 2014) ................................................................................................12

24   *Barke v. Banks*,
25       No. 820CV00358JLSADS, 2020 WL 2315857  (C.D. Cal. May 7, 2020).............................16

26   *California Dump Truck Owners Ass'n v. Nichols*,
        275 F.R.D. 303 (E.D. Cal. 2011) .............................................................................................16

27

28

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
  152 F.3d 1184 (9th Cir. 1998) ..........................................................................11, 14

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
  386 U.S. 129 (1967)..........................................................................................10

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ............................................................................10

*Club v. McLerran*,
  No. C11-1759RSL, 2012 WL 12846108 (W.D. Wash. Mar. 19, 2012) ...................18

*Emp. Staffing Servs., Inc. v. Aubry*,
  20 F.3d 1038 (9th Cir. 1994) ............................................................................18

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ............................................................................14

*Golden Gate Rest. Ass'n v. City and Cnty. of San Francisco*,
  2007 WL 1052820 (N.D. Cal. Apr. 5, 2007) ........................................................15

*Harris v. Bessent*,
  No. 25-5037, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ......................................2

*Humphrey's Executor v. United States*,
  295 U. S. 602 (1935).........................................................................................2

*Frankl ex rel. NLRB v. HTH Corp.*,
  650 F.3d 1334 (9th Cir. 2011) ...........................................................................8

*Northwest Environmental Advocates v. United States Department of Commerce*,
  769 Fed. Appx. 511 (9th Cir. 2019)....................................................................11

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ..............................................................................10

*S. Cal. Healthcare Sys., Inc. v. City of Culver City*,
  2021 WL 4817846 (C.D. Cal. July 26, 2021)....................................................14, 18

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) ........................................................................13, 17

*San Diego Cnty. Lodging Ass'n v. City of San Diego*,
  2021 WL 1733383 (S.D. Cal. May 3, 2021)..........................................................14

*Space Expl. Techs. Corp. v. NLRB*,
  No. 24-10855, 2025 WL 2396748 (5th Cir. Aug. 19, 2025) ...............................2, 7

*Spangler v. Pasadena City Bd. of Ed.*,
  552 F.2d 1326 (9th Cir. 1977) ..............................................................................18

*Sullivan v. Ferguson*,
  No. 3:22-CV-05403-DGE, 2022 WL 10428165 (W.D. Wash. Oct. 18, 2022) ................18, 19

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972).................................................................................................13

*Trump v. Slaughter*,
  606 U. S. ____ (2025)................................................................................................2

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025)..............................................................................................2

*United States v. City of Los Angeles, Cal.*,
  288 F.3d 391 (9th Cir. 2002) .........................................................................10, 11

*United States v. Oregon*,
  913 F.2d 576 (9th Cir. 1990) ..............................................................................10

*W. States Trucking Ass'n v. Schoorl*,
  2018 WL 5920148 (E.D. Cal. Nov. 13, 2018)..........................................................15

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011)  ..............................................................9, 10, 11, 14

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991) ..............................................................................12

**Federal Statutes**

29 U.S.C.
  § 151.........................................................................................................................1
  § 157.......................................................................................................................11
  § 158.......................................................................................................................11

Fed. R. Civ. P. 24 .............................................................................................. *passim*

National Labor Relations Act ........................................................................... *passim*

**California Statutes**

California Assembly Bill No. 288 ...............................................................................1

California Government Code
  § 3550.....................................................................................................................16

California Labor Code § 923 ........................................................................... *passim*

**Other Authorities**

Celine McNicholas et al., Unlawful Employer Opposition to Union Election
  Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019),
  https://www.epi.org/publication/unlawful-employer-opposition-to-
  unionelection-campaigns/ ..........................................................................................................3

*Cemex Constr. Materials Pac., LLC*,
  37 NLRB No. 130, 2023 WL 5506930 (Aug. 25, 2023) ...........................................................8

Matt Bruenig, *NLRB Processing Times Have Dramatically Increased* (Mar. 06,
  2024) ........................................................................................................................................3

Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization
  Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) .....................................................3

## **INTRODUCTION**

Proposed Intervenor International Brotherhood of Teamsters ("IBT" or, collectively with its affiliated locals and joint councils, the "Union") files this brief in support of its unopposed motion to intervene under Federal Rule of Civil Procedure 24.[1] The IBT seeks to intervene as of right, or in the alternative, permissively, to oppose Plaintiff National Labor Relations Board's ("NLRB") action to prevent the enforcement of Section 2 of California's Assembly Bill No. 288 ("AB 288"), brought on the purported basis that the expansion of the California's Public Employment Relations Board's ("PERB") jurisdiction contemplated therein conflicts with, and is wholly preempted by, the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. ("NLRA").

California enacted AB 288 to allow PERB to, beginning January 1, 2026 and under circumstances specified in the statute, enforce labor protections for employees whose fundamental rights to organize and bargain collectively are not being enforced by the NLRB as Congress intended when it enacted the NLRA. The IBT's affiliated locals and joint councils represent workers employed throughout California who have suffered under a dysfunctional NLRB. Central to the Union's mission is protecting the labor rights of the workers that these affiliates represent or seek to represent, who would directly benefit from having a forum where the Union can help them effectively vindicate their rights if the NLRB fails to do so, or is incapable of doing so. If Plaintiff succeeds in obtaining the relief sought in the instant complaint, the Union will, as a practical matter, be deprived of such a forum.

Prior to AB 288's enactment, the Union had no choice but to rely on the NLRB to challenge most private-sector employers' unfair labor practices and ensure these employers comply with their duty to bargain under the NLRA. The Union was so confined notwithstanding

---

[1] Defendants do not oppose the IBT's Motion. Neither does Plaintiff, who takes no position.

that the NLRB continues to lack the quorum it needs to properly function ever since the President fired Board Member Gwynne Wilcox on January 27, 2025, based on his view that the NLRA's statutory protections against Board Members' removal are unconstitutional—which view the Supreme Court appears poised to ultimately affirm. *See Trump v. Wilcox,* 145 S. Ct. 1415 (2025) (granting stay of D.C. Circuit's *en banc* decision enjoining Wilcox's removal); *Harris v. Bessent*, 2025 WL 980278, at *47 (D.C. Cir. Mar. 28, 2025) (Millet, J., dissenting from stay of order reinstating Wilcox) (noting Wilcox's removal has "disable[d] . . . [the] NLRB from operating by depriving [it] of a quorum"); *see also Trump v. Slaughter*, 606 U. S. ____ (2025) (granting cert before judgment, to consider, *inter alia*, whether the Supreme Court should overrule *Humphrey's Executor v. United States*, 295 U. S. 602 (1935)). The Union was also confined to the NLRB notwithstanding that employer-filed challenges to the NLRB's constitutionality have raged of late through the Circuits, leading so far to one Court of Appeals enjoining the NLRB from proceeding with litigation and enforcement in live cases in that circuit, *see generally Space Expl. Techs. Corp. v. NLRB*, 2025 WL 2396748 (5th Cir. Aug. 19, 2025), with other decisions still pending, *see, for example, Amazon v. NLRB*, No. 25-886 (9th Cir., appeal filed Feb. 11, 2025) (appeal of District Court's denial of motion for preliminary injunction to prevent the NLRB from prosecuting a case against Amazon in which an IBT local is the charging party). And—even before the court decisions neutering the Board's independence, the Board's resultant loss of quorum, and these employer attacks on the NLRB's constitutionality—the NLRA was notorious for years of underfunding and understaffing, which, combined with employers' dilatory tactics and increased incentives to violate the NLRA due to its weak remedial regime, resulted in the NLRB's increasingly-slow processing of cases, to the detriment of workers' rights. *See, e.g.*, Matt Bruenig, *NLRB Processing Times Have*

*Dramatically Increased* (Mar. 06, 2024) (embedded hyperlink).[2]

AB 288 allows the Union and workers an alternate forum through PERB when the NLRB is hobbled or disabled, providing the Union the opportunity to timely redress violations of its and its members' labor rights when the NLRB is not providing prompt accountability for lawbreaking activity. The Union intends to avail itself of this opportunity once the statute takes effect on January 1, 2026. In fact, when a similar state law took effect recently in New York, the Union's local affiliate—ALU-IBT Local 1—filed a charge with that state's PERB based on Amazon's unlawful termination of that local's member. Declaration of David O'Brien Suetholz ("Suetholz Decl."), ¶ 13. The instant action threatens the Union's ability to also do so in California. On that basis, the IBT is entitled to intervene as of right, because it holds a significantly protectable interest in the vindication of its and its members' rights, which differs from Defendants' broader interest.

And even if this Court finds that intervention as of right is not here appropriate, the Court should still exercise its broad discretion to permit the IBT to intervene pursuant to Fed. R. Civ. P. 24(b)(2), because the IBT's defense of AB 288 shares common questions of both law and fact with the main action, and the IBT brings unique experience and perspective that will help the Court adjudicate Plaintiff's arguments that the NLRA preempts Section 2. Indeed, the IBT would be the only party in this action that has, through its affiliates, organized and collectively bargained on behalf of employees subject to the NLRB. The Union thus represents the employees that AB 288

---

[2] For just two examples of the copious literature documenting these issues, see Celine McNicholas et al., Unlawful Employer Opposition to Union Election Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://www.epi.org/publication/unlawful-employer-opposition-to-unionelection-campaigns/ [https://perma.cc/J4V3-Y9NA] (explaining how NLRB currently "fails to prevent employers from engaging in aggressive, coercive, and intimidating opposition to workers' efforts to unionize"); Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) (explaining same, decades ago).

seeks to protect, and has uniquely grappled with the very problems that animated AB 288. Its

voice and viewpoint are thus indispensable in this case.[3]

## **BACKGROUND**

### I.    **The Challenged Legislation**

On September 30, 2025, the State of California enacted AB 288 to allow workers who

lose coverage under the NLRA, and workers over whom the NLRB has expressly or impliedly

ceded jurisdiction, to petition PERB to protect their right to unionize and collectively bargain.

Section 2 of AB 288 ("Section 2") adds Section 923.1 to California's Labor Code. This Section

sets forth the conditions under which the NLRB will be deemed to have expressly or impliedly

ceded jurisdiction to PERB, *e.g.* when it has no quorum, or loses its status as an independent

agency, or fails to timely process matters (most matters specified in this provision provide for at

least six-months for NLRB processing before the condition is met). Lab. Code §923.1(b)(1)(B).

This Section also sets forth the conditions under which a worker will be deemed to have lost

NLRA coverage, including if the NLRA "is repealed, narrowed, or its enforcement [is] enjoined

in a case involving that worker . . . ." *Id*. §923.1(b)(1)(A). Section 2 then sets forth the actions

such workers may petition PERB to take, *id*. §923.1(c), and specifies PERB's procedural and

remedial authority with respect to such actions, *id*. §923.1(e). Nothing in the statute requires

anyone to bring cases to PERB, rather than the NLRB, even if the conditions for granting PERB

jurisdiction are satisfied. Instead, this new legislative framework essentially sorts most California

private-sector employees into one of two categories: (1) employees over whom the NLRB has

---

[3] In a similar preemption lawsuit involving a New York law, the Eastern District of New York granted intervention to one of the Union's locals, which had moved to intervene on similar grounds after filing a charge with New York's Public Employment Relations Board. *Amazon.com Services LLC v. New York State Public Employment Relations Board, et al.*, 1:25-cv-05311-EK-MMH (E.D.N.Y, Complaint filed Sept. 22, 2025) (unnumbered text order dated October 22, 2025, granting Dkt. 26 Motion to Intervene by Amazon Labor Union No. 1, International Brotherhood of Teamsters).

successfully and timely exercised jurisdiction as Congress intended, who will continue to have

their labor rights enforced exclusively by the NLRB, and (2) employees over whom the NLRB

has not, who therefore may elect to have their labor rights enforced by PERB, which may apply

NLRA precedents in exercising its jurisdiction, Lab Code § 923.1(e)(2). If the conditions that

triggered PERB's jurisdiction cease to apply, the case may return to the NLRB. *Id.* § 923.1(b)(2).

## II.     **The NLRB's Lawsuit**

Shortly after AB 288's enactment, the NLRB filed the instant lawsuit to enjoin Section 2.

The NLRB contends that the NLRA preempts Section 2 to the extent that the latter regulates any

labor relations that arguably fall under the statutory scope of the NLRA, regardless of whether

the NLRB exercises jurisdiction in that case. Complaint p. 1 ¶ 1, p. 9 ¶¶ 2-3 (Dkt. 1) ("Compl.").

The NLRB alleges that because Section 2 permits PERB to exercise jurisdiction over certain

private sector matters, the bill seeks to "unlawfully usurp[] the NLRB's authority by attempting

to regulate areas explicitly reserved for federal oversight, creating a parallel regulatory

framework that conflicts with the NLRA." Compl. p. 9 ¶3. The NLRB also alleges that Section 2

"create[s] a substantially different labor law regime than that of the NLRA." *Id.* p. 8 ¶27.

The Complaint ignores that the NLRB has for years been an underfunded, understaffed

institution failing to function as Congress intended. An institution that, now, in essence, is at full

dysfunction due to a lack of quorum, a loss of independence, and ineffective enforcement

mechanisms.[4] Far from creating a conflicting regulatory framework, Section 2 helps ensure that

Congress' goals in passing the NLRA are actually achieved, at least for workers in California, by

providing an alternative pathway and framework to ensure that all workers in California have the

---

[4] Notably, the current federal government shutdown has caused the NLRB to shutter its doors, leaving workers in California with no avenue to obtain redress.

unfettered right to organize, bargain collectively, act concertedly, and protect themselves from employers' unlawful interference and retaliation when they seek to exercise those rights.

### III.    The Proposed Intervenor

The Union is a labor union representing, through its affiliated local unions and joint councils, hundreds of thousands of employees throughout California. Suetholz Decl., ¶ 2. These affiliated local unions and joint councils are subject to the IBT's constitution, and the IBT coordinates with these affiliates on organizing and representational activities to ensure industry-wide strength. *Id.* ¶ 2.[5] As the parent organization of these various locals and joint councils, the IBT brings a statewide lens and therefore seeks to be the intervening party.

The Union has years of experience with the NLRB's delays and inefficacy, which have only been worsened by the NLRB's recent protracted loss of quorum and by the recent spate of litigation seeking to enjoin NLRB enforcement actions based on employers' claims that the NLRB is unconstitutionally structured. *See, e.g.*, *Amazon.com Services LLC v. New York State Public Employment Relations Board, et al.*, 1:25-cv-05311-EK-MMH (E.D.N.Y, Complaint filed Sept. 22, 2025), Dkt. 31-1 ("ALU-IBT Local 1 Brief"), pp. 6-8 (describing Amazon's refusal to comply with NLRB's certification of ALU-IBT Local 1 as representative of New York employees, and three-year litigation campaign challenging that certification). One illustrative example in California is the efforts of various IBT locals and joint councils to collectively bargain with Amazon at its facilities statewide. The IBT here details this example at some length to help illustrate the experience and expertise the IBT would bring to this action.

At Amazon's DAX8 facility in Palmdale, California, Amazon employees working

---

[5] The Union's structure is explained here: https://teamster.org/about/teamsters-structure/

through Amazon's Delivery Service Partner ("DSP")[6] Battle-Tested Strategies ("BTS")

unionized in April 2023. On April 20, 2023, BTS recognized IBT Joint Council 42 as the

employees' collective bargaining representative. *Id*. ¶ 4. Shortly thereafter, Amazon announced

to BTS's employees that it was terminating BTS's contract as a DSP, which meant the newly

unionized employees would be terminated. *Id*. ¶ 5. Starting on May 2, 2023, the Union, through

its affiliates, filed multiple unfair labor practice charges against Amazon with the NLRB, based

in part on Amazon's status as a joint employer of employees working through DSPs. *Id*. ¶ 4.

After an investigation that took nearly a year and a half, Region 31 of the NLRB at last issued an

administrative Complaint on September 30, 2024, agreeing that Amazon is a joint employer and

alleging that Amazon committed multiple unfair labor practices, including by failing to

recognize and collectively bargain with Joint Council 42. *Id*. ¶ 5. Thereafter, Amazon sought to

enjoin the NLRB's enforcement proceedings with respect to this Complaint, based on Amazon's

claim that the NLRB's Board Members and Administrative Law Judges are unconstitutionally

protected from removal. *See generally Amazon.com Servs. LLC v. NLRB*, 2025 WL 1766349

(C.D. Cal. June 9, 2025). Although the District Court ultimately declined to issue an injunction

on jurisdictional grounds and because Amazon failed to establish the irreparable harm necessary

for preliminary relief, *id*. at *3, Amazon's appeal of the court's denial of its injunction request

remains pending in the Ninth Circuit. *Amazon v. NLRB*, No. 25-886 (9th Cir., appeal filed Feb.

11, 2025).[7]

Trial before the NLRB's administrative law judge finally began on September 22,

---

[6] DSPs are contractors—over whom Amazon exercises enormous control—that ostensibly employ Amazon delivery drivers. *Id*. ¶ 3.

[7] And, as noted previously, the Fifth Circuit has already enjoined NLRB proceedings based on similar constitutional arguments raised by SpaceX. *Space Expl. Techs. Corp.*, 2025 WL 2396748, at *7-12, 14.

2025—after being rescheduled multiple times, first unilaterally by the NLRB and then based on Amazon's purported unavailability. *Id*. ¶ 6. The current federal government shut-down soon halted the trial mid-stream. *Id*. ¶ 6. The trial is currently scheduled to resume in January 2026— nearly three years after the DAX8 employees unionized—with the almost certainty of additional hearing days scheduled later in 2026. *Id*. ¶ 6. This type of delay has been proven to irreparably harm organizing campaigns and unions seeking to represent workers. *See e.g. Frankl ex rel. NLRB v. HTH Corp.*, 650 F.3d 1334, 1362-1363 (9th Cir. 2011)  ("As time passes, the benefits of unionization are lost and the spark to organize is extinguished. The deprivation to employees from the delay in bargaining and the diminution of union support is immeasurable.")

    At other California facilities, the NLRB has failed to rein in Amazon's flouting of its obligations under *Cemex Constr. Materials Pac., LLC*, 37 NLRB No. 130, 2023 WL 5506930 (Aug. 25, 2023). That decision sets forth a simple rule: if a union with majority support of employees in an appropriate bargaining unit demands that an employer recognize it as those employees' bargaining representative, the employer must either do so or "promptly" (generally "within two weeks") petition the NLRB to hold an election to test whether there is in fact such support. *See id*. at *25 & fns. 139, 141. An employer's failure to do so constitutes a violation of Sections 8(a)(1) and (5) of the NLRA. *See id*. Rather than follow this procedure, Amazon has refused to recognize the Teamsters or file election petitions when faced with recognition demands. Suetholz Decl. ¶¶ 7-8. Accordingly—among numerous other pending unfair labor practice charges against Amazon in this state—Teamsters affiliates have filed charges for violations of *Cemex* at Amazon's California facilities in: San Bernardino (NLRB charge 31-CA-357556, filed 12/27/2024); Victorville (NLRB charges 31-CA-354224, 31-CA-354186, 31-CA-354246, and 31-CA-354257, all filed 11/4/2024); and City of Industry (NLRB charges 21-CA-

355937 and 21-CA-355940, filed 11/29/2024; and 21-CA-370515, filed 7/31/2025). *Id.* ¶¶ 7-8.

The NLRB—often long overshooting the six-month processing timeframe set forth in Section 2,

Lab. Code 923.1(b)(1)(B)(ii)—has still failed to complete its initial investigation of any of those

charges, and has not even assigned a board agent to the latest City of Industry charge. *Id.* ¶ 8.

## ARGUMENT

### I.    The IBT is entitled to intervene as of right.

Rule 24(a) governs intervention as of right and provides in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Ninth Circuit employs a four-part test to determine whether a proposed

intervenor has a right to intervene under this rule:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). Rule 24(a)

must be construed "broadly in favor of proposed intervenors" to promote a liberal policy favoring

intervention. *Id.* at 1179; *see also, e.g.*, *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los*

*Angeles*, 2020 WL 4501792, at *2 (C.D. Cal. Aug. 5, 2020). "By allowing parties with a *practical*

interest in the outcome of a particular case to intervene" courts can "prevent or simplify future

litigation involving related issues" and "allow an interested party to express its views before the

court." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002) (emphasis in

original).

A.    **The IBT's motion is timely.**

Courts consider three factors when determining whether a motion to intervene is timely: (1) the stage of the proceeding at which intervention is sought; (2) any prejudice to the existing parties; and (3) the reason for and length of any delay. *United States v. Oregon*, 913 F.2d 576, 588-89 (9th Cir. 1990). Here, the motion is timely because the IBT seeks to intervene at the outset of litigation, before the Complaint has even been served on Defendants and before the deadline for Defendants' response to Plaintiffs' complaint has been set. *Cf. Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion to intervene filed two weeks after defendants' filed answer was timely). Discovery has not commenced and the Court has not yet issued any rulings. Thus, there has been no delay in filing, and no attendant prejudice to the existing parties. *See, e.g., Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (no parties were prejudiced by grant of motion to intervene when the court had not yet made any substantive rulings).

B.    **The IBT has a "significantly protectable" interest in the subject matter of this action.**

Rule 24(a)(2)'s requirement that a proposed intervenor show an "interest relating to the property or transaction" of the litigation is liberally construed. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132-36 (1967). A prospective intervenor's interest is "significantly protectable" if it is "protectable under some law, and . . . there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179.

The Union and its members have significantly protected interests in the organizing and collective bargaining rights that Section 2 seeks to protect. California has long recognized such rights as important public policies. Lab. Code § 923 ("[I]t is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own

choosing, to negotiate the terms and conditions of his employment . . . ."); AB 288, Section 1 (Dkt. 1-1, pp. 2-5) (elaborating this policy). There is also "a relationship between the legally protected interest" and the present action, which seeks to enjoin the enforcement of a statutory provision that protects the Union and its members by offering the Union a pathway through PERB to represent employees who have been failed by the NLRA. *See Wilderness Soc'y*, 630 F.3d at 1179.

    The Ninth Circuit has recognized that labor unions have a "significantly protectable" interest in litigation seeking to prevent the government from enforcing laws that protect union members. *See Allied Concrete*, 904 F.3d at 1067 (granting intervention as of right in suit challenging prevailing wage law because the union's "members had a 'significant interest in receiving the prevailing wage for their services as opposed to a substandard wage'" (cleaned up) (quoting *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998)); *see also United States v. City of Los Angeles*, 288 F.3d 391, 398-99 (9th Cir. 2002) (union had protectable interest in litigation because the remedy sought would affect the terms of union members' employment). Since both federal law, 29 U.S.C. §§ 157, 158(a), and California law through Lab. Code § 923.1 and AB 288, recognize that the Union, its members, and other workers that the Union represents or seeks to represent have legally established rights to collectively bargain with employers free from retaliation and unlawful interference, and Plaintiff seeks to enjoin Defendants from enforcing that right through Section 2, the Union has a "significantly protectable" interest in this case.

    Furthermore, organizations have a "significantly protectable" interest in litigation where an adverse outcome would affect the organization's finances and operations. For example, in *Northwest Environmental Advocates v. United States Department of Commerce*, 769 Fed. Appx. 511, 512 (9th Cir. 2019), the Ninth Circuit found that two ranching industry associations and their members had a significantly protectable interest in a suit challenging federal grant-issuing activities because the

litigation had the potential to result in a "loss of funding and imposition of more burdensome requirements on their operations." *See also Associated Dog Clubs of N.Y. v. Vilsack*, 44 F.Supp.3d 1, 4-6 (D.D.C. 2014) (finding that Humane Society had a significantly protectable interest in litigation challenging a breeder regulation, that, if overturned, would require it to restructure its operations and divert resources to police animal cruelty). Here, the NLRB's delays and dysfunction have reduced the rate at which the Union can increase its membership and representative status, Suetholz Decl. ¶¶ 9-11, *supra* p. 3 fn. 2, which in turn reduces the amount of dues and fees the IBT receives to finance its operations, allowing it to support organizing, representational, and collective bargaining activities on behalf of workers, Suetholz Decl. ¶¶ 9-11. The outcome of this litigation will determine whether the Union may organize under a more functional, state-law regime, which will result in increased representational status, increased membership, and thus increased financing for the IBT's operations. *Id.* ¶¶ 9-11. The NLRB's delays also require the IBT and its locals to divert organizing resources to maintain morale among employees who must often wait years before receiving enforceable judgments vindicating their rights. *Id.* ¶¶ 9-11. Section 2 promises to free up those resources toward other organizing ends, such as unionizing new workforces and achieving improvements for both unionized and non-unionized employees across the county. *Id.* ¶¶ 9-11.

C.  **The disposition of this matter may, as a practical matter, impair the IBT's ability to protect its interest.**

Rule 24(a)(2) allows intervention if "the district court's decision will result in *practical impairment*" of the proposed intervenor's interest. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (emphasis in original); *see also* Fed. R. Civ. P. 24(a)(2), Advisory Committee Note to 1966 Amendment ("If an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to

intervene."). Here, the Union's interests would be practically impaired if the Court finds for Plaintiff and declares Section 2 unconstitutional or grants injunctive relief. An injunction would bar the Union and the workers it represents or seeks to represent from having their organizing and collective-bargaining rights protected through PERB by denying them the right to file charges or otherwise seek redress through PERB. This would not only impair the Union's finances, but would also impede the Union in fulfilling its central mission of protecting the labor rights of  workers it represents and workers it seeks to represent. Indeed, if Plaintiff prevails, the Union will have no choice but to continue to seek to enforce the rights of California employees subject to the NLRA through the NLRB. Its experience has demonstrated that this is a Sisyphean task. *Supra* pp. 2-3, 6-9 & fn. 2.

   D.    **The existing parties may not adequately represent the IBT's interests.**

   To satisfy the last requirement of the Rule 24(a) test—that the intervention applicant's interest is not adequately represented by the existing parties—a proposed intervenor need not show that the existing parties *will* behave detrimentally to the applicant's interest. Rather, the inadequacy requirement "is satisfied if the applicant shows that representation of his interest *may* be inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added; cleaned up). It is not the *quality* of the existing parties' representation that matters; courts instead consider as factors whether the existing parties will "undoubtedly make all of the intervenor's arguments" and whether the intervenor "offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

   Even if, as is often the case, the proposed intervenor and one or more of the existing parties share the same ultimate objective (e.g., defeating a plaintiff's claims), courts in this Circuit routinely allow intervention as of right where, as here, the interests of the intervenor are

more "narrow" or "parochial" than those of the existing parties. *Allied Concrete*, 904 F.3d at

1067; *see, e.g.*, *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498-99 (9th

Cir. 1995) (state and county "satisfied the minimal showing required" under the "adequacy of

representation" prong because "[t]he Forest Service is not charged with a duty to represent [the

intervenors'] asserted interests . . . . The Forest Service is required to represent a broader view

than the more narrow, parochial interests of the State of Arizona and Apache County"),

*abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173.

Thus, labor unions are routinely granted leave to intervene in lawsuits filed against

California public officials to invalidate state laws that advance or protect the specific interests of

the unions and their members. Courts recognize that the interests of labor union intervenors in

defending laws that protect their members are more "narrow" and "parochial" than California

officials' broad and more abstract interest in defending the challenged laws. *See, e.g.*, *Allied

Concrete*, 904 F.3d 1053, at 1068 (union's "interests are potentially more narrow than the

public's at large, and the State's representation of those interests '*may have been* inadequate'")

(emphasis in original) (quoting *Mendonca*, 152 F.3d at 1190); *Mendonca*, 152 F.3d at 1189-90

(granting intervention as of right where the "interests of [the union's] members were potentially

more narrow and parochial than the interests of the public at large [which] demonstrate[s] that

the representation . . . by the named defendants-appellees may have been inadequate"); *S. Cal.

Healthcare Sys., Inc. v. City of Culver City*, 2021 WL 4817846, at *2 (C.D. Cal. July 26, 2021)

(union permitted to intervene to defend ordinance providing temporary wage supplement, given the

union's "narrow focus on its members and the City's broader concentration on advancing the public

agenda"); *San Diego Cnty. Lodging Ass'n v. City of San Diego*, 2021 WL 1733383, at *4 (S.D. Cal.

May 3, 2021) (union could intervene in suit challenging ordinance governing rehiring of laid-off hotel

workers, because union's interest in protecting members benefitting from the ordinance was "potentially more narrow than the public's at large"); *W. States Trucking Ass'n v. Schoorl*, 2018 WL 5920148, at *3 (E.D. Cal. Nov. 13, 2018) (union had right to intervene to defend against challenge to scope of California's employment-law protections); *Air Conditioning Trade Ass'n v. Baker*, 2012 WL 3205422, at *5 (E.D. Cal. July 31, 2012) (granting labor organization intervention in challenge to standards for apprenticeship programs, because "the state defendants have a broader interest than [the union] as the proposed intervenor"); *Golden Gate Rest. Ass'n v. City and Cnty. of San Francisco*, 2007 WL 1052820, at *4 (N.D. Cal. Apr. 5, 2007) ("[T]he Unions' members here have a personal interest in the enforcement of the Ordinance," while "the Defendant City and County of San Francisco represents the public generally, including businesses and employers who may claim to be harmed by the passage of the Ordinance."); *see also Associated Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 983-84 (9th Cir. 2004) (noting union was permitted to intervene to defend against preemption challenge to law creating minimum wage scale for apprentices); *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1411-12 & n.8 (9th Cir. 1996) (newspaper guild entitled to intervene to defend city's boycott of newspaper against preemption claim).

Here, while California has an interest in enforcing its law, and PERB may have an interest in broadening its jurisdiction, the outcome of this action will not fundamentally impact either party's ability to perform the tasks central to their existence. Regardless of this case's outcome, the state legislature will go on legislating, and PERB will continue adjudicating unfair labor practices that fall within its statutory purview. By contrast, the Union exists primarily to protect the labor rights of the employees it represents and seeks to represent, and to advocate for the material interests of those workers. The Union's experience has demonstrated how difficult carrying out those tasks has become under the NLRB. *Supra* pp. 6-9. This action's stakes for the

Union therefore likely eclipse the stakes for existing Defendants. Indeed, given these different

respective stakes and the broad set of interests that Defendants represent, it is possible they may

have to abandon their defense of AB 288. It is far less likely that the IBT will abandon its

vigorous defense of AB 288 because doing so would substantially prejudice the workers whose

protection is central to the Union's mission. *See Ass'n of Conn. Lobbyists LLC v. Garfield*, 241

F.R.D. 100, 103 (D. Conn. 2007) (noting that because the parties have distinct interests in a

parallel objective, "[i]t is . . . possible that the government may not emphasize or vigorously

defend all aspects of the challenged law that are critical to the movant's interest.").

Furthermore, in *Barke*, the Court acknowledged explicitly that PERB might not represent the

interests of unions seeking to defend the constitutionality of a California statutory provision (there,

California Government Code section 3550, which prohibits public employers from discouraging

employees from joining or remaining union members). 2020 WL 2315857, at *4. The Court noted

that, "[b]ecause the Unions have narrower interests than those of the PERB Defendants, it cannot be

stated that the PERB Defendants will 'undoubtedly make all of [the Unions'] arguments.'" *Id.*

(brackets in original, quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also*

*Baker*, 2012 WL 3205422, at *5 (unions granted leave to intervene where defendants were officials of

the state Division of Apprenticeship Standards because the government entity was a "neutral

decisionmaker" that might not adequately represent the "partisan" union's interests); *California Dump*

*Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011) (Natural Resources Defense

Council granted leave to intervene in suit brought against defendant Agricultural Resources Board

(ARB) because "[t]he ARB is a public agency that must balance relevant environmental and health

interests with . . . the interests of various constituencies (including Plaintiff's), interests that can be,

and here are, at odds with the NRDC's interests"). These cases establish that neutral, quasi-judicial

agencies such as PERB must maintain some level of neutrality and thus may not adequately represent in litigation the interest of just one of the groups that may appear before it. Here, pursuant to Section 2, the Union and private employers will appear before PERB in adversarial proceedings, and PERB must adjudicate these disputes without preference for employers, employees, or employee organizations.[8] Thus, in the present suit, PERB may not adequately represent the Union's "narrow" and "parochial" interests in defending its affiliates' rights as exclusive representatives and the interests of represented and non-represented employees as a whole.

Lastly, as elaborated below, the Union has firsthand knowledge of the deficiencies of the NLRB's processes that Section 2 seeks to remedy and that bear on the preemption analysis that the Court must undertake to evaluate Plaintiff's claim. *Infra* pp. 18-20. The IBT thus "offers a necessary element to the proceedings that would be neglected" without its participation. *See Sagebrush Rebellion*, 713 F.2d at 528; *see also, e.g.*, *Apartment Ass'n*, 2020 WL 4501792, at *3.

## II.    Alternatively, permissive intervention should be granted.

In the alternative, the IBT should be permitted to intervene pursuant to Rule 24(b), which authorizes permissive intervention where an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As a matter of fairness, the Union should be able to defend the legality of a statute that protects its interests and the interests of its represented employees, and the IBT's intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Ninth Circuit allowed a labor union to intervene under Rule 24(b) to defend a state workers' compensation law because the union had an interest in the case, "added no claims or issues to

---

[8] Likewise, the Union's locals also represent public sector employees in California. Suetholz Decl. ¶ 12. These locals therefore already frequently appear before PERB in adversarial proceedings against public employers, *id.* ¶ 12, where, likewise, PERB must serve as a neutral decisionmaker.

those already in the case, and did not complicate or delay resolution beyond the need of plaintiffs to respond to additional briefing." *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994). Here, to assess the merits of the IBT's defense of the statute, the Court must answer the same question of law that will be determinative of the existing action: whether Section 2 is preempted by the NLRA. The IBT's intervention will not cause undue delay or prejudice to any parties because this motion is timely filed, and the IBT does not request any delay or allege any additional claims.

Furthermore, the IBT offers unique experience and perspective that will help the Court adjudicate whether the NLRA preempts Section 2. *See Sullivan v. Ferguson*, 2022 WL 10428165, at *4-5 (W.D. Wash. Oct. 18, 2022) (citing *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326 (9th Cir. 1977)) (granting permissive intervention where intervenor's experience is "likely to contribute to full development of the underlying factual issues and provide a useful perspective that otherwise is not represented in the suit"); *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 2020 WL 4501792, at *3 (C.D. Cal. Aug. 5, 2020) (similar); *S. California Healthcare Sys., Inc. v. City of Culver City*, 2021 WL 4817846, at *2 (C.D. Cal. July 26, 2021) (cleaned up) ("[I]n addition to having expertise apart from that of the City, the [labor union] offers a perspective which differs materially from that of the present parties to this litigation."); *Club v. McLerran*, 2012 WL 12846108, at *2 (W.D. Wash. Mar. 19, 2012) (granting intervention in part based on intervenor's "substantial experience with issues like the one at hand").

Here, the IBT provides the "perspective" of the very population that AB 288 seeks to help—which perspective, absent intervention, would remarkably not "otherwise [be] represented in the suit." *See Sullivan*, 2022 WL 10428165, at *5. It is undisputed that the current Defendants have never before exercised jurisdiction over employees and employers who have fallen under the NLRA. *See* Compl. ¶¶ 17, 23. The IBT would be the only party with experience, including

through its local affiliates, organizing and attempting to collectively bargain on behalf of such workforces.

The IBT has familiarity with the stagnancy and dysfunction that has uniquely come to grip the private sector labor relations that have heretofore fallen under the NLRB's current jurisdiction. The Union's experience with Amazon alone provides multiple examples of the NLRB processing delays that trigger PERB's jurisdiction under AB 288. *Supra* pp. 7-9; Lab Code 923.1(b)(1)(B)(ii) (cases "pending before a regional director for more than six months without the issuance of a complaint" or "pending more than six months after a complaint has been issued without the issuance of a decision by an administrative law judge"). That experience has also involved the constitutional challenges to the NLRB's structure at issue in Section 2. *See* Lab. Code 923.1(b)(1)(B)(i); *supra* pp. 6-7. The IBT's defense will therefore share common issues of fact, in addition to common issues of law, with the main action. Based in part on these experiences and other examples the IBT could provide, the IBT intends to explain why the NLRB's dysfunction and recent developments negate the premises of the *Garmon* doctrine on which Plaintiff's preemption argument relies. Compl. p. 9 ¶2. A New York-based local of the Union has shown the Union's ability to do so through the brief it filed in opposition to Amazon's motion to preliminarily enjoin New York legislation that bears some similarities to AB 288. *Amazon.com Services LLC v. New York State Public Employment Relations Board, et al.*, 1:25-cv-05311-EK-MMH (E.D.N.Y, Complaint filed Sept. 22, 2025), Dkt. 31-1 ("ALU-IBT Local 1 Brief"), pp. 7-17 (explaining why NLRB's atrophy, loss of quorum, and loss of independence negate *Garmon*). The current Defendants' lack of comparable experience with NLRA-covered workforces may impair their ability to adequately present this explanation.

Furthermore, by virtue of its experience in private-sector labor relations, the IBT brings

extensive familiarity with the NLRA statutory scheme and caselaw that bear on Plaintiff's preemption arguments. The ALU-IBT Local 1 Brief demonstrates the Union's ability to draw on that familiarity to rebut those arguments. *See, e.g.*, ALU-IBT Local 1 Brief at pp. 20-22 (doing so to rebut arguments Amazon raised that were functionally identical to those raised in ¶¶27.a – 27.d of Plaintiff's complaint); *see also* ALU-IBT Local 1 Brief at pp. 8-11 (drawing on this familiarity to address *Garmon* arguments). The IBT will also draw on its familiarity with the NLRA statutory scheme and caselaw to address the arguments Plaintiff raises in ¶¶27.e – 27.f of its Complaint, which arguments were absent from the New York litigation.

Indeed, because Plaintiff facially challenges Section 2, it must show that "the law is unconstitutional in all of its applications." *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 938 (9th Cir. 2024) (explaining this rule applies to facial preemption challenges). This makes the Union's extensive experience with the NLRA, and its application (or lack thereof) in a variety of factual circumstances, all the more important for adjudicating Plaintiff's challenge.

## CONCLUSION

The IBT respectfully requests that this Court grant its motion for intervention as of right, or, in the alternative, permissively.

//
//
//
//
//
//
//
//
//

DATED: October 30, 2025

BUSH GOTTLIEB
A Law Corporation

By

Julie Gutman Dickinson
jgd@bushgottlieb.com

Attorneys for International Brotherhood of Teamsters

IBT'S MEMORANDUM ISO MOTION TO INTERVENE, 2:25-cv-02979-TLN-CKD