NANCY E. KESSLER PLATT (D.C. Bar No. 425995)
*Associate General Counsel*
Nancy.Platt@nlrb.gov

DAWN L. GOLDSTEIN (MA Bar No. 600181)
*Deputy Associate General Counsel*
Dawn.Goldstein@nlrb.gov

CHAD A. WALLACE (D.C. Bar No. 1601387)
*Trial Attorney*
Chad.Wallace@nlrb.gov

**NATIONAL LABOR RELATIONS BOARD**
1015 HALF STREET, SE, 4TH FLOOR
WASHINGTON, DC 20570
TELEPHONE: (202) 273-2489
FAX: (202) 273-4244

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

NATIONAL LABOR RELATIONS BOARD,

Plaintiff,

v.

STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD,

Defendants,

and

INTERNATIONAL BROTHERHOOD OF TEAMSTERS,

Intervenor.

Case No. 2:25−CV−02979−TLN−CKD

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**THIS SPACE INTENTIONALLY LEFT BLANK**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. The National Labor Relations Act ..... 2

B. The National Labor Relations Board's Administration of the Act ..... 3

C. The Current Status of the NLRB ..... 5

D. California's Public Employment Relations Board and AB 288 ..... 7

ARGUMENT ..... 9

A. Legal Standard for a Preliminary Injunction ..... 9

B. The NLRB Is Likely to Prevail in Showing that the NLRA Preempts AB 288 ..... 10

i. *Garmon* preemption precludes the State of California and PERB from regulating conduct already regulated by the NLRA ..... 10

ii. Obstacle preemption prohibits California from creating its own system of regulating private-sector labor relations and upsetting the balance set by Congress and the NLRA ..... 12

iii. The Board has neither ceded nor declined jurisdiction over private sector labor relations, as California asserts to justify supplanting the NLRA ..... 14

C. In the Absence of a Preliminary Injunction, Congress's Intent to Create National Labor Policy Enforced by the NLRB Will Suffer Irreparable Harm ..... 16

D. A Preliminary Injunction Is in the Public's Interest and the Harm to California and PERB Will Be Comparatively Slight as Compared to the Significant Harm to the NLRA and the NLRB if AB 288 Is Not Preliminarily Enjoined ..... 19

E. There are Serious Questions Going to the Merits of the Instant Matter and the Balance of Harms Tips Sharply in the NLRB's Favor ..... 20

CONCLUSION ..... 20

ADDENDUM ..... A-1

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abad v. Bonham*,
562 F. Supp. 3d 1144 (E.D. Cal. 2022) .......... 20

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 10, 20

*Amazon.com Servs. LLC v. NLRB*,
No. 2:24-cv-09564-SPG-MAA, 2025 WL 466262 (C.D. Cal. Feb. 5, 2025) .......... 16

*Arizona v. United States*,
567 U.S. 387 (2012) .......... 12

*Barbier v. Connolly*,
113 U.S. 27 (1884) .......... 11

*Bethlehem Steel Co. v. N.Y. State Lab. Rels. Bd.*,
330 U.S. 767 (1947) .......... 14

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1964) .......... 2

*Chicago, B. & Q.R. Co. v. McGuire*,
219 U.S. 549 (1911) .......... 12

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) .......... 10

*Garner v. Teamsters, Loc. Union No. 776*,
346 U.S. 485 (1953) .......... 2, 13, 14, 18

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174,*
598 U.S. 771 (2023) .......... 10, 11

*Guss v. Utah Lab. Rels. Bd.*,
353 U.S. 1 (1957) .......... 14, 15

*H.K. Porter Co. v. NLRB*,
397 U.S. 99 (1970) .......... 14

*Hines v. Davidowitz*,
312 U.S. 52 (1941) .......... 12, 14

*Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chapter of Assoc'd Builders & Contractors, Inc.*,
801 F.3d 950 (9th Cir. 2015) .......... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.* Liab. Litig.,
959 F.3d 1201 (9th Cir. 2020) .......... 12, 13

*Int'l Longshoremen Ass'n v. Davis*,
476 U.S. 380 (1986) .......... 10

*New Process Steel, L.P. v. NLRB*,
560 U.S. 674 (2010) .......... 3

*NLRB v. Am. Ins. Co.*,
343 U.S. 395 (1952) .......... 14

*NLRB v. Comm. of Interns & Residents*,
566 F.2d 810 (2d Cir. 1977) .......... 15

*NLRB v. Jones & Laughlin Steel Corp.*,
301 U.S. 1 (1937) .......... 2
*Red Rock Resorts, Inc. v. NLRB*,
No. 2:24-cv-01966-ART-BNW, 2025 WL 2784607 (D. Nev. Sep. 30, 2025) .......... 16
*Republic Steel Corp. v. NLRB*,
311 U.S. 7 (1940) .......... 13
*Retail Prop. Tr. v. United Bhd. of Carpenters*,
768 F.3d 938 (9th Cir. 2014) .......... 11, 12, 14
*San Diego Bldg. Trades Council v. Garmon*,
359 U. S. 236 (1959) .......... 2, 10, 11
*Sears, Roebuck & Co. v. Carpenters*,
436 U.S. 180 (1978) .......... 10
*Space Expl. Techs. Corp. v. NLRB*,
151 F.4th 761 (5th Cir. 2025) .......... 16
*Trump v. Wilcox,*
145 S. Ct. 1415 (2025) .......... 5
*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) .......... 17, 19
*United States v. California*,
921 F.3d 865 (9th Cir. 2019) .......... 9, 17, 19
*United States v. South Carolina*,
840 F. Supp. 2d 898 (D.S.C. 2011) .......... 17
*Wilcox v. Trump*,
775 F. Supp. 3d 215 (D.D.C. 2025) .......... 5
*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 9
*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
475 U.S. 282 (1986) .......... 10, 11, 12, 14

Statutes

2025 Sess. Law News of N.Y. Ch. 365 (S. 8034-A) (McKINNEY'S) .......... 18
29 U.S.C. § 151 .......... 2
29 U.S.C. § 153 .......... 2
29 U.S.C. § 153(a) .......... 3
29 U.S.C. § 153(b) .......... 3, 4
29 U.S.C. § 153(d) .......... 3, 4
29 U.S.C. § 154 .......... 2
29 U.S.C. § 157 .......... 2, 14
29 U.S.C. § 158 .......... 3
29 U.S.C. § 158(b) .......... 13
29 U.S.C. § 158(c) .......... 14
29 U.S.C. § 159 .......... 3, 14
29 U.S.C. § 160 .......... 2, 3
29 U.S.C. § 160(a) .......... 14, 15
29 U.S.C. § 160(b) .......... 4, 18
29 U.S.C. § 160(c) .......... 5
29 U.S.C. § 160(j) .......... 5

29 U.S.C. § 164(c) .......... 14
29 U.S.C. § 164(c)(1) .......... 15
Cal. Gov't Code § 3513 .......... 7
Cal. Lab. Code § 923.1(a)(2) .......... 7
Cal. Lab. Code § 923.1(b)(1)(B)(i) .......... 15, 16
Cal. Lab. Code § 923.1(b)(1)(B)(ii) .......... 17
Cal. Lab. Code § 923.1(c)(2) .......... 14
Cal. Lab. Code § 923.1(e)(1)(D) .......... 14
Cal. Lab. Code § 923.1(e)(1)(E)(3) .......... 13
California Assembly Bill No. 288, 2025 Cal. Legis. Serv. Ch. 139 (A.B. 288) (WEST) ...... passim

Regulations

29 C.F.R. § 101.10(a) .......... 5
29 C.F.R. § 101.11(a) .......... 5
29 C.F.R. § 101.12 .......... 3
29 C.F.R. § 101.12(a) .......... 5
29 C.F.R. § 101.4 .......... 4
29 C.F.R. § 101.8 .......... 4
29 C.F.R. § 102.178 .......... 4
29 C.F.R. § 102.182 .......... 4
29 C.F.R. § 102.60 .......... 4
29 C.F.R. § 102.67(c) .......... 4
29 C.F.R. § 102.70 .......... 4
29 C.F.R. § 102.71 .......... 3, 4
29 C.F.R. § 102.9 .......... 4
29 C.F.R. § 103.3 .......... 15
Authority and Assigned Responsibilities of General Counsel of National Labor Relations Board, 20 Fed. Reg. 2175-02 (1955) .......... 5
Order Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. 69768-02 (2011) 5
Regional Directors, 26 Fed. Reg. 3911-02 (1961) .......... 4

**INTRODUCTION**

Defendants, the State of California and the Public Employment Relations Board (PERB), through recently enacted California Assembly Bill No. 288, 2025 Cal. Legis. Serv. Ch. 139 (A.B. 288) (WEST) (AB 288) (ECF No. 1-1), seek to usurp the authority and jurisdiction Congress entrusted to the National Labor Relations Board (NLRB)[1] to regulate national labor policy, through the National Labor Relations Act (NLRA or Act). AB 288 amends California's Labor Code to permit workers and unions covered by the NLRA to file representation petitions and unfair-labor-practice charges with PERB under certain circumstances. This new law overrides the NLRB's authority to exclusively regulate private-sector labor relations in the State of California, and instead, empowers PERB to step in and enforce labor rights for private-sector workers in California when the state deems federal protections unavailable or ineffective under broad conditions.

Because AB 288 is preempted by the Act, a preliminary injunction is necessary under the Supremacy Clause of the U.S. Constitution. The NLRB will show it is likely to succeed on the merits as long-settled Supreme Court law demonstrates that the present clash of AB 288 and the Act must be resolved in the NLRB's favor. The NLRB will also demonstrate it is likely to suffer irreparable harm from California's attempt to regulate labor disputes exclusively regulated by federal law. Finally, the balance of harms and the public interest favor an injunction, as the harm to the NLRB, the Act, and national labor policy will be considerable, while any harm to the State of California and PERB will be comparatively slight. Finally, the public interest is best served by

[1] References to "the NLRB" are to the agency as a whole; references to "the Board" are to the five-member body serving as head of the agency.

uniform national labor policy set by the NLRB. Accordingly, this Court should enter an injunction enjoining California and PERB from implementing AB 288.[2]

**BACKGROUND**

**A. The National Labor Relations Act**

Congress enacted the NLRA, as amended, 29 U.S.C. §§ 151–169, to create a national, uniform body of labor law and policy, and to protect the stability of the collective-bargaining process. *See San Diego Bldg. Trades Council v. Garmon*, 359 U. S. 236, 244 (1959); *see also* 29 U.S.C. § 151. These goals avoid "industrial strife which interferes with the normal flow of commerce." *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 45 (1937) (quoting 29 U.S.C. § 151). To accomplish these purposes, Congress established an integrated scheme of rights, protections, and prohibitions governing labor relations between employees, employers, and unions in the workplace. Congress also created a centralized, administrative agency, the NLRB, to interpret and administer the NLRA and to resolve labor disputes. *See* 29 U.S.C. §§ 153–154, 160; *Garner v. Teamsters, Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

The NLRA protects employees' rights to join or decline to join a union, and provides a mechanism for peacefully and expeditiously resolving questions concerning union representation. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476–79 (1964). Particular sections of note are: (1) Section 7, which sets forth the core rights of employees, specifically "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and . . . the right to refrain from any or all of such activities," 29 U.S.C. § 157; (2) Section 8, which defines and prohibits union and

---

[2] Per Local Rule 231(d)(3), the NLRB does not view it as necessary to present oral testimony at the hearing on the instant motion because the issues presented are purely legal.

employer "unfair labor practices" (ULPs) that infringe on employees' Section 7 rights, 29 U.S.C. § 158; (3) Section 9, which authorizes the NLRB to regulate representation elections by setting forth procedures for determining whether a majority of employees in an appropriate bargaining unit desire to exercise their rights to bargain collectively and for certifying election results, 29 U.S.C. § 159; and (4) Section 10, which empowers the NLRB to enforce all these provisions and prevent "any person" from engaging in ULPs, 29 U.S.C. § 160.

**B.  The National Labor Relations Board's Administration of the Act**

The Act designates officials responsible for prosecuting and adjudicating claims of unfair labor practices. Specifically, Section 3(d) establishes the Office of the General Counsel, and imbues that official with "final authority, on behalf of the NLRB, in respect of the investigation of charges and issuance of complaints . . . , and in respect of the prosecution of such complaints before the NLRB." 29 U.S.C. § 153(d). That same section directs the General Counsel to "exercise general supervision over [almost] all attorneys employed by the [NLRB] . . . and over the officers and employees in the regional offices." *Id.*

Section 3(a) establishes the five-seat Board, whose members are appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(a). Among other things, the Board issues decisions and final orders adjudicating the merits of the General Counsel's ULP complaints, typically on review of an administrative law judge's (ALJ) recommended disposition. 29 C.F.R. § 101.12. Upon request and at its discretion, it also reviews representation matters decided by regional directors. 29 C.F.R. § 102.71. The Board must have a quorum of at least three sitting members to execute its various statutory functions. 29 U.S.C. § 153(b); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 687–88 (2010). In the absence of a quorum, the NLRB continues to function "to the greatest extent permitted by law[,]" including all regional office operations and

representation proceedings. 29 C.F.R. §§ 102.178, 102.182. Nor is any quorum necessary for the regional offices to perform their ULP case functions, detailed below.

The NLRB's headquarters is in Washington, D.C., and its regional offices, located throughout the country, are where members of the public engage with the NLRB to initiate agency proceedings. Four of those regions are located in the State of California: (1) Region 20 in San Francisco; (2) Region 32 in Oakland; (3) Region 21 in Los Angeles (which oversees a Resident Office in San Diego), and (4) Region 31 also in Los Angeles. Regional offices are headed by regional directors that exercise duties on behalf of the General Counsel and the Board.

Section 3(b) of the Act authorizes the Board to delegate its representation duties under Section 9 to regional directors, including determinations of bargaining units appropriate for collective bargaining, and directing elections for employees to choose their exclusive bargaining representatives. 29 U.S.C. § 153(b); *see* 26 Fed. Reg. 3911-02 (1961). Thus, under that delegated authority, regional offices receive representation petitions, conduct investigations and hearings, manage secret-ballot elections, certify election results, and make findings and issue rulings on objections and challenged ballots. 29 C.F.R. §§ 102.60–102.70. The Board retains limited review authority, and may, upon a party's filing of a request for review, examine a regional director's representation decision. *Id.* at § 102.71. Unless ordered by the NLRB, a request for review does not stay the regional director's certification of the election results or any action otherwise ordered by a regional director. 29 U.S.C. § 153(b); 29 C.F.R. § 102.67(c).

A ULP proceeding is only initiated when a person files a charge alleging a violation of the Act. 29 U.S.C. § 160(b); 29 C.F.R. § 102.9. Upon that filing, the regional director and regional staff, under the General Counsel's "general supervision[,] investigate the charge to determine whether it has merit and whether to issue a complaint." 29 U.S.C. § 153(d); 29 C.F.R. §§ 101.4, 101.8.

If the parties do not settle the matter and an administrative complaint issues, regional staff under the direction of the regional director prosecute the case in an administrative hearing on behalf of the General Counsel before an ALJ, who issues a decision after the conclusion of the hearing. 29 U.S.C. § 160(c); 29 C.F.R. §§ 101.10(a), 101.11(a). If any party files exceptions—i.e., an appeal of the ALJ's decision—the NLRB issues a decision and order resolving those exceptions. 29 C.F.R. § 101.12(a).

Where a union or employer has committed ULPs that threaten irreparable harm to rights guaranteed under the Act and the NLRB's remedial authority, Section 10(j) of the Act authorizes the NLRB to petition an appropriate federal district court for injunctive relief pending final disposition of the administrative case before the Board. 29 U.S.C. § 160(j). To initiate Section 10(j) proceedings, the General Counsel must obtain authorization from the Board. 20 Fed. Reg. 2175-02 (1955). In 2011, the Board contingently delegated authority to the General Counsel to, among other things, approve Section 10(j) and other affirmative litigation matters when the NLRB lacks a quorum. 76 Fed. Reg. 69768-02 (2011).

**C. The Current Status of the NLRB**

On January 27, 2025, President Trump removed Board Member Gwynne A. Wilcox from her position as a Board Member without specifying a "qualifying cause." *Trump v. Wilcox,* 145 S. Ct. 1415, 1415 (2025). The legality of this removal is the subject of ongoing litigation. *Wilcox v. Trump*, No. 25-5057 (D.C. Cir. argued May 16, 2025). Wilcox's removal reduced the number of the Board's sitting members to two, and therefore rendered the Board without the necessary quorum to execute its statutory duties. *Wilcox v. Trump*, 775 F. Supp. 3d 215, 222 (D.D.C. 2025). On February 1, 2025, President Trump appointed William B. Cowen as Acting General Counsel of the NLRB. (Cowen Decl. ¶ 1.) President Trump has nominated Scott Mayer and James

Murphy as Members of the NLRB; their nominations are currently pending before the Senate.[3] On August 27, 2025, then-Chairman Marvin Kaplan's term expired,[4] leaving the Board with one member.[5]

The NLRB is able to function even without a quorum.[6] (Cowen Decl. ¶¶ 4–9.) The regional offices, under the direction of the Office of the General Counsel, can resolve the overwhelming majority of cases before the need for a Board order. (Cowen Decl. ¶ 4.) For example, as described in the NLRB's FY 2024 Performance and Accountability Report, the public filed 21,300 ULP charges, of which 39.5 percent were found to have merit; of the meritorious cases, 96.3% were settled. The National Labor Relations Board 2024 Performance and Accountability Report, at 33 (embedded link). Further, 3,287 election petitions were filed. *Id.* During that same time, the Board decided 259 ULP and representation cases, which represented about one percent of the total number of such cases processed that year. *Id.* at 10.

Since the loss of quorum, regions have continued to receive and investigate ULP charges. (Cowen Decl. ¶ 4.) Where complaints have been issued, those cases are proceeding to hearings before ALJs, and after post-hearing briefing, ALJs are issuing decisions and orders. (Cowen Decl. ¶ 5.) In this time, ALJs have issued decisions in 96 cases.[7] Further, the regions are continuing to process representation petitions, hold elections, and resolve election objections.[8] And the Acting

---

[3] Nominations Sent to the Senate – The White House (embedded link). On October 9, 2025, James Murphy's nomination was reported favorably out of committee and placed on the Senate Executive Calendar. PN416-10 - Nomination of James Murphy for National Labor Relations Board, 119th Congress (2025-2026) | Congress.gov | Library of Congress (embedded link).

[4] Members of the NLRB since 1935 | National Labor Relations Board (embedded link).

[5] The Board | National Labor Relations Board (embedded link).

[6] However, we note that from October 1 to November 12, 2025, the NLRB, along with the rest of the federal government, was shut down due to a lapse in appropriated funds.

[7] Administrative Law Judge Decisions | National Labor Relations Board (embedded link).

[8] Regional Election Decisions | National Labor Relations Board (embedded link).

General Counsel, through Board delegations described above, has authorized five cases for Section 10(j) proceedings. (Cowen Decl. ¶¶ 7–8.)

**D. California's Public Employment Relations Board and AB 288**

PERB is a state agency in California. California's 1978 State Employer-Employee Relations Act renamed the Educational Employment Relations Board to the Public Employment Relations Board and expanded its prior jurisdiction to include state government employees. Cal. Gov't Code § 3513.

On September 30, 2025, California's Governor signed into law AB 288, which asserts that

> California … has a right and responsibility ... to regulate the working conditions of workers within its borders ... when the NLRB is not adequately protecting those rights. ... California also recognizes that existing federal law cannot prevent it from doing its part to enforce and further the rights recognized by the NLRA[.]

AB 288, Section 1(j). Critically, the law adds a new Section 923.1[9] to the California Labor Code, which permits PERB to regulate private sector labor relations in California if certain conditions are met. The newly added Section 923.1 further states that employees may "form, join, or assist labor organizations, and, when they choose to do so collectively through selected or designated bargaining representatives, to engage in effective and expeditious collective bargaining that results in a collective bargaining agreement addressing their terms and conditions of employment." Cal. Lab. Code § 923.1(a)(2). Under the new section, PERB is directed to "protect and enforce the rights described in subdivision (a)." *Id.* at § 923.1(b)(1).

Specifically, Section 923.1 permits PERB to regulate private-sector labor relations, including resolving charges alleging unfair labor practices and certifying bargaining representatives in California, that would otherwise fall under the jurisdiction of the NLRB, if

---

[9] Because AB 288 does not go into effect until January 1, 2026, Section 923.1 has not yet been codified in the California Labor Code. Accordingly, references to Cal. Lab. Code § 923.1 and its subsections will be to the text under Section 2 of AB 288. For the Court's convenience, a copy of AB 288 has been appended to this memo in the Addendum.

either of two conditions is met. *See id.* at § 923.1(b)(1)(A)–(B). First, if an employee is (or would have been) subject to the NLRA as of January 1, 2025, but the employee "lose[s] coverage" under the NLRA, because the NLRA is "repealed, narrowed, or its enforcement enjoined in a case involving that worker, whether through legislative, executive, or judicial action," and the worker is not otherwise covered by the Railway Labor Act or other California labor law, then that employee is permitted to file an unfair-labor-practice charge or representation petition with PERB. *Id*. at § 923.1(b)(1)(A), (c). And, second, Section 923.1 provides that the NLRB will be considered to have "expressly or impliedly ceded jurisdiction" under several named circumstances:

- where a certification in a representation case has issued or where challenges or objections to an election are pending before the NLRB, or an administrative law judge decision has issued, if the Board lacks a quorum, or "has lost its independence as a result of the Supreme Court finding that National Labor Relations Board members are unconstitutionally protected from removal or when the continued processing of a case is enjoined by a court due to constitutional challenges to the [B]oard's structure or authority," *id.* at § 923.1(b)(1)(B)(i);[10]
- where no certification, complaint, or decision has issued, and when processing delays result in an employee's case pending before a regional director for more than six months without issuing complaint or certifying an election, or remains pending more than six months after complaint has issued without an ALJ's issuing a decision or the NLRB's decision concerning certification, *id.* at § 923.1(b)(1)(B)(ii);

---

[10] The construction of this section is unclear as to whether an employee may file a charge with PERB upon meeting any of the named circumstances in Section 923.1(b)(1)(B)(i), or whether that section's initial "where" clauses need to be present before a charge may be filed. PERB's General Counsel advised the NLRB at the parties' meet and confer session that only PERB can properly interpret the construction of this section in the first instance through adjudication of a case before it.

- where a regional director has issued a certification, and processing delays result in the NLRB's failure to act for more than six months, *id*. at § 923.1(b)(1)(B)(iii); and
- where cases are pending before the NLRB for more than twelve months without issuance of a final Board decision, *id*. at § 923.1(b)(1)(B)(iv).

Section 2 of AB 288 has a phased rollout. *Id.* at § 923.1(c)(3)(A)–(C). The ULP portion of the law will initially go into effect on January 1, 2026, for cases involving employers of more than 500 employees that allege "a refusal to bargain, a refusal to recognize, or a refusal to give effect to an election certification," or for cases concerning employers of any size that concern "a unilateral withdrawal of recognition from the worker's chosen representative," as well as "associated violations that are necessary to decide the bargaining or recognition violation." *Id.* at § 923.1(b)(1)(B). In addition, those representation cases that meet the conditions under which the NLRB has allegedly ceded jurisdiction, may be filed after January 1, 2026. The legislation also sets priorities for handling certain kinds of representation and ULP cases, and deems the cases for which PERB will take jurisdiction on January 1, 2026, as "Category 1 cases." *Id*. at § 923.1(b)(1)(B), (c)(3)(D)–(E). PERB will process additional types of ULP cases beginning on July 1, 2026, and then January 1, 2027. *Id.* at § 923.1(c)(3)(B)–(C).

## ARGUMENT

### A. Legal Standard for a Preliminary Injunction

To obtain a preliminary injunction in the Ninth Circuit, the moving party must demonstrate: (1) likelihood of success on the merits; (2) the movant will likely suffer irreparable harm in the absence of an injunction; (3) the balance of hardships favors the movant; and (4) an injunction is in the public interest. *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When the government is a

party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Further, an injunction may be granted where, as here, there are "serious questions going to the merits and a balance of hardships … tips sharply towards the plaintiff." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) ("serious questions" analysis remains viable in Ninth Circuit post-*Winter*). In keeping with *Winter*, a plaintiff must also show a likelihood of irreparable harm and that the injunction is in the public interest. *Id.* at 1135.

**B. The NLRB Is Likely to Prevail in Showing that the NLRA Preempts AB 288**

i. *Garmon* preemption precludes the State of California and PERB from regulating conduct already regulated by the NLRA

As the Supreme Court recently explained, "[i]t is a bedrock rule, of course, that federal law preempts state law when the two conflict." *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174,* 598 U.S. 771, 776 (2023). But in the years after the NLRA's 1935 enactment, states began trying to also regulate private-sector labor relations, leading to *San Diego Building Trades Council v. Garmon*, 359 U. S. 236 (1959). There, the Supreme Court held that "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the [NLRB]." *Id.* at 245. To do otherwise risks "the danger of state interference with national [labor] policy[.]" *Id.* Later, the Supreme Court explained more broadly that under *Garmon*, "[s]tates may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986).[11]

[11] Three exceptions exist to *Garmon* preemption. One allows a court to resolve a claim if the party raising it lacks a "reasonable opportunity" to "invoke the NLRB's jurisdiction" as to the legal status of the conduct at issue. *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 201 (1978); *see also Int'l Longshoremen Ass'n v. Davis*, 476 U.S. 380, 393 n.10 (1986). Another applies if the conduct in question is "a merely peripheral concern" of the NLRA. *Garmon*, 359 U.S. at 243. A third is "where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of

"[T]he *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Id.* at 286 (citation omitted). This is because *Garmon* preemption, "is designed to prevent conflict in its broadest sense with the complex and interrelated federal scheme of law, remedy, and administration." *Id.* (quotation omitted); *see also Retail Prop. Tr. v. United Bhd. of Carpenters*, 768 F.3d 938, 951 (9th Cir. 2014).

AB 288's addition of Section 923.1 to the California Labor Code places PERB at the forefront of private-sector labor relations in California by erroneously permitting PERB to regulate employees, employers, and unions otherwise covered by the NLRA. Accordingly, the breadth of coverage that AB 288 purports to confer on PERB falls squarely within activity that the Act "protects, prohibits, or arguably protects or prohibits." *Gould*, 475 U.S. at 286. Such usurpation directly contravenes congressional intent and defies Supreme Court jurisprudence. *See Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chapter of Assoc'd Builders & Contractors, Inc.*, 801 F.3d 950, 966 (9th Cir. 2015) (*Garmon* reasoning has "greatest force" when a state attempts to regulate relations between employees, unions, and employers).

AB 288 attempts to ground its usurpation of federal authority in the state's police powers, citing a Supreme Court case that was decided 51 years prior to the enactment of the NLRA. *See* AB 288, Section 1(i) (citing *Barbier v. Connolly*, 113 U.S. 27, 31 (1884)); *see also* Section 1(j) (claiming that California may use its "police powers to regulate the working conditions of workers within its borders … when the NLRB is not adequately protecting those rights."). It further relies upon a case from three decades prior to the enactment of the NLRA, which held that

---

compelling congressional direction," a court cannot conclude that Congress "deprived the States of the power to act." *Id.* at 244. *See Glacier*, 598 U.S. at 777 n.1. None of these exceptions apply here.

employer-employee relations generally fell within a state's police powers. *See* AB 288, Section 1(i) (citing *Chicago, B. & Q.R. Co. v. McGuire*, 219 U.S. 549, 570 (1911)).

California cannot sensibly pretend that federal law regulating private-sector labor relations for the last 90 years no longer exists. *See Gould,* 475 U.S. at 286 ("in passing the NLRA Congress largely displaced state regulation of industrial relations."). As the Ninth Circuit has explained, the Supreme Court "has been more apt to find preemption when it is clear that the states are attempting to regulate the same conduct covered by federal law—that is, when states have promulgated their own labor codes." *Retail Prop. Tr.*, 768 F.3d at 950. This is precisely what California has done here, despite decades of clear Supreme Court precedent to the contrary.

ii. Obstacle preemption prohibits California from creating its own system of regulating private-sector labor relations and upsetting the balance set by Congress and the NLRA

Consistent with NLRA-specific preemption jurisprudence (e.g., *Garmon* and its progeny), obstacle preemption precludes implementation and enforcement of AB 288. The Supremacy Clause invalidates state law "where Congress has made 'a considered judgment' or 'a deliberate choice' to preclude state regulation when a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020) (quoting *Arizona v. United States*, 567 U.S. 387, 405 (2012)). Such preemption arises whenever a state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Thus, "where Congress has determined the appropriate balance, state regulation involving a different method of enforcement may upset that balance and be displaced by federal law even where the state 'attempts to achieve one of the same goals as federal law.'" *Volkswagen*, 959 F.3d at 1213 (quoting *Arizona*, 567 U.S. at 406).

To determine whether obstacle preemption exists, the Ninth Circuit requires courts to identify the "full purposes and objective of the federal law from the text and structure of the statute at issue." *Volkswagen*, 959 F.3d at 1212 (cleaned up). For the NLRA, Congress knew that allowing states to engage their "local procedures and attitudes" to regulate labor relations would result in likely "diversities and conflicts." *Garner*, 346 U.S. at 490. To avoid this, Congress created the NLRB to establish a "centralized administration of specially designed procedures … to obtain uniform application of its substantive rules." *Id.* Indeed, the Ninth Circuit has noted that unlike certain areas of regulation in which the federal government acts in partnership with states, such as air pollution, the NLRA does not create any such partnership. *See Volkswagen*, 959 F.3d at 1224. Rather, federal labor law creates "a presumption of federal pre-emption … designed to prevent conflict in its broadest sense with the complex and interrelated federal scheme of law, remedy, and administration of the [NLRA]." *Id.* at 1223 (cleaned up). Yet, AB 288 effectuates exactly this prohibited interference with the NLRA. It poses an obstacle to federal labor regulation because California and PERB seek to regulate the same labor disputes already under exclusive federal jurisdiction.

What's more, the substantial differences between the NLRA and the newly added Section 923.1 create an even more significant obstacle than if California had sought to regulate labor relations in the exact same manner as the NLRA. First, AB 288 empowers PERB to issue civil monetary penalties of $1,000 against employers per labor-law violation, *id.* at 923.1(e)(1)(E)(3), whereas Congress designed the Act with a remedial, rather than punitive purpose. *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 12 (1940) ("the power to command affirmative action is remedial, not punitive"). Second, Section 923.1 does not proscribe unfair labor practices against unions, as does Section 8(b) of the NLRA. *See* 29 U.S.C. § 158(b). Third, neither the newly added Section 923.1 nor the already established Section 923 specifically permits employers to express non-coercive

views about unionization, as exists in Section 8(c) of the NLRA. *See id*. at § 158(c). Fourth, neither Section 923.1 nor Section 923 protects the right to refrain from engaging in protected concerted activity, as does the NLRA in Section 7, 29 U.S.C. § 157. Fifth, the NLRA spells out the step-by-step process the NLRB must follow to determine and certify bargaining units, *id.* at § 159, whereas AB 288 authorizes PERB to certify bargaining representatives automatically if those representatives were previously certified by another state or federal agency. *See* Cal. Lab. Code § 923.1(c)(2). And finally, under AB 288, PERB may order parties to submit to binding arbitration to complete a collective-bargaining agreement, after more than six months of negotiations. Cal. Lab. Code § 923.1(e)(1)(D). No such power is accorded to the NLRB. *See H.K. Porter Co. v. NLRB*, 397 U.S. 99, 102 (1970); *NLRB v. Am. Ins. Co.*, 343 U.S. 395, 404 (1952).

The significant differences between the NLRA and AB 288 foreground the dangers the Supreme Court warned of decades ago: to have two labor authorities vying for primacy threatens divergent outcomes, thereby creating "mischievous conflict." *Bethlehem Steel Co. v. N.Y. State Lab. Rels. Bd.*, 330 U.S. 767, 776 (1947); *see also Gould*, 475 U.S. at 285 ("[C]onflict is imminent" whenever "two separate remedies are brought to bear on the same activity") (quoting *Garner*, 346 U. S. at 498–99). "[T]o allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy." *Retail Prop. Tr.*, 768 F.3d at 952 (quotation omitted). Because AB 288 interferes with the enforcement of national labor law, it should be found invalid. *See Hines*, 312 U.S. at 67.

iii. The Board has neither ceded nor declined jurisdiction over private sector labor relations, as California asserts to justify supplanting the NLRA

Sections 10(a) and 14(c) of the Act contain explicit mechanisms by which the NLRB may cede or decline federal jurisdiction. 29 U.S.C. §§ 160(a), 164(c). The Supreme Court has characterized Section 10(a) as the "exclusive" mechanism for the NLRB to affirmatively cede jurisdiction over a particular matter to the states. *Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1, 9

(1957).[12] Section 10(a) ensures "that the national labor policy will not be thwarted even in the predominantly local enterprises to which the proviso applies." *Id.* at 10 (quotation omitted). And in later-added Section 14(c)(1), Congress provided that the NLRB may affirmatively decline jurisdiction over certain matters when it considers the "effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of [the NLRB's] jurisdiction." 29 U.S.C. § 164(c)(1); *see, e.g.,* 29 C.F.R. § 103.3 ("The Board will not assert its jurisdiction in any proceeding under sections 8, 9, and 10 of the Act involving the horseracing and dogracing industries."). Thus, Sections 10(a) and 14(c) together demonstrate that, contrary to AB 288, the NLRB may only *expressly* cede or decline jurisdiction; no such cession or declination may be implied. *See NLRB v. Comm. of Interns & Residents*, 566 F.2d 810, 813 n.3 (2d Cir. 1977).

Nor does AB 288 circumvent preemption by mislabeling certain injunctions—i.e., those based on "constitutional challenges to the [B]oard's structure or authority" that are in effect after January 1, 2026 (Cal. Lab. Code § 923.1(b)(1)(B)(i))—as cessions of jurisdiction. To cede jurisdiction under Section 10(a) of the Act, the Board must have an "agreement" with an agency of a state or territory, which the Board has never done. THE DEVELOPING LABOR LAW: THE BOARD, THE COURTS, AND THE NATIONAL LABOR RELATIONS ACT, ch. 28, § 28.V.D. (Jayme L. Sophir, ed., 2025) (ebook). A court-ordered injunction, entered over the Board's objections, in no way indicates assent to another agency's assertion of jurisdiction over a labor dispute. Indeed, the NLRB vigorously guards its jurisdiction and invariably resists efforts to enjoin its administrative

[12] The proviso to Section 10(a) explains that

> the NLRB is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith.

29 U.S.C. § 160(a).

proceedings. *See, e.g.,* Defs.' Opp. to Pl.'s Mot. for Preliminary Inj., *Sacramento Behav. Healthcare Hosp., LLC v. NLRB,* No. 2:25-CV-02475−TLN−CSK (E.D. Cal. Sep. 22, 2025) at Dkt. 20. And the NLRB has been quite successful—in this Circuit and elsewhere—in defeating injunctions sought to halt its proceedings on structural grounds. *See, e.g.*, *Red Rock Resorts, Inc. v. NLRB*, No. 2:24-cv-01966-ART-BNW, 2025 WL 2784607 (D. Nev. Sep. 30, 2025) (denying preliminary injunction), *appeal docketed*, No. 25-6404 (9th Cir. Oct. 10, 2025); *Amazon.com Servs. LLC v. NLRB*, No. 2:24-cv-09564-SPG-MAA, 2025 WL 466262 (C.D. Cal. Feb. 5, 2025) (denying preliminary injunction), *appeal docketed*, No. 25-886 (9th Cir. argued Aug. 14, 2025).[13]

The current lack of a Board quorum does not alter the preemption analysis. *See* Cal. Lab. Code § 923.1(b)(1)(B)(i). Congress created the quorum requirement because it knew that the NLRB might lack a quorum at times. That does not mean it intended for states to step in whenever the NLRB lacks a quorum. Nor can California's assertions of NLRB delay change the federal scheme, which only Congress may modify. *See id.* at § 923.1(b)(1)(B)(ii)–(iv). And likewise for the Supreme Court's resolution of the independence of multi-member agency heads—only Congress may determine if, in light of any loss of independence, it wishes to permit states to create a patchwork of labor regulations and policies. *See id.* at § 923.1(b)(1)(B)(i).

### C. In the Absence of a Preliminary Injunction, Congress's Intent to Create National Labor Policy Enforced by the NLRB Will Suffer Irreparable Harm

AB 288 directly threatens the NLRB's exclusive jurisdiction, which will suffer irreparable harm unless AB 288 is preliminarily enjoined. Allowing its implementation will lead to inconsistent and contrary rulings that will leave employees, employers, and unions without clear guidance on what rights they have and how to vindicate them. In the absence of a preliminary

---

[13] A split Fifth Circuit panel recently reached a contrary outcome, affirming preliminary injunctions, but leaving it to the district courts to determine whether severance without injunctive relief may be sufficient at final judgment. *See Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 772–73 (5th Cir. 2025).

injunction, these competing laws and policies will result in irreparable damage to the NLRB's ability to properly set and maintain national labor policy as Congress intended.

Significantly, the Ninth Circuit has recognized the presumption that a federal plaintiff will suffer irreparable harm based upon a violation of the Supremacy Clause. *See California*, 921 F.3d at 893. Other circuits' case law is consistent on this point. *See United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulation."); *United States v. South Carolina*, 840 F. Supp. 2d 898, 925 (D.S.C. 2011) (creating independent state regime that conflicts with or poses obstacle to enforcement of federal immigration law causes irreparable harm), *modified in part,* 906 F. Supp. 2d 463 (D.S.C. 2012), *aff'd,* 720 F.3d 518 (4th Cir. 2013).

Here, in addition to the presumption of irreparable harm created by preempted state laws, there is specific evidence of likely irreparable harm from AB 288. First, Intervenor the International Brotherhood of Teamsters (IBT), stated in its memorandum in support of its motion to intervene, that it will file charges with PERB when AB 288 goes into effect on January 1, 2026. ECF No. 4-1 at 3. At pages 6–8 of IBT's memorandum, it references a ULP case in which the NLRB's Region 31 issued a consolidated complaint on September 30, 2024 (Case Nos. 31-CA-317349*, et al.*). *See* Cowen Decl., Exhibit B. Under AB 288, because that complaint has been pending more than six months without the issuance of an administrative law judge's decision, IBT will be eligible to file a case with PERB when the statute goes into effect on January 1. Cal. Lab. Code Section 923.1(b)(1)(B)(ii). The IBT's memorandum further references its "numerous other pending unfair labor practice charges" with NLRB regional offices in California, which have been pending for more than six months without issuance of a complaint, and thus, those allegations will also be eligible under that same provision of Section 923.1 for IBT to file parallel charges with PERB. ECF 4-1 at 8–9. Accordingly, the threat of irreparable harm posed by AB

288 will soon be made manifest when both the NLRB and California attempt to resolve the exact same labor disputes.

Like the instant matter, New York State recently enacted a law, S.8034A, granting its Public Employment Relations Board (New York Board) primary jurisdiction over labor relations matters for almost all private-sector employers and employees in the state, essentially supplanting the NLRB's exclusive jurisdiction. Cowen Decl. ⁋ 15. Soon after the New York law was signed, the Amazon Labor Union filed an unfair-labor-practice charge against Amazon.com Services, LLC with the New York Board regarding the termination of the same employee whose discipline is already being investigated by the NLRB. *Id.* Accordingly, the same clash of state and federal regulatory regimes will soon occur in California.[14]

Second, as to other parties which have not filed pending Board charges and petitions, Section 923.1(b)(1)(B)(i) may allow a party to file with PERB in the first instance as of January 1 (*see* note 10, *supra*) if the Board then lacks a quorum. Should a party choose to file only with PERB, and if this Court invalidates AB 288, that party may be precluded from timely filing its charge with the NLRB if more than six months have passed from the actions that gave rise to the charge. *See* 29 U.S.C. § 160(b). Thus, the filing party and the NLRB would be permanently deprived of the ability to remedy that party's unfair labor practice.

As the Supreme Court stated in *Garner*, "[a] multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law." 346 U.S. at 490–91. And here, not only does AB 288 set up its own processes and version of the NLRA, but Section 923.1(e)(2) states that "[t]he [PERB] may rely on

---

[14] Like the instant lawsuit, the NLRB has also sued the State of New York and the New York Board, seeking to overturn S.8034A, which purports to allow New York to regulate any alleged unfair labor practices unless and until the NLRB successfully asserts jurisdiction in federal court in each matter. *See NLRB v. State of New York*, No. 1:25-cv-1283-GTS-ML (N.D.N.Y., second amended complaint filed Sep. 26, 2025, Dkt. 17).

its own decisions and precedent under the [NLRA], and shall do so in a manner that most expansively effectuates the rights guaranteed under this section." By explicitly allowing PERB to pick and choose between its decisions and the NLRB's interpretation of the Act, it appears likely that California labor law will diverge from NLRB precedent. In short, the implementation of AB 288 sets up recurring Supremacy Clause violations with each new case filed with PERB. Allowing dueling regulatory regimes will result in chaotic and unpredictable labor relations for employees, unions, and employers, defeating the uniform national labor policy Congress created by passing the NLRA.

Accordingly, without an injunction, the NLRB is likely to suffer irreparable harm.

**D. A Preliminary Injunction Is in the Public's Interest and the Harm to California and PERB Will Be Comparatively Slight as Compared to the Significant Harm to the NLRA and the NLRB if AB 288 Is Not Preliminarily Enjoined**

The Ninth Circuit has declared that an injunction to prevent violations of the Supremacy Clause is in the public interest. *See California*, 921 F.3d at 893 ("the interest of preserving the Supremacy Clause is paramount"). Conversely, "frustration of federal statutes and prerogatives are not in the public interest." *Alabama*, 691 F.3d at 1301.

As explained above, California has no authority to generally regulate private-sector labor relations. Congress has necessarily decided that states have no interest in regulating labor disputes "affecting commerce" outside the narrow strictures of Sections 10(a) and 14(c) of the Act. As such, California cannot claim harm from non-enforcement of a law it lacks authority to enforce.

Moreover, as shown, California cannot correctly assert that labor laws are not being enforced within its jurisdiction. While the NLRB lacks a quorum, only a small percentage of NLRB matters ever require resolution by the five-seat Board. *See* p. 6, *supra*. Nearly all of the NLRB's primary functions continue during this period: representation petitions are received and processed, and elections run; ULP charges are being submitted to regional offices and

investigated; many ULPs are settled well before the need for a final Board order; merit determinations and complaints are being issued and ALJ hearings are proceeding; and Section 10(j) injunction petitions are being filed, with injunctive relief being secured. (Cowen Decl. ¶¶ 4–9.) And, should parties only utilize California's PERB, they will miss the NLRA's six-month statutory deadline to file a ULP charge and be permanently harmed.

Should this Court grant injunctive relief, PERB will be able to continue its traditional function of overseeing public labor matters and the NLRB will continue to process unfair-labor-practice cases and representation proceedings, each without the threat of being undermined by the other. Accordingly, the balance of harms decisively favors issuing an injunction.

**E. There are Serious Questions Going to the Merits of the Instant Matter and the Balance of Harms Tips Sharply in the NLRB's Favor**

In addition to meeting all four *Winter* factors, an injunction is also warranted under the Ninth Circuit's "sliding scale" approach. *See All. for the Wild Rockies*, 632 F.3d at 1134–35. Specifically, because the NLRB has demonstrated that the balance of hardships tips sharply in its favor, along with showing likely irreparable harm and that injunctive relief is in the public interest, an injunction is warranted here so long as there are "serious questions going to the merits." *See id.*; *Abad v. Bonham*, 562 F. Supp. 3d 1144, 1151 (E.D. Cal. 2022). Accordingly, even if the Court does not find the NLRB has established a likelihood of success, the NLRB has at least shown serious questions going to the merits sufficient to justify a preliminary injunction.

**CONCLUSION**

For the above reasons, this Court should preliminarily enjoin the State of California and PERB from implementing and enforcing Section 2 of AB 288.

Respectfully submitted,

/s/ Chad A. Wallace
CHAD A. WALLACE
*Trial Attorney*
Chad.Wallace@nlrb.gov
(202) 273-2489
Contempt, Compliance, and
Special Litigation Branch
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570

Dated this 19th day of November, 2025
at Washington, D.C.

21
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## AB-288 Employment: labor organization and unfair practices. (2025-2026)

SHARE THIS: 

Date Published: 09/30/2025 09:00 PM

### Assembly Bill No. 288

### CHAPTER 139

An act to amend Sections 1141 and 1148 of, and to add Sections 923.1 and 1140.6 to, the Labor Code, relating to employment.

[ Approved by Governor September 30, 2025. Filed with Secretary of State September 30, 2025. ]

### LEGISLATIVE COUNSEL'S DIGEST

AB 288, McKinnor. Employment: labor organization and unfair practices.

Existing law declares the public policy of the state regarding labor organization, including, among other things, that it is necessary for a worker to have full freedom of association, self-organization, and designation of representatives of their own choosing, to negotiate the terms and conditions of their employment, and to be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

Existing law establishes the Public Employment Relations Board (PERB) in state government as a means of resolving disputes and enforcing the statutory duties and rights of specified public employers and employees under various acts regulating collective bargaining. Under existing law, PERB has the power and duty to investigate an unfair practice charge and to determine whether the charge is justified and the appropriate remedy for the unfair practice.

Existing law, the federal National Labor Relations Act (NLRA), establishes a comprehensive statutory scheme regulating unfair labor practices on the part of employers and labor organizations in industries affecting interstate commerce, and vests in the National Labor Relations Board (NLRB) the power to conduct elections to determine employee representatives and to prevent unfair labor practices affecting commerce.

Existing law, the California Public Records Act, requires that public records, as defined, be available to the public for inspection and made promptly available to any person.

This bill would expand PERB's jurisdiction by authorizing a worker, to petition PERB to protect and enforce prescribed rights under specified circumstances, including if the worker is employed in a position subject to the NLRA but the NLRB has expressly or impliedly ceded jurisdiction. The bill would authorize PERB to, among other things, decide unfair labor practice cases pursuant to a specified timeline and order all appropriate relief for a violation, including civil penalties, as prescribed. In order to pursue relief from PERB, the bill would require a covered worker or their representative to file an unfair practice charge or petition that includes specified information, including, where applicable, the original charge or petition filed with the NLRB. The bill would

require PERB to hold the supporting documentation and evidence confidential and maintain it as part of its investigatory file and would exempt this documentation and evidence from the California Public Records Act. If PERB determines, among other things, it has insufficient resources to process certain cases or doing so would prevent it from meeting specified statutory deadlines, the bill would require PERB to process and prioritize charges, as specified. The bill would also establish the Public Employment Relations Board Enforcement Fund (fund) in the State Treasury, would require the above-described civil penalties to be deposited into the fund, and would make moneys in the fund available upon appropriation by the Legislature to PERB for the purpose of administering the above-specified provisions. The bill would authorize PERB to rely on its own decisions and precedent under the NLRA and would authorize review of its decisions by a state appellate court, as specified.

Existing law, the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975, grants agricultural employees the right to form and join labor organizations and engage in collective bargaining, as specified, and prohibits agricultural employers and labor organizations from engaging in unfair labor practices. Those provisions establish the Agricultural Labor Relations Board (ALRB) and empower the ALRB to prevent any person from engaging in those practices. Existing law establishes various definitions for these purposes. Existing law requires the ALRB to follow applicable precedents of the NLRA.

This bill would specify that the ALRB has exclusive jurisdiction in all phases of the administration of the act, and to determine whether any person or entity meets one or more of those definitions. The bill would instead authorize the board to follow applicable precedents of the NLRA, but would not obligate the board to follow precedents where the ALRB deems it inappropriate to do so.

This bill would make related findings and declarations and would make its provisions severable.

Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.
Vote: majority Appropriation: no Fiscal Committee: yes Local Program: no

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** The Legislature finds and declares all of the following:

(a) Workers have inalienable rights, and rights under the First Amendment to the United States Constitution and under the California Constitution, to free speech and free association and to exercise their right to collectively bargain over the labor they provide to employers, in order to improve their terms and conditions of employment.

(b) The National Labor Relations Act (NLRA) was passed in 1935 as a way to codify those rights for the majority of private sector workers by "encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection," through the National Labor Relations Board (NLRB), an agency created by Congress.

(c) The NLRA recognized workers' inalienable right to control their own labor and was intended to alleviate the labor unrest that predominated before 1935 when employees were forced to find their own avenues to exercise those rights and were often met with violence, by giving workers an avenue to vindicate those rights through a multimember board of experts who were protected from political removal so that they could develop expertise in enforcing the rights recognized by the NLRA.

(d) Over the past several decades, the NLRB has become less effective at protecting and enforcing workers' rights, due to a variety of factors such as completely inadequate funding, understaffing, a narrowing of the types of workers who can invoke the protections of the NLRA, a narrowing of the scope of protected concerted activity, and its enforcement mechanisms are further threatened with the loss of decisionmaking due to a lack of a quorum with its administrative proceedings being enjoined through challenges to its constitutionality and its independence.

(e) California law has also codified workers' fundamental and constitutionally protected rights as part of its public policy, stating in Section 923 of the Labor Code that "[workers] have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or

their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

(f) The NLRB's inefficacy has meant that more and more California workers are being deprived of these rights and that more and more employers have not been meaningfully held accountable for, or deterred from, violating those rights. These employers are squelching worker organizing, refusing to bargain, and committing other unfair labor practices with impunity. This means that California workers who choose to unionize are often forced to wait for years to have their right to meet their employer at the bargaining table vindicated. That delay and the NLRB's increasing inability to provide meaningful and timely relief negates the very purposes underlying the NLRA. It discourages collective bargaining and incentivizes employers to not bargain in good faith. It precludes workers from timely obtaining improved wages and working conditions, undermines union support, and causes workers more instability. Workers are irreparably harmed by either being forced to abandon their efforts to improve their lot, subjecting them to continued exploitation, or by being forced to find ways outside of the NLRA to demand their inalienable rights, opening the door to the industrial unrest and violence that plagued pre-NLRA labor relations in our country.

(g) The inequality of bargaining power between employees, who do not possess full freedom of association or actual liberty of contract, and employers, who are organized in corporate or other forms of association, substantially burdens and affects the safety, health, and general welfare of the populace of California. Experience has demonstrated that certain practices by employers have the effect of disturbing the general welfare of the state through unfair or unsafe business practices that harm workers individually, as a group, and cause harm to the public at large. The elimination of such practices through the promotion and protection of organizing and collective bargaining is a necessary condition to the assurance of the rights herein guaranteed.

(h) California, therefore, has a duty to protect its workers' rights to organize and collectively bargain because these rights promote employees' control over the conditions of their working life, the creation of a more just workplace, and help stem the tide of wealth inequality rampant in the state. It has a duty to eliminate the causes of certain substantial obstructions to the general welfare and to mitigate and eliminate these unfair labor practices when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

(i) A state's power is at its zenith when it is exercising its police power to protect its populace's physical, social, and economic well-being. See Barbier v. Connolly (1884) 113 U.S. 27, 31. As the Supreme Court has long recognized that "[i]n dealing with the relation of employer and employed, [a state] legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression." Chicago, B. & Q.R. Co. v. McGuire (1911) 219 U.S. 549, 570.

(j) California, therefore, has a right and responsibility to utilize its inherent police powers to regulate the working conditions of workers within its borders, including by preserving workers' fundamental and constitutionally protected rights to free speech and to freely associate in order to improve their terms and conditions of employment, when the NLRB is not adequately protecting those rights. Although California recognizes that it cannot take away rights granted to employees under the NLRA, California also recognizes that existing federal law cannot prevent it from doing its part to enforce and further the rights recognized by the NLRA, which stem from an individual's inherent sovereignty and from the United States and California Constitutions. California also recognizes that workers exercising such rights are not subject to antitrust liability.

(k) Giving employees access to an effective process for vindicating their rights and for improving their terms and conditions of employment was instrumental to reducing the labor unrest and industrial strife that plagued the country prior to the enactment of the National Labor Relations Act in 1935. Now, employees are losing access to that effective process due to threats to the NLRB's independence, ongoing legal challenges to the NLRB's constitutionality, and the NLRB's inability to undertake the tasks delegated to it by Congress. This has the potential to cause significant and widespread disruption throughout the supply chain, harming the state and national economy. It is imperative that California act to ensure stable labor relations in this state.

(l) Justice delayed is justice denied, and refusal to decide is itself a decision. Accordingly, where an agency or body of government is deprived of adequate funding or personnel to adjudicate, or otherwise refuses to adjudicate, cases affecting the rights of parties appearing before it in a timely manner, and California has determined that this inaction constitutes a rule of decision ceding jurisdiction of those cases.

**SEC. 2.** Section 923.1 is added to the Labor Code, to read:

**923.1.** (a) (1) All of the provisions of this section shall be liberally construed to ensure that all workers in California can effectively vindicate their fundamental rights to full freedom of association, self-organization, and designation of representatives of their own choosing, free from retaliation or intimidation by their employer.

(2) The rights described in this subdivision mean that a worker shall be allowed to engage in collective action, to organize, form, join, or assist labor organizations, and, when they choose to do so collectively through selected or designated bargaining representatives, to engage in effective and expeditious collective bargaining that results in a collective bargaining agreement addressing their terms and conditions of employment.

(3) The state and its political subdivisions shall not, directly or indirectly, deny, burden, or abridge the rights described in this subdivision except as necessary to serve a compelling state interest achieved by the least restrictive means.

(b) (1) A worker who meets the description in subparagraph (A) or (B) may petition the Public Employment Relations Board to protect and enforce the rights described in subdivision (a).

(A) The worker is employed in a position that is, or would have been, subject to the National Labor Relations Act as of January 1, 2025, but they lose coverage under the National Labor Relations Act because the National Labor Relations Act is repealed, narrowed, or its enforcement enjoined in a case involving that worker, whether through legislative, executive, or judicial action, and the worker is not otherwise covered by the federal Railway Labor Act (45 U.S.C. Sec. 151 et seq.) or by any law that subjects them to the jurisdiction of the Public Employment Relations Board, aside from this section, or the Agricultural Labor Relations Board.

(B) The worker is employed in a position which is or would be subject to the National Labor Relations Act as of January 1, 2025, but the National Labor Relations Board has expressly or impliedly ceded jurisdiction. The National Labor Relations Board will be deemed to have ceded jurisdiction to the states if any of the following conditions are satisfied as of January 1, 2026:

(i) For cases where a certification of the results of an election, including a certification of representative, or administrative law judge decision has been issued, or where challenges or objections to a representation election are pending before the National Labor Relations Board, when there is a lack of a quorum of the National Labor Relations Board, or when the National Labor Relations Board has lost its independence as a result of the Supreme Court finding that National Labor Relations Board members are unconstitutionally protected from removal or when the continued processing of a case is enjoined by a court due to constitutional challenges to the board's structure or authority.

(ii) For cases where no certification or complaint or decision has been issued, when there are processing delays resulting in the worker's case remaining pending before a regional director for more than six months without the issuance of a complaint or certification of an election, or remaining pending more than six months after a complaint has been issued without the issuance of a decision by an administrative law judge or without the issuance of a decision about the certification by the National Labor Relations Board.

(iii) For cases where a certification of the results of an election, including a certification of representative, or other reviewable order has been issued by the regional director or administrative law judge, when there are processing delays resulting in failure by the National Labor Relations Board to accept or decline review or grant special permission to appeal for more than six months following the filing of a request for review or for special permission to appeal.

(iv) For cases on review or exceptions before the National Labor Relations Board, when there are processing delays resulting in the case remaining pending for more than 12 months without the issuance of a final decision.

(2) If the Public Employment Relations Board determines that the conditions described in subparagraph (A) or (B) of paragraph (1) no longer apply, the Public Employment Relations Board shall retain jurisdiction over pending matters and shall maintain jurisdiction from that point forward unless ordered by a court of competent jurisdiction to cede its jurisdiction.

(3) This subdivision shall not affect the rights of workers under other federal or state statutes.

(c) A worker who meets the conditions of subparagraph (A) or (B) of paragraph (1) of subdivision (b) or their chosen representative may do any of the following:

(1) Petition the Public Employment Relations Board to process any representation petition previously filed with the National Labor Relations Board.

(2) Petition the Public Employment Relations Board to promptly certify an exclusive bargaining representative that has previously been certified by another state or federal agency, or that has been selected by the majority of employees in an appropriate bargaining unit through an election, through other legal processes recognized by the Public Employment Relations Board or the National Labor Relations Board at that time the selection is made, or through a written designation. All existing terms and conditions of employment between a certified exclusive bargaining representative and an employer shall remain in full force and effect during bargaining following certification.

(3) Petition the Public Employment Relations Board to decide unfair labor practice cases on the following timeline:

(A) As of January 1, 2026, cases involving an employer of more than 500 employees and alleging a refusal to bargain, a refusal to recognize, or a refusal to give effect to an election certification, or cases involving a unilateral withdrawal of recognition from the worker's chosen representative by an employer of any size, and associated violations that are necessary to decide the bargaining or recognition violation. These shall be considered Category 1 cases and shall take priority over any Category 2 or 3 cases.

(B) As of July 1, 2026, cases involving an employer of any size and alleging a refusal to bargain, a refusal to recognize, or a refusal to give effect to an election certification, and associated violations that are necessary to decide the bargaining or recognition violation. These shall be considered Category 1 cases and shall take priority over any Category 2 or 3 cases.

(C) As of January 1, 2027, cases alleging that an employer has failed to bargain in good faith if the parties have been engaged in bargaining for a collective bargaining agreement for over six months without reaching agreement, and associated violations. These shall be considered Category 2 cases and shall take priority over any Category 3 cases.

(D) If the Public Employment Relations Board determines that it has insufficient resources to process all cases filed under subparagraphs (A), (B), or (C) of paragraph (3) of subdivision (c), or that doing so would prevent it from meeting statutory deadlines applicable prior to July 1, 2026, the Public Employment Relations Board shall process and prioritize cases in accordance with the following before processing any Category 3 cases:

(i) Cases involving employers employing more than 500 workers affected or potentially affected by the case shall be priority 1.

(ii) Cases involving an active union organizing campaign and allegations of loss of employment shall be priority 2.

(iii) Cases involving an active union organizing campaign and allegations not involving loss of employment shall be priority 3.

(iv) Cases that have been pending before the NLRB for more than 18 months shall be priority 4.

(v) All other Category 1 or 2 cases shall be priority 5.

(E) As of January 1, 2027, all other cases not included in paragraph (A), (B), or (C) shall be considered Category 3 cases. The Public Employment Relations Board shall prioritize and process Category 3 cases, to the extent feasible, in accordance with the following:

(i) Cases involving allegations arising from an organizing campaign shall be priority 1.

(ii) Cases involving allegations of loss of employment shall be priority 2.

(iii) Cases involving allegations of retaliation for union activities or the exercise of rights under the NLRA or this section, not involving loss of employment, shall be priority 3.

(iv) Cases involving allegations of violation of Weingarten rights, failure to respond to union information requests, or unilateral changes by an employer engaging in first contract negotiation shall be priority 4.

(v) The Public Employment Relations Board may further prioritize the resolution of subcategories of cases within each of these categories, or within the group of cases not categorized above, to ensure the most

efficient possible resolution of such cases and the maximum possible protection of employee rights.

(d) To pursue relief from the Public Employment Relations Board, a covered worker or their representative shall file both of the following with the Public Employment Relations Board:

(1) An unfair practice charge or petition that includes all of the following information:

(A) The charging party's name, address, email address, and telephone number.

(B) The respondent's name, address, email address, and telephone number.

(C) Where applicable, the original charge or petition filed with the National Labor Relations Board with all supporting documentation and evidence that was submitted to the National Labor Relations Board.

(D) All correspondence, communications, or other materials received by the charging party, or otherwise in the charging party's possession, from the National Labor Relation's Board regarding the original charge or petition filed with the National Labor Relation's Board.

(2) The documentation and evidence filed with the Public Employment Relations Board shall not be served on the respondent.

(3) The Public Employment Relations Board shall hold the supporting documentation and evidence confidential and maintain it as part of its investigatory file.

(4) Documentation and evidence under paragraph (1) shall not be deemed to be public records for purposes of the California Public Records Act (Division 10 (commencing with Section 7920.000) of Title 1 of the Government Code).

(e) (1) In implementing this section, the Public Employment Relations Board may do all of the following pursuant to its own procedures:

(A) Conduct elections to determine whether a majority of workers in an appropriate bargaining unit have selected an exclusive representative for purposes of collective bargaining.

(B) Promptly certify an exclusive bargaining representative by determining whether a majority of workers in an appropriate bargaining unit have selected an exclusive representative for purposes of collective bargaining, and order that an employer bargain with that exclusive bargaining representative. Selection may be demonstrated through a previous certification by another state or federal agency, or through an election, or through other legal processes recognized by the Public Employment Relations Board or the National Labor Relations Board at that time the selection is made, or through a written designation. This shall include the ability to resolve pending objections or voter eligibility challenges in an election previously pending with the National Labor Relations Board.

(C) Order that an employer bargain with an exclusive bargaining representative and otherwise decide unfair labor practices and order all appropriate action and remedies.

(D) Order than an employer submit to binding arbitration to assist the parties in finalizing their negotiations for a collective bargaining agreement if the National Labor Relations Board or the Public Employment Relations Board has certified an exclusive bargaining representative, or if an employer has voluntarily recognized the exclusive bargaining representative of a group of workers, and more than six months have passed without the parties agreeing on and executing a collective bargaining agreement.

(E) Order any appropriate remedy, including injunctive relief and penalties, necessary to effectuate this section, including if an employer refuses to comply with an order under this section.

(2) The Public Employment Relations Board may rely on its own decisions and precedent under the National Labor Relations Act, and shall do so in a manner that most expansively effectuates the rights guaranteed under this section.

(3) The Public Employment Relations Board may order all appropriate relief for a violation of this section, including civil penalties. If the Public Employment Relations Board finds that an employer has engaged in a pattern or practice of committing unfair practices, it may assess civil penalties in the amount of one thousand dollars ($1,000) per worker per violation.

(4) Any action taken by the Public Employment Relations Board pursuant to this section may be reviewed by a state appellate court of competent jurisdiction. The decision of the court enforcing an order of the Public Employment Relations Board shall be final, subject to the right to petition the California Supreme Court for review, and the pendency of a petition for review shall not, except by express order of the courts, constitute a stay of the decision. The violation of a decision under this section shall be remediable by the court as contempt thereof.

(f) (1) The Public Employment Relations Board Enforcement Fund is hereby established in the State Treasury.

(2) Any civil penalty collected pursuant to this section shall be deposited into the Public Employment Relations Board Enforcement Fund.

(3) Moneys in the fund shall be available upon appropriation by the Legislature for the Public Employment Relations Board for purposes of administering this section.

(g) For purposes of this section, the following definitions apply:

(1) "Charging party" means the party bringing an unfair labor practice charge.

(2) "Respondent" means the party that allegedly committed the unfair labor practice.

**SEC. 3.** Section 1140.6 is added to the Labor Code, to read:

**1140.6.** Notwithstanding any other provision of state law, the board shall have exclusive jurisdiction in all phases of the administration of this part to determine whether any person or entity meets one or more definitions set forth in Section 1140.4.

**SEC. 4.** Section 1141 of the Labor Code is amended to read:

**1141.** (a) There is hereby created in the Labor and Workforce Development Agency the Agricultural Labor Relations Board, which shall consist of five members and which shall have exclusive jurisdiction over all phases of the administration of this part.

(b) The members of the board shall be appointed by the Governor with the advice and consent of the Senate. The term of office of the members shall be five years, and the terms shall be staggered at one-year intervals. Upon the initial appointment, one member shall be appointed for a term ending January 1, 1977, one member shall be appointed for a term ending January 1, 1978, one member shall be appointed for a term ending January 1, 1979, one member shall be appointed for a term ending January 1, 1980, and one member shall be appointed for a term ending January 1, 1981. Any individual appointed to fill a vacancy of any member shall be appointed only for the unexpired term of the member to whose term they are succeeding. The Governor shall designate one member to serve as chairperson of the board. Any member of the board may be removed by the Governor, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.

**SEC. 5.** Section 1148 of the Labor Code is amended to read:

**1148.** The board may follow applicable precedents of the National Labor Relations Act, as amended, which shall constitute persuasive authority in the interpretation and application of this part, but shall not be obligated to follow those precedents where the board deems it inappropriate to do so.

**SEC. 6.** The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

**SEC. 7.** The Legislature finds and declares that Section 2 of this act, which adds Section 923.1 to the Labor Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

In order to protect confidential information in National Labor Relations Board cases, while also ensuring the Public Employment Relations Board has access to information necessary for fulfilling its statutory role, it is necessary that information that may be privileged or otherwise exempt from disclosure to the public or other

authorized persons under federal statute or laws remain confidential when shared with the Public Employment Relations Board.