1  JULIE GUTMAN DICKINSON (SBN 148267)– *designated for service*
   jgutmandickinson@bushgottlieb.com
2  JENNIFER A. ABRUZZO *(Pro hac vice forthcoming)*
   jabruzzo@bushgottlieb.com
3  HECTOR DE HARO (SBN 300048)
   hdeharo@bushgottlieb.com
4  LUKE TAYLOR (SBN 338327)
   ltaylor@bushgottlieb.com
5  BUSH GOTTLIEB
   A Law Corporation
6  801 North Brand Boulevard, Suite 950
   Glendale, California 91203-1260
7  Telephone: (818) 973-3200
   Facsimile: (818) 973-3201
8
   Attorneys for Intervenor International
9  Brotherhood of Teamsters

10 (additional counsel on next page)

11              UNITED STATES DISTRICT COURT

12    EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

13

| | |
|---|---|
| 14 NATIONAL LABOR RELATIONS BOARD, | Case No. 2:25-cv-02979-TLN-CKD |
| 15        Plaintiff, | **Intervenor International Brotherhood of Teamsters' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction** |
| 16     vs. | |
| 17 STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD, | *Filed concurrently with Declarations In Support of Opposition to Preliminary Injunction of: Alexandra Suh; Gabriel Terrasa; Luke Taylor; Matthew Wittmer; Pablo Camacho; Raul Padilla; Shaun Martinez; and Verick Phillips* |
| 18        Defendant. | |
| 19     and | |
| 20 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | Judge:    Troy L. Nunley |
| 21 | Date:     December 17, 2025 |
| 22        Intervenor. | Time:     10:00 am<br>Crtrm.:    2 |
| 23 | |
| 24 | Trial Date:              None<br>Discovery Cutoff:    N/A<br>Motion Cutoff:        N/A |
| 25 | |

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  David O'Brien Suetholz
   dsuetholz@teamster.org
2  Clement Tsao
   ctsao@teamster.org
3  Willie J. Burden
   wburden@teamster.org
4  INTERNATIONAL BROTHERHOOD OF TEAMSTERS
   25 Louisiana Avenue, N.W.
5  Washington, DC 20001
   Phone: (202) 624-6847
6
   Edward M. Gleason, Jr.
7  ed@hsglawgroup.com
   HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL, PLLC
8  128 C Street NW
   Washington, D.C. 20001
9  Phone: (202) 978-3507

10 Pamela M. Newport *(Pro hac vice forthcoming)*
   pamela@hsglawgroup.com
11 HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL, PLLC
   600 Vine Street | Suite 2720
12 Cincinnati, OH 45202
   Phone: (513) 381-2224
13
   Richard Griffin
14 rgriffin@bredhoff.com
   BREDHOFF & KAISER, PLLC
15 805 15th Street NW Ste. 1000
   Washington, DC 20005
16 Phone: (202) 842-2600

17 Jeanne Mirer
   jmirer@julienmirer.com
18 JULIEN MIRER & ASSOCIATES, PLLC
   1 Pierrepont Plaza, 12th Floor
19 Brooklyn, NY 11201
   Phone: (212) 231-2235
20
   Ian Hayes
21 ihayes@hayesdolce.com
   HAYES DOLCE LLP
22 135 Delaware Avenue, Suite 502
   Buffalo, NY 14202
23 Phone: (716) 534-8388

24 Attorneys for Intervenor International
   Brotherhood of Teamsters
25

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# TABLE OF CONTENTS

**Page**

INTRODUCTION.............................................................................................................................1

BACKGROUND...............................................................................................................................2

I.      Plaintiff's Lawsuit Challenging AB 288...............................................................................2

II.     The NRLB's loss of quorum and independence. ..................................................................2

III.    The NLRB's dysfunction and futility...................................................................................3

ARGUMENT ....................................................................................................................................4

IV.    Plaintiff will not likely establish AB 288 is facially preempted. ........................................4

       A.     AB 288 is not *Garmon* preempted. .........................................................................4

              1.    *Garmon* does not control..............................................................................5

                     (a)    Lost independence negates *Garmon*'s applicability...........................6

                     (b)    The Board's dysfunction negates *Garmon*'s applicability.................9

                           (i)     The Board no longer protects collective bargaining. .............9

                           (ii)    Lost quorums paralyze the Board.........................................9

                     (c)    AB 288's triggers are permissible....................................................12

              2.    *Garmon* improperly interpreted the NLRA.................................................13

       B.     AB 288 is not obstacle preempted...........................................................................14

       C.     Sections 10(a) and 14(c) are not exclusive bases for state regulation......................16

       D.     Preemption would contravene the 10th Amendment. ..............................................18

V.     Plaintiff is not threatened with irreparable harm................................................................19

VI.    The balance of equities and public interest weigh against an injunction. ...........................20

CONCLUSION ...............................................................................................................................20

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Am. Apparel & Footwear Ass'n v. Baden,*
    107 F.4th 934 (9th Cir. 2024).................................................................................4

*Am. Trucking Associations, Inc. v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009)...............................................................................20

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge,*
    403 U.S. 274 (1971) ......................................................................................11, 18

*Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Div. 998 v. Wisconsin Emp. Rels. Bd.,*
    340 U.S. 383 (1951) .............................................................................................13

*Ass'n To Pres. & Protect Loc. Livelihoods v. Sidman,*
    147 F.4th 40 (1st Cir. 2025) .................................................................................19

*Boire v. Greyhound Corp.,*
    376 U.S. 473 (1964) .............................................................................................10

*Brown v. Pro Football,*
    518 U.S. 231 (1996) ..........................................................................................1, 9

*California v. ARC Am. Corp,*
    490 U.S. 93 (1989) ...............................................................................................14

*Caudill v. Lancaster Bingo Co.,*
    2005 WL 2738930 (S.D. Ohio Oct. 24, 2005) .....................................................14

*Cent. Bank of Denver v. First Interstate Bank of Denver,*
    511 U.S. 164 (1994) .........................................................................................8, 18

*Cipollone v. Liggett Grp., Inc.,*
    505 U.S. 504 (1992) ...............................................................................................6

*Farris v. Seabrook,*
    677 F.3d 858 (9th Cir. 2012)..................................................................................4

*Frankl ex rel. NLRB v. HTH Corp.,*
    650 F.3d 1334 (9th Cir. 2011)................................................................................8

*Glacier Nw. v. Int'l Bhd. of Teamsters Loc. Union No. 174,*
    598 U.S. 771 (2023) ...........................................................................1, 11, 13, 17

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) .............................................................................................13

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Guss v. Utah Labor Relations Board,*
   353 U.S. 1 (1957) .................................................................................................... 17

*H.K. Porter Co. v. NLRB,*
   397 U.S. 99 (1970) ................................................................................................... 16

*Harris v. Bessent,*
   2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ........................................................... 2

*Harrison Steel Castings Co. v. NLRB,*
   923 F.2d 542 (7th Cir. 1991) ................................................................................. 10

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ................................................................................................. 8

*Hemmings v. Tidyman's Inc.,*
   285 F.3d 1174 (9th Cir. 2002) ............................................................................... 14

*Humphrey's Executor v. United States,*
   295 U. S. 602 (1935) ............................................................................................ 2, 7

*Linn v. United Plant Guard Workers of Am., Loc. 114,*
   383 U.S. 53 (1966) ................................................................................................. 15

*Local 60 Carpenters v. NLRB,*
   365 U.S. 651 (1961) (Harlan, J. concurring) ......................................................... 15

*Loper Bright Enters. v. Raimondo,*
   603 U.S. 369 (2024) ................................................................................................. 8

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ................................................................................................. 8

*McLamb v. NLRB,*
   141 F.4th 1308 (D.C. Cir. 2025) ............................................................................. 8

*Metro. Life Ins. Co. v. Massachusetts,*
   471 U.S. 724 (1985) ................................................................................................. 4

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
   584 U.S. 453 (2018) ............................................................................................... 19

*Nat'l Ass'n of Immigr. Judges v. Owen*
   139 F.4th 293 (4th Cir. 2025) ........................................................................ 5, 6, 9

*New Process Steel v. NLRB,*
   560 U.S. 674 (2010) ................................................................................................. 3

*NLRB v. Am. Ins. Co.,*
   343 U.S. 395 (1952) ............................................................................................... 16

Busн Gоттlieв
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*NLRB v. Committee of Interns and Residents*
  566 F.2d 810 (2d Cir. 1977) .................................................................................. 17

*NLRB v. Gissel Packing Co.*,
  395 U.S. 575 (1969) ............................................................................................. 15

*NLRB v. J. Weingarten*,
  420 U.S. 251 (1975) ........................................................................................... 1, 9

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ................................................................................................ 8

*Peoples Gas Sys., Inc. v. NLRB*,
  629 F.2d 35 (D.C. Cir. 1980) ............................................................................... 15

*RAV Truck & Trailer Repairs v. NLRB*,
  997 F.3d 314 (D.C. Cir. 2021) ............................................................................. 10

*Redd-I, Inc.*,
  290 NLRB 1115 (1988) ......................................................................................... 20

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*,
  359 U.S. 236 (1959) ....................................................................................*passim*

*Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*,
  436 U.S. 180 (1978) ....................................................................................*passim*

*Space Expl. Techs. Corp. v. NLRB*,
  151 F.4th 761 (5th Cir. 2025) ................................................................................ 4

*Sweeney v. Daniels*,
  2013 WL 209047 (N.D. Ind. Jan. 17, 2013) ........................................................ 15

*Sweeney v. Pence*,
  767 F.3d 654 (7th Cir. 2014) ................................................................................ 15

*Trump v. Slaughter*,
  606 U. S. ___ (2025) .............................................................................................. 2

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025) ........................................................................................ 2, 7

*UAW-CIO v. Russell*,
  356 U.S. 634 (1958) ......................................................................................... 15, 17

*United Const. Workers v. Laburnum Const. Corp.*,
  347 U.S. 656 (1954) ........................................................................................... 9, 17

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ...................................................................... 14, 19, 20

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Volkswagen "Clean Disel" Mktg., Sales Pracs., & Prods. Liab. Litig.*
   959 F.3d 1201 (9th Cir. 2020) ............................................................................ 14, 15

*Wiener v. United States*,
   357 U.S. 349 (1958) ................................................................................................. 7

**Other State Cases**

*Allen-Bradley Loc. No. 1111, United Elec., Radio & Mach. Workers of Am. v.*
   *Wisconsin Emp. Rels. Bd.*,
   295 N.W. 791 (Wis. 1941) ....................................................................................... 13

*Wisconsin Lab. Rels. Bd. v. Fred Rueping Leather Co.*
   288, 279 N.W. 673 (Wis. 1938) .............................................................................. 13

**Federal Statutes**

29 U.S.C.
   § 151 ............................................................................................................. 1, 12, 20
   § 160 ......................................................................................................... 10, 16, 17
   § 153 ................................................................................................................. 2, 18

Civil Service Reform Act ............................................................................................ 5, 6

National Labor Relations Act .................................................................................. *passim*

Wagner Act ................................................................................................................. 12

**California Statutes**

Cal. Bus. & Prof. Code
   § 16600 ...................................................................................................................... 14

**Other Authorities**

Celine McNicholas et al., Unlawful Employer Opposition to Union Election
   Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-
   Y9NA ........................................................................................................................... 3

H.R. REP. NO. 74-969 (1935) (Board Member Biddle), .............................................. 7

John Kruzel & Daniel Wiessner, *Frozen feud: How Trump and the Supreme Court*
   *helped put historic Whole Foods union bid on ice* (Reuters, Oct. 1, 2025). ........... 11

Matt Bruenig, *NLRB Processing Times Have Dramatically Increased* (Mar. 06,
   2024), https://www.nlrbedge.com/p/nlrb-processing-times-have-dramatically ....... 3

*National Labor Relations Board Hearing on S. 1958 Before the Senate Comm. on*
   *Education and Labor, 74th Cong.*, 115-16 (1935) ................................................... 7

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983)......................................................3

Thomas A. Kochan et al., <u>The Transformation of American Industrial Relations</u> (1994) ........................................................................................................................................9

Letter from Kristen Swearingen to Attorney General Pam Bondi (April 2025), *https://myprivateballot.com/wp-content/uploads/2025/04/CDW-letter-to-AG-Bondi_EO-14215_Apr-2025.pdf* ............................................................................................7

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1

**<u>INTRODUCTION</u>**

2          Congress enacted the National Labor Relations Act ("NLRA") in 1935 during the Great

3   Depression to address nationwide economic instability flowing from widespread strikes and

4   violence caused by a lack of sufficient channels for employees to engage with their employers to

5   improve their wages and working conditions. While the NLRA's substantive aims were various—

6   promoting industrial democracy, redistributing wealth, and peacefully resolving labor disputes—

7   Congress envisioned that the route to fulfilling all those goals was "meaningful collective

8   bargaining." *See, e.g.*, *Brown v. Pro Football*, 518 U.S. 231, 237 (1996); 29 U.S.C. § 151.

9   Safeguarding collective bargaining requires the National Labor Relations Board ("NLRB" or

10  "Board") to *actively* enforce the NLRA. *E.g. infra* pp. 3-4. In fact, Congress expected the Board

11  would actively "adapt the [NLRA] to changing patterns of industrial life" to achieve its underlying

12  goals. *NLRB v. J. Weingarten*, 420 U.S. 251, 266 (1975).

13         This case involves a state law ("AB 288") that allows California's Public Employment

14  Relations Board ("PERB") to decide labor cases which could otherwise only be heard by the

15  NLRB. AB 288 recognizes that the premises underlying *San Diego Bldg. Trades Council,*

16  *Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959) ("*Garmon*") have been negated. That

17  implied preemption doctrine requires a functioning, independent NLRB. The NLRB is no longer

18  either. Congress would not have intended such a dysfunctional NLRB under the President's thumb

19  to effect a preemption regime that Justices Thomas and Gorsuch recently clocked as "strange[ly]

20  . . . broad." *Glacier Nw. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 785 (2023)

21  (concluding the Court "should carefully reexamine" *Garmon* in "an appropriate case").

22         Nor is AB 288 facially obstacle preempted. AB 288 in no way bars anyone from bringing

23  charges to the NLRB and seeking the NLRA's protections. It merely permits PERB to advance the

24  same fundamental policies of the NLRA, when the NLRB is unable or unwilling to do so. If

25

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

specific applications of AB 288 in the future prove to conflict with the NLRA, courts can evaluate as-applied challenges in suitable cases. But even then, AB 288's severability clause permits finding those applications preempted, without invalidating the rest of the law.

Plaintiff's other arguments for preemption also fail. Plaintiff does not establish irreparable harm, and the public interest and balance of equities countermand an injunction. The NLRA and AB 288 both embrace public policies of advancing collective bargaining. An injunction would deprive employees, Intervenor, and other unions of a functioning forum to enforce the labor law protections that are a precondition for that advancement.

## **BACKGROUND**

### I.      **Plaintiff's Lawsuit Challenging AB 288**.

California has amended its Labor Code to permit employees covered or formerly covered by the NLRA to bring certain claims to PERB. The Complaint alleges AB 288 is facially preempted by the NLRA. Dkt. 1. Plaintiff has now moved to preliminarily enjoin Defendants from enforcing AB 288. Dkt. 10 ("Mot.").

### II.     **The NRLB's loss of quorum and independence.**

The NLRA prohibits the President from removing NLRB members except for cause. *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (citing 29 U.S.C. §153(a)). On January 27, 2025, President Trump removed Board member Gwynne Wilcox based on his view that these statutory removal protections are unconstitutional. *Harris v. Bessent*, 2025 WL 980278, at *2 (D.C. Cir. Mar. 28, 2025). The Supreme Court agreed they likely are, and accordingly stayed the D.C. Circuit's *en banc* decision enjoining Wilcox's removal. *See Wilcox*, 145 S. Ct. at 1415. The Supreme Court has since granted certiorari before judgment in litigation arising from Trump's similar removal of FTC Commissioner Rebecca Kelly Slaughter, to take up whether the Court should overrule *Humphrey's Executor v. United States*, 295 U. S. 602 (1935). *Trump v. Slaughter*,

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

606 U. S. ___ (2025). Therefore, the Board currently lacks a quorum and thus cannot issue any decisions, *New Process Steel v. NLRB*, 560 U.S. 674, 676 (2010). Further, Board members currently lack the independence that the NLRA deemed necessary, *infra* IV.A.1(a), and the Supreme Court is poised to permanently countenance this loss of independence.

### III.    The NLRB's dysfunction and futility.

In the decades after *Garmon*, employers increasingly turned to willfully violating the NLRA and abusing the NLRB's processes to curry delay and abrade workers' morale, expecting that whatever remedies the NLRB may eventually issue will come too late and be too meager to deter these violations or negate their effects.[1] *E.g.* Declaration of Alexandra Suh, ¶¶ 5-15, 18-21. And the NLRB's delays have only increased in recent years, even before its loss of quorum and independence. Matt Bruenig, *NLRB Processing Times Have Dramatically Increased* (Mar. 06, 2024), https://www.nlrbedge.com/p/nlrb-processing-times-have-dramatically. The first step in the NLRB's process for handling unfair labor practice charges is determining whether to issue an administrative complaint. Any enforceable judgment takes years after that complaint, *infra* p. 10, yet in California the NLRB frequently takes more than a year simply to decide whether to issue a complaint. Declaration of Shaun Martinez ("Martinez Dec.), ¶¶4-6, 12, 19, 24-25; Declaration of Pablo Camacho, ¶¶5-8; Declaration of Raul Padilla ¶¶4-6; Declaration of Verick Phillips ¶¶ 6-8; Declaration of Matthew Wittmer ¶¶ 4-13 (delays up to 30 months). Once a complaint issues, an ALJ's decision, which is still not an enforceable judgment, can take years. *See, e.g.* Martinez Dec. ¶ 6; Declaration of David O'Brien Suetholz, Dkt. 4-2, ¶¶ 5-6. This is all assuming that the Board's

---

[1] Celine McNicholas et al., Unlawful Employer Opposition to Union Election Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-Y9NA (explaining NLRB now "fails to prevent employers from engaging in aggressive, coercive, and intimidating opposition to workers' efforts to unionize"); Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) (noting by 1980s,"[t]he fraction of the work force actually engaged in collective bargaining [wa]s steadily declining" in "[m]ajor" part because NLRB "has proved powerless" to deter or remedy "illegal tactics . . . by employers determined to prevent unionization").

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   process has not been stopped by the now-frequent employer-filed constitutional challenges to the

2   Board's authority. *See Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 781 (5th Cir. 2025). The

3   NLRB's 10-months-and-counting loss of quorum has only further worsened matters. *Infra* pp. 9-

4   11; *see e.g.* Declaration of Gabriel Terrasa ¶¶ 3-9.

5                                            **ARGUMENT**

6          Where, as here, the balance of hardships do not "tip[] sharply" toward the plaintiff, a

7   preliminary injunction is appropriate only if a plaintiff shows: (1) it is likely to succeed on the

8   merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the

9   balance of equities tips in its favor, and (4) an injunction is in the public interest. *Farris v.*

10  *Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). Here, Plaintiff fails to satisfy these elements.

11         **IV.    Plaintiff will not likely establish AB 288 is facially preempted.**

12         Neither *Garmon* nor Plaintiff's other arguments show likely preemption. Even if the Court

13  finds some applications of AB 288 preempted, those would not support a facial challenge. Given

14  AB 288's severability clause, Sec. 6, specific instances of preemption fail to show AB 288 is

15  preempted "in all of its applications". *Am. Apparel & Footwear Ass'n v. Baden*, 107 F.4th 934,

16  938 (9th Cir. 2024). Furthermore, while the Union's arguments below show that AB 288 would

17  not be preempted even if it lacked triggers and gave PERB immediate jurisdiction over any claim

18  that could currently be brought before the Board, AB 288's triggers do expressly limit PERB's

19  jurisdiction to circumstances in which *Garmon* is inapplicable, *infra* IV.A.1(c).

20                      A.    AB 288 is not *Garmon* preempted.

21         "[T]he NLRA contains no statutory provision indicating the extent to which it was

22  intended to pre-empt state law." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 733 (1985).

23  While the NLRA centralized administration of *the NLRA* in a single agency—the NLRB—

24  *Garmon* recognized that "the statutory implications concerning what has been taken from the

25

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

States and what has been left to them are of a Delphic nature." *Garmon*, 359 U.S. at 241. Faced with that silence, the Court ultimately inferred a congressional intent that states not regulate conduct that "is arguably subject to [§] 7 or [§] 8 of the [NLRA]." *Id.* at 245. For such conduct, the Court declared, states "must defer to the exclusive competence of" the NLRB—a "specially constituted tribunal" that would enforce labor policy through its "specialized knowledge and cumulative experience." *Id.* at 242, 244-45. Thus, the NLRB's inability to regulate and its lost independence negate *Garmon*'s own premises, such that *Garmon* does not here control. *Infra* IV.A.1. And while only the Supreme Court can overrule *Garmon*, *Garmon*'s inconsistency with standard preemption principles, *infra* IV.A.2, also shows why it is inappropriate for this court to extend *Garmon* to circumstances where it does not control.

### 1.    *Garmon* does not control.

*Garmon* suggested that courts interpreting the NLRA's preemptive scope must ask what Congress would have intended in light of emergent problems that "were not[] foreseen by Congress." 359 U.S. at 239-240. *Garmon*'s own standard thus contemplates that courts will take account of new circumstances, in order to through "the judicial process. . . carry[] out with fidelity the purposes of Congress." *See id.* at 239-40. Indeed, the Court has since eschewed "apply[ing] the *Garmon* guidelines in a literal, mechanical fashion," *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978) ("*Sears*").

The Fourth Circuit has shown, in a similar case, what this means when the NLRB has lost its independence and stopped adequately enforcing the NLRA. In *Nat'l Ass'n of Immigr. Judges v. Owen*, that court addressed whether the Civil Service Reform Act ("CSRA"), through which Congress "create[d] a uniform scheme for administrative and judicial review of covered federal employee personnel actions", strips federal district courts of jurisdiction. 139 F.4th 293, 299, 301 (4th Cir. 2025). Longstanding doctrine holds yes, the Court noted. *Id.* at 304-05. Like the NLRA

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

and NLRB, the CSRA created the Merit System Protection Board ("MSPB") as a quasi-judicial, independent agency to adjudicate such actions. *Id*. at 302. Thus, again analogously, the Supreme Court interpreted the CSRA's specific, detailed administrative scheme to be exclusive. *Id*. at 299, 304-05. Yet, while "[i]t has been well-established that Congress's intent for the CSRA [was] to preclude district court jurisdiction[,]" that "conclusion can only be true" when the "statute functions as Congress intended." *Id*. at 305. The court identified two phenomena that would cause the statute to cease functioning so. First, the administrative scheme's inability to process claims "adequately and efficiently." *Id*. at 305 (noting this inability is present if "the Senate-confirmed roles in the MSPB . . . go unfilled, or if the agencies fail to perform their duties such that covered employees' claims are not adequately processed"). Second, if the MSPB ceases to be an independent agency. *Id*. at 305-06. In sum, "Congress intended for the Civil Service Reform Act to strip district courts of jurisdiction only if federal employees were otherwise able to receive adequate and independent review of their claims." *Id*. at 299.

While *Owen* was not applying *Garmon*, it was making the same fundamental inquiry the *Garmon* court had and that this court must in any preemption analysis: What was (or, would have been) Congress's intent? *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). For the following reasons, Congress would not have intended *Garmon* preemption to apply today.

(a)    Lost independence negates *Garmon*'s applicability.

The Board currently lacks—and will not likely regain— its independence. *Supra* pp. 2-3. Yet the Board's exclusive jurisdiction is staked on its independence. *Garmon* reasoned that Congress intended the NLRB would shape labor policy as a "specific and specially constituted tribunal" that would bring to bear its "specialized knowledge and cumulative experience." 359 U.S. at 242. The Court did not specify what was special about the NLRB's constitution because that issue was not before the Court. In fact, it likely took for granted the NLRB's status as an

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

independent agency since just one year before issuing *Garmon*, the Court had reaffirmed

*Humphrey's Executor* in its decision in *Wiener v. United States*, 357 U.S. 349 (1958).

But the NLRB's independence is the key feature of the "special[] constitut[ion]" *Garmon* emphasized. A proposed amendment to place the NLRB under the Department of Labor was defeated after Congressmembers and members of the pre-NLRA Board stressed the necessity of the Board's independence. *E.g.* H.R. REP. NO. 74-969, at 11 (1935) (Board Member Biddle), Declaration of Luke Taylor ("Taylor Dec."), Ex. 1 at 1 (noting "[t]he value and success of any quasi-judicial board dealing with labor relations" lies "foremost in its independence and impartiality," and "[w]here Congress has defined a policy and created an administrative board to carry out that policy, it has with marked consistency recognized that the board so created should . . . be free of control by the executive departments or by any particular administration"). Senator Wagner himself explained independence was vital to avoid "political influences" and "interference with [the NLRB's] truly judicial functions". *National Labor Relations Board: Hearing on S. 1958 Before the Senate Comm. on Education and Labor, 74th Cong.*, 115-16 (1935) (Sen. Wagner), Taylor Dec., Ex. 2 at 2-3 ("a board of this kind [must] be absolutely free of any kind of political influence, or even a suspicion of being under any political influence, [or] it will be a failure").

This history makes explicit what *Garmon* left implicit: the Board's ability to apply its "specialized knowledge and cumulative experience" hinges on its "special[] constitut[ion]" *as an independent agency*. 359 U.S. at 242. This makes sense. It is well-established that the point of establishing independent agencies is to ensure they have the freedom to decide specialized problems by applying specialized expertise—rather than by attempting to appease a President. *E.g. Trump v. Wilcox*, 145 S. Ct. at 1417 (Kagan, J., dissenting).[2] And the Supreme Court has

---

[2] Regulated parties have already started lobbying the Trump Administration to direct the NLRB's actions. *E.g.* https://myprivateballot.com/wp-content/uploads/2025/04/CDW-letter-to-AG-Bondi_EO-14215_Apr-2025.pdf.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   continued to understand *Garmon* preemption to be linked to the Board's ability to apply its

2   expertise *as an independent agency*. *Sears*, 436 U.S. at 191 (1978) (emphasis added) ("The

3   [NLRA] protected the collective-bargaining activities of employees and their representatives and

4   created a regulatory scheme to be administered by an *independent* agency which would develop

5   experience and expertise in the labor relations area. The Court [in its decisional law that later

6   culminated in *Garmon*] promptly decided that the federal agency's power to implement the

7   policies of the new legislation was exclusive . . . .").

8            In short, *Owen*'s reasoning that lost independence negates the grounds for an agency's

9   exclusive jurisdiction applies as much to the NLRB as to the MSPB. That the Courts of Appeal

10  can decline to enforce NLRB decisions that are arbitrary and capricious or contrary to law is an

11  insufficient safeguard against Presidential pressure to fail to enforce the Act. *First*, the Act's goals

12  are harmed by the delay and expense needed to seek judicial review. *E.g. Frankl ex rel. NLRB v.*

13  *HTH Corp.*, 650 F.3d 1334, 1362-1363 (9th Cir. 2011) (delay harms collective bargaining).

14  *Second*, while courts might now review the NLRB's interpretations of law *de novo*, *Loper Bright*

15  *Enters. v. Raimondo*, 603 U.S. 369 (2024), the NLRB's fact-findings and judgment-calls will still

16  receive judicial deference, *McLamb v. NLRB*, 141 F.4th 1308, 1315 (D.C. Cir. 2025). *Third*,

17  administrative law's high tolerance for agency inaction means that Board members who fear

18  getting fired may undermine the NLRA by declining to take enforcement actions, *see Heckler v.*

19  *Chaney*, 470 U.S. 821, 831 (1985), delaying issuing decisions, *see Norton v. S. Utah Wilderness*

20  *All.*, 542 U.S. 55, 64 (2004), and failing to undertake necessary rulemaking, *Massachusetts v.*

21  *EPA*, 549 U.S. 497, 527-28 (2007). *Fourth*, the Wagner Act's drafters deemed independence

22  necessary in part to preserve public confidence in the NLRB, without which confidence they did

23  not believe the Board could adequately fulfill its function. *See supra* p. 7.

24

25

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1          (b)          The Board's dysfunction negates *Garmon*'s applicability.

2                    (i)          The Board no longer protects collective bargaining.

3      *Owen* suggests that the decades-long atrophy of the NLRB's ability to protect collective

4   bargaining since the lapse of the 1950's labor-management accord, *supra* pp. 3-4 & n.1, has

5   created a context so remote from *Garmon*'s as to negate that decision's construction of Congress's

6   intent, given the NLRA's objective of advancing "meaningful collective bargaining", *Brown*, 518

7   U.S. at 237, and Congress's expectation that the Board would actively "adapt the [NLRA] to

8   changing" industrial realities to do so. *J. Weingarten*, 420 U.S. at 266. "During the 1950's and

9   1960's, the prevailing view" was that "American managers had accommodated to collective

10  bargaining and accepted unions as legitimate and lasting parties to the employment relationship."

11  Thomas A. Kochan et al., The Transformation of American Industrial Relations (1994), p. 14,

12  Taylor Dec. Ex. 3 at 14. "[N]o one in the 1950s or 1960s foresaw the changes in managerial

13  behavior" that "stopp[ed] [and reversed] the expansion of [private sector] collective bargaining."

14  *Id*., p. 8. *Garmon* thus could not have foreseen this, and should no longer control. *See also United*

15  *Const. Workers v. Laburnum Const. Corp.*, 347 U.S. 656, 669 (1954) (pre-*Garmon*, suggesting

16  preemption inquiry should consider "whe[ther] the [NLRB's] preventive administrative

17  procedures are impotent or inadequate").

18                    (ii)          Lost quorums paralyze the Board.

19      Without a quorum, the Board can neither effect enforceable judgments nor fulfill its

20  function of issuing new, precedential decisions for regional offices to follow in light of changing

21  industrial realities. While lost independence and lost quorums are separate bases why *Garmon* no

22  longer controls, they bolster each other: Congress did not intend or contemplate that a President

23  could deprive the NLRB of a quorum for any reason they please and for as long as they please.

24  The current 10-month lapse of quorum shows how lost independence leaves this country ever on

25

IBT'S OPP. TO MOTION FOR PRELIMINARY INJUNCTION

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   the edge of protracted voids of meaningful labor regulation if courts mechanically expand *Garmon*

2   to still apply whenever the President chooses to tell a Board member "You're Fired".

3         Plaintiff emphasizing matters that the NLRB's regional offices process ignores that no

4   regional determination becomes an enforceable judgment against a party until it becomes a final

5   Board order and then additionally is enforced by a Court of Appeal. *See* 29 U.S.C. § 160(c, e, f)*;*

6   *RAV Truck & Trailer Repairs v. NLRB*, 997 F.3d 314, 319 (D.C. Cir. 2021) (hearing Board's

7   cross-petition for enforcement). When the Board lacks a quorum, the most an employer need do to

8   prevent a regional determination in an unfair labor practice case from becoming an "order of the

9   Board", 29 U.S.C. §160(c), that a "person aggrieved" may seek enforcement of, *id.* §160(f), is

10  "fil[e]" "exceptions" to the regional determination with the Board, *id.* §160(c). The quorum-less

11  Board cannot then issue a "final order". *See* §160(f) (courts possess jurisdiction over only petitions

12  to review of "final orders"); *see also Harrison Steel Castings Co. v. NLRB*, 923 F.2d 542, 545 (7th

13  Cir. 1991) ("[A] charged party may only seek judicial review of Board *orders*—not Board

14  'findings,' or 'charges,' or 'actions'"). In fact, at present, employers needn't even file exceptions

15  to delay ultimate determinations. That's because the NLRB's Executive Secretary has not been

16  delegated authority to adopt Administrative Law Judge's decisions and recommended orders as

17  "the order of the Board" under §160(c), even when no one files exceptions.

18         In a *representation* case, all an employer needs to do is object to a regional certification of

19  representative (i.e. union wins election) by refusing to recognize and bargain with the union—

20  triggering an unfair labor practice charge known as "test of certification"—and then follow the

21  same playbook.[3] *See Boire v. Greyhound Corp.,* 376 U.S. 473, 477-78 (1964) (noting federal

22  courts lack jurisdiction to review certification proceedings, and outlining test of certification

23

24  ───────────

25  [3] Relatedly, when a union disputes a regional certification of election results (union loses election) and files an appeal with the Board, it just sits without resolution due to loss of quorum.

1   process required to obtain enforceable judgment).

2          Employers know this all. Without a quorum, workers lack recourse when employers flout

3   regional determinations.[4] Statistics about the NLRB's ability to settle cases at the regional level in

4   Fiscal Year 2024 thus tell us nothing about that ability while charged parties lack any prospect of

5   enforceable judgments. Moreover, lost quorums will negatively impact the quality of settlements.

6   When employers face no enforceable accountability, workers' best option might be to accept a

7   paltry settlement they would have otherwise rejected. And five cases authorized by the Acting

8   General Counsel for Section 10(j) proceedings is a trivial fraction of nationwide labor disputes.

9          The Court has already blessed an exception to *Garmon* permitting state regulation when

10  parties "lack[] a reasonable opportunity to secure a Board decision on the legal status of the

11  conduct at issue." *Glacier*, 598 U.S. at 777 n.1. This principle—adopted in *Sears*—heeded Justice

12  White's admonition that *Garmon* must not "blindly pre-empt[]" when "there is no [ability to

13  secure] an authoritative decision by the Board". *Amalgamated Ass'n of St., Elec. Ry. & Motor

14  Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 326 (1971) (White, J., dissenting); *see Sears*, 436

15  U.S. at 200-02, 206 (noting party must have opportunity to "obtain an orderly resolution" of

16  dispute concerning conduct covered by NLRA). This concern equally applies when parties lack

17  opportunity to secure a timely, enforceable judgment through the Board. In fact, Justice Powell

18  noted, in *Sears*, that "[i]f an [NLRB] charge is filed, nothing is likely to happen 'in a timely

19  fashion' . . . th[is] 'no-man's land' . . . is an open invitation to self-help . . . I am unwilling to

20  believe that Congress intended, by its silence in the Act, to create a situation where there is no

21  forum to which the parties may turn for orderly interim relief in the face of a potentially explosive

22  situation." *Id.* at 213 (Powell, J., concurring). When employers lack the threat of timely,

23

24          [4] Reporting on how, and in record numbers, employers have argued the quorum-less Board cannot
    resolve election disputes includes John Kruzel & Daniel Wiessner, *Frozen feud: How Trump and the
25  Supreme Court helped put historic Whole Foods union bid on ice* (Reuters, Oct. 1, 2025).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  enforceable accountability from the government for violations of workers' labor rights, the

2  conditions are likewise ripe for the explosive strikes that the Wagner Act intended to obviate. 29

3  U.S.C. § 151 (noting employers' refusal to accept collective bargaining and denying rights to

4  organize led to such strikes).

5        This court should at least hold *Garmon* preemption is inapplicable when the NLRB lacks a

6  quorum. But a better view is that the new precarity of Board quorums, given the NLRB's lost

7  independence, shows *Garmon* no longer controls even if a quorum restores. Absent a quorum,

8  states must initiate investigatory and enforcement proceedings that will take some time to run their

9  course. Rather than require those proceedings to cease and lose effect if and when the quorum

10  finally restores, this court should instead rule that *Garmon* preemption no longer controls.

(c)        AB 288's triggers are permissible.

12        For the above reasons, *Garmon* no longer controls, and so AB 288 would not be preempted

13  even if it lacked triggers and gave PERB immediate jurisdiction over any matter that could be

14  brought before the Board. But AB 288 *does* contain triggers that preserve the NLRB's exclusive

15  jurisdiction when it is actually operating as Congress envisioned and timely enforcing employees'

16  rights, making Plaintiff even less likely to succeed on its challenge. At least one such trigger is not

17  even arguably touched by Plaintiff's preemption arguments: the NLRA cannot preempt state

18  action if, as one of the triggers in Sec. 2(b)(1)(B)(A) contemplates, the NLRA is repealed. The

19  other triggers all focus PERB's jurisdiction to the specific circumstances detailed above which

20  directly undermine *Garmon's* premises: lost independence or lost quorum, Sec. 2(b)(1)(B)(i), or

21  the type of delay or judicial interference that undermines collective bargaining and that, absent

22  state intervention, would create the "no-man's land" of non-enforcement of labor protections that

23  the *Garmon* exception recognized by *Sears* aims to prevent, Secs. 2(b)(1)(A) and (B)(ii-iv).

24

25

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

2.      *Garmon* improperly interpreted the NLRA.

*Garmon* is inconsistent with typical presumptions against preemption of state law absent clear Congressional purpose to do so. *E.g. Glacier*, 598 U.S at 785-88 (Thomas, J., concurring)[5] (citing cases). In fact, when Congress enacted the NLRA, there was doubt whether Congress was empowered to regulate labor relations. *E.g. Allen-Bradley Loc. No. 1111, United Elec., Radio & Mach. Workers of Am. v. Wisconsin Emp. Rels. Bd.*, 295 N.W. 791, 797 (Wis. 1941). Any intent by Congress to so broadly exclude states from this domain would have therefore been tantamount to inverting "the usual constitutional balance of federal and state powers." *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991). Courts can infer such preemption only if Congress made that intention "unmistakably clear in the language of the [NLRA]". *Id*.

Early interpretations of the NLRA recognized this. The presumption against preemption was the starting point for *Wisconsin Lab. Rels. Bd. v. Fred Rueping Leather Co.*, a decision that three years after the NLRA's enactment upheld a state scheme much like that created by AB 288. 279 N.W. 673, 677, 679-80 (Wis. 1938). The court found no legislative history indicating a desire to preempt states, as opposed to centralize federal administration of federal labor law. *Id*. at 679-80. This conclusion was buttressed by analysis of the NLRA's Section 10(a) and conflict of law clause. *Id*. at 677-78. So while specific applications of state law might be obstacle preempted, Congress did not intend to so broadly divest states of labor regulation. *Id*. at 681; *see also Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Div. 998 v. Wisconsin Emp. Rels. Bd.*, 340 U.S. 383, 402-03 (1951) (Frankfurter, J., dissenting) (collecting Supreme Court decisions recognizing same).

---

[5] *Glacier*'s majority neither disputed this point nor endorsed *Garmon*. *See id*. at 776, 785. By permitting state intervention while NLRB proceedings pended, *id*. at 798 n.2 (Jackson, J., dissenting), the majority also cast doubt on *Garmon*.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1          B.    AB 288 is not obstacle preempted.

2          Absent *Garmon*, states are not preempted from enforcing the rights protected by the NLRA

3    because obstacle preemption requires federal and state law to be "irreconcilab[le]". *United States*

4    *v. California*, 921 F.3d 865, 881-82 (9th Cir. 2019). And states need not necessarily use the same

5    standards and methods as the NLRA to do so. *Infra* p. 15. In fact, differing state and federal

6    standards are pervasive in concurrent regulation of firms and employment. *E.g. California v. ARC*

7    *Am. Corp*, 490 U.S. 93, 100-02 (1989) (Sherman Act, which lacks savings clause, construed to

8    permit states' enforcement standards to differ from federal); Cal. Bus. & Prof. Code § 16600

9    (prohibiting non-compete agreements that current federal balancing standard, *Caudill v. Lancaster*

10   *Bingo Co.*, 2005 WL 2738930, at *4 (S.D. Ohio Oct. 24, 2005), permits); *Hemmings v. Tidyman's*

11   *Inc.*, 285 F.3d 1174, 1196 (9th Cir. 2002) (Title VII permits different state remedies). *Volkswagen*

12   does not suggest otherwise; it simply noted federal *immigration* law in one case preempted a

13   certain state *immigration* law "involving a different method of enforcement." *Volkswagen* "*Clean*

14   *Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.* ("*Volkswagen*"), 959 F.3d 1201, 1213 (9th Cir.

15   2020); *see California*, 921 F.3d at 881-82 (limiting decision *Volkswagen* referred to). Plaintiff's

16   citations to *Garmon*'s progeny, such as *Gould*, and to the proto-*Garmon* decisions of *Garner* and

17   *Bethlehem Steel*, also do not help show that AB 288 and the NLRA are irreconcilable absent

18   *Garmon*'s rule. *Garmon* applied *Garner*. 359 U.S. at 242-43. While *Bethlehem Steel* narrowly

19   held that states could not authorize certain bargaining units the NLRB affirmatively determined

20   "were not appropriate," 330 U.S. 767, 768, 774-75 (1947), the dicta Plaintiff cites suggested the

21   broader preemption regime that *Garmon* recognized. The same reasons *Garmon* does not control,

22   and is inconsistent with traditional preemption principles, apply to these authorities.

23         Plaintiff cannot show irreconcilability. When *Garmon* does not apply, states may use

24   different enforcement methods—including penalties—to regulate conduct the NLRA covers.

25

*UAW-CIO v. Russell*, 356 U.S. 634, 637 n.2, 641, 644-46 (1958) (reasoning *Republic Steel* does not foreclose state punitive damages against conduct prohibited by NLRA, although NLRB lacks power to assess same); *see also Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 60-61, 65-66 (1966) (similar); *Sweeney v. Pence*, 767 F.3d 654, 665 (7th Cir. 2014) (where NLRA did not otherwise preempt labor regulation, state could enact criminal penalties). Deterrent remedies are consistent with NLRA policy, *e.g. Peoples Gas Sys., Inc. v. NLRB*, 629 F.2d 35, 50 (D.C. Cir. 1980); *Local 60 Carpenters v. NLRB*, 365 U.S. 651, 659 (1961) (Harlan, J. concurring). *Gould* does not hold otherwise; it was applying *Garmon*, and any suggestion that penalties might be preempted absent *Garmon* was dicta that is inconsistent with authorities here cited. *See also Sweeney v. Daniels,* 2013 WL 209047, at \*10 (N.D. Ind. Jan. 17, 2013).

AB 288's other provisions also reconcile with the NLRA. AB 288 in no way bars anyone from bringing charges to the NLRB and seeking the NLRA's protections, nor does it purport to extinguish any of the rights or protections enshrined in the NLRA. It simply permits PERB to advance the same fundamental policies as the NLRA, often through identical or near identical standards and processes. This accords with the NLRA's "full purposes and objectives," *Volkswagen*, 959 F.3d at 1212, especially since the NLRB has proved incapable of realizing the NLRA's fundamental goal of protecting and promoting collective bargaining. Even where AB 288's standards and processes diverge from the NLRA, such differences promote collective bargaining and are consistent with the NLRA's purposes—not preempted.

AB 288 in no way impairs the NLRB's authority to apply its protections for the right to refrain and its prohibitions against unions' ULPs. Anyone who thinks a union has committed a ULP or that any union or employer has infringed employees' right to refrain may file a charge with the NLRB. And Section 8(c) "merely implements the First Amendment." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969). It does not confer additional rights. If California's

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  standards affronted 8(c), they would have already failed First Amendment challenge.

2      Furthermore, AB 288 permits PERB to apply NLRA precedents. Sec. 2(e)(2). PERB has

3  not yet interpreted whether and when, to avoid conflict with the NLRA, it must apply NLRA law.

4  Plaintiff's challenges based on supposed diverging standards are not ripe until PERB makes that

5  interpretation in a case.

6      The only effect of the portion of Section 2(c)(2) that Plaintiff cites is that PERB will

7  certify units *that the NLRB has certified*. PERB's deferring to the NLRB's application of its own

8  procedures is no conflict.

9      *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 102 (1970) and *NLRB v. Am. Ins. Co*., 343 U.S. 395

10 (1952) never address whether their reasoning applies to preemption of state laws. And here, unlike

11 in those decisions, no government agency passes judgment on substantive bargaining provisions.

12 Instead, PERB permits a private arbitrator to choose among the bargaining parties' proposals.

13     Thus, absent *Garmon*, Plaintiffs' facial challenge fails, particularly considering AB 288

14 allows severance of any specific provisions that may later be found to be obstacle preempted.

15          C.    Sections 10(a) and 14(c) are not exclusive bases for state regulation.

16     The plain text of Sections 10(a) and 14(c) bars concluding they are exclusive gates to state

17 regulation. These sections only address the NLRB's authority to cede or decline its jurisdiction—

18 i.e., to tell parties: "Don't come here"—and make clear that the NLRB's doing so does not deprive

19 states of their jurisdiction. Against the NLRA's baseline of concurrent federal and state

20 jurisdiction, *supra* IV.A.2, these provisions just set forth two circumstances in which *only* states

21 will exercise jurisdiction. Section 10(a) says the Board's "power" to "prevent any person from

22 engaging in any unfair labor practice [under the NLRA]. . . shall not be affected by any other

23 means of adjustment or prevention . . ." 29 U.S.C. § 160(a). The proviso then simply "provide[s]"

24 that the Board is "empowered" to agree "to cede to [any state] jurisdiction over any cases in any

industry." *Id*. Facially and in context of the language it qualifies, this proviso addresses the NLRB's ability to agree that only the state will hear certain cases. It does not say states may not exercise concurrent jurisdiction over NLRA-covered conduct absent such agreement. It does not even say the only way the NLRB may cede such jurisdiction is by such agreement. 14(c), in turn, simply provides the Board may "decline" jurisdiction over certain disputes, and makes clear states may still hear those disputes. *Id*. § 164(c). This neither bars states' concurrent jurisdiction over conduct as to which the NLRB has not declined jurisdiction, nor purports to exclude other circumstances in which the NLRB may decline jurisdiction.

The Supreme Court made clear that Sections 10(a) and 14(c) are not the exclusive avenues to state jurisdiction when—long after those provisions' enactments—it created the rule that states may intervene when parties "lack[] a reasonable opportunity to secure a Board decision on the legal status of the conduct at issue." *Glacier*, 598 U.S. at 777 n.1 (citing *Sears*). The Court could not have announced this new exception to preemption if it understood 10(a) and 14(c) to exhaustively codify the bases for states' jurisdiction. *Guss*'s suggestion that 10(a) is the exclusive means for state regulation is therefore bookended by contrary Supreme Court authority. *Id*.; *Laburnum*, 347 U.S. at 657, 659 n.2, 667-69 & n. 9 (reasoning based on text and legislative history that 10(a) did not exclude state remedies for conduct within NLRB's jurisdiction); *accord Russell*, 356 U.S. at 641, 644-46; *see also Guss*, 353 U.S. at 14-19 (Burton, J., dissenting). *Guss*'s suggestion thus does not control. And *Committee of Interns* just addressed whether the NLRB ceded jurisdiction. 566 F.2d 810 (2d Cir. 1977). Its dicta, *id.* at 813 n.3, does not indicate states can never intervene absent cession, nor is that decision from this Circuit.

10(a)'s proviso and 14(c) both constituted Congressional correctives to specific Supreme Court decisions diminishing states' authority. 10(a)'s proviso rejected *Bethlehem Steel*'s negation of a cession agreement between the NLRB and state. *Guss*, 353 U.S. at 16 (Burton, J., dissenting).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   Section 14(c) responded to *Guss*'s divesting states of jurisdiction when the Board declined

2   jurisdiction on commerce-threshold grounds. *Lockridge*, 403 U.S., at 315-16 (White J., dissenting)

3   (describing congressional revulsion at *Guss*'s creation of "no-man's land", and noting 14(c) aimed

4   to "fill th[is] chasm" and casts "doubt' on *Garmon*'s "foundations"). That Sections 10(a) and 14(c)

5   do not expressly assert that states otherwise have concurrent jurisdiction does not exclude that

6   jurisdiction. *See Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 186

7   (1994) (rejecting reliance on Congressional silence in legislative amendments).

8       If this Court nonetheless concludes Congress intended Sections 10(a) and 14(c) to be

9   exclusive in the world as it looked in 1959, the Court should recognize that same Congress would

10  not have intended them to be exclusive today. First, whereas the NLRB has proved incapable of

11  protecting collective bargaining after the labor-management accord's breakdown, state public

12  sector bargaining administrative schemes have proliferated since 1959, providing additional

13  capacity these states lacked before then. Second, courts have never yet held that, without a

14  quorum, the Board can issue the orders needed to effect such delegations under 10(a) or 14(c). 29

15  U.S.C. § 153(b) (omitting such orders from matters Board may delegate to regional directors).

16  Third, without independence, the NLRB might withhold its agreement to delegate matters to states

17  for a reason that Congress expressly intended would *not* influence the NLRB's decisions. Namely,

18  the President's telling NLRB members they will be fired if they agree to delegate matters to states.

19  Perhaps Jeff Bezos or Elon Musk—who had front-row seats at this President's inauguration—

20  don't want state jurisdiction over the many labor disputes against their companies. Or the

21  President might just want to stymie a state the President doesn't like.

22              D.    Preemption would contravene the 10th Amendment.

23      For preemption to satisfy the 10th Amendment, the federal law must be "best read as one

24  that regulates private actors," as opposed to one that really just directs states to not regulate. *See*

25

1  *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471, 477-78 (2018). This principle should

2  be understood or extended to require the federal law not just formally regulate private actors, but

3  instead "meaningfully achieve the purpose for which it was passed" *Cf. Ass'n To Pres. & Protect*

4  *Loc. Livelihoods v. Sidman*, 147 F.4th 40, 71-72 (1st Cir. 2025) (conducting this inquiry of state

5  law in dormant commerce clause analysis). In recent decades, the NLRB ceased to do so. It

6  certainly does not do so when it cannot effect enforceable orders.

7        **V.**    **Plaintiff is not threatened with irreparable harm.**

8      *United States v. California* held not that preemption presumptively constitutes irreparable

9  harm, but instead that the district court's concluding so was there permissible. 921 F.3d 865, 893

10  (9th Cir. 2019). Plaintiff does not establish irreparable harm. AB 288's triggers mean PERB would

11  be processing matters that could not proceed through the NLRB or that do not there face

12  reasonably imminent resolution. Divergent adjudications are not therefore likely.

13      *Garner* concerned preemption, not irreparable harm. Employees' and employers'

14  simultaneous exposure to both state and federal labor law regimes is neither chaotic nor grounds

15  for finding irreparable harm. They are already pervasively subject to both state and federal

16  employment and antitrust laws, as briefly sampled above. Often, states' laws in these domains

17  differ in substance and procedure from federal law. That's just federalism.

18      Plaintiff points to no situation in which PERB and the NLRB could issue orders that are

19  mutually impossible for a party to comply with. Nor raises a non-speculative basis to think that,

20  should such situations exist, the agencies would fail to coordinate to avoid that outcome. Should

21  they threaten such orders, a party may seek to enjoin the PERB proceedings via an as-applied

22  challenge. Should they issue such orders, the party may appeal PERB's order on, inter alia,

23  preemption grounds, and courts may stay the order pending appeal. AB 288, Sec. 2(e)(4).

24      Plaintiff has not shown AB 288 permits anyone to bring a matter to PERB that could be,

25

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

but has not been, brought to the NLRB. Regardless, the NLRB permits allegations raised outside Section 10(b)'s 6-month period if they are "closely related" to allegations in a timely filed charge. *Redd-I, Inc.*, 290 NLRB 1115, 1115-16 (1988). This principle extends to permit the NLRB to hear the charges Plaintiff claims might be squandered, Mot. at 18, since a PERB charge gives charged parties "notice" of the claims against them. *Id*. at 1116. Even were that not so, any risk a charging party incurs by choosing to file in PERB, rather than NLRB, is one it freely assumes.

## VI.    The balance of equities and public interest weigh against an injunction.

Preemption is dispositive neither as to public interest nor balance of equities. *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059–60 (9th Cir. 2009) (public interest in federal law's supremacy "balanced" against public interest and equities opposing injunction); *California*, 921 F.3d at 894 (preemption does not "alone" warrant injunction). Plaintiff ignores the hardships to workers and unions like Intervenor and claims the NLRB is adequately enforcing labor law, notwithstanding Intervenor's explanation and declarations above to the contrary. An injunction prevents unions like Intervenor from fulfilling their core function: protecting employees' right to organize and collectively bargain. Preserving a functional forum for the Union to enforce its members' rights advances the public interest, too, by realizing fundamental public policies undergirding both the NLRA and AB 288. 29 U.S.C. §151 (policy of promoting organizing and collective bargaining); AB 288, Sec. 1 (same). The NLRB is not adequately enforcing labor laws in California, and has even ceased defending against certain constitutional challenges to its own structure. The state must protect its citizens' rights to organize and bargain, as well as their freedoms of association and assembly.

## CONCLUSION

The Court should deny Plaintiff's motion for preliminary injunction.[6]

---

[6] Intervenor does not desire to present oral testimony at the hearing.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   DATED:  December  3, 2025        JULIE GUTMAN DICKINSON
                                     JENNIFER A. ABRUZZO (*pro hac vice forthcoming*)
2                                    HECTOR DE HARO
                                     LUKE TAYLOR
3                                    BUSH GOTTLIEB, A Law Corporation

4
                                     By:
5                                          _____
                                           JULIE GUTMAN DICKINSON
6                                    Attorneys for Intervenor International Brotherhood of
                                     Teamsters
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260