1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  LARA HADDAD, State Bar No. 319630
   Supervising Deputy Attorney General
3  JOSEPH H. MEEKER, State Bar No. 336725
   Deputy Attorney General
4    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
5    Telephone: (213) 269-6502
     Fax: (916) 731-2124
6    E-mail:  Joe.Meeker@doj.ca.gov
   *Attorneys for Defendant State of California,*
7  *appearing by and through the Labor and Workforce*
   *Development Agency[1]*
8
                    IN THE UNITED STATES DISTRICT COURT
9
                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10
                          SACRAMENTO DIVISION
11

12

13  **NATIONAL LABOR RELATIONS**              2:25-cv-02979
    **BOARD,**
14                                            **DEFENDANT STATE OF**
                                Plaintiff,    **CALIFORNIA'S OPPOSITION TO**
15                                            **PLAINTIFF'S MOTION FOR A**
                                              **PRELIMINARY INJUNCTION**
16              v.
                                              Date: December 17, 2025
17  **STATE OF CALIFORNIA and the**           Time: 10:00 a.m.
    **PUBLIC EMPLOYMENT RELATIONS**           Dept: Courtroom 2
18  **BOARD,**                                Judge: The Honorable Troy Nunley
                                              Trial Date: None
19                             Defendants,    Action Filed:   10/15/2025

20
    **INTERNATIONAL BROTHERHOOD OF**
21  **TEAMSTERS,**

22                    Intervenor-Defendant.

23

24

25

26

27  _____
      [1] The Complaint names only the State of California. The Labor and Workforce
28  Development Agency, through its attorney, appears on behalf of the State.

_____

1

# TABLE OF CONTENTS

2

**Page**

3  Introduction ................................................................................................................. 1

4  Background ................................................................................................................. 2

   I.      The NLRA and NLRB ................................................................................ 2

5  II.     PERB ........................................................................................................... 4

6  III.    Challenges Faced by the NLRB ................................................................. 5

7          A.    Removal of Member Wilcox and Current Loss of Quorum ..................... 5

           B.    Constitutional Challenges to the NLRB and NLRA ................................. 5

8          C.    Rising Caseloads and Diminished Resources ........................................... 7

9  IV.     AB 288 ......................................................................................................... 7

10 V.      Procedural History ..................................................................................... 9

   Argument ................................................................................................................... 9

11 I.      Legal Standard ............................................................................................ 9

12 II.     The NLRB's Claim is Not Likely to Succeed: AB 288 is Not Preempted. ........... 9

13         A.    In Limited Circumstances in Which the Statutory Scheme is Not
                 Functioning as Congress Intended, the NLRA Should Not be Given
14               Preemptive Effect. .................................................................................. 10

           B.    AB 288's Triggers Apply Only in Situations Where the NLRA
15               Does Not apply or the NLRB is Not Fulfilling Its Role in the
                 Statutory Scheme. .................................................................................. 13

16               1.    Congress intended for the NLRB to function. ............................... 13

17                     a.    Lack of quorum ................................................................ 14

18                     b.    NLRB proceedings enjoined on constitutional
                             grounds ............................................................................ 15

19                     c.    Excessive delay ................................................................ 16

                 2.    Congress intended that the NLRB remain an independent
20                     agency. .............................................................................................. 16

21         C.    AB 288 Furthers the Goals of the NLRA by Ensuring Workers
                 Have a Forum to Vindicate Their Right to Organize. ............................ 17

22         D.    The Decision Enjoining a Similar New York Law is Inapposite. ............. 18

23         E.    In the Alternative, the Court Should Consider AB 288's
                 Severability Clause. ................................................................................ 19

24 III.    The NLRB Has Not Met the Other *Winter* Factors ............................................. 19

25 Conclusion ............................................................................................................... 20

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*All. for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011)................................................................. 20

*Amazon.com Services LLC v. New York State Public Employment Relations Board*
    No. 1:25-CV-5311 (E.D.N.Y. Nov. 26, 2025) ...................................... 18

*Cal. Redevelopment Assn. v. Matosantos*
    53 Cal. 4th 231 (2011) ......................................................................... 19

*Caribbean Marine Serv. Co. v. Baldridge*
    844 F.2d 668 (9th Cir. 1988).................................................................. 20

*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd*.
    35 Cal. 4th 1072 (2005) ......................................................................... 4

*Coal. For Econ. Equity v. Wilson*
    122 F.3d 718 (9th Cir. 1997).................................................................. 20

*Gade v. National Solid Wastes Mgmt. Ass'n*
    505 U.S. 88 (1992)................................................................................ 10

*Garner v. Teamsters, Chauffeurs & Helpers Local Union*
    346 U.S. 485 (1953)................................................................. 11, 15, 17

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*
    598 U.S. 771 (2023)............................................................................. 10

*Hanna Min. Co. v. Dist. 2, Marine Eng'rs Beneficial Ass'n, AFL-CIO*
    382 U.S. 181 (1965) ............................................................................. 18

*Harris v. Bessent*
    No. 25-5037, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ........................... 3, 5, 14

*Hines v. Davidowitz*
    312 U. S. 52 (1941).............................................................................. 10

*Hudson Inst. of Process Rsch. Inc. v. NLRB*
    2025 WL 2431645 (E.D. Tex. Aug. 22, 2025) ............................................ 6

*Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39 v. NLRB*
    2025 WL 2963359 (9th Cir. Oct. 20, 2025)............................................... 6

Defendant State of California's Opposition to Plaintiff's Motion for a Preliminary Injunction (2:25-cv-02979)

## TABLE OF AUTHORITIES
### (continued)

Page

*Metro. Life Ins. Co. v. Massachusetts*
    471 U.S. 724 (1985) ........................................................................ 10

*National Association of Immigration Judges v. Owen*
    139 F.4th 293 (4th Cir. 2025) ................................................... *passim*

*New Process Steel, L.P. v. NLRB*
    560 U.S. 674 (2010) ...................................................................... 3, 5

*NLRB v. Aaron Bros. Corp.*
    563 F.2d 409 (9th Cir. 1977) (per curiam) ........................................ 3

*NLRB v. Noel Canning*
    573 U.S. 513 (2014) ............................................................................ 5

*NLRB v. Starbucks Corp.*
    2025 U.S. App. LEXIS 29013 (6th Cir. Nov. 5, 2025) ........................ 6

*Pacific Legal Foundation v. Brown*
    29 Cal.3d 168 (1981) .......................................................................... 4

*Puente Arizona v. Arpaio*
    821 F.3d 1098 (9th Cir. 2016) ............................................................ 9

*Red Rock Resorts, Inc v. NLRB*
    No. 2:24-cv-01966-ART-BNW (D. Nev. Mar. 31, 2025) ...................... 6

*Right to Life of Cent. Cal. v. Bonta*
    562 F. Supp. 3d 947 (E.D. Cal. 2021) ............................................... 19

*San Diego Bldg. Trades Council v. Garmon*
    359 U. S. 236 (1959) ................................................................. *passim*

*Space Exploration Technologies Corp. v. NLRB ("SpaceX")*
    151 F.4th 761, 776-778 (5th Cir. 2025) ............................................. 6

*Superior Court v. Pub. Emp't Relations Bd.*
    30 Cal. App. 5th 158 (2018) ............................................................... 4

*Trump v. Wilcox*
    145 S. Ct. 1415 (2025) ....................................................................... 5

*United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Emp. Rels. Bd.*
    669 F.2d 1249 (9th Cir. 1982) .......................................................... 13

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

*Wilcox v. Trump*
    775 F. Supp. 3d 215 (D.D.C. 2025) ............................................................. 5, 17

4

5

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ........................................................................... 9, 19, 20

6

*Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*
    475 U.S. 282 (1986) ........................................................................... 10

7

8

*Yapp USA Auto. Sys. v. NLRB*
    748 F. Supp. 3d 497 (2024) .................................................................... 5

9

10

**STATUTES**

11

29 U.S.C.
    § 151 ...................................................................................... 2, 17

12

    § 152(3) ...................................................................................... 2
    § 153(a) ...................................................................................... 3

13

    § 153(b) ...................................................................................... 3
    § 154(a) ...................................................................................... 3

14

    § 159 ...................................................................................... 3
    § 159(b)-(c) .................................................................................. 3

15

    § 160 ...................................................................................... 14

16

    § 160(a)-(c) .................................................................................. 3
    § 160(c) ...................................................................................... 3

17

    § 160(e) ...................................................................................... 3

18

Cal. Code Regs.
    § 32305 ...................................................................................... 4

19

    § 32715 ...................................................................................... 4

20

    § 32720 ...................................................................................... 4
    § 32724 ...................................................................................... 4

21

    § 32742 ...................................................................................... 5
    § 32750 ...................................................................................... 4

22

    § 32980(a) .................................................................................... 4

23

    § 33237 ...................................................................................... 4

24

Cal. Gov. Code
    § 3514.5 ...................................................................................... 4

25

    § 3541(a) .................................................................................... 4
    § 3541.3(i) .................................................................................. 4

26

    § 3541.3(a-c) ................................................................................ 4

27

    § 3541.35 .................................................................................... 5

28

Defendant State of California's Opposition to Plaintiff's Motion for a Preliminary Injunction (2:25-cv-02979)

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

Cal. Lab. Code

4

  § 923 ........................................................................................................ 7, 20

  § 923.1 ........................................................................................................ *passim*

5

**OTHER AUTHORITIES**

6

7

29 C.F.R.

  § 102.48(a)-(b) ........................................................................................ 3, 14

8

  § 102.67(c) ................................................................................................ 14

  § 102.182 .................................................................................................. 3, 14

9

10

Adrian Vermeule, *Conventions of Agency Independence*, 113 Colum. L. Rev. 1163, 1179 (2013) ............................................................................................ 17

11

California Assembly Bill 288 ............................................................................ *passim*

12

California Assembly Bill No. 1340 .................................................................... 4

13

14

Astrid Aune, *The Fifth Circuit's Latest Labor Law Rulings Are a Gift to Elon Musk*, Balls and Strikes (Nov. 10, 2025) *available at* https://perma.cc/C9SC-REMY ............................................................................................................ 6

15

16

Matt Breunig, *NLRB Processing Times Have Dramatically Increased,* NLRB Edge (Mar. 6, 2024), *available at* https://perma.cc/25YV-UL6H .................................. 7

17

NLRB, 1 Legislative History of the National Labor Relations Act, at 1427-28 (1949) ............................................................................................................ 17

18

19

NLRB, *Contingency Plan for Shutdown in the Absence of Appropriations* (Oct. 16, 2025), *Available at* https://www.nlrb.gov/system/files/node-9943/2025-11/FINAL%20NLRB%20Lapse%20Plan%20October%2016%202025.revised.pdf ............................................................................................................ 9

20

21

22

NLRB, *Election Petitions Up 53%, Board Continues to Reduce Case Processing Time in FY22* (Oct. 6, 2022), *Available at* https://perma.cc/25YV-UL6H ............................ 7

23

*Unfair Labor Practices Charge Filings Up 10%, Union Petitions Up 3% in Fiscal Year 2023* (Oct. 13, 2023), *Available at* https://perma.cc/3EWS-4ZLN ................................ 7

24

25

*Union Petitions Filed with NLRB Double Since FY 2021, Up 27% Since FY 2023* (Oct. 14, 2024), *available at* https://perma.cc/3EWS-4ZLN .................................... 7

26

*Unleashing the States in Labor-Management Relations Policy*, 19 Cornell J.L. & Pub. Pol'y 83, 84 (2009) ........................................................................................ 11

27

28

v

**INTRODUCTION**

California law, like federal law, recognizes that the rights of workers to organize and engage in collective bargaining with their employer are fundamental to a well-organized system of labor relations. Those rights are enshrined in both the National Labor Relations Act ("NLRA") and in state law. Historically, the primary avenue for most private-sector workers to assert those rights has been the National Labor Relations Board ("NLRB"). But the experience of the past several years has called into question whether the NLRB can actually and effectively perform that vital role. The NLRB has been without a quorum three times in the past 20 years—often for years at a time and including, most recently, over the past ten months—preventing it from timely issuing the decisions and orders necessary for enforcement of the law, protection of workers' rights, and channeling of labor disputes into efficient and effective fora. Even when the NLRB is operational, workers have experienced severe delays, often rendering any eventual relief meaningless to the individual workers who have been harmed. Moreover, the NLRB is at risk of losing its historical independence, frustrating its role as neutral arbiter in labor disputes. And the NLRB is facing legal challenges asserting that its structure violates the Constitution, which, if successful, could paralyze NLRB proceedings entirely.

In response to these challenges, the California Legislature enacted Assembly Bill 288. The bill allows private sector California workers to bring labor disputes to the state's Public Employee Relations Board ("PERB") if, and only if, workers are unable to rely on the NLRB for fair and prompt resolution of their cases.  Without the recourse provided by AB 288, the rights enumerated in the NLRA risk becoming dead letter. AB 288 ensures that workers will always have a forum to vindicate their labor rights.

The NLRB now seeks to enjoin AB 288 as preempted by the NLRA, and its request for an injunction should be denied. AB 288 does not conflict with the NLRA. Rather, it supplements the NLRA by providing an avenue for workers to vindicate their labor rights when the NLRB cannot fill that role. The NLRB nevertheless contends that AB 288 is preempted under *San Diego Bldg. Trades Council v. Garmon*, 359 U. S. 236, 244 (1959) and its progeny. But *Garmon* preemption should not apply in the specific circumstances under which AB 288 becomes effective. *Garmon*

preemption is founded on Congress' intent to centralize most private sector labor law adjudication in an agency that was both functional and independent. Consistent with that intent, AB 288 applies only in situations where the worker loses coverage under the NLRA due to legislative, executive, or judicial action, or where the NLRB is not fulfilling its statutory duties and either expressly or implicitly cedes jurisdiction. Under those circumstances, the principles underlying *Garmon* preemption counsel that deference to the NLRB is not warranted. The NLRB's obstacle preemption argument fails for similar reasons. Having AB 288 as a backstop to a dysfunctional NLRB does not conflict with the objectives of the NLRA.

Because AB 288 is not preempted, the NLRB cannot demonstrate that it will be irreparably harmed by AB 288's enactment. The NLRB will suffer no injury from allowing California to consider cases that the NLRB itself cannot adequately process. By contrast, enjoining AB 288 will cause significant harms to California workers who seek to remedy their unlawful working conditions by filing charges with PERB. The NLRB's motion should be denied in its entirety.

## BACKGROUND

### I.    THE NLRA AND NLRB

Congress enacted the NLRA to address "[t]he denial of some employers of the right of employees to organize," among other things. 29 U.S.C. § 151 (Findings and declaration of policy). Recognizing that "protection by law of the right of employees to organize" was beneficial to labor peace and the free flow of commerce, the NLRA sought to "encourag[e] the practice and procedure of collective bargaining" and "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing . . . ." *Id.* The protections of the NLRA extend to most private-sector employees, with certain enumerated exceptions. *See* 29 U.S.C. § 152(3).

The NLRB is the agency tasked with administering and enforcing the NLRA. The NLRB is "bifurcated" between the Board itself,[2] which exercises the NLRB's adjudicative functions, and the office of the General Counsel, which has responsibility for prosecutorial and investigatory

---

[2] This brief uses "NLRB" to refer to the agency as a whole and "the Board" to refer to the five-member entity within it, as the NLRB does.

2

1   matters. *See NLRB v. Aaron Bros. Corp.*, 563 F.2d 409, 413 (9th Cir. 1977) (per curiam). The

2   Board consists of five members appointed by the President "with the advice and consent of the

3   Senate" for staggered five-year terms. 29 U.S.C. § 153(a). Congress' intent that the Board be

4   independent is reflected in the statute, which provides that members are protected from removal

5   at-will by the President, who is authorized to move a Board member "for neglect of duty or

6   malfeasance in office, but for no other cause." *Id*. Members' duties and powers include

7   adjudicating and issuing agency decisions in unfair labor cases, 29 U.S.C. § 160(c); petitioning

8   courts for the enforcement of such orders, 29 U.S.C. § 160(e); and conducting and certifying the

9   outcome of representation elections, 29 U.S.C. § 159, among other things.

10       The Board may delegate some, but not all, of its powers to Regional Directors and

11   Administrative Law Judges ("ALJs"). *See* 29 U.S.C. §§ 153(b), 154(a), 159(b)-(c), 160(a)-(c).

12   Although ALJs initially adjudicate unfair labor practice ("ULP") charges, if parties file

13   exceptions to an ALJ's decision, the decision can have no legal effect without a Board order

14   adopting the decision. *See* 29 C.F.R. § 102.48(a)-(b); *Harris v. Bessent*, No. 25-5037, 2025 WL

15   980278, at *47 (D.C. Cir. Mar. 28, 2025), *vacated on reconsideration en banc*, No. 25-5037,

16   2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) (Millet, J., dissenting) (noting that the Board "cannot

17   delegate the authority to decide cases"). If no exceptions are filed, the ALJ's ruling automatically

18   becomes the decision of the Board. *See* 29 U.S.C.A. § 160(c).

19       The Board requires a quorum of "three or more members" to operate. *Id*. § 153(b). When

20   the Board is without a quorum, it cannot issue decisions and final orders adjudicating ULP cases.

21   *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 684 (2010); *Harris*, 2025 WL 980278 *47

22   (Millet, J., dissenting). Without a quorum, the Board also cannot rule on requests for review of

23   the decisions of Regional Directors in representation case proceedings. *See* 29 CFR § 102.182.

24   Although Regional Directors may continue to process requests and issue certifications

25   "notwithstanding the pendency of a request for review," such certifications remain "subject to

26   revision or revocation by the Board" if a request for review is filed. *See id.*

27

28

**II.    PERB**

PERB is "an expert, quasi-judicial administrative agency modeled after the National Labor Relations Board" historically tasked with enforcing collective bargaining rights for public employees in California. *Pacific Legal Foundation v. Brown*, 29 Cal.3d 168, 177 (1981). PERB's Board comprises five members that are appointed by the Governor to five-year terms. Cal. Gov't Code § 3541(a). PERB Board members may be removed by the Governor for neglect of duty or malfeasance in office, but no other cause. *Id.* PERB includes an Office of General Counsel ("OGC") responsible for reviewing ULP[3] charges, issuing complaints where appropriate, and seeking compliance with final Board orders. *See Superior Court v. Pub. Emp't Relations Bd.*, 30 Cal. App. 5th 158, 191 (2018); 8 Cal. Code Regs. § 32980(a). Although initially limited to public school employees, the agency's jurisdiction has expanded as the state legislature has enacted laws covering additional categories of public agencies, including employees of the state university system, state trial courts, and the Los Angeles County Metropolitan Transit Authority, among others. *See Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.*, 35 Cal. 4th 1072, 1085 (2005). PERB will also have jurisdiction over Transportation Network Company drivers as of January 1, 2026. *See* 2025 California Assembly Bill No. 1340, 2025 Cal. Legis. Serv. Ch. 335 (A.B. 1340) (WEST).

Like the NLRB, PERB has the authority to administer union representation proceedings and process ULPs pursuant to several of the statutes it administers. *See, e.g.*, Cal. Gov't Code § 3541.3(a-c), (i). ULP hearings are generally heard before ALJs. *See* 8 Cal. Code Regs. § 32720. ALJs issue proposed decisions that are then adopted by the Board, subject to consideration of any exceptions to the proposed decision that parties file with the Board. *See id.* at § 32305. In representation cases, PERB may hold hearings on questions raised by the petition, *see id.* at §§ 32715, 33237, order representation elections, *see id.* at § 32724, and issue certifications of representation, *see id.* at § 32750. Contested matters in representation proceedings are generally

---

[3] PERB's statutes use "unfair practice" to refer to labor law violations, as opposed to the NLRB's "unfair labor practice" nomenclature. *See, e.g.*, Cal. Gov't Code § 3514.5. For consistency, this brief will also refer to these cases as "ULPs."

4

1    heard by an OGC hearing officer or an ALJ, whose decisions are then appealable to the Board.

2    *See* Cal. Gov't Code § 3541.35; 8 Cal. Code Regs. § 32742.

3    **III.    CHALLENGES FACED BY THE NLRB**

4        **A.    Removal of Member Wilcox and Current Loss of Quorum**

5           The NLRB has been without a quorum three times within the last twenty years: 1) from

6    December 2007 until March 2010, *see New Process Steel*, 560 U.S. at 677; 2) from December

7    2011 to July 2013, *see NLRB v. Noel Canning*, 573 U.S. 513, 520 (2014) (holding that President

8    Obama's 2011 recess appointments were invalid); and 3) most recently, from January 27, 2025

9    through the present. On January 27, President Trump fired NLRB Board Member Gwynne

10   Wilcox without notice and hearing and without identifying "neglect of duty or malfeasance" on

11   Wilcox's part.  *Wilcox v. Trump*, 775 F. Supp. 3d 215, 222 (D.D.C. 2025), *hearing in banc denied*

12   *sub nom. Harris v. Bessent*, No. 25-5037, 2025 WL 1033740 (D.C. Cir. Apr. 7, 2025), *and cert.*

13   *denied before judgment*, No. 25-319, 2025 WL 2692047 (U.S. Sept. 22, 2025). The President

14   contends, contrary to tradition and precedent, that the NLRA's statutory limits on removing

15   Board members unconstitutionally infringe on executive authority. *Wilcox*, 775 F. Supp. at 226.

16   Member Wilcox sued to enjoin her removal. *Id.* at 222. Although Wilcox obtained an injunction

17   from the district court, *see id.* at 239-40, the injunction was ultimately stayed pending appeal by

18   the U.S. Supreme Court. *Trump v. Wilcox*, 145 S. Ct. 1415, 1416 (2025).

19          As a result of Wilcox's termination, the NLRB has been without a quorum for more than

20   ten months. During that time the Board has been prevented from issuing final orders in cases or

21   deciding parties' requests for review of Regional Director decisions. As of March 2025, there

22   were already "[h]undreds of cases" pending before the Board. *Harris*, 2025 WL 980278, at *97

23   (Millet, J., dissenting).

24       **B.    Constitutional Challenges to the NLRB and NLRA**

25          In recent years, several employers have sought to enjoin enforcement of the NLRA on the

26   grounds that the NLRB's structure is unconstitutional, contending that statutory protections for

27   Board members and the agency's ALJs impermissibly insulate them from presidential oversight.

28   *See*, *e.g.*, *Yapp USA Auto. Sys. v. NLRB*, 748 F. Supp. 3d 497, 502 n. 1 (2024) (collecting cases).

1          This argument recently found purchase with the Fifth Circuit, which concluded in *Space*

2    *Exploration Technologies Corp. v. NLRB* ("*SpaceX*") that the Board's removal protections were

3    unconstitutional. 151 F.4th 761, 776-778 (5th Cir. 2025). The Fifth Circuit went on to enjoin the

4    NLRB's case against SpaceX on the ground that "forcing [] [e]mployers to appear before an

5    unconstitutionally structured agency inflicts irreparable harm." *Id.* at 780. As a result of the Fifth

6    Circuit's ruling, the NLRB essentially cannot operate in Louisiana, Mississippi, or Texas,

7    denying private sector workers in those states any opportunity to vindicate their labor rights. *See*

8    *Hudson Inst. of Process Rsch. Inc. v. NLRB*, 2025 WL 2431645, at *3 (E.D. Tex. Aug. 22, 2025)

9    (enjoining NLRB proceedings against employer pursuant to *SpaceX*). The NLRB did not seek

10   Supreme Court review of the Fifth Circuit's decision. *See* Astrid Aune, *The Fifth Circuit's Latest*

11   *Labor Law Rulings Are a Gift to Elon Musk*, Balls and Strikes (Nov. 10, 2025), *available at*

12   https://perma.cc/C9SC-REMY. Despite the existential threat that these challenges pose to the

13   agency's operations, it appears that the NLRB no longer contests that its structure is

14   unconstitutional. *See SpaceX*, 51 F.4th at 776 n. 4 ("Since filing suit, the NLRB has withdrawn its

15   position as to the constitutionality of the Board-Member-and-ALJ-removal provisions."); *Red*

16   *Rock Resorts, Inc v. NLRB*, No. 2:24-cv-01966-ART-BNW, (D. Nev. Mar. 31, 2025) at Dkt. 35

17   (NLRB position letter stating it is "no longer relying on its previous arguments" that removal

18   restrictions are constitutional).

19         The NLRB faces another category of constitutional challenges, which undermine the

20   NLRB's ability to provide effective remedies to workers. These challenges contend that the

21   agency's use of monetary penalties to remedy unfair labor practices runs afoul of the Seventh

22   Amendment right to a jury trial. *See*, *e.g.*, *NLRB v. Starbucks Corp*., 2025 U.S. App. LEXIS

23   29013, *43 (6th Cir. Nov. 5, 2025); *Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39*

24   *v. NLRB*, 2025 WL 2963359, at *24 (9th Cir. Oct. 20, 2025). Citing *SEC v. Jarkesy*, 603 U.S. 109

25   (2024), the Sixth Circuit recently concluded that certain make-whole remedies the NLRB awards

26   for "direct or foreseeable pecuniary harms" resulting from a ULP resemble consequential

27   damages and thus cannot be awarded through the NLRB's administrative proceedings. *See*

28   *Starbucks Corp.* 2025 U.S. App. LEXIS 29013, *2, 43. This means that the agency, as presently

1    constituted, is prohibited from awarding workers harmed by their employers' illegal actions the

2    relief the Board itself deems necessary to make them whole.

3    **C.    Rising Caseloads and Diminished Resources**

4        In addition to the acute dangers posed by a lack of quorum and legal challenges to the

5    NLRB's structure and independence, an equally pernicious problem has arisen over time from

6    federal decisions not to fund and staff the NLRB consistent with growing need. From 2021 to

7    2024, the NLRB saw increases in its caseload every year. *See* NLRB, *Election Petitions Up 53%,*

8    *Board Continues to Reduce Case Processing Time in FY22* (Oct. 6, 2022)[4]; *Unfair Labor*

9    *Practices Charge Filings Up 10%, Union Petitions Up 3% in Fiscal Year 2023* (Oct. 13, 2023).[5]

10   Despite this increased workload, staffing in field offices has shrunk by 50% over the past two

11   decades. *Union Petitions Filed with NLRB Double Since FY 2021, Up 27% Since FY 2023* (Oct.

12   14, 2024).[6] It is therefore no surprise that charging parties and petitioners are facing long delays

13   in having their cases adjudicated. *See* Matt Breunig, *NLRB Processing Times Have Dramatically*

14   *Increased*, NLRB Edge (Mar. 6, 2024).[7]

15   **IV.    AB 288**

16       California law recognizes as "necessary" that workers "have full freedom of association,

17   self-organization, and designation of representatives of his own choosing, to negotiate the terms

18   and conditions of his employment." Cal. Lab. Code § 923.[8] To ensure that NLRB dysfunction

19   would not prevent workers from vindicating their labor rights, this year, the Legislature passed,

20   and the Governor signed, AB 288, which added Section 923.1 to the California Labor Code. The

21   law allows private sector employees to file unfair labor practice charges and petitions for

22   representation with PERB under specific circumstances. First, it allows workers to file cases with

23   PERB in the first instance if they lose coverage under the NLRA as a result of legislative,

24   executive, or judicial action. § 923.1(b)(1)(A).[9] The statute also allows workers to file charges

25       [4] *Available at* https://perma.cc/FNL3-ZQHK.
26       [5] *Available at* https://perma.cc/3EWS-4ZLN.
         [6] *Available at* https://perma.cc/MP9Z-56FT.
27       [7] *Available at* https://perma.cc/25YV-UL6H.
         [8] All statutory references are to the California Labor Code unless otherwise noted.
28       [9] AB 288 does not go into effect until January 1, 2026, so references to § 923.1 and its
     subsections reflect the California Labor Code as of that date.

1    and petitions with PERB if they have filed a case with the NLRB and the NLRB becomes

2    incapable of fairly and promptly processing the case further. Specifically, for those cases where a

3    certification of election or administrative law judge decision has been issued, or where challenges

4    or objections to a representation election are pending before the Board, a worker can file a case

5    based on the same dispute with PERB if any of the following three conditions are present: 1) the

6    Board lacks a quorum; 2) the NLRB loses its independence as a result of the Supreme Court

7    finding the Board's removal protections are unconstitutional; or 3) the processing of a case is

8    enjoined by a court based on a constitutional challenge to the NLRB's structure or authority.

9    § 923.1(b)(1)(B)(i).

10        The California legislature reasonably concluded that "the NLRB's increasing inability to

11    provide meaningful and timely relief negates the very purposes underlying the NLRA" and that

12    "[w]orkers are irreparably harmed by either being forced to abandon their efforts to improve their

13    lot, subjecting them to continued exploitation, or by being forced to find ways outside of the

14    NLRA to demand their inalienable rights[.]" AB 288 Section 1(f). To address these harms,

15    workers who have filed a charge or petition with the NLRB may file a case with PERB if their

16    NLRB case has been subject to significant processing delays, such that NLRB is deemed to have

17    ceded jurisdiction. Specifically, AB 288 applies in the following five circumstances of delay: 1) a

18    case is pending before a regional director for more than six months without issuance of a

19    complaint or certification of an election, § 923.1(b)(1)(B)(ii); 2) after a complaint has been

20    issued, a case is pending for more than six months with an ALJ decision, *id.*; 3) after a

21    certification has been issued, a case is pending for more than six months without a Board decision

22    about the certification, *id.*; 4) for cases where a party seeks review of an ALJ or regional director

23    and the Board does not accept or decline review within six months, § 923.1(b)(1)(B)(iii); and 5)

24    where a case is on review before the Board, the case remains pending for more than 12 months

25    without a final decision, § 923.1(b)(1)(B)(iv).

26        AB 288 permits PERB to investigate charges and process petitions received pursuant to AB

27    288 using the same procedures it presently uses to process cases from public-sector workers. *See*

28    § 923.1(e)(1). In PERB's adjudications, it may rely on both its own precedent as well as

8

precedent under the NLRA. § 923.1(e)(2). PERB may begin receiving charges for certain cases

that meet AB 288's statutory requirements as of January 1, 2026. *See* § 923.1(b)(1)(B).

## V.    PROCEDURAL HISTORY

California Governor Gavin Newsom signed AB 288 into law on September 30, 2025. The

following day, October 1, the Federal Government went into a "shutdown" due to a lapse in

federal appropriations. At that time NLRB ceased most operations, including nearly all case

processing. *See* NLRB, *Contingency Plan for Shutdown in the Absence of Appropriations* (Oct.

16, 2025).[10] On October 15, 2025, during the ongoing shutdown, the NLRB filed this lawsuit,

seeking to enjoin implementation of AB 288 as preempted by the NLRA. *See* Dkt. 1. The

shutdown ended on November 12, 2025, and the NLRB filed the present motion for preliminary

injunctive relief on November 19, contending that the NLRB would suffer irreparable harm if AB

288 was not enjoined before January 1, 2026. *See* Dkt. 10 (Pl's. Mot. Prelim. Inj.).

## ARGUMENT

## I.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To receive a preliminary injunction,

the NLRB must establish that it is likely to succeed on the merits of its claims, that it is likely to

suffer irreparable harm without preliminary relief, that the balance of equities tips in its favor, and

that an injunction is in the public interest. *Id*. at 20. Because the NLRB seeks to enjoin

implementation and enforcement of AB 288 in its entirety, *see* Dkt. 10-3, at 1 (NLRB's proposed

order), it must establish that no set of circumstances exists under which AB 288 would be valid to

succeed on its facial challenge to the law. *See Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104

(9th Cir. 2016) (applying this standard to facial preemption challenge).

## II.    THE NLRB'S CLAIM IS NOT LIKELY TO SUCCEED: AB 288 IS NOT PREEMPTED.

The NLRB will not succeed on the merits of its claim because AB 288 is not preempted by

the NLRA. The NLRB contends that AB 288 is preempted pursuant to *Garmon*, 359 U.S. at 236,

---

[10] *Available at* https://www.nlrb.gov/system/files/node-9943/2025-11/FINAL%20NLRB%20Lapse%20Plan%20October%2016%202025.revised.pdf.

1    or standard obstacle preemption doctrine. *Garmon* provides that states cannot regulate conduct

2    "that the NLRA protects, prohibits, or arguably protects or prohibits." *Wis. Dep't of Indus., Labor*

3    *& Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986). Obstacle preemption provides that a

4    state law is invalid if it poses an obstacle to the "purposes and objectives of Congress" in passing

5    a federal law. *Hines v. Davidowitz*, 312 U. S. 52, 67 (1941).

6          AB 288 is not preempted under either doctrine. Preemption is based on congressional

7    intent, and Congress intended the NLRB to be a functional and independent agency. AB 288

8    applies only to situations where the NLRB is not operating as Congress intended. If the NLRB

9    loses its status as a neutral arbiter or cannot function, allowing states to provide workers an

10   alternative forum furthers, rather than frustrates, Congress's intent to protect workers' rights.

**A.    In Limited Circumstances in Which the Statutory Scheme is Not
Functioning as Congress Intended, the NLRA Should Not be Given
Preemptive Effect.**

13         "[T]he question whether a certain state action is pre-empted by federal law is one of

14   congressional intent." *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992)

15   (internal quotation marks and case citations omitted). Although courts have applied *Garmon*

16   preemption broadly, it is not without limits. *See Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local*

17   *Union No. 174*, 598 U.S. 771, 776 (2023). The doctrine is, like other preemption doctrines, based

18   on the Supreme Court's attempt to discern Congress's intent in passing the law. *See Garmon*, 359

19   U.S. at 240 ("[T]he task that was thus cast upon this Court in carrying out with fidelity the

20   purposes of Congress"); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747–48 (1985)

21   (noting that in determining the NLRA's preemptive effect, "[t]he purpose of Congress is the

22   ultimate touchstone." (internal quotation marks omitted)).

23         In *Garmon*, the Court concluded that a key purpose of the NLRA was to ensure uniform

24   application of the nation's labor laws. 359 U.S. at 243. To that end, Congress sought to centralize

25   administration and adjudication of labor disputes in a "specially constituted tribunal," the NLRB.

26   *Id.* at 242. This congressional purpose also forms the basis of the NLRB's obstacle preemption

27   argument: specifically, the notion that allowing states to implement their own private sector labor

28   policies poses an obstacle to a uniform labor law administered by a centralized, functional, and

1  independent body capable of acting as a neutral arbiter of labor disputes. *See id.*; *see also Garner*

2  *v. Teamsters, Chauffeurs & Helpers Local Union,* 346 U.S. 485, 490 (1953). Thus, it can be said

3  that *Garmon* rests "on [an] implied 'obstacle' preemption analysis." Henry H. Drummonds,

4  *Beyond the Employee Free Choice Act: Unleashing the States in Labor-Management Relations*

5  *Policy*, 19 Cornell J.L. & Pub. Pol'y 83, 84 (2009). Although the NLRB frames its arguments as

6  two distinct theories, at bottom, both are based on the notion that Congress intended to centralize

7  labor adjudication in the NLRB, to the exclusion of any other fora.

8          But because the NLRB is so central to Congress's goals in enacting the NLRA—acting as

9  both a protector of workers' rights and an expert, independent tribunal—Congress's intent is

10  honored only if the NLRB fulfills its role as prescribed by the statute. If the agency at the center

11  of the NLRA is no longer functional or independent, the NLRA's carefully constructed scheme

12  breaks down. Under those circumstances, Congress could not have intended to deprive workers of

13  an alternative forum to resolve their labor disputes.

14          This reasoning finds support in a recent Fourth Circuit decision, *National Association of*

15  *Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025). That case considered whether the

16  Civil Service Reform Act (CSRA) stripped federal courts of jurisdiction to hear claims from

17  federal employees based on certain adverse personnel actions. The test for determining whether a

18  federal statute strips courts of jurisdiction—like the test for whether a federal statute preempts

19  state action—turns on congressional intent. *See id.* at 304. The appellate court explained that

20  Congress intended the CSRA to replace the existing "patchwork" of rules governing the civil

21  service and to consolidate personnel adjudications in the Merit Systems Protection Board

22  (MSPB), which was meant to serve as the exclusive forum for such disputes. *See id.* at 302, 305.

23  Accordingly, prior cases had held that jurisdiction lies only with the MSPB. *Id.* But the *Owen*

24  court concluded that in light of the MSPB's importance to the statutory scheme, to maintain

25  Congress's jurisdictional intent, the MSPB must be able to "fulfill [its] role[] prescribed by the

26  CSRA."[11]  *See id.* at 305-06.

---

27          [11] In analyzing the jurisdictional issue, the court also considered whether the "Special
Counsel" position created by the CSRA was fulfilling its statutory role. This summary focuses on
28  the court's analysis of the MSPB because it is most relevant to this case.

The Fourth Circuit then identified two reasons why the MSPB may not be fulfilling its role in the statutory scheme. First, the CSRA was enacted "for the express purpose that the merit system function and that claims be addressed adequately and efficiently." *Id.* at 305. If the MSPB was unable to fulfill that task, "the framework of the CSRA would be thwarted." *Id.* The court further noted that the MSPB was currently without a quorum so it was unclear whether "turning to the MSPB . . . would be futile." *Id.* Second, the CSRA was "designed to protect the independence" of the MSPB. *Id.* at 305-06. To that end, MSPB members were given statutory removal protections. *Id.* at 306. But the court noted that the President had recently removed two members of the MSPB without cause, in violation of the statute. *Id.* at 305. The court reasoned that Congress may have intended to vest the MSPB with exclusive jurisdiction only because "it understood that the president could not exercise unfettered control" over it. *See id.* at 306. Accordingly, the court remanded to the district court to consider "the functionality and independence of the MSPB" in determining whether Congress intended the MSPB to have exclusive jurisdiction over the plaintiff's case. *Id.* at 307-08.[12]

Although *Owen* arose in a different context, its logic is applicable here. Both cases concern whether Congress intended for a federal agency to serve as the exclusive forum for certain disputes under all circumstances. And the CSRA, like the NLRA, was meant to displace a patchwork of regulations with a uniform law administered by a single agency. Despite this, the court in *Owen* concluded that whether the MSPB's jurisdiction should remain exclusive was contingent on whether the agency was fulfilling its intended role in the statutory scheme. Similarly, it is only when the NLRB fails to operate in the manner Congress intended that AB 288 allows workers another forum. For this reason, the NLRB's argument that the NLRA has express provisions for ceding jurisdiction is unpersuasive. *See* Pl.'s Br. at 14-15. The fact that the NLRA contains explicit mechanisms for ceding jurisdiction does not mean that the NLRB should otherwise retain exclusive jurisdiction over private-sector labor disputes in all circumstances if doing so would frustrate congressional intent.

---

[12] The appellees in *Owen* sought a rehearing en banc, which the Fourth Circuit denied on November 20, 2025. *See Nat'l Ass'n of Immigr. Judges v. Owen*, No. 23-2235, 2025 LX 523487 (4th Cir. Nov. 20, 2025).

**B.    AB 288's Triggers Apply Only in Situations Where the NLRA Does Not apply or the NLRB is Not Fulfilling Its Role in the Statutory Scheme.**

AB 288 is carefully drafted to ensure that it does not infringe on the NLRB's jurisdiction. AB 288 allows workers to file with PERB only if the worker falls outside of the NLRA's statutory scheme or the NLRB is not functioning as Congress intended, which warrants providing an alternative forum. AB 288 is not preempted under either set of circumstances.

First, workers may file with PERB if they were once covered by the NLRA but lose coverage as a result of judicial or executive action. *See* § 923.1(b)(1)(A). The NLRB provides no argument why this provision of AB 288 is preempted, which is alone fatal to its facial challenge to the law. If a worker is not covered by the NLRA, their activities, by definition, do not implicate conduct that the NLRA protects or prohibits. And the NLRB identifies no obstacles that allowing these workers to be covered by PERB would pose to administration of the NLRA. It is well established that states can regulate labor relationships for workers who fall outside of the NLRA's definition of employee, such as farmworkers and public employees. *See, e.g., United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Emp. Rels. Bd.*, 669 F.2d 1249, 1256–57 (9th Cir. 1982). Allowing workers who are no longer covered by the NLRA to file charges and petitions with PERB thus does not infringe on the NLRB's jurisdiction.

Second, workers otherwise covered by the NLRA may file with PERB if they have already filed a charge or petition with the NLRB and certain conditions are met. These "triggers" apply only in situations where the NLRB is failing to operate as Congress intended. And in those situations, pursuant to the logic in *Owen*, allowing workers to pursue an alternative forum would not frustrate congressional intent. AB 288's triggers fall into two main categories: 1) triggers based on board dysfunction; and 2) triggers based on a loss of independence. As explained below, the features identified by AB 288's triggers—the NLRB's functioning and independence—are vital elements of the NLRA's statutory scheme.

**1.    Congress intended for the NLRB to function.**

If Congress intended for the NLRB to be the exclusive forum for adjudicating most private sector labor disputes, it expected that the agency would, in fact, be capable of adjudicating those

13

1   disputes. If the NLRB cannot adequately process cases and petitions, limiting workers to that

2   forum would defeat the statute's primary purpose of protecting labor rights. AB 288 has three

3   main function-based triggers that limit the law's application to situations where Congress could

4   not have meant for the NLRB to maintain exclusive jurisdiction, as discussed below.

5                       **a.    Lack of quorum**

6        Pursuant to § 932.1.(b)(1)(B)(i), workers with an existing NLRB case may file a case with

7   PERB if their NLRB matter has reached the stage where it is pending before the Board—where

8   there is a certification of the results of an election, an administrative law judge decision has been

9   issued, or there are challenges or objections to a representation election—and the Board does not

10  have a quorum. Only the Board can resolve exceptions filed in response to an ALJ decision. *See*

11  29 C.F.R. § 102.48(a)-(b); *Harris*, 2025 WL 980278, *122 (Millet, J., dissenting). And because

12  courts can enforce only final Board orders, *see* 29 U.S.C.A. § 160(e, f), when the Board lacks a

13  quorum, a party can avoid enforcement merely by filing exceptions with the Board, at which

14  point the case sits in limbo—and unlawful conduct may continue—until the Board regains a

15  quorum. For example, an employer that filed exceptions immediately after Member Wilcox was

16  removed in January 2025 would have already avoided enforcement for over ten months.

17       Similarly, only the Board may resolve challenges or objections to Regional Directors'

18  decisions in representation proceedings. *See* 29 CFR § 102.67(c). If a certification of

19  representative issues in the absence of a quorum, an employer can seek review from the Board

20  and refuse to bargain with the union on the ground that it is waiting for the Board to resolve its

21  challenges. *See id.* at § 102.182. The declarations provided by Defendant Intervenor International

22  Brotherhood of Teamsters ("Teamsters") provide an example of an employer doing exactly that.

23  *See* Terrasa Decl. ¶¶ 8-9.[13] This provision of AB 288 is designed as a backstop for cases that

24  would otherwise be stalled indefinitely because of a lack of Board quorum. Congress could not

25  have intended for all contested labor disputes to come to a standstill right before they are fully

26  resolved, leaving workers without any remedy for their employer's labor law violations.[14]

27       [13] All declarations referred to in this brief are provided by the Teamsters in its filing.
         [14] This is particularly so because Congress intended that Board members could not be

28  removed at the whim of the President, as discussed *infra* at Argument Section II(B)(2).

1    Because the quorum trigger is limited to situations where an NLRB case is pending before

2    the Board itself, the NLRB's argument that it continues to process cases through investigation and

3    hearing is inapposite. *See* Pl's. Br. at 6-7. This trigger does not allow workers to sidestep the

4    process of filing a charge with the NLRB before coming to PERB. Instead, this trigger respects

5    the NLRB's jurisdiction up until the point that the NLRB cannot continue processing the case.

6    And the NLRB's observation that it still resolves most of its cases without a final Board order

7    simply means that this trigger will apply to relatively few of the NLRB's cases.

8                     **b.    NLRB proceedings enjoined on constitutional grounds**

9        Second, also pursuant to § 932.1.(b)(1)(B)(i), workers with an existing NLRB case

10   requiring Board action may file a charge with PERB if their NLRB case has been enjoined by a

11   court based on a constitutional challenge to the Board's structure or authority. The structure and

12   powers of the NLRB are at the heart of Congress's considered scheme of labor adjudication. *See*

13   *Garner*, 346 U.S. at 490. Under any reasonable understanding of preemption doctrine, the Board

14   cannot maintain exclusive jurisdiction in circumstances in which its structure or authority are

15   deemed unconstitutional. And as a practical matter, Congress could not have intended to suspend

16   labor law enforcement while these constitutional questions are sorted out. This is especially so

17   because constitutional issues related to the structure of the entire agency are unlikely to be

18   resolved on a timeline that will allow the worker to obtain meaningful relief.

19       The NLRB contends that it "vigorously guards its jurisdiction" and that it has been "quite

20   successful" in avoiding injunctions to its proceedings on constitutional grounds. *See* Pl's Br. at

21   15-16. Thus, the argument seems to go, an order enjoining Board action on constitutional grounds

22   does not permit states to offer an alternative forum. But that argument misses the mark. First, as

23   noted above, the NLRB appears to have abandoned defending its structure as constitutional. *See*

24   *supra* at Background Section III.B. Second, even if the NLRB did guard its jurisdiction, that

25   would not change the fact that an injunction paralyzes the NLRB's proceedings, and Congress

26   could not have intended labor rights to simply fall by the wayside in that circumstance. Whether

27   the NLRB wants to retain jurisdiction is distinct from whether Congress *intended* to displace state

28   action to protect worker rights after NLRB proceedings have been enjoined. Finally, even if the

1   NLRB has had some success in avoiding injunctions, that is irrelevant to the applicability of the

2   statute, which by its plain language applies only when a proceeding is actually enjoined.

3                              c.    **Excessive delay**

4       Third, AB 288 has three triggers that allow workers to file cases with PERB if their NLRB

5   case has been subject to excessive delays, as explained in detail above. *See supra* at Background

6   Section IV. If Congress intended the NLRB to protect workers' rights at all, it must have intended

7   the NLRB to process cases on a timeline that would afford workers meaningful relief. But

8   excessive delays—be they caused by a lack of quorum, a constitutional injunction, or merely a

9   lack of resources—can mean by the time relief arrives, it is already too late.

10      The Teamsters' declarations are replete with examples. Workers terminated for their union

11  activity go for long periods without pay and are often forced to move on. Matthew Witmer has

12  been waiting on a determination in his case for over a year and a half. *See* Wittmer Decl., ¶¶ 11-

13  13. He's only recently found new employment in a different industry that pays 60% less than

14  what he was earning before. *Id.* at ¶ 15. And the delays can stymie organizing efforts altogether:

15  Union leader Alexandra Suh has been helping to organize workers with at a grocery store chain

16  for nearly three years. *See* Suh Decl. ¶ 5. But because of NLRB delays in sorting out election

17  objections and processing ULPs related to the employer's retaliation, "an overwhelming

18  majority" of the lead worker organizers no longer work there, and many remaining workers no

19  longer wish to participate in NLRB proceedings. *Id.* at ¶ 18. These delays cause irreversible

20  damage to workers' cases and prevent them from vindicating their labor rights.

21                  **2.    Congress intended that the NLRB remain an independent agency.**

22      Finally, AB 288 provides that workers with NLRB cases pending before the Board may file

23  a case with PERB if the Board has "lost its independence as a result of the Supreme Court finding

24  that National Labor Relations Board members are unconstitutionally protected from removal." §

25  923.1(b)(1)(B)(i). It is clear from the NLRA's structure and legislative history that Congress

26  considered the NLRB's independence a vital aspect of the statutory scheme. The statutory

27  protections providing that Board members may be removed only for cause show that "[t]he Board

28  was designed to be an independent panel of experts that could impartially adjudicate disputes."

                                            16

1    *Wilcox*, 775 F. Supp. at 221. The NLRA's sponsor, Senator Robert Wagner, stated that "[he]

2    cannot urge too strongly" that the NLRB "should be maintained as an independent agency" and

3    stressed the importance of a tribunal "detached from any particular administration that happens to

4    be in power[.]" NLRB, 1 Legislative History of the National Labor Relations Act, at 1427-28

5    (1949).[15] "[T]he legislative history is overwhelmingly clear that the Board's members were

6    originally expected to be impartial and strictly nonpartisan." Adrian Vermeule, *Conventions of*

7    *Agency Independence*, 113 Colum. L. Rev. 1163, 1179 (2013) (internal quotation marks and

8    citations omitted).

9        Congress therefore clearly intended to vest authority for labor law administration in an

10   *independent* NLRB. The NLRA's removal protections ensure that the NLRB will be guided by

11   expertise—a point emphasized in *Garmon* and *Garner*—as opposed to politics. Similar to *Owen*'s

12   observation about the MSP, Congress may have given the NLRB exclusive jurisdiction in labor

13   adjudication "only because it understood that the President could not exercise unfettered control"

14   over the agency. 139 F. 4th at 307. This court should follow *Owen*'s reasoning and conclude that

15   if the NLRB loses its status as an independent agency, it also loses exclusive jurisdiction over

16   labor disputes.

17       **C.    AB 288 Furthers the Goals of the NLRA by Ensuring Workers Have a
        Forum to Vindicate Their Right to Organize.**

18       Even if the Court determines that Congress did intend for the NLRB to retain exclusive

19   jurisdiction over labor adjudication in the circumstances identified by AB 288, the Court should

20   nevertheless conclude that AB 288 is not preempted pursuant to *Garmon* or obstacle preemption

21   doctrine because AB 288 furthers the NLRA's fundamental purposes. Although one goal of the

22   NLRA is uniform application of the nation's labor laws, that is not the only goal. As is made clear

23   in the findings to the Act, the statute was meant to "encourage[e] the practice and procedure of

24   collective bargaining" and "protect[] the exercise by workers of . . . self-organization . . . for the

25   purposes of negotiating terms and conditions of their employment or other mutual aid or

26   protection." 29 U.S.C. § 151. Precedent suggests that the NLRA's policy of uniform

27
     _____

28       [15] A digital scan of the legislative history is available at
     *https://books.google.com/books?id=NC32xgEACAAJ&pg.*

1    administration was also intended to further that goal: "[T]he greatest threat against which the

2    *Garmon* doctrine guards" is not regulatory conflict for its own sake but rather "a state's

3    prohibition of activity that the [NLRA] indicates must remain unhampered." *Hanna Min. Co. v.*

4    *Dist. 2, Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 382 U.S. 181, 193 (1965).

5         Congress's interest in uniform adjudication should not outweigh the NLRA's more

6    fundamental purpose of protecting the right to organize. The NLRB has faced ongoing challenges

7    that have severely hampered its ability to operate. *See supra* at Background Section III.C. And

8    regardless of what those challenges mean for the technical scope of the NLRB's jurisdiction, it is

9    clear that those challenges have prevented, and will prevent, workers from effectively vindicating

10   their rights. Those challenges also endanger the system of dispute resolution that has, for almost a

11   century, largely avoided the widespread economic disruption and violence that plagued labor

12   relations in the late-19th and early 20th centuries. AB 288 means to answer those challenges by

13   making it easier for workers to vindicate those same rights in another forum. *See* AB 288, Section

14   1(k). AB 288 does not implicate the "greatest threat against which the *Garmon* doctrine guards"

15   because it does not prohibit protected activity; rather, it *encourages* protected activity by

16   strengthening enforcement in situations where the NLRB's hands are otherwise tied. In that way,

17   AB 288 furthers, rather than frustrates, Congress's intent behind the NLRA.

18        Thus, the NLRB's argument that AB 288's divergent remedies for labor law violations will

19   interfere with the enforcement of national labor law, see Pl.'s Br. At 14, is unpersuasive. If the

20   NLRB is paralyzed, providing workers alternative remedies through PERB furthers the purposes

21   of the NLRA more effectively than providing no remedies at all. AB 288 therefore serves

22   Congress's intent when the NLRB cannot adequately protect the rights enshrined in the NLRA.

23        **D.    The Decision Enjoining a Similar New York Law is Inapposite.**

24        On November 26, 2025, the U.S. District Court for the Eastern District of New York

25   preliminarily enjoined New York state's amendment to its State Employment Relations Act

26   ("SERA"), which gives the state's Public Employment Relations Board ("PERB") authority to

27   accept cases from private-sector workers, as preempted by the NLRA. *See Amazon.com Services*

28   *LLC v. New York State Public Employment Relations Board*, No. 1:25-CV-5311 (E.D.N.Y. Nov.

1    26, 2025). That decision is distinguishable. New York's SERA amendment, unlike AB 288,

2    allows private sector workers to file with New York's PERB under *any* circumstance. AB 288, by

3    contrast, applies only in limited situations where the NLRB should be considered to have ceded

4    its exclusive jurisdiction because it is no longer able to protect workers' fundamental labor rights.

5    To the extent that the court there suggests that there are no exceptions to Congress's implied grant

6    of exclusive jurisdiction to the NLRB, the State respectfully submits that the Fourth Circuit's

7    logic in *Owen* is more persuasive, as discussed at length *supra* at Argument, II.A.

8         **E.    In the Alternative, the Court Should Consider AB 288's Severability
             Clause.**

9
10        AB 288 includes a severability clause which provides that if any provision of the act is held

11    invalid, that invalidity "shall not affect other provisions or applications" of the law. For the

12    reasons explained above, this Court should conclude that no provision of AB 288 is preempted.

13    But if the Court concludes that certain provisions of AB 288 are preempted, such a finding does

14    not warrant enjoining the entire law. Under California law, the presence of a severability clause

15    "establishes a presumption" that "the invalid portions of a statute can be severed," *Cal.*

16    *Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 270 (2011). Thus, any injunction, if issued,

17    should be tailored to the specific provisions held to be preempted. *See Right to Life of Cent. Cal.*

18    *v. Bonta*, 562 F. Supp. 3d 947, 967 (E.D. Cal. 2021).

19    **III.    THE NLRB HAS NOT MET THE OTHER *WINTER* FACTORS.**

20        Contrary to its assertions, the NLRB will not be irreparably harmed by AB 288 taking

21    effect while this litigation continues. The most significant potential harm that the NLRB identifies

22    is a de facto harm it will suffer from an alleged violation of the Supremacy Clause, citing *United*

23    *States v. California*, 921 F.3d 865, 893 (9th Cir. 2019). But because AB 288 does *not* violate the

24    Supremacy Clause, for the reasons explained above, that harm is not present here. And even so,

25    the case cited by the NLRB suggests that a "general pronouncement[] [of] a Supremacy Clause

26    violation alone" is not necessarily sufficient to warrant an injunction. *See id.* (noting the U.S. "did

27    not present compelling evidence" that its operations were harmed by the state statute at issue.).

28

19

1    Here, the NLRB has not presented evidence that its operations will be harmed by AB 288

2    taking effect. "Speculative injury does not constitute irreparable injury sufficient to warrant

3    granting a preliminary injunction." *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674

4    (9th Cir. 1988). Although the NLRB contends that cases may be filed with PERB pursuant to AB

5    288 after the statute goes into effect, *see* Pl's. Br. at 17-18, the alleged harms caused by those

6    filings are speculative. The NLRB cannot show that any cases filed pursuant to AB 288 will lead

7    to "chaotic and unpredictable labor relations," *see id.* at 19, when AB 288's scope is limited to

8    cases that the NLRB cannot further adjudicate or that have already been subject to severe delays.

9    Finally, the NLRB contends that workers may miss out on their opportunity to file cases

10    with the NLRB while their cases are pending with PERB. But nearly all of AB 288's triggers

11    require a worker to file with the NLRB prior to filing a case with PERB. *See supra*, Background

12    Section IV. The provision allowing workers to file with PERB in the first instance applies only to

13    workers who have lost coverage under the NLRA, *see* § 923.1(b)(1)(A); they cannot be harmed

14    by not filing with the NLRB. In any event, the irreparable harm analysis should focus on the party

15    seeking injunctive relief, not speculative harm to third parties. *Winter*, 555 U.S. at 20-21.

16    In contrast to the NLRB, California, its workers, and its businesses will suffer significant

17    harms if AB 288 is enjoined. California suffers an irreparable injury "whenever an enactment of

18    its people or their representatives are enjoined." *Coal. For Econ. Equity v. Wilson*, 122 F.3d 718,

19    719 (9th Cir. 1997). And it is established in California law that the state has an interest in

20    ensuring its workers can freely and fully exercise their labor rights. *See* § 923. If AB 288 is

21    enjoined, California workers who have been unable to vindicate their rights before the Board will

22    be prevented from taking advantage of AB 288's alternative forum and experience further delays.

23    At a minimum, the balance of hardships does not tilt "sharply" in favor of the NLRB; its

24    contention that it is entitled to an injunction so long as there are "serious questions going to the

25    merits," *see All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134 (9th Cir. 2011), should be

26    rejected.

27    ### CONCLUSION

28    This Court should deny the NLRB's motion for preliminary injunction in its entirety.

Dated:  December 3, 2025                         Respectfully submitted,

                                                ROB BONTA
                                                Attorney General of California
                                                LARA HADDAD
                                                Supervising Deputy Attorney General


                                                /s/ Joe Meeker
                                                JOSEPH H. MEEKER
                                                Deputy Attorney General
                                                *Attorneys for Defendants*
                                                *Labor and Workforce Development Agency*

21

# CERTIFICATE OF SERVICE

Case Name:    **National Labor Relations Board v.**    Case No.    **2:25-cv-02979**
**State of California, Public**
**Employment Relations Board**

I hereby certify that on <u>December 3, 2025,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT STATE OF CALIFORNIA'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on

<u>December 3, 2025,</u> at Los Angeles, California.


_____          _____
Linda Zamora                                      /s/ Linda Zamora
Declarant                                              Signature

SA2025305615
68108236