NANCY E. KESSLER PLATT (D.C. Bar No. 425995)
*Associate General Counsel*
Nancy.Platt@nlrb.gov

DAWN L. GOLDSTEIN (MA Bar No. 600181)
*Deputy Associate General Counsel*
Dawn.Goldstein@nlrb.gov

CHAD A. WALLACE (D.C. Bar No. 1601387)
*Trial Attorney*
Chad.Wallace@nlrb.gov

**NATIONAL LABOR RELATIONS BOARD**
1015 HALF STREET, SE, 4TH FLOOR
WASHINGTON, DC 20570
TELEPHONE: (202) 273-2489
FAX: (202) 273-4244

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>Defendants,<br><br>and<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>Intervenor. | Case No. 2:25−CV−02979−TLN−CKD<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' AND INTERVENOR'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Troy L. Nunley<br>Date: December 17, 2025<br>Time: 10:00 a.m.<br>Courtroom: 2 |

**THIS SPACE INTENTIONALLY LEFT BLANK**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

    A.   The NLRA Is the Supreme Law of the Land Governing Private Sector Labor Relations and the NLRB Is therefore Likely to Succeed on the Merits of its Claim that AB 288 Is Preempted........................................................................................................................ 1

        1.   Supreme Court precedent finding that the NLRA broadly preempts state laws purporting to regulate activity governed by Sections 7, 8, and 9, dictates that AB 288 is preempted ..................................................................................................................... 2

        2.   No set of external circumstances divests the NLRB of exclusive jurisdiction ................ 4

        3.   The NLRB has not ceded or declined jurisdiction under Sections 10(a) or 14(c) .......... 6

        4.   AB 288 is an obstacle to the Board's administration of the Act...................................... 7

        5.   The NLRB's facial challenge sufficiently addressed AB 288 ......................................... 8

    B.   The NLRB Is Likely to Suffer Irreparable Harm in the Absence of an Injunction ............. 9

    C.   Balance of Equities and Public Interest Favor Injunctive Relief...................................... 10

CONCLUSION........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
  107 F.4th 934 (9th Cir. 2024) ................................................................................................. 8
*Amazon.com Servs., LLC, v. N.Y. State Pub. Emp't Rels. Bd.,* ,
  2025 WL 3295071, at *3 (E.D.N.Y. Nov. 26, 2025) .......................................................... 4, 5, 9
*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................................................. 10
*Beasley v. Food Fair of N.C., Inc.*,
  416 U.S. 653 (1974) ............................................................................................................... 8
*Bethlehem Steel Co. v. New York State Labor Relations Bd.*,
  330 U.S. 767 (1947) ............................................................................................................ 3, 7
*Boling v. PERB*,
  422 P.3d 552 (Cal. 2018) ..................................................................................................... 10
*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ............................................................................................................... 9
*Charles Dowd Box Co. v. Courtney*,
  368 U.S. 502 (1962) ............................................................................................................... 4
*Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*,
  346 U.S. 485 (1953) ................................................................................................... 2, 3, 4, 10
*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*,
  598 U.S. 771 (2023) ............................................................................................................ 3, 4
*Guss v. Utah Lab. Rels. Bd.*,
  353 U.S. 1 (1957) ................................................................................................................ 2, 3
*H.K. Porter Co. v. NLRB*,
  397 U.S. 99 (1970) ................................................................................................................. 7
*Hines v. Davidowitz*,
  312 U.S. 52 (1941) ................................................................................................................. 7
*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.* Liab. Litig.,
  959 F.3d 1201 (9th Cir. 2020) ................................................................................................ 7
*Int'l Longshoremen's Ass'n v. Davis*,
  476 U.S. 380 (1986) ............................................................................................................... 4
*Kurns v. R.R. Friction Prods. Corp.*,
  565 U.S. 625 (2012) ............................................................................................................... 1
*L.A. Cty. Bar Ass'n v. Eu*,
  979 F.2d 697 (9th Cir. 1992) ............................................................................................... 10
*Linn v. United Plant Guard Workers, Loc. 114*,
  383 U.S. 53 (1966) ................................................................................................................. 3
*Mallory v. Norfolk S. Ry. Co.*,
  600 U.S. 122 (2023) ............................................................................................................... 1
*Med. Ass'n v. Knudsen*,
  119 F.4th 618 (9th Cir. 2024) ................................................................................................ 8
*Metro. Milwaukee Ass'n of Com. v. Milwaukee Cty.*,
  431 F.3d 277 (7th Cir. 2005) ................................................................................................. 7
*Murphy Oil USA, Inc. v. NLRB*,
  808 F.3d 1013 (5th Cir. 2015) ............................................................................................... 5

REPLY TO OPPOSITION TO PRELIMINARY INJUNCTION

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  584 U.S. 453 (2018) .................................................................................................................. 9
*National Ass'n of Immigr. Judges v. Owen*,
   139 F.4th 293 (4th Cir. 2025) .................................................................................................. 6
*NLRB v. American National Insurance Co.*,
  343 U.S. 395 (1952) .................................................................................................................. 7
*NLRB v. Cal. Horse Racing Bd.*,
  940 F.2d 536 (9th Cir. 1991) .................................................................................................... 6
*NLRB v. Comm. of Interns & Residents*,
  566 F.2d 810 (2d Cir. 1977) ................................................................................................. 7, 9
*Redd-I, Inc.*,
  290 NLRB 1115 (1988) .......................................................................................................... 10
*San Diego Bldg. Trades Council v. Garmon*,
  359 U.S. 236 (1959) ......................................................................................................... 1, 3, 4
*Sears, Roebuck & Co. v. S.D. Cty. Dist. Council of Carpenters*,
  436 U.S. 180 (1978) .................................................................................................................. 3
*Seila L. LLC v. CFPB*,
  591 U.S. 197 (2020) .................................................................................................................. 5
*Space Expl. Techs. Corp. v. NLRB*,
  151 F.4th 761 (5th Cir. 2025) ................................................................................................... 5
*Spring Creek Rehab. & Nursing Ctr. v. NLRB*,
  No. 24-3043, 2025 WL 3467537 (3d Cir. Dec. 3, 2025) .......................................................... 5
*United Constr. Workers v. Laburnum Constr. Corp.*,
  347 U.S. 656 (1954) .................................................................................................................. 3
*United Farm Workers v. Ariz. Agric. Emp't Rels. Bd.*,
  669 F.2d 1249 (9th Cir. 1982) .................................................................................................. 8
*Wisconsin Cent. Ltd. v. United States*,
  585 U.S. 274 (2018) .................................................................................................................. 1
*Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
  475 U.S. 282 (1986) ........................................................................................................... 2, 10

Statutes

29 U.S.C. § 101 ............................................................................................................................... 5
29 U.S.C. § 160(a) .......................................................................................................................... 6
29 U.S.C. § 160(b) ........................................................................................................................ 10
29 U.S.C. § 160(f) ........................................................................................................................... 5
29 U.S.C. § 164(b) .......................................................................................................................... 4
29 U.S.C. § 164(c) .......................................................................................................................... 6
29 U.S.C. § 166 ............................................................................................................................... 5
29 U.S.C. § 185 ............................................................................................................................... 4
29 U.S.C. §§ 141–197 ..................................................................................................................... 4
California Assembly Bill No. 288 ........................................................................................... passim
Cal. Lab. Code § 923.1(b)(1)(B)(i)–(iv) ......................................................................................... 5
Cal. Lab. Code § 923.1(e)(1)(D) .................................................................................................... 7

Regulations

29 C.F.R. § 103.3 ............................................................................................................................ 6

# INTRODUCTION

No party here disputes that California Assembly Bill No. 288, 2025 Cal. Legis. Serv. Ch. 139 (A.B. 288) (WEST) (AB 288) covers activity that is also subject to Sections 7, 8, and 9 of the National Labor Relations Act (NLRA or Act). Instead, Defendants, the State of California and the Public Employment Relations Board (PERB) (collectively California), erroneously assert that "*Garmon* preemption should not apply in the specific circumstances under which AB 288 becomes effective," (CA Br. 1, ECF 17).[1] *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). Intervenor, the International Brotherhood of Teamsters (IBT), puts forth the faulty argument not only that the application of *Garmon* requires a "functioning, independent NLRB," (IBT Br. 1, ECF 16), but that "*Garmon*'s inconsistency with standard preemption principles" means that *Garmon* should not be applied here. *Id.* These invitations to ignore long-standing Supreme Court precedent should be declined, in view of that Court's "prerogative of overruling its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023). Nor should this Court come up with new exceptions based on the alleged "triggers" contained in AB 288. A statute's meaning does not change based on later circumstances. *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). Critically, principles of *stare decisis* apply with "special force" to statutory interpretation, as Congress can correct any erroneous Supreme Court decision. *See Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 633 (2012).

# ARGUMENT

**A. The NLRA Is the Supreme Law of the Land Governing Private Sector Labor Relations and the NLRB Is therefore Likely to Succeed on the Merits of its Claim that AB 288 Is Preempted**

---

[1] Page references to Defendants' joint opposition memorandum will be referred to as "CA Br. [page no.]." Page references to Intervenor's opposition memorandum will be referred to as "IBT Br. [page no.]." Plaintiff's opening memorandum will be referred to as "NLRB Br. [page no.]."

1

PLAINTIFF'S REPLY TO OPPOSITION TO PRELIMINARY INJUNCTION

1. Supreme Court precedent finding that the NLRA broadly preempts state laws purporting to regulate activity governed by Sections 7, 8, and 9, dictates that AB 288 is preempted

*Garmon*, its forebears, and its progeny, unequivocally control the instant matter. *Garner* made clear that in passing the Act, Congress sought national uniformity that state entities cannot provide. *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 493–94 (1953). *Guss* reminds that Congress's power regarding interstate commerce is "plenary," and with the Act, it "has expressed its judgment in favor of uniformity"; whatever policy results from that judgment—including a potential "no-man's land"—only Congress may change the federal scheme. *Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1, 10–11 (1957). *Gould* again emphasized the danger of states attempting to regulate the same activity already regulated by the federal government. *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 288–89 (1986). Accordingly, unless AB 288 is enjoined, "nothing prevents other States from taking similar action against labor law violators," which will detract "from the integrated scheme of regulation created by Congress." *Id.* (internal quotations omitted).[2]

The sharp turns and double-backs California and IBT attempt to weave fail to circumvent Supreme Court precedent demanding that AB 288 be found preempted. California and IBT essentially admit that *Garmon* normally preempts state efforts to regulate private sector labor relations, but argue *Garmon* should not apply to AB 288 because of what they allege to be a "dysfunctional NLRB," which purportedly conflicts with Congress's intent. (CA Br. 2, 10–11; IBT Br. 1, 5–6.) However, arguments based on guesses as to what Congress "could" or "could not" have wanted (CA Br. 11, 14, 15) are a baseless and unworkable way to read a statutory text.

---

[2] It is of no moment that in situations where *Garmon* does not apply, states may impose their own enforcement methods and remedies on labor conduct (IBT Br. 14–15). Hypothetical musings on a world without *Garmon* are beside the point. Rather, without faithfully applying *Garmon*, states with a variety of attitudes toward labor disputes are apt to enact laws enshrining their own disparate policy preferences.

But even assuming the NLRB is not operating in the manner intended by Congress, it is nonetheless clear that Congress did not intend for states to usurp federal authority. *Guss*, 353 U.S. at 10 (rejecting notion that dormant or unexercised federal statutory power allows states to act, citing *Bethlehem Steel Co. v. New York State Labor Relations Bd.*, 330 U.S. 767, 775 (1947)). Congress's clear intent, as demonstrated by the Act's text and Supreme Court precedent, is that Congress desired a single national labor policy carried out solely by the NLRB. *See, e.g.*, *Garner*, 346 U.S. at 493–94. California asks this Court to do something it lacks power to do—ignore Supreme Court precedent because AB 288 allegedly furthers the Act's purposes. (CA Br. 17.)

AB 288's "triggers" seek to establish exceptions to preemption, but *Garmon* and its progeny provide the only non-statutory exceptions to exclusive federal jurisdiction. *Garmon*, 359 U.S. at 243–44. The tort cases relied on by IBT (IBT Br. 14–15) fall within the familiar preemption exceptions for activity of "merely peripheral concern" to the Act, interests "deeply rooted in local feeling and responsibility," *id*; *see United Constr. Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 658 (1954) (threats of violence); *Linn v. United Plant Guard Workers, Loc. 114*, 383 U.S. 53, 60–61 (1966) (malicious defamation); or when a party lacks a reasonable opportunity to invoke the Board's jurisdiction, *see Sears, Roebuck & Co. v. S.D. Cty. Dist. Council of Carpenters*, 436 U.S. 180, 182–83, 188 (1978) (trespass). Importantly, none of these cases grant permission for a state to wholly regulate private sector labor relations within its borders whenever the Board lacks a quorum or fails to resolve cases with sufficient speed.

Nor does *Glacier*, which dealt with alleged malicious destruction of property, defeat *Garmon* preemption. *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 777 n.1 (2023). Rather than creating a "new exception" (IBT Br. 11, 17), *Glacier* merely found that taking the allegations of the state court complaint as true, the union had failed to put forth sufficient evidence to enable the court to find that the NLRA arguably protected the drivers'

conduct. *Id.* at 779 (citing *Int'l Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 395 (1986)). Thus, *Glacier* was a plain vanilla application of *Garmon*'s familiar rule that activity must be arguably protected or arguably prohibited before it may be considered preempted. *Id.* at 779–82.

Despite IBT's proclamations otherwise (IBT Br. 16–18), wholesale concurrent federal-state jurisdiction over private sector labor relations does not exist. *See Garner*, 346 U.S. at 501 ("Congress, in enacting [the Act], can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit."); *see also Garmon*, 359 U.S. at 244. Had Congress wanted to more heavily involve states, it knew how to do so. The Labor Management Relations Act of 1947, Pub. L. No. 80-101, 61 Stat. 136 (codified as amended at 29 U.S.C. §§ 141–197), kept the NLRB's exclusive jurisdiction over labor policy but added Section 14(b) to the Act, which made clear that states could pass so-called "right to work" laws. 29 U.S.C. § 164(b). Further, in Section 301, it extended jurisdiction in suits to enforce collective-bargaining agreements to "any district court of the United States having jurisdiction of the parties," 29 U.S.C. § 185, which was also extended to state courts. *See Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–08 (1962). Thus, Congress could have provided states with additional authority in 1947, or in later decades, but has left the NLRB's exclusive jurisdiction in place.

2. No set of external circumstances divests the NLRB of exclusive jurisdiction

AB 288's "triggers" do not justify intruding upon the NLRB's exclusive jurisdiction. California's view of *Garmon* preemption risks profound labor relations instability, as the NLRA's exclusive jurisdiction could toggle on or off based on states' own views of whether the NLRA is operating as Congress intended. Indeed, "lower courts cannot and will not invent an exception to Supreme Court doctrine." *Amazon.com Servs., LLC, v. N.Y. State Pub. Emp't Rels. Bd.*, No. 25-CV-5311(EK)(MMH), 2025 WL 3295071, at *3 (E.D.N.Y. Nov. 26, 2025).[3]

---

[3] The district court's *Amazon.com* decision is not meaningfully distinguishable (CA Br. 19). While the

As to delay, Congress did not supply deadlines for the NLRB to process its cases. California is not entitled to unilaterally set time limits for NLRB case processing actions. *See* Cal. Lab. Code § 923.1(b)(1)(B)(i)–(iv). Nor does any alleged loss of NLRB independence justify AB 288. The Supreme Court has repeatedly held that an agency head's unconstitutional removal protection does not invalidate an entire statutory scheme. *E.g.*, *Seila L. LLC* v. *CFPB*, 591 U.S. 197, 236–37 (2020). In fact, Congress expressly provided for NLRA severability in 29 U.S.C. § 166. Additionally, as previously explained (NLRB Br. 15–16, ECF 10-1), a court-ordered injunction, entered over the Board's objections, in no way indicates assent to California's assertion of jurisdiction over a labor dispute. Most recently, the Third Circuit found, consistent with many district court cases, that it lacked jurisdiction to enjoin a ULP case under the Norris-LaGuardia Act, 29 U.S.C. § 101, and explained in detail its disagreement with the Fifth Circuit's contrary holding in *SpaceX*.[4] *See Spring Creek Rehab. & Nursing Ctr. v. NLRB*, No. 24-3043, 2025 WL 3467537, at **3–6 (3d Cir. Dec. 3, 2025).[5] And, as also explained (NLRB Br. 16), the current lack of a Board quorum does not alter the preemption analysis, where the Act itself anticipates periods when no quorum exists.[6] In short, California's desire to regulate private sector labor relations does not translate into the NLRB's loss of exclusive jurisdiction.

---

New York statute lacked a trigger, the court there nonetheless rejected the state's reliance on the lack of a Board quorum and potential loss of independence to justify its statute. 2025 WL 3295071, at *3–4.

[4] *Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 772–73 (5th Cir. 2025). Based on the severability principles mentioned above, the preliminary injunctions affirmed in *SpaceX* ought to expire once the district courts reach final judgment. *See* NLRB Br. 16 n.13.

[5] Although recent circuit court decisions reviewing final Board orders have sometimes found certain remedies to be outside of the NLRA's remedial authority (CA Br. 6–7), such decisions are simply part of the normal course of review under Section 10(f), 29 U.S.C. § 160(f). *See Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1018 (5th Cir. 2015) (noting that the Board's non-acquiescence policy is premised upon a wide choice of venue for petitions for review). The fact that courts sometimes disagree with the Board's rulings provides no basis for overturning *Garmon*.

[6] We note that it appears that restoration of a Board quorum is imminent. Text - S.Res.532 - 119th Congress (2025-2026) (embedded link, last visited Dec. 10, 2025).

The Fourth Circuit's decision in *Owen* does not support AB 288's attempted usurpation of jurisdiction here. (CA Br. 11–12, 17; IBT 5–6, 9.) *National Ass'n of Immigr. Judges v. Owen,* 139 F.4th 293 (4th Cir. 2025).[7] *Owen* held that the question of district court jurisdiction turns on a factual analysis of whether the Civil Service Reform Act's administrative regime, as adjudicated by the Merit Systems Protection Board, is being implemented "as Congress intended," but cited no supporting authority for its novel and erroneous view. *Id.* at 307. Following *Owen*'s faulty logic would fracture Congress's unquestionable desire for a single labor policy into 50 pieces.

3. The NLRB has not ceded or declined jurisdiction under Sections 10(a) or 14(c)

As explained previously (NLRB Br. 14–16), Sections 10(a) and 14(c) of the Act contain explicit mechanisms by which the NLRB may cede or decline federal jurisdiction. 29 U.S.C. §§ 160(a), 164(c). The NLRB has never exercised its Section 10(a) authority to cede jurisdiction and has done so under 14(c) only regarding horseracing and dogracing. 29 C.F.R. § 103.3. In response, California argues that because the Act contains mechanisms for ceding jurisdiction, that somehow means the NLRB does not retain exclusive jurisdiction over private-sector labor disputes "if doing so would frustrate congressional intent." (CA Br. 12.) But this is simply a reprise of California and IBT's unconvincing argument that a change in circumstances can change the meaning of a statute. IBT notes that both Sections 10(a) and 14(c) were enacted in response to the Supreme Court's *Guss* and *Garmon* decisions finding certain state actions preempted by the NLRA. (IBT Br. 17). Both ignore that Congress reacted to those two decisions by allowing states to play a carefully delineated role, and conditioned states' involvement on the NLRB's explicit consent. *See NLRB v. Cal. Horse Racing Bd.*, 940 F.2d 536, 538 (9th Cir. 1991) ("[T]he Board's discretionary power, granted by section 14(c)(1), to decline jurisdiction over a class or category

---

[7] Notably, the Supreme Court has administratively stayed the Fourth Circuit's mandate in *Owen*. *Sub nom. Margolin v. Nat'l Ass'n of Immigration Judges,* Case No. 25A662 (Dec. 5, 2025).

6

PLAINTIFF'S REPLY TO OPPOSITION TO PRELIMINARY INJUNCTION

of employers is a matter of administrative policy within the Board's discretion . . . .") (citation modified); *NLRB v. Comm. of Interns & Residents*, 566 F.2d 810, 813 (2d Cir. 1977). It would be a peculiar textual reading to ignore Congress's chosen methods of declining jurisdiction, and instead find that the Board's failure to utilize Sections 10(a) and 14(c), in the way desired by California, means that California can deem the Board to have done so.

    4. AB 288 is an obstacle to the Board's administration of the Act

  By openly seeking to regulate the same activities already regulated by the NLRA, AB 288 poses an obstacle to the Board's administration of federal labor regulation. IBT implies that conflict preemption is focused solely on circumstances where it is impossible to comply with both federal and state law (IBT Br. 19), but ignores that state laws which stand as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress are likewise preempted. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020). In *Bethlehem Steel*, the Supreme Court found New York's attempted regulation of the labor relations of supervisors (prior to their statutory exclusion from bargaining in the Taft-Hartley Act) was preempted, because state regulation constituted "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." 330 U.S. at 773 (citation modified).[8] As the Ninth Circuit acknowledges, "*Garmon* and its progeny" create "a presumption of federal pre-emption … designed to prevent conflict in its broadest sense with the complex and interrelated federal scheme of law, remedy, and administration of the [NLRA]." *Volkswagen*, 959 F.3d. at

---

[8] One example of AB 288's obstacle to federal law is that PERB may order parties to submit to binding arbitration to complete a collective-bargaining agreement after more than six months of negotiations. Cal. Lab. Code § 923.1(e)(1)(D). Despite IBT's contrary assertion (IBT Br. 16), the clear import of *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 102 (1970), and *NLRB v. American National Insurance Co.*, 343 U.S. 395, 404 (1952), is that no entity, state or federal, may require parties by regulation to reach a collective-bargaining agreement. *See Metro. Milwaukee Ass'n of Com. v. Milwaukee Cty.*, 431 F.3d 277, 280 (7th Cir. 2005) (finding preempted ordinance requiring certain contractors to enter into labor peace agreements).

1223 (cleaned up). AB 288's attempt to regulate the exact same labor disputes already under federal jurisdiction is precisely the type of obstacle to federal law forbidden by *Hines* and *Bethlehem Steel*.

### 5. The NLRB's facial challenge sufficiently addressed AB 288

California claims that the NLRB has provided no argument as to Section 923.1(b)(1)(A), which applies to an NLRB-covered worker when such worker "lose[s] coverage" if the NLRA is "repealed, narrowed, or its enforcement enjoined in a case involving that worker, whether through legislative, executive, or judicial action." (CA Br. 13.)[9] Much of what is in Section 923.1(b)(1)(A), however, overlaps with Section 923.1(b)(1)(B)(i), which the NLRB specifically addressed (NLRB Br. 15–16), including its assertion of state jurisdiction where enforcement of the NLRA is "enjoined in a case involving that worker." As to AB 288's application if the NLRA is "repealed," the NLRB need not dispute this truism; if there is no longer an Act, there is no federal regulation of labor relations to preempt state law.

And the NLRA's "narrowing" by Congress could occur in two distinct ways. First, certain workers may be omitted from the reach of the Act because Congress does not want to set a nationwide policy (e.g., agricultural workers, whose labor relations states may regulate, *United Farm Workers v. Ariz. Agric. Emp't Rels. Bd.*, 669 F.2d 1249, 1257 (9th Cir. 1982)). In that case, AB 288 is again merely a tautology, providing nothing beyond what would operate in its absence. But if Congress chooses to exclude a group of workers from the Act because it desires a nationwide policy withholding collective-bargaining rights from that classification (e.g., supervisors, *see Beasley v. Food Fair of N.C., Inc.*, 416 U.S. 653, 657–62 (1974)), then obstacle

---

[9] The NLRB has demonstrated that AB 288 is invalid in all its applications, *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 938–39 (9th Cir. 2024). It reserves the right to argue, however, that this standard is inappropriately applied to facial challenges based on obstacle preemption. *See Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 631–34 (9th Cir. 2024) (McKeown, J., concurring).

preemption requires states to be excluded from regulating in that area. So this portion of 923.1(b)(1)(A) is either meaningless or preempted as the NLRB has already described.

Finally, if the Board, or courts reviewing final Board orders, narrows the Act and excludes certain workers, that common law construction of the Act's scope does not permit states to step into the breach. In *NLRB v. Committee of Interns & Residents*, the court found that the Board's determination to exclude medical interns and residents from the coverage of the Act "prevent[ed] the states from granting collective bargaining rights" to those same workers. 566 F.2d at 813. As the Second Circuit explained, a contrary holding would "have a number of damaging effects," primarily, "the introduction of disparity in a labor policy designed to be national in scope." *Id.* at 815–16. Thus, the entirety of Section 923.1(b)(1)(A) is either without legal effect or within the scope of the Board's preemption argument.[10]

### B. The NLRB Is Likely to Suffer Irreparable Harm in the Absence of an Injunction

The NLRB has sufficiently demonstrated harm from AB 288's attempted intrusion upon its jurisdiction to justify a preliminary injunction here. (NLRB Br. 16–19.) Although California asserts that "AB 288's scope is limited to cases that the NLRB cannot further adjudicate or that have already been subject to severe delays" (CA Br. 20), it is unclear whether that reading of Section 923.1(b)(1)(B)(i) is correct, *see* NLRB Br. 8 n.10, since it appears that the provision could permit a charge or petition to be filed any time the Board lacks a quorum or the Supreme Court has ruled Board member tenure protection unconstitutional. California's construction of this provision is a mere litigation position, *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212 (1988), as only PERB possesses the authority to interpret California labor laws in the context of

---

[10] IBT asserts that the Tenth Amendment bars preempting AB 288 because the NLRB no longer "meaningfully achieve[s] the purpose for which it was passed," citing *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477–79 (2018) (IBT Br. 18–19). But the law at issue there could not be understood "as anything other than a direct command to the States," meaning it was not a valid form of preemption, *id*. at 479–80, and no such command exists here. *See Amazon*, 2025 WL 3295071, at *4.

adjudications. *See Boling v. PERB*, 422 P.3d 552, 561 (Cal. 2018).

But even if AB 288 were properly interpreted so that PERB could adjudicate only those cases already pending in front of the Board, such an interpretation only serves to make the threat of irreparable harm through conflicting decisions all the more apparent. *See Gould*, 475 U.S. at 285 ("[C]onflict is imminent" whenever "two separate remedies are brought to bear on the same activity") (quoting *Garner*, 346 U.S. at 498–99). And IBT's assertion that the Board is in no danger of suffering irreparable harm because the NLRB will not reach any reasonably imminent resolution (IBT Br. 19), emphasizes the point that, regardless of whether PERB reaches the same result in a particular dispute as the Board, this is not the system intended by Congress. *See Arizona v. United States*, 567 U.S. 387, 406 (2012) ("Conflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy.") (citation modified).[11]

### C. Balance of Equities and Public Interest Favor Injunctive Relief

As the NLRB argued (NLRB Br. 19–20), the balance of hardships tips sharply in its favor, because Congress has decided that states have no interest in regulating labor disputes "affecting commerce" outside the narrow strictures of Sections 10(a) and 14(c) of the Act. As explained (NLRB Br. 20), even if the Court does not find a likelihood of success, the NLRB has at least shown serious questions going to the merits sufficient to justify a preliminary injunction.[12]

## CONCLUSION

This Court should preliminarily enjoin enforcement of Section 2 of AB 288.

---

[11] IBT's blithe assertion that the Board's doctrine in *Redd-I, Inc.*, 290 NLRB 1115, 1115–16 (1988), would permit the Board to adjudicate an unfair labor practice filed more than six months after its occurrence, despite Section 10(b), 29 U.S.C. § 160(b), so long as a charge has been filed with PERB (IBT Br. 19–20), is remarkable, considering the detrimental impact on employee rights if IBT proves to be wrong.

[12] Although IBT argues that the NLRB's challenge isn't ripe until PERB addresses conflict between AB 288 and the NLRA (IBT Br. 16), the Board's facial challenge here does not depend on any particular application of AB 288. *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Indeed, the intrusion upon the Board's jurisdiction would begin the very moment PERB starts processing charges and petitions under the state statute.

Respectfully submitted,

NANCY E. KESSLER PLATT
*Associate General Counsel*
Division of Legal Counsel
Nancy.Platt@nlrb.gov

DAWN L. GOLDSTEIN
*Deputy Associate General Counsel*
Division of Legal Counsel
Dawn.Goldstein@nlrb.gov

  /s/ Chad A. Wallace
CHAD A. WALLACE
*Trial Attorney*
Chad.Wallace@nlrb.gov
(202) 273-2489
Contempt, Compliance, and
  Special Litigation Branch
1015 Half Street, S.E., 4th Floor

Dated this 11th day of December, 2025 at Washington, D.C.

PLAINTIFF'S REPLY TO OPPOSITION TO PRELIMINARY INJUNCTION