UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>  Plaintiff,<br><br>  v.<br><br>STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>  Defendants,<br><br>  and<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>  Intervenor. | No. 2:25-cv-02979-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Plaintiff National Labor Relations Board's ("Plaintiff" or "NLRB") Motion for Preliminary Injunction. (ECF No. 10.) Plaintiff requests the Court enjoin Defendants State of California ("State") and Public Employment Relations Board ("PERB") (collectively, "Defendants") from enforcing § 2 of California Assembly Bill 288 (A.B. 288, 2025–26 Cal. Leg., Reg. Sess. (2025) ("A.B. 288")). Defendants and Intervenor International Brotherhood of Teamsters ("Intervenor" or "Teamsters") filed oppositions. (ECF

1

Nos. 16, 17.)  Plaintiff filed a reply.  (ECF No. 23.)  For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.B. 288, signed into law by California Governor Gavin Newsom on September 30, 2025, amends the California Labor Code to allow California private sector workers covered by the National Labor Relations Act ("NLRA") to bring labor disputes to PERB under certain enumerated circumstances.  Cal. Lab. Code § 923.1(b)(1).[1]  To understand A.B. 288, the Court first begins with a brief overview of the NLRA, NLRB, and PERB, before examining the law's text.

### A. The NLRA and NLRB

The NLRA establishes a regulatory scheme governing labor relations between workers, unions, and employers.  29 U.S.C. §§ 151–169.  This scheme not only sets forth "conduct that Congress has deemed protected (§ 7) and prohibited (§ 8)," *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 792 (2023) (Jackson, J., dissenting) (referencing 29 U.S.C. §§ 157, 158), but also "confide[s] primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribe[s] a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order," *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776 (A. F. L.)*, 346 U.S. 485, 490 (1953).  This tribunal is the NLRB.  29 U.S.C. §§ 153–156.

The substantive provisions of the NLRA relevant to the instant case are § 7 and § 8.  Section 7 establishes workers' "right to self-organize, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining . . . [and] to refrain from any or all of such activities[.]"  *Id.* § 157.  Section 8 provides a list of "unfair labor practices" ("ULPs") that employers and unions are prohibited from engaging in, such as interfering with employees'

---

[1] Because A.B. 288 does not go into effect until January 1, 2026, § 923.1 has not yet been codified in the California Labor Code.  Citations to California Labor Code § 923.1 and its subsections thus refer to the text of A.B. 288.

2

exercise of their collective bargaining rights. *Id.* § 158.

The NLRB is the agency responsible for administering the NLRA. The NLRB consists of a five-member Board[2] whose members are appointed by the President with the advice and consent of the Senate. *Id.* § 153(a). Members' duties include adjudicating and issuing decisions on ULP charges, petitioning courts to enforce orders, and conducting and certifying the outcome of representation elections. *Id.* §§ 159, 160(c), 160(e). The Board must have a quorum of at least three sitting members to execute its statutory functions. *Id.* § 153(b). Members can be removed for "neglect of duty or malfeasance in office, but for no other cause." *Id.* § 153(a).

In the absence of a quorum, the NLRB continues to function "to the greatest extent permitted by law." 29 C.F.R. §§ 102.178, 102.182. The NLRB's ability to do so is due in part to the Board's ability to delegate some, though not all, of its duties to the NLRB's General Counsel, Regional Directors, and Administrative Law Judges ("ALJs"). *See* 29 U.S.C. §§ 153(b), 154(a); Order Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. 69768 (Nov. 9, 2011). Under delegated authority, regional directors are authorized to carry out the Board's representation duties (29 U.S.C. § 153(b)), and regional offices receive and investigate ULP charges and representation petitions, conduct investigations and hearings, manage elections, certify election results, and make findings and issue rulings on objections and challenged ballots (29 C.F.R. §§ 102.60–102.70; ECF No. 10-2 ¶¶ 4–9). However, in the absence of a quorum, duties exclusive to the Board must necessarily halt. *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010) ("Congress' decision to . . . provide for a Board quorum of three[] must be given practical effect rather than swept aside in the face of admittedly difficult circumstances.") Without a quorum, the Board cannot issue decisions and final orders adjudicating ULP cases or rule on requests for review of Regional Directors' decisions in representation proceedings. *Id.* at 677; 29 C.F.R. § 102.182. Another result of a loss of quorum is if after an ALJ renders a decision on a ULP charge and a party files an exception, the ALJ's decision can have no legal effect until the Board adopts that decision. 29 C.F.R. § 102.48(b).

---

[2] The Court uses "NLRB" to refer to the agency as a whole, and "Board" to refer to the five-member board.

B. <u>The NLRB's Current Challenges</u>

In adopting A.B. 288, the California State Legislature made the following findings and declarations about the current state of the NLRB:

> Over the past several decades, the NLRB has become less effective at protecting and enforcing workers' rights, due to a variety of factors such as completely inadequate funding, understaffing, a narrowing of the types of workers who can invoke the protections of the NLRA, a narrowing of the scope of protected concerted activity, and its enforcement mechanisms are further threatened with the loss of decision [] making due to a lack of a quorum [and] with its administrative proceedings being enjoined through challenges to its constitutionality and its independence.

A.B. 288 § 1(d). These findings identify the primary issues raised in this case: (1) the Board's loss of quorum; (2) the Board's loss of independence; (3) constitutional challenges enjoining the NLRB; and (4) delayed administration of NLRA processes. The Court briefly summarizes these concerns.

The NLRB has been without a quorum for nearly eleven months. (ECF No. 17 at 11.) On January 27, 2025, President Donald J. Trump terminated Member Gwynne A. Wilcox from her position on the Board. *Wilcox v. Trump*, 775 F. Supp. 3d 215, 222 (D.D.C. 2025), *rev'd sub nom. Harris v. Bessent*, No. 25-5037, 2025 WL 3496737 (D.C. Cir. Dec. 5, 2025). Wilcox's removal reduced the number of sitting Board Members to two, rendering the Board without a quorum. *Id.* On August 27, 2025, then-Chairman Marvin Kaplan's term expired, leaving the Board with one member. (ECF No. 10-1 at 11.)

Though Wilcox's termination is subject to ongoing litigation, on December 4, 2025, the D.C. Circuit Court of Appeals held her removal was permissible and the NLRA's statutory limitations on removing Board members violates executive authority. *Harris*, 2025 WL 3496737, at *13. This decision and the circumstances surrounding Wilcox's removal have raised concerns not only about the NLRB's ability to meet its statutory functions, but also about the NLRB's independence. (*See* ECF No. 16 at 10–11.)

On the issue of legal challenges leading to enjoinment, numerous cases have been filed in recent years seeking to enjoin the NLRB's proceedings on constitutional grounds. *YAPP USA Auto. Sys., Inc. v. NLRB*, 748 F. Supp. 3d 497, 502 n.1 (E.D. Mich. 2024), *appeal dismissed*, No.

4

24-1754, 2025 WL 2606098 (6th Cir. Aug. 4, 2025) (collecting cases).  Though results are mixed as to the merit of the constitutional challenges and the courts' ability to enjoin the NLRB, some courts have issued injunctions halting NLRB proceedings.  *Compare Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 780 (5th Cir. 2025) (affirming injunctions halting NLRB proceedings because "forcing the Employers to appear before an unconstitutionally structured agency inflicts irreparable harm"), *with Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, 160 F.4th 380, 386–89 (3d Cir. 2025) (disagreeing with *Space Expl. Techs. Corp.* and finding the district court did not have authority to issue an injunction against the NLRB).

On the final issue of processing delays, the Teamsters submit multiple declarations documenting the NLRB's delay in resolving ULP charges and representation proceedings.  (ECF Nos. 16-1–16-7.)  Several declarations describe ULP charges pending several years after filing.  (ECF Nos. 16-1–16-6.)  The declarations describe how the NLRB's delay has caused significant harm to workers seeking to vindicate their rights and access the protections of the NLRA.  (ECF Nos. 16-1–16-7.)  As one worker recounts:

> After I was forced to leave my job . . . due to the retaliation against me, I was unable to find work for about six months after my termination.  The sudden loss of my job created a lot of stress and financial strain for myself and my family. [¶] Due to the lack of resolution and long delay in my termination ULP case, I have lost confidence in the NLRB's ability to protect my rights.

(ECF No. 16-5 ¶¶ 9–10.)  A union organizer explains how employers take advantage of delay:

> Without an effective NLRB, employers [ ] can interfere in nascent organizing campaigns with the belief that it will take years before the NLRB takes action, making it easier for ULPs to come to fruition and destroy organizing drives before employees obtain the improvements they deserve.

(ECF No. 16-2 ¶ 33.)  Another worker explains:

> Filing ULPs has shown me that the NLRB and the ULP process are both unreliable as a support to ensure that there is a check and balance to hold [employers] accountable for their continued violations.  If I were to get another private sector union job, I would never utilize the ULP process or depend on the NLRB for relief because I have seen firsthand how the NLRB let down our unit when our rights were violated.

(ECF No. 16-6 ¶ 19.)

5

### C. PERB

PERB is "an expert, quasi-judicial administrative agency modeled after the [NLRB]" tasked with adjudicating unfair labor practice charges under California state laws governing relations between public employers and employees. *Coachella Valley Mosquito & Vector Control Dist. v. California Pub. Emp. Rels. Bd.*, 35 Cal. 4th 1072, 1084–86 (2005). Like the NLRB, PERB is authorized to administer union representation proceedings, process unfair labor practice charges pursuant to the statutes it administers, and bring enforcement actions in courts of competent jurisdiction. *See* Cal. Gov't Code § 3541.3(a)–(c), (i)–(j). PERB also has a General Counsel and a five-member board whose members are appointed by the Governor with the advice and consent of the State Senate. *Id.* § 3541(a); 8 Cal. Code Regs. § 32980(a). PERB members can be removed "for neglect of duty or malfeasance in office, but for no other cause." Cal. Gov't Code § 3541(a).

Although initially created in 1975 to govern labor relations of public school employees, PERB's jurisdiction has expanded to cover additional categories of public employees, including those employed by the state university system, state trial courts, and the Los Angeles County Metropolitan Transit Authority. *Coachella Valley*, 35 Cal. 4th at 1084–86. PERB will also have jurisdiction over transportation network company drivers beginning January 1, 2026. *See* A.B. 1340, 2025–26 Cal. Leg., Reg. Sess. (2025).

### D. A.B. 288

Section 2 of A.B. 288 allows workers and their chosen representatives to petition PERB to "vindicate their fundamental rights to full freedom of association, self-organization, and designation of representatives of their own choosing, free from retaliation or intimidation by their employer," under two circumstances:

> (A) The worker is employed in a position that is, or would have been, subject to the [NLRA] as of January 1, 2025, but they lose coverage under the [NLRA] because the [NLRA] is repealed, narrowed, or its enforcement [is] **enjoined** in a case involving that worker . . . [or]
>
> (B) The worker is employed in a position which is or would be subject to the [NLRA] as of January 1, 2025, but the [NLRB] has **expressly or impliedly ceded jurisdiction**.

6

Cal. Lab. Code §§ 923.1(a)(1), (b)(1)–(b)(1)(B), (c) (emphasis added).  Under the second circumstance, subparagraph (B), the NLRB "will be deemed to have ceded jurisdiction to the states" if any of the following scenarios occur as of January 1, 2026:

> (i) For cases where a certification of the results of an election, including a certification of representative, or [ALJ] decision has been issued, or where challenges or objections to a representation election are pending before the [NLRB], when there is a **lack of a quorum** of the [NLRB], or when the [NLRB] has **lost its independence** as a result of the Supreme Court finding that [NLRB] members are unconstitutionally protected from removal or when the continued processing of a case is **enjoined** by a court due to constitutional challenges to the board's structure or authority,
>
> (ii) For cases where no certification or complaint or decision has been issued, when there are **processing delays** resulting in the worker's case remaining pending before a regional director for more than six months without the issuance of a complaint or certification of an election, or remaining pending more than six months after a complaint has been issued without the issuance of a decision by an [ALJ] or without the issuance of a decision about the certification by the [NLRB].
>
> (iii) For cases where a certification of the results of an election, including a certification of representative, or other reviewable order has been issued by the regional director or [ALJ], when there are **processing delays** resulting in failure by the [NLRB] to accept or decline review or grant special permission to appeal for more than six months following the filing of a request for review or for special permission to appeal.
>
> (iv) For cases on review or exceptions before the [NLRB], when there are **processing delays** resulting in the case remaining pending for more than 12 months without the issuance of a final decision.

*Id.* §§ 923.1(b)(1)(B)(i)–(iv) (emphasis added).  Viewed together, these scenarios arise upon four conditions, or as the State refers to them, "triggers": (1) loss of quorum; (2) loss of independence; (3) enjoinment; and (4) processing delays.  (ECF No. 17 at 19–23.)

If PERB "determines that the conditions described in subparagraph (A) or (B) of paragraph (1) no longer apply, [PERB] shall retain jurisdiction over pending matters and shall maintain jurisdiction from that point forward unless ordered by a court of competent jurisdiction to cede its jurisdiction." Cal. Lab. Code § 923.1(b)(2).  PERB "may follow applicable precedents of the [NLRA], as amended, which shall constitute persuasive authority," but is not obligated to. A.B. 288 § 5.  A.B. 288 contains a severability clause if any provision is held invalid.  *Id.* § 6.

7

E.     Procedural History

Plaintiff, the NLRB, filed the instant action on October 15, 2025, seeking declaratory and injunctive relief to prevent enforcement of § 2 of A.B. 288.[3] (ECF No. 1.)  NLRB's single claim for relief alleges A.B. 288 is preempted by the NLRA under the Supremacy Clause and unlawfully usurps the NLRB's authority by attempting to regulate areas explicitly reserved for federal oversight, creating a parallel regulatory framework that conflicts with the NLRA.  (*Id.* at 9–10.)  On November 12, 2025, the Court granted the Teamsters' request to intervene.  (ECF No. 6.)  Presently before the Court is Plaintiff's Motion for a Preliminary Injunction seeking to enjoin enforcement of A.B. 288, which would otherwise take effect on January 1, 2026.  (ECF No. 10.)

**II.     STANDARD OF LAW**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy'") (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F. 2d 804, 809 (9th Cir. 1963)).

For a preliminary injunction to issue, Plaintiff must establish "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  Plaintiff must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  However, the Court may weigh Plaintiff's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are serious questions on the merits "so long as the

---

[3]     Unless otherwise noted, the Court's use of "A.B. 288" herein refers to § 2.

8

plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Plaintiff's favor in order to obtain preliminary relief. *Id.* at 1134–35.

### III. ANALYSIS

The NLRB argues it is likely to prevail in showing the NLRA preempts A.B. 288, the NLRB will suffer irreparable harm absent a preliminary injunction, a preliminary injunction is in the public interest, and the harm to the State and PERB will be slight compared to the significant harm to the NLRA and NLRB if A.B. 288 is allowed to go into effect.  (ECF No. 10-1 at 15–25.) The Court considers each of these arguments in turn.

#### A. Likelihood of Success on the Merits

The NLRB argues it is likely to prevail on the merits of its preemption claim under *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959), because A.B. 288 gives PERB authority to regulate activity the NLRA already "protects, prohibits, or arguably protects or prohibits." (ECF No. 10-1 at 15–17.)  The NLRB also disputes what the law considers to be a cessation of jurisdiction. (*Id.* at 19–21.)

In opposition, the State and the Teamsters argue A.B. 288 is not preempted under *Garmon* because Congress's intent for the NLRA to preempt state law was premised on the NLRB being fully functioning and independent. (ECF No. 16 at 12–20; ECF No. 17 at 15–18.) The State and the Teamsters argue A.B. 288 does not infringe on the NLRB's jurisdiction because A.B. 288 only permits workers to bring claims to PERB where the NLRA does not apply or the NLRB is not fulfilling its role in the statutory scheme (*i.e.*, where the aforementioned triggers apply — loss of quorum, loss of independence, enjoinment, and processing delays). (ECF No. 16 at 20; ECF No. 17 at 19–23.)[4]

---

[4] The parties raise several additional arguments. The NLRB also claims A.B. 288 is preempted because it stands as an obstacle to the enforcement of federal labor law and the Board has neither ceded nor declined jurisdiction over private sector labor relations. (ECF No. 10-1 at 17–21.) The State argues A.B. 288 is not preempted because it advances the NLRA's goal of protecting workers and *Amazon.com Services LLC v. New York State Public Employment Relations Board*, No. 1:25-CV-5311 (E.D.N.Y. Nov. 26, 2025), which enjoined a similar New

9

"Although the NLRA itself contains no express pre-emption provision, [the Supreme Court has] held that Congress implicitly mandated two types of pre-emption as necessary to implement federal labor policy." *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008). Of these two types, only one — *Garmon* preemption — is relevant here. *See id.* (comparing the other type of preemption under *Machinists v. Wisconsin Emp. Rels. Comm'n*, 427 U.S. 132, 140 (1976), which prohibits the NLRB and states from regulating conduct that Congress intended be left unregulated and "controlled by the free play of economic forces.").

The "general rule set forth in [*Garmon* is] that States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986). "Because 'conflict is imminent' whenever 'two separate remedies are brought to bear on the same activity,' . . . the *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the act." *Id.* (quoting *Garner*, 346 U.S. at 498–99.) This principle "is intended to preclude state interference with the [NLRB's] interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA." *Brown*, 554 U.S. at 65 (quoting *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986)).

Because "[a] claim of *Garmon* pre-emption is a claim that the state [ ] has no power to adjudicate the subject matter of the case," the typical *Garmon* preemption inquiry asks "whether the conduct at issue [is] arguably protected or prohibited by the NLRA." *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 393–94 (1986). However, the Supreme Court has cautioned that an "inflexible application of the [*Garmon*] doctrine is to be avoided," and has itself "refused to apply the *Garmon* guidelines in a literal, mechanical fashion." *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978) ("*Sears*") (quoting

---

York state law, is distinguishable. (ECF No. 17 at 23–25.) The Teamsters argue the same and add that *Garmon* was wrongly decided, A.B. 288 is compatible with the NLRA, the NLRA does not exclude state regulation, and preemption contravenes the 10th Amendment. (ECF No. 16 at 21–27.) Because the Court finds the present dispute can be resolved on *Garmon* preemption grounds, the Court will not reach the merits of the parties' alternative arguments.

1  *Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*, 430 U.S. 290, 302 (1977)).
2  Instead, the Supreme Court has explained that a finding of preemption "'must depend upon the
3  nature of the particular interests being asserted and the effect upon the administration of national
4  labor policies' of permitting the state [ ] to proceed." *Id.* at 189 (quoting *Vaca v. Sipes*, 386 U.S.
5  171, 180 (1967)).

   The NLRB urges this Court to conduct a straightforward application of *Garmon* to invalidate A.B. 288. However, this argument is predicated on an assumption that A.B. 288 creates a conflict of jurisdiction between PERB and the NLRB. The State and the Teamsters' approach on the other hand, is to avoid the preemption analysis altogether by framing A.B. 288 as granting PERB authority to operate only where the NLRB does not, thereby avoiding any conflict between the two agencies. The Court begins its analysis with this more fundamental question of conflict, followed by *Garmon* preemption.

### i.    Conflict with the NLRB

"It is a bedrock rule, of course, that federal law preempts state law when the two conflict." *Glacier*, 598 U.S. at 776 (citing U.S. Const., Art. VI, cl. 2). The Court evaluates conflict here by analyzing each of the conditions, or "triggers," in A.B. 288 that the State and the Teamsters claim prevent PERB from infringing on the NLRB's authority.

#### a)    *Loss of Coverage, Enjoinment, and Express Cessation*

As an initial matter, the Court finds A.B. 288's provisions on loss of coverage in subparagraph (A), enjoinment in subparagraph (B)(i), and "expressly" ceding jurisdiction in subparagraph (B), prevent PERB from conflicting with the NLRB's enforcement authority and therefore are not preempted. Cal. Lab. Code §§ 923.1(b)(1)(A)–(B)(i).

The Court agrees with the State that subparagraph (A) avoids conflict because if a worker is no longer subject to the NLRA, the worker's conduct is neither protected nor prohibited by the NLRA. (ECF No. 17 at 19); *see Garner*, 346 U.S. at 488 ("[A]n instance of injurious conduct which the [NLRB] is without express power to prevent . . . therefore either is 'governable by the state or it is entirely ungoverned.'") In reply, the NLRB argues that states are preempted from regulating where the NLRA excludes a group of workers because Congress has chosen to

11

withhold certain rights from them, citing *Beasley v. Food Fair of N.C., Inc.*, 416 U.S. 653, 657–62 (1974) and *NLRB v. Comm. of Interns & Residents*, 566 F.2d 810, 813 (2d Cir. 1977)). (ECF No. 23 at 12–13.) But that is not what subparagraph (A) contemplates. Unlike in *Beasley* and *Comm. of Interns & Residents*, which concerned classes of workers covered by the NLRA but excluded from certain protections and collective bargaining rights, subparagraph (A) covers workers no longer subject to the NLRA at all. *Cf. Beasley*, 416 U.S. at 654–57; *Comm. of Interns & Residents*, 566 F.2d at 813. The Court thus finds subparagraph (A), which allows workers who lose coverage under the NLRA to petition PERB, presents no conflict.

For the same reason, the Court finds the enjoinment provision of subparagraph (B)(i) avoids conflict as well. If the NLRB is enjoined from processing a case, it has lost authority over that subject matter. With the NLRB no longer occupying that space, there is no entity with which PERB's exercise of jurisdiction will conflict. The Court thus finds the provision in subparagraph (B)(i) allowing workers to petition PERB "when the continued processing of a case is enjoined by a court due to constitutional challenges to the board's structure or authority," presents no conflict.

The NLRB does not challenge the "expressly . . . ceded jurisdiction" language of subparagraph (B). Cal. Lab. Code § 923.1(b)(1)(B). For purposes of completeness, the Court confirms this provision of subparagraph (B) avoids a conflict between PERB and the NLRB. *See* 29 U.S.C. §§ 160(a), 164(c).

In sum, the Court finds the following sections of A.B. 288 avoid conflict between PERB and the NLRB, and thus the NLRB has failed to demonstrate it is likely to succeed on the merits of its preemption claim with respect to these provisions: (1) loss of coverage under subparagraph (A); (2) enjoinment under subparagraph (B)(i); and (3) express cessation of jurisdiction under subparagraph (B).

### b) *Implied Cessation of Jurisdiction*

As previously described, subparagraph (B) deems the NLRB to have "impliedly ceded jurisdiction" upon the following conditions: (1) loss of quorum; (2) loss of independence; (3) enjoinment; and (4) processing delays. Cal. Lab. Code § 923.1(b)(1)(B)–(B)(iv). Having found the condition of enjoinment avoids a conflict between PERB and the NLRB, the Court now

considers whether the remaining conditions do as well. The Court evaluates each one in turn.

Beginning with loss of quorum, the Court cannot conclude this condition avoids a conflict between PERB and the NLRB. The NLRA itself anticipates periods where the Board lacks a quorum, and, as the State acknowledges, it has happened before. 29 U.S.C. 153(b) (discussing Board vacancies and quorum requirements); (ECF No. 17 at 11.) Per regulation, the NLRB is required to continue functioning in such instance. 29 C.F.R. § 102.178. And through delegation to the General Counsel, Regional Directors, Regional Offices, and ALJs, many of the Board's functions continue. The Court however, acknowledges that there are some functions that cannot be executed in the absence of a quorum. (*See* ECF No. 17 at 20.) The Supreme Court acknowledged this as well in *New Process Steel*, where it prohibited the Board from taking certain actions absent a quorum but noted the Court "[is] not insensitive to the Board's understandable desire to keep its doors open despite vacancies." 50 U.S. at 688. Nevertheless, the Supreme Court concluded the quorum requirement "must be given practical effect rather than swept aside in the face of admittedly difficult circumstances." *Id.* The quorum requirement, and its consequences, is by design. In some respect, the Board's inability to fully function due to the lack of quorum shows the NLRA is operating as intended. The Court thus cannot conclude the loss of quorum equates to the NLRB ceding its jurisdiction over any particular matter. Allowing PERB to operate under this condition would create a conflict.

Processing delays are similar. Unlike other federal regulatory schemes, *see*, *e.g.*, *Californians for Renewable Energy v. United States Env't Prot. Agency*, No. C 15-3292 SBA, 2020 WL 13490288, at *1 (N.D. Cal. Sept. 30, 2020) (describing timelines for Environmental Protection Agency civil rights complaint investigations), the NLRA does not prescribe deadlines. (*See* ECF No. 23 at 9.) Investigating complaints, issuing decisions, and certifying elections take time and could suffer delay for myriad reasons outside the NLRB's control. And though the Court agrees with the Teamsters declarants that delay causes tangible harm and undercuts the NLRB's ability to protect workers, time in and of itself does not prove the NLRB has given up its authority over a matter. Like the issue of lack of quorum, delayed resolution by the NLRB is not new. *See Garmon*, 359 U.S. at 253 (Harlan, J. concurrence) ("Henceforth the States must

withhold access to their courts until the [NLRB] has determined that such unprotected conduct is not an [ULP], a course which, because of unavoidable Board delays, may render state redress ineffective."); *Garner*, 346 U.S. 487 (noting a state court judge "thought the federal remedy inadequate, as a practical matter, because the slow administrative process of the [NLRB] could not prevent imminent and irreparable damage to petitioners."). The Court cannot conclude that delay in and of itself constitutes a cessation of jurisdiction. Therefore, because the NLRB maintains its authority under this condition, allowing PERB to assume jurisdiction from processing delays would create a conflict.

Finally, as to loss of independence, the Court agrees generally with the proposition that Congress intended the NLRB to be independent. (*See* ECF No. 26-1 (Brief Amici Curiae of Labor Law Professors).) However, in light of the D.C. Court of Appeals' recent decision finding the President's removal of Board Member Wilcox permissible (*Harris*, 2025 WL 3496737, at *13), this Court is unable to say whether a "finding that [NLRB] members are unconstitutionally protected from removal" equates to a loss of independence (Cal. Lab. Code § 923.1(b)(1)(B)(i)).

But separate from the issue of what qualifies as independence lost, what the Court is ultimately unable to cosign is the notion that Congress's interest in the NLRB's independence when it enacted the NLRA was so strong that in its absence, Congress intended the NLRB be stripped of authority. While the Court finds the Fourth Circuit's discussion of an independent Merit System Protection Board in *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 305–07 (4th Cir. 2025), to be compelling, there the court did not have to contend with the volume of binding case law interpreting Congress's intent in passing the NLRA — as this Court must:

> The enactment of the NLRA in 1935 marked a fundamental change in the Nation's labor policies. Congress expressly recognized that collective organization of segments of the labor force into bargaining units capable of exercising economic power comparable to that possessed by employers may produce benefits for the entire economy in the form of higher wages, job security, and improved working conditions. Congress decided that in the long run those benefits would outweigh the occasional costs of industrial strife associated with the organization of unions and the negotiation and enforcement of collective-bargaining agreements. . . . The Court promptly decided that the federal agency's power to implement the policies of the new legislation was exclusive and the States were without power to enforce overlapping rules.

14

*Sears*, 436 U.S. 190–91; *Garner*, 346 U.S. at 490 ("Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies."); *see also Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1, 10–11 (1957) ("Congress has expressed its judgment in favor of uniformity."); *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Loc. No. 427, AFL v. Fairlawn Meats, Inc.*, 353 U.S. 20, 24 (1957) ("Congress was specific in its requirement of uniformity.").

With this backdrop, the Court is unable to conclude that Congress's foremost interest in establishing the NLRB was anything other than that of uniformity and avoidance of inconsistency. Thus, while the Court agrees with the State and the Teamsters' argument that Congress intended the NLRB to be independent (ECF No. 16 at 15–16; ECF No. 17 at 22–23), the Court cannot follow their logic to the point of concluding this intent was so dominant as to nullify the Board if independence is lost. Therefore, even assuming A.B. 288 is correct that the NLRB's independence is lost if the Supreme Court finds Board Members are unconstitutionally protected from removal, were the situation to materialize the NLRB would nonetheless maintain its authority. Allowing PERB to assume jurisdiction under this condition would create a conflict.

For these reasons, the Court rejects the State and the Teamsters argument that the NLRB can be deemed to have impliedly ceded jurisdiction under the three aforementioned conditions of subparagraph (B). These conditions do not avoid conflict and do not protect A.B. 288 from preemption.

        *ii. Garmon Preemption*

Having found A.B. 288 does not avoid a conflict of authority between PERB and the NLRB by the implied cessation provisions in subparagraph (B), the Court now considers whether the law allowing workers to petition PERB under these circumstances is preempted. Applying *Garmon*, the answer is yes.

As explained above, the *Garmon* doctrine asks "whether the conduct at issue [is] arguably protected or prohibited by the NLRA." *Int'l Longshoremen's Ass'n*, 476 U.S. at 394. Here, there

is no dispute that workers authorized to petition PERB under the subparagraph (B) conditions,[5] and the bases for which they may petition, are subject to the NLRA. Therefore, because the law would allow PERB to assume jurisdiction over conduct subject to the NLRA, these provisions of A.B. 288 are preempted.

The more flexible application of *Garmon* described in *Sears* reaches the same outcome. *Sears*, 436 U.S. at 189 (preemption depends on "the nature of the particular interests being asserted and the effect upon the administration of national labor policies"). To examine A.B. 288's effect upon the administration of national labor policies, the Court need not look beyond its text. A.B. 288 provides that if any of the conditions in subparagraph (B) no longer apply, PERB shall retain jurisdiction over the matter until ordered by a court to cede its jurisdiction. Cal. Lab. Code § 923.1(b)(2). But if a condition is no longer met, be that by confirmation of new Board Members or action in a delayed case, there is no legitimate dispute that the matter belongs to the NLRB. Not only that, but A.B. 288 specifies that PERB is not obligated to follow NLRA precedent. A.B. 288 § 5. Together, these clauses position PERB to stand in the way of the NLRB's ability to process a matter over which it has jurisdiction and disregard NLRB's interpretation of the NLRA while doing so. Therefore, regardless of any asserted interest, A.B. 288's effect interrupts the NLRB's administration of the NLRA and so must be preempted.

For these reasons, the Court finds the implied cessation conditions of subparagraph (B) discussed above — loss of quorum, loss of independence, and processing delays — create a conflict between PERB and the NLRB, give PERB authority over conduct subject to the NLRA, and allow PERB to stand in the way of the NLRB's administration of the NLRA. The NLRB therefore has demonstrated it is likely to succeed on the merits of its preemption claim with respect to these provisions.

B.  Irreparable Harm

On the second *Winter* factor of irreparable harm, the NLRB argues it will suffer irreparable harm because A.B. 288 directly threatens its exclusive jurisdiction. (ECF No. 10-1 at

---

[5]   Unless otherwise noted, the subparagraph (B) conditions discussed in the remainder of this opinion refer only to the loss of quorum, loss of independence, and processing delays.

16

1  21.) The NLRB further claims that A.B. 288's implementation will lead to inconsistent rulings
2  and damage the NLRB's ability to set and maintain national labor policy. (*Id.* at 21–24.) In
3  opposition, the State and the Teamsters argue A.B. 288's implementation will not cause
4  irreparable harm because the law does not violate the Supremacy Clause, the NLRB has failed to
5  present evidence showing its operations will be harmed or inconsistent decisions will issue, and
6  the NLRB's alleged harms are speculative. (ECF No. 16 at 27–28; ECF No. 17 at 25–26.)

7  The Court finds the NLRB has met its burden. As the Ninth Circuit has recognized,
8  "preventing a violation of the Supremacy Clause serves the public interest." *United States v.*
9  *California*, 921 F.3d 865, 893 (9th Cir. 2019). Here, having found the NLRB is likely to succeed
10 on the merits of the majority of its preemption claim, the Court presumes the NLRB will suffer
11 irreparable harm from constitutional violations if the A.B. 288 is implemented in its entirety.

12 Additionally, the Teamsters have represented they intend to file charges with PERB when
13 A.B. 288 goes into effect on January 1, 2026, and it is well within the realm of possibility that
14 others will follow. (ECF No. 4-1 at 10; *see generally* ECF No. 28-1 (Amicus Brief of California
15 Labor Federation).) Once charges are filed with PERB pursuant to A.B. 288, the threat of
16 conflicting authority and discordant resolution of the same conduct will become live. To avoid
17 the harms following from "incompatible or conflicting adjudications," it is appropriate to
18 maintain the status quo until final adjudication on the merits. *Garner*, 346 U.S. at 490–91.

19         C.     <u>Balance of Equities and Public Interest</u>

20 As to the final two *Winter* factors — the balance of equities and public interest — "[w]hen
21 the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747
22 F.3d 1073, 1092 (9th Cir. 2014). As discussed above, the NLRB is likely to succeed in its claim
23 that A.B. 288 is preempted, and an injunction to prevent a violation of the Supremacy Clause is in
24 the public interest. *California*, 921 F.3d at 893. The State and the Teamsters argue that enjoining
25 A.B. 288 will cause California workers significant hardship by being prevented from vindicating
26 their labor rights. (ECF No. 16 at 28; ECF No. 17 at 26.) The Court acknowledges the harm to
27 workers from being unable to assert their labor rights and access the NLRA's protections is
28 significant. However, on balance, alleviating that deprivation through a process administered by

PERB, which too may take a considerable amount of time, cannot justify the risk of conflicting jurisdiction and resolutions that would emerge from A.B. 288's implementation.  Therefore, the balance of equities and public interest factors weigh in the NLRB's favor.

Having found the NLRB has satisfied each of the *Winter* factors, this Court finds appropriate relief in maintaining the status quo by enjoining A.B. 288 as described herein, until final resolution on the merits.

**IV.   CONCLUSION**

Accordingly, Plaintiff's Motion for a Preliminary Injunction (ECF No. 10) is GRANTED in part and DENIED in part as follows:

1.  Defendants are PRELIMINARILY ENJOINED from implementing:

    a.   Cal. Lab. Code § 923.1(b)(1)(B)(i), as to "lack of quorum of the [NLRB]," and "the [NLRB] has lost its independence[;]"

    b.   Cal. Lab. Code § 923.1(b)(1)(B)(ii);

    c.   Cal. Lab. Code § 923.1(b)(1)(B)(iii); and

    d.   Cal. Lab. Code § 923.1(b)(1)(B)(iv).

2.  Defendants may implement[6]:

    a.   Cal. Lab. Code § 923.1(b)(1)(A);

    b.   Cal. Lab. Code § 923.1(b)(1)(B), as to "expressly [] ceded jurisdiction[;]" and

    c.   Cal. Lab. Code § 923.1(b)(1)(B)(i), as to "a case is enjoined by a court[.]"

IT IS SO ORDERED.

Date: December 26, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]   Because A.B. 288 contains a severability clause, which under California law establishes a presumption of severance, the Court finds Defendants may implement the loss of coverage, enjoinment, and express cessation provisions.  *See* A.B. 288 § 6; *California Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 270 (2011).