DAWN L. GOLDSTEIN (MA Bar No. 600181)
*Associate General Counsel*

WILLIAM R. WARWICK (IN Bar No. 3090379)
*Supervisory Attorney*

TAMMY L. FARMER (NY Bar No. 4022836)
*Attorney Advisor*

NANCY K. REIBSTEIN (MA Bar No. 557713)
*Attorney Advisor*

CHAD A. WALLACE (D.C. Bar No. 1601387)
*Trial Attorney*

**NATIONAL LABOR RELATIONS BOARD**
1015 HALF STREET, SE, 4TH FLOOR
WASHINGTON, DC 20570
TELEPHONE: (202) 273-2489
FAX: (202) 273-4244
Chad.Wallace@nlrb.gov

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>Defendants,<br><br>and<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>Intervenor-Defendant. | Case No. 2:25−CV−02979−TLN−CKD<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with: 1. Plaintiff's Notice of Motion and Motion for Summary Judgment; 2. Statement of Undisputed Facts; and 3. [Proposed] Order*<br><br>Judge: Hon. Troy L. Nunley<br>Date: November 12, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Oral Argument Requested |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iv

INTRODUCTION ........ 1

UNDISPUTED FACTUAL BACKGROUND ........ 2

A. The National Labor Relations Act ........ 2

B. The National Labor Relations Board's Administration of the Act ........ 3

C. California's Public Employment Relations Board and AB 288 ........ 5

PROCEDURAL HISTORY ........ 7

LEGAL STANDARD ........ 9

ARGUMENT ........ 9

A. This Facial Preemption Challenge Presents a Pure Question of Law, Leaving No Material Factual Dispute ........ 9

B. The NLRA Preempts AB 288 ........ 10

i. Garmon preemption precludes the State of California and PERB from regulating conduct already regulated by the NLRA ........ 11

ii. No recognized exception to Garmon preemption applies to AB 288 ........ 13

iii. The NLRB may only expressly cede or decline jurisdiction under Sections 10(a) and 14(c) of the Act ........ 14

iv. The NLRB cannot "impliedly" cede jurisdiction ........ 15

v. AB 288 stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress ........ 16

vi. There are only three narrow exceptions where AB 288 would not conflict with the NLRA ........ 17

C. The NLRB Is Entitled to Declaratory and Permanent Injunctive Relief ........ 18

i. Irreparable harm and inadequacy of monetary remedies ........ 19

ii. Balance of equities and public interest ........ 20

CONCLUSION ..... 20

ADDENDUM ..... A-1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd.*, 2026 WL 2085865 (E.D.N.Y. July 20, 2026) ..... 2, 16

*Aimbridge Emp. Serv. Corp. v. NLRB*, No. 4:25-cv-1014, 2026 WL 2151345 (E.D. Tex. July 27, 2026) ..... 18

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987) ..... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..... 9, 10

*Argonaut Ins. Co. v. St. Francis Medical Ctr.*, 17 F.4th 1276 (9th Cir. 2021) ..... 18

*Arizona v. United States*, 567 U.S. 387 (2012) ..... 16, 17

*Aunt Bertha v. NLRB*, No. 4:24-CV-00798-P, 2026 WL 1365028 (N.D. Tex. May 15, 2026) ..... 18

*Barbier v. Connolly*, 113 U.S. 27 (1884) ..... 12

*Bethlehem Steel Co. v. New York State Lab. Rels. Bd.*, 330 U.S. 767 (1947) ..... 19

*Boire v. Greyhound Corp.*, 376 U.S. 473 (1964) ..... 3

*Bricklayers Loc. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401 (9th Cir. 1985) ..... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..... 9

*Chicago, Burlington & Quincy R.R. Co. v. McGuire*, 219 U.S. 549 (1911) ..... 12

*Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022) ..... 18

*Garner v. Teamsters, Loc. Union No. 776*, 346 U.S. 485 (1953) ..... 3, 14, 19

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771 (2023) ..... 11, 13

*Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1 (1957) ..... 14

*Harris v. Bessent*, 160 F.4th 1235 (D.C. Cir. 2025) ..... 16

*Hill v. State of Fla. ex rel. Watson*, 325 U.S. 538 (1945) ..... 11

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ..... 10, 16, 17

*Hotel & Rest. Emps. v. Nev. Gaming Comm'n*,
984 F.2d 1507 (9th Cir. 1993)........ 9
*Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chapter of Assoc'd Builders & Contractors, Inc.*,
801 F.3d 950 (9th Cir. 2015)........ 12
*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. L*iab. Litig.,
959 F.3d 1201 (9th Cir. 2020)........ 16, 17
*Int'l Longshoremen Ass'n v. Davis*,
476 U.S. 380 (1986)........ 13
*Judges v. Owen*,
139 F.4th 293 (4th Cir. 2025)........ 2
*Margoli,*
*n v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285 (2026)........ 1
*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010)........ 18
*Nash v. Fla. Indus. Comm'n*,
389 U.S. 235 (1967)........ 11, 17
*New Process Steel, L.P. v. NLRB*,
560 U.S. 674 (2010)........ 4
*NLRB v. Anthony Co.,*
557 F.2d 692 (9th Cir. 1977)........ 15
*NLRB v. Cal. Horse Racing Bd.*,
940 F.2d 536 (9th Cir. 1991)........ 15
*NLRB v. Comm. of Interns & Residents*,
566 F.2d 810 (2d Cir. 1977)........ 15
*NLRB v. Jones & Laughlin Steel Corp.,*
301 U.S. 1 (1937)........ 2
*Retail Prop. Tr. v. United Bhd. of Carpenters*,
768 F.3d 938 (9th Cir. 2014)........ 11, 12
*San Diego Bldg. Trades Council v. Garmon*,
359 U.S. 236 (1959)........ 2, 9, 10, 13
*Sears, Roebuck & Co. v. Carpenters*,
436 U.S. 180 (1978)........ 13
*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020)........ 16
*Thacker v. Tennessee Valley Auth.*,
587 U.S. 218 (2019)........ 15
*United Farm Workers v. Ariz. Agric. Emp't Rels. Bd.*,
669 F.2d 1249 (9th Cir. 1982)........ 17
*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012)........ 19, 20
*United States v. California*,
921 F.3d 865 (9th Cir. 2019)........ 19, 20
*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
475 U.S. 282 (1986)........ passim

**Statutes**

28 U.S.C. § 2201(a) .......... 18
29 U.S.C. § 151 .......... 2, 16
29 U.S.C. § 152 .......... 13
29 U.S.C. § 153(a) .......... 4, 15
29 U.S.C. § 153(b) .......... 4, 15
29 U.S.C. § 153(d) .......... 3, 4
29 U.S.C. § 157 .......... 3
29 U.S.C. § 158 .......... 3
29 U.S.C. § 159 .......... 3, 13
29 U.S.C. § 160(a) .......... 13
29 U.S.C. § 160(b) .......... 4, 19
29 U.S.C. § 160(c) .......... 4
29 U.S.C. § 160(e) .......... 5
29 U.S.C. § 164(c)(1) .......... 14
29 U.S.C. § 164(c)(2) .......... 15
29 U.S.C. § 166 .......... 16
29 U.S.C. §§ 160(a) .......... 5, 14
Cal. Gov't Code § 3513 .......... 5
Cal. Lab. Code § 923.1(a)(2) .......... 6
Cal. Lab. Code § 923.1(b)(1)(A) .......... 7, 17
Cal. Lab. Code § 923.1(b)(1)(B) .......... 7, 11, 14
Cal. Lab. Code § 923.1(b)(1)(B)(i) .......... 7, 15

**Rules**

Fed. R. Civ. P. 56(a) .......... 9

**Regulations**

29 C.F.R. § 101.12 .......... 4, 5
29 C.F.R. § 101.12(a) .......... 5
29 C.F.R. § 101.14 .......... 5
29 C.F.R. § 102.9 .......... 4
29 C.F.R. § 103.3 .......... 14
29 C.F.R. §§ 101.10(a), 101.11(a) .......... 4
29 C.F.R. §§ 101.4, 101.8 .......... 4
29 C.F.R. §§ 102.60–102.70 .......... 5

## INTRODUCTION

Defendants, the State of California and the Public Employment Relations Board ("PERB"), through California Assembly Bill No. 288, 2025 Cal. Legis. Serv. Ch. 139 (A.B. 288) (WEST) ("AB 288") (ECF No. 1-1), seek to usurp the authority and jurisdiction Congress entrusted to the National Labor Relations Board ("NLRB")[1] to regulate national labor policy, through the National Labor Relations Act ("NLRA" or "Act"). Section 2 of AB 288[2] amends California's Labor Code allowing workers and unions covered by the NLRA to file representation petitions and unfair-labor-practice charges with PERB under certain circumstances. The law seeks to override the NLRB's authority to exclusively regulate private-sector labor relations in the State of California, and instead, empowers PERB to step in and enforce labor rights for private-sector workers in California when the state unilaterally deems federal protections unavailable or ineffective under broad conditions. Accordingly, declaratory relief and a permanent injunction are necessary under the Supremacy Clause of the U.S. Constitution. The instant matter is a pure question of law and therefore does not require development of a factual record.

In the months since this Court granted Plaintiff's Motion for a Preliminary Injunction, ECF No. 30, other courts have confirmed that this Court should find AB 288's scheme preempted. First, the Fourth Circuit's decision in *Owen*, which Defendants and Intervenor relied upon heavily (Defendants' Opposition to Preliminary Injunction ("Defs. PI Opp.") ECF No. 17, at 11–13, 17, 19; Intervenor's Opposition to Preliminary Injunction ("Inv. PI Opp.") ECF No. 16 at 5–6, 8–9), and this Court found compelling, (Preliminary Injunction Order ("Order") ECF No. 30 at 14), was reversed by the Supreme Court. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct.

[1] References to "the NLRB" are to the agency as a whole; references to "the Board" are to the five-member body serving as head of the agency.

[2] Plaintiff challenges only Section 2 of AB 288. Accordingly, hereinafter, references to AB 288 are to Section 2, unless otherwise stated.

1285, 1288 (2026) , *granting cert. and reversing sub nom. Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 299 (4th Cir. 2025).

Second, the Eastern District of New York recently found a similar New York law to be preempted by the Act and therefore unconstitutional. *See Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd.*, No. 25-CV-5311(EK)(MMH), 2026 WL 2085865 (E.D.N.Y. July 20, 2026) (holding that "the [New York law] is squarely preempted by the NLRA"). Notably, the Defendants in that case, including the New York State Public Employment Relations Board, chose not to appeal that ruling.

Given this Court's reasoning in granting in large part Plaintiff's preliminary injunction motion and the subsequent *Margolin* and *Amazon* rulings, what once may have merely appeared likely is now emphatically clear: AB 288's scheme is preempted by the NLRA. Accordingly, Plaintiff is entitled to summary judgment, and declaratory and permanent relief.

## UNDISPUTED FACTUAL BACKGROUND[3]

### A. The National Labor Relations Act

Congress enacted the NLRA, as amended, 29 U.S.C. §§ 151–169, to create a national, uniform body of labor law and policy, and to protect both the stability of the collective-bargaining process and employee free choice. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959); *see also* 29 U.S.C. § 151; SUF ¶ 1. By pursuing these goals, the NLRA seeks to avoid "industrial strife which interferes with the normal flow of commerce." *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 45 (1937) (quoting 29 U.S.C. § 151). To accomplish these purposes, Congress established an integrated system of rights, protections, and prohibitions governing labor relations between employees, employers, and unions in the workplace. Congress

[3] Pursuant to Local Rule 260(a), Plaintiff has separately submitted a numbered Statement of Undisputed Facts, which will be cited herein as "SUF."

also created a centralized, administrative agency, the NLRB, to interpret and administer the NLRA and to resolve labor disputes. *See* 29 U.S.C. §§ 153–154, 160; *Garner v. Teamsters, Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

The NLRA protects employees' rights to join or decline to join a union, and provides a mechanism for peacefully and expeditiously resolving questions concerning union representation. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476–79 (1964). Particular sections of note are: (1) Section 7, which sets forth the core rights of employees, specifically "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and . . . the right to refrain from any or all of such activities," 29 U.S.C. § 157; (2) Section 8, which defines and prohibits union and employer "unfair labor practices" ("ULPs") that infringe on employees' Section 7 rights, *id.* § 158; (3) Section 9, which authorizes the NLRB to regulate representation elections by setting forth procedures for determining whether a majority of employees in an appropriate bargaining unit desire to exercise their rights to bargain collectively and for certifying election results*, id.* § 159; and (4) Section 10, which empowers the Board to prevent and remedy ULPs, *id.* § 160.

**B. The National Labor Relations Board's Administration of the Act**

As explained, the NLRB's two primary functions are to resolve unfair-labor-practice charges and questions of representation. First, the Act designates officials responsible for prosecuting and adjudicating ULP claims. Specifically, Section 3(d) establishes the Office of the General Counsel, and imbues that official with "final authority, on behalf of the NLRB, in respect of the investigation of charges and issuance of complaints . . . , and in respect of the prosecution of such complaints before the NLRB." 29 U.S.C. § 153(d).

Section 3(a) establishes the five-seat Board, whose members are appointed by the President with the advice and consent of the Senate. *Id.* § 153(a). Among other things, the Board issues decisions and final orders adjudicating the merits of the General Counsel's ULP complaints, typically on review of an administrative law judge's ("ALJ") recommended disposition. 29 C.F.R. § 101.12. Upon request and at its discretion, the Board also reviews representation matters decided by regional directors. *Id.* § 102.71. The Board must have a quorum of at least three sitting members to execute its various statutory functions. 29 U.S.C. § 153(b); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 687–88 (2010).

The NLRB's headquarters is in Washington, D.C., and its regional offices, located throughout the country, are where members of the public engage with the NLRB to initiate agency proceedings. Four of those regions are located in the State of California:[4] (1) Region 20 in San Francisco; (2) Region 32 in Oakland; (3) Region 21 in Los Angeles (which oversees a Resident Office in San Diego), and (4) Region 31 also in Los Angeles. Regional offices are headed by regional directors that exercise duties on behalf of the General Counsel and the Board.

The NLRB does not initiate ULP proceedings on its own but acts only when an outside party files a charge alleging that another party has violated the Act. 29 U.S.C. § 160(b); 29 C.F.R. § 102.9. Upon the filing of a charge, the regional director and regional staff, under the General Counsel's general supervision, investigate the charge to determine whether it has merit and whether to issue a complaint. 29 U.S.C. § 153(d); 29 C.F.R. §§ 101.4, 101.8.

After a complaint issues, barring settlement, regional staff prosecute the case on behalf of the General Counsel before an ALJ, who issues a decision at the conclusion of an evidentiary hearing. 29 U.S.C. § 160(c); 29 C.F.R. §§ 101.10(a), 101.11(a). Parties then have an opportunity

[4] Plaintiff requests that the Court take judicial notice of the NLRB's regional offices, as described on the agency's official website.

to file exceptions—i.e., an appeal—of the ALJ's decision with the Board. 29 C.F.R. § 101.12(a). Ultimately, the Board issues its own decision and order, 29 C.F.R. § 101.12, which is not self-enforcing; when a party fails to comply, the Board may seek enforcement of its order in a circuit court of appeals. 29 U.S.C. § 160(e); 29 C.F.R. § 101.14.

Second, representation petitions may be filed only by employees, unions, or employers. Typically, petitions for representation matters, such as elections, are processed by regional offices, which conduct investigations and hearings, hold secret-ballot elections, certify election results, and make findings and issue rulings on objections and challenged ballots, all under the authority of the regional director as delegated by the Board. 29 C.F.R. §§ 102.60–102.70. The Board retains discretionary review authority, and may, upon a party's filing of a request for review, examine a regional director's action in a representation case. *Id.* §§ 102.67(c), 102.71(a).

Finally, Congress provided explicit mechanisms in Sections 10(a) and 14(c) by which states can regulate matters otherwise within the Act's purview. 29 U.S.C. §§ 160(a) (requiring an "agreement" between the Board and a state), 164(c) (requiring the Board to decline jurisdiction).

**C. California's Public Employment Relations Board and AB 288**

PERB is a California agency. SUF ¶ 2. California's 1978 State Employer-Employee Relations Act renamed the Educational Employment Relations Board as the Public Employment Relations Board and expanded its prior jurisdiction to include state employees. SUF ¶ 3; Cal. Gov't Code § 3513.

On September 30, 2025, California's Governor signed into law AB 288, SUF ¶ 4, which asserts that

> California … has a right and responsibility ... to regulate the working conditions of workers within its borders ... when the NLRB is not adequately protecting those rights. ... California also recognizes that existing federal law cannot prevent it from doing its part to enforce and further the rights recognized by the NLRA ... .

AB 288, Section 1(j). Critically, the law adds a new Section 923.1 to the California Labor Code, which permits PERB to regulate private sector labor relations in California if certain conditions are met. SUF ¶ 5–6. The newly added Section 923.1 further states that employees may "form, join, or assist labor organizations, and, when they choose to do so collectively through selected or designated bargaining representatives, to engage in effective and expeditious collective bargaining that results in a collective bargaining agreement addressing their terms and conditions of employment." Cal. Lab. Code § 923.1(a)(2). Under the new section, PERB is directed to "protect and enforce the rights described in subdivision (a)." *Id.* at § 923.1(b)(1).

Specifically, Section 923.1 permits PERB to regulate private-sector labor relations, including resolving charges alleging unfair labor practices and certifying bargaining representatives in California, that would otherwise fall under the jurisdiction of the NLRB, if either of two conditions is met. SUF ¶ 7. *See* Cal. Lab. Code § 923.1(b)(1)(A)–(B). First, if an employee is (or would have been) subject to the NLRA as of January 1, 2025, but the employee "lose[s] coverage" under the NLRA, because the NLRA is "repealed, narrowed, or its enforcement enjoined in a case involving that worker, whether through legislative, executive, or judicial action," and the worker is not otherwise covered by the Railway Labor Act or other California labor law, then that employee is permitted to file an unfair-labor-practice charge or representation petition with PERB. *Id.* at § 923.1(b)(1)(A), (c); SUF ¶ 8. And, second, Section 923.1 provides that the NLRB will be considered to have "expressly or impliedly ceded jurisdiction" under certain named circumstances: (1) if the Board lacks a quorum; (2) if the Board has lost its "independence," which AB 288 defines as "a result of the Supreme Court finding that National Labor Relations Board members are unconstitutionally protected from removal;" (3) when the continued processing of a case is enjoined by a court "due to constitutional challenges

to the [B]oard's structure or authority;" or (4) the NLRB experiences certain levels of case processing delays. Cal. Lab. Code § 923.1(b)(1)(B)(i)–(iv); SUF ¶ 9.

## PROCEDURAL HISTORY

Plaintiff brought this suit on October 15, 2025 (ECF No. 1), two weeks after California enacted AB 288. The Complaint named the State of California and PERB as Defendants. The Complaint challenges the constitutionality of AB 288 under the Supremacy Clause because it "empowers the PERB to regulate activity arguably protected and prohibited by the Act, *Garmon*, 339 U.S. at 245, and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Compl., Claim for Relief ¶ 2.

On October 30, 2025, the International Brotherhood of Teamsters filed an unopposed motion to intervene (ECF No. 4), which was later granted (ECF No. 6).

On November 19, 2025, Plaintiff filed a Motion for Preliminary Injunction seeking to enjoin the implementation and enforcement of AB 288 (ECF No. 10). Intervenor and Defendants filed separate oppositions to the motion (ECF Nos. 16 and 17), and Plaintiff filed a reply (ECF No. 23).

On December 26, 2025, this Court granted in large part Plaintiff's preliminary injunction motion and issued an order enjoining the implementation of AB 288 (ECF No. 30), aside from three portions of AB 288's Section 2. First, the Court held that the Act did not preempt Section 2 if the NLRA itself were to be "repealed" or "narrowed," thereby causing a worker to lose the coverage of the Act. Order at 11–12. Second, the Court found that the provision allowing California to act where the continued processing of an individual worker's case before the NLRB is enjoined, was not preempted. Order at 12. *See generally* Cal. Lab. Code § 923.1(b)(1)(A). Finally, the Court found that the portion of Section 2 where the NLRB expressly ceded jurisdiction, under Section 10(a) or 14(c) of the Act, was not preempted. Order at 12. *See* Cal.

Lab. Code § 923.1(b)(1)(B) (where "the National Labor Relations Board has expressly … ceded jurisdiction.

The order enjoined all remaining portions of AB 288 that purported to claim the NLRB could "impliedly" cede jurisdiction where: (1) the Board loses its quorum; (2) the Board loses its "independence," which AB 288 makes contingent upon a "Supreme Court finding that National Labor Relations Board members are unconstitutionally protected from removal"; or (3) case-processing delays exist. Order at 12–15, *see* Cal. Lab. Code § 923.1(b)(1)(B)–(B)(iv). Thus, the Court found that the NLRB preempts AB 288 where it seeks to permit PERB to assume jurisdiction over conduct subject to the NLRA. Order at 15–16. Moreover, the Court stated that AB 288 is preempted because it would "interrupt[] the NLRB's administration of the NLRA" where the state statute "position[s] PERB to stand in the way of the NLRB's ability to process a matter over which it has jurisdiction. *Id.* at 16.

The Court went on to find that because of Plaintiff's likelihood of success on the merits, "the Court presumes the NLRB will suffer irreparable harm from constitutional violations if the A.B. 288 is implemented in its entirety." *Id.* at 17. The Court further observed that if charges were filed with PERB, pursuant to AB 288, "the threat of conflicting authority and discordant resolution of the same conduct will become live," and therefore constituted likely irreparable harm necessitating preservation of the status quo. *Id.* Further, the Court found that the balance of harms and the public interest in allowing AB 288 to take effect "cannot justify the risk of conflicting jurisdiction and resolutions that would emerge from A.B. 288's implementation." *Id.* at 17–18. Thus, the Court largely enjoined AB 288. Neither Defendants nor Intervenor appealed.

Following resolution of Plaintiff's preliminary injunction motion, Defendants and Intervenor each filed timely Answers to the Complaint (ECF Nos. 30, 31, and 32).

Plaintiff now moves for summary judgment under Federal Rule of Civil Procedure 56.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden of identifying the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bricklayers Loc. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). Where the moving party meets its burden, the non-moving party must identify facts showing that a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Jaska*, 752 F.2d at 1405.

## ARGUMENT

### A. This Facial Preemption Challenge Presents a Pure Question of Law, Leaving No Material Factual Dispute

The NLRB seeks summary judgment on its claim that the NLRA facially preempts AB 288 (apart from three limited circumstances, discussed in Section B.iv., *infra* at 17). Because this facial challenge presents a pure question of law, for which no factual development is needed, there are no material facts in dispute here "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248–49; *Hotel & Rest. Emps. v. Nev. Gaming Comm'n*, 984 F.2d 1507, 1513 (9th Cir. 1993) (development of factual record does not aid resolution of facial preemption challenge). Whether a fact is "material" is governed by substantive law: summary judgment may only be precluded by facts that could affect the suit's final outcome "under the governing law." *Anderson*, 477 U.S. at 248. Further, factual disputes that are "irrelevant or unnecessary *will not be counted*." *Id.* (emphasis added).

The seminal governing law for analyzing whether the NLRA preempts AB 288 is *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). *Garmon* and its progeny state that courts need only analyze whether a state or local law "regulate[s] activity that the NLRA protects, prohibits, or arguably protects or prohibits" to determine whether it is preempted. *Wis.*

*Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986). Thus, a factual inquiry is irrelevant to a facial *Garmon* preemption challenge, which focuses on the activity the state seeks to regulate.

Defendants and Intervenor contend that certain circumstances—namely, whether the NLRB is "independent" or when it is "not operating as Congress intended"—should, if proven, displace *Garmon* as the analytical touchstone for NLRA preemption. *See, e.g.,* Defs. PI Opp at 10, 16; Inv. PI Opp at 5. However, *Garmon* has been the "governing" law for NLRA preemption for almost 70 years. As explained below in Section B.ii., at 13, no recognized exception to *Garmon* applies to AB 288, nor has *Garmon* been replaced as controlling precedent.

Further, under general theories of obstacle preemption, AB 288 "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941). This too is a purely legal question.

Thus, any attempt to introduce extraneous, subjective circumstances does not put *material* facts in dispute "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Accordingly, such facts are "irrelevant [and] unnecessary." *Id.*

**B. The NLRA Preempts AB 288**

First, NLRA preempts AB 288 under the principles of *Garmon* and its progeny. In *Garmon*, the Supreme Court held that "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the Act, the States as well as the federal courts *must defer* to the exclusive competence of the [NLRB]." 359 U.S. at 245 (emphasis added). To do otherwise risks "the danger of state interference with national [labor] policy." *Id*. Later, the Supreme Court explained this concept more broadly: "States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Gould*, 475 U.S. at 286. Indeed, the Court in *Gould* characterized its NLRA preemption holdings as "reasonably settled." *Id*. In 2023, the Supreme Court further

explained that, "when properly invoked," *Garmon* "tells us not just what law applies (federal law, not state law) but who applies it (the [NLRB], not the state courts or federal district courts)." *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 777 (2023) (citation modified). Second, AB 288 is preempted under general theories of obstacle preemption, because it stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Nash v. Fla. Indus. Comm'n*, 389 U.S. 235, 240 (1967) (quoting *Hill v. State of Fla. ex rel. Watson*, 325 U.S. 538, 542 (1945)).

**i. Garmon preemption precludes the State of California and PERB from regulating conduct already regulated by the NLRA**

"[T]he *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Gould*, 475 U.S. at 286. This is because *Garmon* preemption "is designed to prevent conflict in its broadest sense with the complex and interrelated federal scheme of law, remedy, and administration." *Id.* (quotation omitted); *see also Retail Prop. Tr. v. United Bhd. of Carpenters*, 768 F.3d 938, 951 (9th Cir. 2014).

AB 288's addition of Section 923.1 to the California Labor Code places PERB at the forefront of private-sector labor relations in that state by unconstitutionally permitting PERB to regulate employees, employers, and unions otherwise covered by the Act when the NLRB "impliedly" confers jurisdiction through manufactured "triggers." *See* Cal. Lab. Code § 923.1(b)(1)(B).

Accordingly, the breadth of coverage that AB 288 confers on PERB falls squarely within activity that the Act "protects, prohibits, or arguably protects or prohibits." *Gould*, 475 U.S. at 286. Indeed, Defendants and Intervenor admit that AB 288 was designed to regulate the same conduct as the NLRA while one of the enumerated "triggers" applies. Defs. PI Opp. at 7–9; Inv.

PI Opp. at 15–16; *see* Order at 11. Such usurpation of NLRB jurisdiction directly contravenes congressional intent and defies Supreme Court jurisprudence. *See Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chapter of Assoc'd Builders & Contractors, Inc.*, 801 F.3d 950, 966 (9th Cir. 2015) (*Garmon* reasoning has "greatest force" when a state attempts to regulate relations between employees, unions, and employers); Order at 15–16 (finding "no dispute" that workers authorized to initiate proceedings with PERB under AB 288 and the bases for those proceedings are subject to NLRA regulation).

AB 288's text attempts to ground its usurpation of federal authority in the state's police powers, citing a Supreme Court case that was decided 51 years prior to the NLRA's enactment. *See* AB 288, Section 1(i) (citing *Barbier v. Connolly*, 113 U.S. 27, 31 (1884)); *see also* AB 288, Section 1(j) (claiming that California may use its "police powers to regulate the working conditions of workers within its borders … when the NLRB is not adequately protecting those rights."). AB 288 also relies upon a case from three decades prior to the NLRA's enactment, which held that employer-employee relations generally fell within a state's police powers. *See* AB 288, Section 1(i) (citing *Chicago, Burlington & Quincy R.R. Co. v. McGuire*, 219 U.S. 549, 570 (1911)).

California cannot overcome the fact that for the last 90 years, federal law has regulated private-sector labor relations. *See Gould,* 475 U.S. at 286 ("[I]n passing the NLRA Congress largely displaced state regulation of industrial relations."). As the Ninth Circuit has explained, the Supreme Court "has been more apt to find preemption when it is clear that the states are attempting to regulate the same conduct covered by federal law—that is, when states have promulgated their own labor codes." *Retail Prop. Tr.*, 768 F.3d at 950. This is precisely what California has done here. Indeed, this Court expressly recognized that AB 288 "position[s] PERB

to stand in the way of the NLRB's ability to process a matter over which it has jurisdiction." Order at 16.

**ii. No recognized exception to Garmon preemption applies to AB 288**

There are three recognized exceptions to *Garmon*. The first allows a court to resolve a claim involving arguably protected conduct if there is no "reasonable opportunity" to "invoke the Board's jurisdiction" to resolve the conduct at issue. *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 201 (1978); *see also Int'l Longshoremen Ass'n v. Davis*, 476 U.S. 380, 393 n.10 (1986). The second applies if the conduct in question is "a merely peripheral concern" of the NLRA. *Garmon*, 359 U.S. at 243. The third covers situations "where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," a court cannot conclude that Congress "deprived the States of the power to act." *Id*. at 244; *Glacier Nw.*, 598 U.S. at 777 n.1. None salvage AB 288.

The first *Garmon* exception does not apply, as citizens of the State of California have access to four of the NLRB's regional offices where they can "invoke the Board's jurisdiction" by filing ULP charges and representation petitions. Because AB 288 would regulate conduct at the heart of the NLRA's purpose and not to "a merely peripheral concern" of the Act, the second *Garmon* exception also does not apply here. *See* Order at 16 ("A.B. 288's effect interrupts the NLRB's administration of the NLRA and so must be preempted."). Third, as the Act regulates labor relations "affecting commerce," 29 U.S.C. §§ 152(7), 159(c)(1), 160(a), and AB 288 seeks to regulate the same, it is demonstrably *not* rooted simply in "local feeling and responsibility." *See* Order at 16 (AB 288 "position[s] PERB to stand in the way of the NLRB's ability to process a matter over which it has jurisdiction").

Because no *Garmon* exception applies, AB 288's scheme must be found preempted.

**iii. The NLRB may only expressly cede or decline jurisdiction under Sections 10(a) and 14(c) of the Act**

The NLRA does not permit wholesale concurrent federal-state jurisdiction over private sector labor relations such that both sovereigns' regimes may co-exist. *See Garner*, 346 U.S. at 501 ("Congress, in enacting [the Act], can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit."). AB 288 rests on the notion that its "triggers" amount to an implied cession of jurisdiction by the NLRB. Cal. Lab. Code § 923.1(b)(1)(B). But the NLRA contains no mechanism for the NLRB to impliedly cede its exclusive jurisdiction. To the contrary, the NLRA establishes the baseline principle that the Board's "power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise[.]" 29 U.S.C. § 160(a). Only after Section 10(a)'s express and broad retention of the Board's power does the Act name a proviso, which "empower[s]" the Board to execute agreements with states to cede such jurisdiction as only the Board sees fit. *Id.* The Supreme Court has characterized Section 10(a) as the "exclusive" mechanism for the NLRB to affirmatively cede jurisdiction over a particular matter to the states. *Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1, 9 (1957). Section 10(a) ensures "that the national labor policy will not be thwarted even in the predominantly local enterprises to which the proviso applies." *Id*. at 10 (quotation omitted).

In later-added Section 14(c)(1), Congress provided that the NLRB may affirmatively decline jurisdiction over certain matters when it considers the "effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of [the NLRB's] jurisdiction." 29 U.S.C. § 164(c)(1); *see, e.g.,* 29 C.F.R. § 103.3 ("The Board will not assert its jurisdiction in any proceeding under sections 8, 9, and 10 of the Act involving the horseracing and dogracing industries."). And Section 14(c)(2) expressly permits states to "assum[e] or assert[] jurisdiction over labor disputes, over which the Board declines . . . to assert jurisdiction" pursuant to Section

14(c)(1). 29 U.S.C. § 164(c)(2). "[T]he Board's discretionary power, granted by section 14(c)(1), to decline jurisdiction over a class or category of employers is 'a matter of administrative policy within the Board's discretion[.]'" *NLRB v. Cal. Horse Racing Bd.*, 940 F.2d 536, 538 (9th Cir. 1991) (quoting *NLRB v. Anthony Co.,* 557 F.2d 692, 695 (9th Cir. 1977)).

Thus, Sections 10(a) and 14(c) together demonstrate that, contrary to AB 288, Congress requires the NLRB to *expressly* cede or decline jurisdiction before a state may step in. *See NLRB v. Comm. of Interns & Residents*, 566 F.2d 810, 813 n.3 (2d Cir. 1977). AB 288's attempt to enter "in through the back door, when Congress has locked the front one" finds no purchase. *See Thacker v. Tennessee Valley Auth.*, 587 U.S. 218, 225 (2019).

**iv. The NLRB cannot "impliedly" cede jurisdiction**

No other provision or feature of the Act authorizes AB 288's attempt to aggrandize the state's power under the guise of "implied" cession of Board jurisdiction. *See* Order at 15 (rejecting notion that NLRB can impliedly cede jurisdiction). While the NLRA includes a quorum requirement, *see* 29 U.S.C. § 153(b), that does not alter the preemption analysis, *contra* Cal. Lab. Code § 923.1(b)(1)(B)(i), because Congress's creation of such a requirement naturally envisions times when it will not be satisfied. If Congress intended to allow states to act during those temporary periods, it would have said so. *See* Order at 13. In addition, California's assertions of case-processing delays at the NLRB, Cal. Lab. Code § 923.1(b)(1)(B)(ii)–(iv), cannot change the federal scheme. Congress provided no deadlines for the NLRB to process its cases, and California is not entitled to unilaterally set time limits for the NLRB in Congress's stead. *See* Order at 13.

Nor does the status of the NLRA's statutory removal restrictions for Board members, 29 U.S.C. § 153(a), affect the preemption analysis. As an initial matter, AB 288's "independence" provision has not yet been triggered, as it is contingent upon a "Supreme Court finding that National Labor Relations Board members are unconstitutionally protected from removal." Cal.

Lab. Code. at § 923.1(b)(1)(B)(i). Only lower federal courts have reached the question so far.[5] But even if the Supreme Court makes such a finding, that would not open the door for states to create a patchwork of labor regulations and policies, when Congress placed singular importance on a national labor policy to prevent industrial strife which would harm interstate commerce. *See* Order at 14–15 ("Even assuming A.B. 288 is correct that the NLRB's independence is lost if the Supreme Court finds Board Members are unconstitutionally protected from removal, were the situation to materialize the NLRB would nonetheless maintain its authority."); 29 U.S.C. § 151; *see also Amazon.com*, 2026 WL 2085865, at *1 ("[W]hether for-cause removal protections are an essential underpinning of the NLRB's exclusive jurisdiction, as laid out in *Garmon*, is a question for the Supreme Court and/or Congress.").[6]

**v. AB 288 stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress**

The Supremacy Clause invalidates state law "where Congress has made 'a considered judgment' or 'a deliberate choice' to preclude state regulation when a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020) (quoting *Arizona v. United States*, 567 U.S. 387, 405 (2012)). Such preemption arises whenever a state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Thus, "where Congress has determined the appropriate balance, state regulation involving a different method of

---

[5] *See Harris v. Bessent*, 160 F.4th 1235 (D.C. Cir. 2025) (finding NLRB removal protections unconstitutional), *cert. petition filed by Wilcox*, No. 26-5 (June 27, 2026).

[6] Even if the Supreme Court agrees that the NLRA's removal restrictions are unconstitutional, this would not render the rest of the Act inoperable. Because the NLRA contains an express severability provision, 29 U.S.C. § 166, "[t]here is no need to wonder what Congress would have wanted" without the removal restrictions in place "because it has [already] told us." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 235 (2020).

enforcement may upset that balance and be displaced by federal law even where the state 'attempts to achieve one of the same goals as federal law.'" *Volkswagen*, 959 F.3d at 1213 (quoting *Arizona*, 567 U.S. at 406). As explained below, the NLRB's continued authority to regulate private sector labor relations leaves no room for California to purport to do so as well.

California's attempt to regulate the same labor-relations conduct already regulated by the NLRA renders AB 288 "an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Davidowitz*, 312 U.S. at 67. By empowering PERB to exercise jurisdiction over private sector labor relations, concurrent with the NLRB, AB 288 sets the stage for PERB to supplant or augment federal labor policy with its own, a state of affairs the Supreme Court has consistently rejected. *See Nash v. Fla. Indus. Comm'n*, 389 U.S. 235, 239–40 (1967) (Florida law preempted by NLRA where it had "direct tendency to frustrate the purpose of Congress" and "impede resort to the [NLRA]" where it would "defeat or handicap a valid national objective"). Because this scheme plainly interferes with the NLRB's enforcement of the NLRA, AB 288 is, with very narrow exceptions, preempted by the NLRA.

**vi. There are only three narrow exceptions where AB 288 would not conflict with the NLRA**

There are three narrow circumstances in which AB 288 would not be preempted because in those limited instances, AB 288 would not conflict with the NLRA. First, the NLRB does not dispute that should Congress repeal the NLRA entirely, then California may be able to regulate subjects currently regulated by the NLRA. *See* Cal. Lab. Code § 923.1(b)(1)(A). Second, if Congress narrowed the Act by excluding certain classifications of workers from coverage to allow state-by-state regulation (as with agricultural workers, *see United Farm Workers v. Ariz. Agric. Emp't Rels. Bd.*, 669 F.2d 1249, 1257 (9th Cir. 1982)), then AB 288 may validly apply to those workers. *See* Cal. Lab. Code § 923.1(b)(1)(A). Third, if the NLRB is permanently enjoined by a final, non-appealable order from enforcing the Act or processing a case involving a

particular labor dispute, then—as the Court explained in its preliminary injunction order—"the NLRB [is] no longer occupying that space [and] there is no entity with which PERB's exercise of jurisdiction will conflict." Order at 12. Cal. Lab. Code § 923.1(b)(1)(A), (b)(1)(B)(i).[7] The remainder of Section 2 of AB 288 is preempted.

**C. The NLRB Is Entitled to Declaratory and Permanent Injunctive Relief**

This Court should grant the NLRB both a declaratory judgment and a permanent injunction. Under the Declaratory Judgment Act, the trial court has discretion to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *Argonaut Ins. Co. v. St. Francis Medical Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021). In light of the showing above, this Court should declare that A.B. 288 is preempted by the NLRA under either *Garmon* preemption or obstacle preemption, or both.

Next, to be awarded a permanent injunction, a plaintiff must show not only success on the merits, *see Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987), but four other factors as well. *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 156 (2010). These are: irreparable injury; that remedies available at law, such as monetary damages, are inadequate compensation; in considering the balance of hardships between the parties, a remedy in equity is warranted; and, last, that the public interest would not be disserved by a permanent injunction. *Id.* at 156–57. When the government is the opposing party, as here, the third and fourth factors merge. *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022) (preliminary injunction).

---

[7] A preliminary injunction does not divest the NLRB of jurisdiction under AB 288 because such a temporary order does not preclude the NLRB from regaining jurisdiction should its position prevail at final judgment. *Compare Aimbridge Emp. Serv. Corp. v. NLRB*, No. 4:25-cv-1014, 2026 WL 2151345 (E.D. Tex. July 27, 2026) (severing challenged removal restrictions at final judgment and declining to grant permanent injunction), *with Aunt Bertha v. NLRB*, No. 4:24-CV-00798-P, 2026 WL 1365028, at *2 (N.D. Tex. May 15, 2026) (granting permanent injunction on removal-restrictions and Seventh Amendment claims), *appeal docketed*, No. 26-10752 (5th Cir. Aug. 18, 2026).

**i. Irreparable harm and inadequacy of monetary remedies**

The Ninth Circuit has previously found, as did this Court, Order at 17, that where a state statute violates the Supremacy Clause, irreparable harm may be inferred. *See United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019); *see also United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulation."). As explained above, AB 288 creates widely applicable circumstances which would give PERB jurisdiction over matters covered by the NLRB, thus making obvious the threat of irreparable harm posed by the overlapping policies of the NLRA and AB 288. The Supreme Court has made clear that to have two labor authorities vying for primacy threatens divergent outcomes, thus creating "mischievous conflict." *Bethlehem Steel Co. v. New York State Lab. Rels. Bd.*, 330 U.S. 767, 776 (1947); *see also Gould*, 475 U.S. at 285 (explaining that "conflict is imminent" whenever "two separate remedies are brought to bear on the same activity" even if the state and the NLRB agree on whether a labor law violation occurred) (quoting *Garner*, 346 U. S. at 498–99)).

Second, remedies available at law, such as monetary damages, are inadequate to compensate for the injury to Plaintiff. Absent a permanent injunction, the amended California law will set up recurring violations of the Supremacy Clause with each new case filed with PERB. The divergence of fora, laws, and adjudicating bodies will result in chaotic and unpredictable labor relations for employees, unions, and employers, defeating the national labor policy Congress envisioned with passage of the NLRA. Moreover, should employees, unions, and employers choose to file charges with PERB instead of Plaintiff, then those charge filers may lose their rights under the NLRA. This is because Section 10(b) of the Act, 29 U.S.C. § 160(b), prohibits the issuance of complaint based on any ULP that occurred more than six months before the filing of the charge. Thus, parties who delay filing charges under the Act could lose any

chance of obtaining redress, and Plaintiff would be permanently deprived of the authority to remedy that ULP and remove obstructions to commerce that harm the public interest.

**ii. Balance of equities and public interest**

The third and fourth *Monsanto* factors also weigh in favor of a permanent injunction, as it is in the public interest to issue an injunction to prevent violations of the Supremacy Clause. *See United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019). "[F]rustration of federal statutes and prerogatives are not in the public interest." *Alabama*, 691 F.3d at 1301.

**CONCLUSION**

For the above reasons, this Court should permanently enjoin Defendants from implementing and enforcing the challenged portions of Section 2 of AB 288, as specified in the accompanying proposed order.

[*This space intentionally left blank*]

Respectfully submitted,

DAWN L. GOLDSTEIN
Associate General Counsel
Dawn.Goldstein@nlrb.gov

WILLIAM R. WARWICK
Supervisory Attorney
William.Warwick@nlrb.gov

TAMMY L. FARMER
Attorney Advisor
Tammy.Farmer@nlrb.gov

NANCY K. REIBSTEIN
Attorney Advisor
Nancy.Reibstein@nlrb.gov

/s/ Chad A. Wallace
CHAD A. WALLACE
*Trial Attorney*
Chad.Wallace@nlrb.gov
(202) 273-2489
Contempt, Compliance, and
Special Litigation Branch
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570

Dated this 26th day of August, 2026
at Washington, D.C.

# ADDENDUM

TEXT OF CALIFORNIA ASSEMBLY BILL NO. 288, 2025 CAL. LEGIS. SERV. CH. 139 (A.B. 288) ........ A-2

TEXT OF NATIONAL LABOR RELATIONS ACT ........ A-10

**AB-288 Employment: labor organization and unfair practices.** (2025-2026)

SHARE THIS:

Date Published: 09/30/2025 09:00 PM

## Assembly Bill No. 288

CHAPTER 139

An act to amend Sections 1141 and 1148 of, and to add Sections 923.1 and 1140.6 to, the Labor Code, relating to employment.

[ Approved by Governor September 30, 2025. Filed with Secretary of State September 30, 2025. ]

## LEGISLATIVE COUNSEL'S DIGEST

AB 288, McKinnor. Employment: labor organization and unfair practices.

Existing law declares the public policy of the state regarding labor organization, including, among other things, that it is necessary for a worker to have full freedom of association, self-organization, and designation of representatives of their own choosing, to negotiate the terms and conditions of their employment, and to be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

Existing law establishes the Public Employment Relations Board (PERB) in state government as a means of resolving disputes and enforcing the statutory duties and rights of specified public employers and employees under various acts regulating collective bargaining. Under existing law, PERB has the power and duty to investigate an unfair practice charge and to determine whether the charge is justified and the appropriate remedy for the unfair practice.

Existing law, the federal National Labor Relations Act (NLRA), establishes a comprehensive statutory scheme regulating unfair labor practices on the part of employers and labor organizations in industries affecting interstate commerce, and vests in the National Labor Relations Board (NLRB) the power to conduct elections to determine employee representatives and to prevent unfair labor practices affecting commerce.

Existing law, the California Public Records Act, requires that public records, as defined, be available to the public for inspection and made promptly available to any person.

This bill would expand PERB’s jurisdiction by authorizing a worker, to petition PERB to protect and enforce prescribed rights under specified circumstances, including if the worker is employed in a position subject to the NLRA but the NLRB has expressly or impliedly ceded jurisdiction. The bill would authorize PERB to, among other things, decide unfair labor practice cases pursuant to a specified timeline and order all appropriate relief for a violation, including civil penalties, as prescribed. In order to pursue relief from PERB, the bill would require a covered worker or their representative to file an unfair practice charge or petition that includes specified information, including, where applicable, the original charge or petition filed with the NLRB. The bill would

require PERB to hold the supporting documentation and evidence confidential and maintain it as part of its investigatory file and would exempt this documentation and evidence from the California Public Records Act. If PERB determines, among other things, it has insufficient resources to process certain cases or doing so would prevent it from meeting specified statutory deadlines, the bill would require PERB to process and prioritize charges, as specified. The bill would also establish the Public Employment Relations Board Enforcement Fund (fund) in the State Treasury, would require the above-described civil penalties to be deposited into the fund, and would make moneys in the fund available upon appropriation by the Legislature to PERB for the purpose of administering the above-specified provisions. The bill would authorize PERB to rely on its own decisions and precedent under the NLRA and would authorize review of its decisions by a state appellate court, as specified.

Existing law, the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975, grants agricultural employees the right to form and join labor organizations and engage in collective bargaining, as specified, and prohibits agricultural employers and labor organizations from engaging in unfair labor practices. Those provisions establish the Agricultural Labor Relations Board (ALRB) and empower the ALRB to prevent any person from engaging in those practices. Existing law establishes various definitions for these purposes. Existing law requires the ALRB to follow applicable precedents of the NLRA.

This bill would specify that the ALRB has exclusive jurisdiction in all phases of the administration of the act, and to determine whether any person or entity meets one or more of those definitions. The bill would instead authorize the board to follow applicable precedents of the NLRA, but would not obligate the board to follow precedents where the ALRB deems it inappropriate to do so.

This bill would make related findings and declarations and would make its provisions severable.

Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.
Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: no

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** The Legislature finds and declares all of the following:

(a) Workers have inalienable rights, and rights under the First Amendment to the United States Constitution and under the California Constitution, to free speech and free association and to exercise their right to collectively bargain over the labor they provide to employers, in order to improve their terms and conditions of employment.

(b) The National Labor Relations Act (NLRA) was passed in 1935 as a way to codify those rights for the majority of private sector workers by "encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection," through the National Labor Relations Board (NLRB), an agency created by Congress.

(c) The NLRA recognized workers' inalienable right to control their own labor and was intended to alleviate the labor unrest that predominated before 1935 when employees were forced to find their own avenues to exercise those rights and were often met with violence, by giving workers an avenue to vindicate those rights through a multimember board of experts who were protected from political removal so that they could develop expertise in enforcing the rights recognized by the NLRA.

(d) Over the past several decades, the NLRB has become less effective at protecting and enforcing workers' rights, due to a variety of factors such as completely inadequate funding, understaffing, a narrowing of the types of workers who can invoke the protections of the NLRA, a narrowing of the scope of protected concerted activity, and its enforcement mechanisms are further threatened with the loss of decisionmaking due to a lack of a quorum with its administrative proceedings being enjoined through challenges to its constitutionality and its independence.

(e) California law has also codified workers' fundamental and constitutionally protected rights as part of its public policy, stating in Section 923 of the Labor Code that "[workers] have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or

their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

(f) The NLRB's inefficacy has meant that more and more California workers are being deprived of these rights and that more and more employers have not been meaningfully held accountable for, or deterred from, violating those rights. These employers are squelching worker organizing, refusing to bargain, and committing other unfair labor practices with impunity. This means that California workers who choose to unionize are often forced to wait for years to have their right to meet their employer at the bargaining table vindicated. That delay and the NLRB's increasing inability to provide meaningful and timely relief negates the very purposes underlying the NLRA. It discourages collective bargaining and incentivizes employers to not bargain in good faith. It precludes workers from timely obtaining improved wages and working conditions, undermines union support, and causes workers more instability. Workers are irreparably harmed by either being forced to abandon their efforts to improve their lot, subjecting them to continued exploitation, or by being forced to find ways outside of the NLRA to demand their inalienable rights, opening the door to the industrial unrest and violence that plagued pre-NLRA labor relations in our country.

(g) The inequality of bargaining power between employees, who do not possess full freedom of association or actual liberty of contract, and employers, who are organized in corporate or other forms of association, substantially burdens and affects the safety, health, and general welfare of the populace of California. Experience has demonstrated that certain practices by employers have the effect of disturbing the general welfare of the state through unfair or unsafe business practices that harm workers individually, as a group, and cause harm to the public at large. The elimination of such practices through the promotion and protection of organizing and collective bargaining is a necessary condition to the assurance of the rights herein guaranteed.

(h) California, therefore, has a duty to protect its workers' rights to organize and collectively bargain because these rights promote employees' control over the conditions of their working life, the creation of a more just workplace, and help stem the tide of wealth inequality rampant in the state. It has a duty to eliminate the causes of certain substantial obstructions to the general welfare and to mitigate and eliminate these unfair labor practices when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

(i) A state's power is at its zenith when it is exercising its police power to protect its populace's physical, social, and economic well-being. See Barbier v. Connolly (1884) 113 U.S. 27, 31. As the Supreme Court has long recognized that "[i]n dealing with the relation of employer and employed, [a state] legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression." Chicago, B. & Q.R. Co. v. McGuire (1911) 219 U.S. 549, 570.

(j) California, therefore, has a right and responsibility to utilize its inherent police powers to regulate the working conditions of workers within its borders, including by preserving workers' fundamental and constitutionally protected rights to free speech and to freely associate in order to improve their terms and conditions of employment, when the NLRB is not adequately protecting those rights. Although California recognizes that it cannot take away rights granted to employees under the NLRA, California also recognizes that existing federal law cannot prevent it from doing its part to enforce and further the rights recognized by the NLRA, which stem from an individual's inherent sovereignty and from the United States and California Constitutions. California also recognizes that workers exercising such rights are not subject to antitrust liability.

(k) Giving employees access to an effective process for vindicating their rights and for improving their terms and conditions of employment was instrumental to reducing the labor unrest and industrial strife that plagued the country prior to the enactment of the National Labor Relations Act in 1935. Now, employees are losing access to that effective process due to threats to the NLRB's independence, ongoing legal challenges to the NLRB's constitutionality, and the NLRB's inability to undertake the tasks delegated to it by Congress. This has the potential to cause significant and widespread disruption throughout the supply chain, harming the state and national economy. It is imperative that California act to ensure stable labor relations in this state.

(l) Justice delayed is justice denied, and refusal to decide is itself a decision. Accordingly, where an agency or body of government is deprived of adequate funding or personnel to adjudicate, or otherwise refuses to adjudicate, cases affecting the rights of parties appearing before it in a timely manner, and California has determined that this inaction constitutes a rule of decision ceding jurisdiction of those cases.

**SEC. 2.** Section 923.1 is added to the Labor Code, to read:

**923.1.** (a) (1) All of the provisions of this section shall be liberally construed to ensure that all workers in California can effectively vindicate their fundamental rights to full freedom of association, self-organization, and designation of representatives of their own choosing, free from retaliation or intimidation by their employer.

(2) The rights described in this subdivision mean that a worker shall be allowed to engage in collective action, to organize, form, join, or assist labor organizations, and, when they choose to do so collectively through selected or designated bargaining representatives, to engage in effective and expeditious collective bargaining that results in a collective bargaining agreement addressing their terms and conditions of employment.

(3) The state and its political subdivisions shall not, directly or indirectly, deny, burden, or abridge the rights described in this subdivision except as necessary to serve a compelling state interest achieved by the least restrictive means.

(b) (1) A worker who meets the description in subparagraph (A) or (B) may petition the Public Employment Relations Board to protect and enforce the rights described in subdivision (a).

(A) The worker is employed in a position that is, or would have been, subject to the National Labor Relations Act as of January 1, 2025, but they lose coverage under the National Labor Relations Act because the National Labor Relations Act is repealed, narrowed, or its enforcement enjoined in a case involving that worker, whether through legislative, executive, or judicial action, and the worker is not otherwise covered by the federal Railway Labor Act (45 U.S.C. Sec. 151 et seq.) or by any law that subjects them to the jurisdiction of the Public Employment Relations Board, aside from this section, or the Agricultural Labor Relations Board.

(B) The worker is employed in a position which is or would be subject to the National Labor Relations Act as of January 1, 2025, but the National Labor Relations Board has expressly or impliedly ceded jurisdiction. The National Labor Relations Board will be deemed to have ceded jurisdiction to the states if any of the following conditions are satisfied as of January 1, 2026:

(i) For cases where a certification of the results of an election, including a certification of representative, or administrative law judge decision has been issued, or where challenges or objections to a representation election are pending before the National Labor Relations Board, when there is a lack of a quorum of the National Labor Relations Board, or when the National Labor Relations Board has lost its independence as a result of the Supreme Court finding that National Labor Relations Board members are unconstitutionally protected from removal or when the continued processing of a case is enjoined by a court due to constitutional challenges to the board's structure or authority.

(ii) For cases where no certification or complaint or decision has been issued, when there are processing delays resulting in the worker's case remaining pending before a regional director for more than six months without the issuance of a complaint or certification of an election, or remaining pending more than six months after a complaint has been issued without the issuance of a decision by an administrative law judge or without the issuance of a decision about the certification by the National Labor Relations Board.

(iii) For cases where a certification of the results of an election, including a certification of representative, or other reviewable order has been issued by the regional director or administrative law judge, when there are processing delays resulting in failure by the National Labor Relations Board to accept or decline review or grant special permission to appeal for more than six months following the filing of a request for review or for special permission to appeal.

(iv) For cases on review or exceptions before the National Labor Relations Board, when there are processing delays resulting in the case remaining pending for more than 12 months without the issuance of a final decision.

(2) If the Public Employment Relations Board determines that the conditions described in subparagraph (A) or (B) of paragraph (1) no longer apply, the Public Employment Relations Board shall retain jurisdiction over pending matters and shall maintain jurisdiction from that point forward unless ordered by a court of competent jurisdiction to cede its jurisdiction.

(3) This subdivision shall not affect the rights of workers under other federal or state statutes.

(c) A worker who meets the conditions of subparagraph (A) or (B) of paragraph (1) of subdivision (b) or their chosen representative may do any of the following:

(1) Petition the Public Employment Relations Board to process any representation petition previously filed with the National Labor Relations Board.

(2) Petition the Public Employment Relations Board to promptly certify an exclusive bargaining representative that has previously been certified by another state or federal agency, or that has been selected by the majority of employees in an appropriate bargaining unit through an election, through other legal processes recognized by the Public Employment Relations Board or the National Labor Relations Board at that time the selection is made, or through a written designation. All existing terms and conditions of employment between a certified exclusive bargaining representative and an employer shall remain in full force and effect during bargaining following certification.

(3) Petition the Public Employment Relations Board to decide unfair labor practice cases on the following timeline:

(A) As of January 1, 2026, cases involving an employer of more than 500 employees and alleging a refusal to bargain, a refusal to recognize, or a refusal to give effect to an election certification, or cases involving a unilateral withdrawal of recognition from the worker's chosen representative by an employer of any size, and associated violations that are necessary to decide the bargaining or recognition violation. These shall be considered Category 1 cases and shall take priority over any Category 2 or 3 cases.

(B) As of July 1, 2026, cases involving an employer of any size and alleging a refusal to bargain, a refusal to recognize, or a refusal to give effect to an election certification, and associated violations that are necessary to decide the bargaining or recognition violation. These shall be considered Category 1 cases and shall take priority over any Category 2 or 3 cases.

(C) As of January 1, 2027, cases alleging that an employer has failed to bargain in good faith if the parties have been engaged in bargaining for a collective bargaining agreement for over six months without reaching agreement, and associated violations. These shall be considered Category 2 cases and shall take priority over any Category 3 cases.

(D) If the Public Employment Relations Board determines that it has insufficient resources to process all cases filed under subparagraphs (A), (B), or (C) of paragraph (3) of subdivision (c), or that doing so would prevent it from meeting statutory deadlines applicable prior to July 1, 2026, the Public Employment Relations Board shall process and prioritize cases in accordance with the following before processing any Category 3 cases:

(i) Cases involving employers employing more than 500 workers affected or potentially affected by the case shall be priority 1.

(ii) Cases involving an active union organizing campaign and allegations of loss of employment shall be priority 2.

(iii) Cases involving an active union organizing campaign and allegations not involving loss of employment shall be priority 3.

(iv) Cases that have been pending before the NLRB for more than 18 months shall be priority 4.

(v) All other Category 1 or 2 cases shall be priority 5.

(E) As of January 1, 2027, all other cases not included in paragraph (A), (B), or (C) shall be considered Category 3 cases. The Public Employment Relations Board shall prioritize and process Category 3 cases, to the extent feasible, in accordance with the following:

(i) Cases involving allegations arising from an organizing campaign shall be priority 1.

(ii) Cases involving allegations of loss of employment shall be priority 2.

(iii) Cases involving allegations of retaliation for union activities or the exercise of rights under the NLRA or this section, not involving loss of employment, shall be priority 3.

(iv) Cases involving allegations of violation of Weingarten rights, failure to respond to union information requests, or unilateral changes by an employer engaging in first contract negotiation shall be priority 4.

(v) The Public Employment Relations Board may further prioritize the resolution of subcategories of cases within each of these categories, or within the group of cases not categorized above, to ensure the most

efficient possible resolution of such cases and the maximum possible protection of employee rights.

(d) To pursue relief from the Public Employment Relations Board, a covered worker or their representative shall file both of the following with the Public Employment Relations Board:

(1) An unfair practice charge or petition that includes all of the following information:

(A) The charging party's name, address, email address, and telephone number.

(B) The respondent's name, address, email address, and telephone number.

(C) Where applicable, the original charge or petition filed with the National Labor Relations Board with all supporting documentation and evidence that was submitted to the National Labor Relations Board.

(D) All correspondence, communications, or other materials received by the charging party, or otherwise in the charging party's possession, from the National Labor Relation's Board regarding the original charge or petition filed with the National Labor Relation's Board.

(2) The documentation and evidence filed with the Public Employment Relations Board shall not be served on the respondent.

(3) The Public Employment Relations Board shall hold the supporting documentation and evidence confidential and maintain it as part of its investigatory file.

(4) Documentation and evidence under paragraph (1) shall not be deemed to be public records for purposes of the California Public Records Act (Division 10 (commencing with Section 7920.000) of Title 1 of the Government Code).

(e) (1) In implementing this section, the Public Employment Relations Board may do all of the following pursuant to its own procedures:

(A) Conduct elections to determine whether a majority of workers in an appropriate bargaining unit have selected an exclusive representative for purposes of collective bargaining.

(B) Promptly certify an exclusive bargaining representative by determining whether a majority of workers in an appropriate bargaining unit have selected an exclusive representative for purposes of collective bargaining, and order that an employer bargain with that exclusive bargaining representative. Selection may be demonstrated through a previous certification by another state or federal agency, or through an election, or through other legal processes recognized by the Public Employment Relations Board or the National Labor Relations Board at that time the selection is made, or through a written designation. This shall include the ability to resolve pending objections or voter eligibility challenges in an election previously pending with the National Labor Relations Board.

(C) Order that an employer bargain with an exclusive bargaining representative and otherwise decide unfair labor practices and order all appropriate action and remedies.

(D) Order than an employer submit to binding arbitration to assist the parties in finalizing their negotiations for a collective bargaining agreement if the National Labor Relations Board or the Public Employment Relations Board has certified an exclusive bargaining representative, or if an employer has voluntarily recognized the exclusive bargaining representative of a group of workers, and more than six months have passed without the parties agreeing on and executing a collective bargaining agreement.

(E) Order any appropriate remedy, including injunctive relief and penalties, necessary to effectuate this section, including if an employer refuses to comply with an order under this section.

(2) The Public Employment Relations Board may rely on its own decisions and precedent under the National Labor Relations Act, and shall do so in a manner that most expansively effectuates the rights guaranteed under this section.

(3) The Public Employment Relations Board may order all appropriate relief for a violation of this section, including civil penalties. If the Public Employment Relations Board finds that an employer has engaged in a pattern or practice of committing unfair practices, it may assess civil penalties in the amount of one thousand dollars ($1,000) per worker per violation.

(4) Any action taken by the Public Employment Relations Board pursuant to this section may be reviewed by a state appellate court of competent jurisdiction. The decision of the court enforcing an order of the Public Employment Relations Board shall be final, subject to the right to petition the California Supreme Court for review, and the pendency of a petition for review shall not, except by express order of the courts, constitute a stay of the decision. The violation of a decision under this section shall be remediable by the court as contempt thereof.

(f) (1) The Public Employment Relations Board Enforcement Fund is hereby established in the State Treasury.

(2) Any civil penalty collected pursuant to this section shall be deposited into the Public Employment Relations Board Enforcement Fund.

(3) Moneys in the fund shall be available upon appropriation by the Legislature for the Public Employment Relations Board for purposes of administering this section.

(g) For purposes of this section, the following definitions apply:

(1) "Charging party" means the party bringing an unfair labor practice charge.

(2) "Respondent" means the party that allegedly committed the unfair labor practice.

**SEC. 3.** Section 1140.6 is added to the Labor Code, to read:

**1140.6.** Notwithstanding any other provision of state law, the board shall have exclusive jurisdiction in all phases of the administration of this part to determine whether any person or entity meets one or more definitions set forth in Section 1140.4.

**SEC. 4.** Section 1141 of the Labor Code is amended to read:

**1141.** (a) There is hereby created in the Labor and Workforce Development Agency the Agricultural Labor Relations Board, which shall consist of five members and which shall have exclusive jurisdiction over all phases of the administration of this part.

(b) The members of the board shall be appointed by the Governor with the advice and consent of the Senate. The term of office of the members shall be five years, and the terms shall be staggered at one-year intervals. Upon the initial appointment, one member shall be appointed for a term ending January 1, 1977, one member shall be appointed for a term ending January 1, 1978, one member shall be appointed for a term ending January 1, 1979, one member shall be appointed for a term ending January 1, 1980, and one member shall be appointed for a term ending January 1, 1981. Any individual appointed to fill a vacancy of any member shall be appointed only for the unexpired term of the member to whose term they are succeeding. The Governor shall designate one member to serve as chairperson of the board. Any member of the board may be removed by the Governor, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.

**SEC. 5.** Section 1148 of the Labor Code is amended to read:

**1148.** The board may follow applicable precedents of the National Labor Relations Act, as amended, which shall constitute persuasive authority in the interpretation and application of this part, but shall not be obligated to follow those precedents where the board deems it inappropriate to do so.

**SEC. 6.** The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

**SEC. 7.** The Legislature finds and declares that Section 2 of this act, which adds Section 923.1 to the Labor Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

In order to protect confidential information in National Labor Relations Board cases, while also ensuring the Public Employment Relations Board has access to information necessary for fulfilling its statutory role, it is necessary that information that may be privileged or otherwise exempt from disclosure to the public or other

authorized persons under federal statute or laws remain confidential when shared with the Public Employment Relations Board.

# NATIONAL LABOR RELATIONS ACT

[Chapter 372 of the 80th Congress, 49 Stat. 449]

[As Amended Through P.L. 98–620, Enacted November 8, 1984]

⟦Currency: This publication is a compilation of the text of Chapter 372 of the 80th Congress. It was last amended by the public law listed in the As Amended Through note above and below at the bottom of each page of the pdf version and reflects current law through the date of the enactment of the public law listed at https://www.govinfo.gov/app/collection/comps/⟧

⟦Note: While this publication does not represent an official version of any Federal statute, substantial efforts have been made to ensure the accuracy of its contents. The official version of Federal law is found in the United States Statutes at Large and in the United States Code. The legal effect to be given to the Statutes at Large and the United States Code is established by statute (1 U.S.C. 112, 204).⟧

AN ACT To diminish the causes of labor disputes burdening or obstructing interstate and foreign commerce, to create a National Labor Relations Board, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

FINDINGS AND POLICIES

SECTION 1. The denial by some employers of the right of employees to organize and the refusal by some employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest, which have the intent or the necessary effect of burdening or obstructing commerce by (a) impairing the efficiency, safety, or operation of the instrumentalities of commerce; (b) occurring in the current of commerce; (c) materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods from or into the channels of commerce, or the prices of such materials or goods in commerce; or (d) causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for goods flowing from or into the channels of commerce.

The inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association substantially burdens and affects the flow of commerce, and tends to aggravate recurrent business depressions, by depressing wage rates and the purchasing power of wage earners in industry and by preventing the stabilization of competitive wage rates and working conditions within and between industries.

Experience has proved that protection by law of the right of employees to organize and bargain collectively safeguards com-



AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

merce from injury, impairment, or interruption, and promotes the flow of commerce by removing certain recognized sources of industrial strife and unrest, by encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and by restoring equality of bargaining power between employers and employees.

Experience has further demonstrated that certain practices by some labor organizations, their officers, and members have the intent or the necessary effect of burdening or obstructing commerce by preventing the free flow of goods in such commerce through strikes and other forms of industrial unrest or through concerted activities which impair the interest of the public in the free flow of such commerce. The elimination of such practices is a necessary condition to the assurance of the rights herein guaranteed.

It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

【29 U.S.C. 151】 Enacted July 5, 1935, ch. 372, sec. 1, 49 Stat. 449; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 136.

DEFINITIONS

SEC. 2. When used in this Act—

(1) The term "person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in cases under title 11 of the United States Code, or receivers.

(2) The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

(3) The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless the Act explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway

Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.

(4) The term "representatives" includes any individual or labor organization.

(5) The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(6) The term "commerce" means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.

(7) The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.

(8) The term "unfair labor practice" means any unfair labor practice listed in section 8.

(9) The term "labor dispute" includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

(10) The term "National Labor Relations Board" means the National Labor Relations Board provided for in section 3 of this Act.

(11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

(12) The term "professional employee" means—

(a) any employee engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes; or

(b) any employee, who (i) has completed the courses of specialized intellectual instruction and study described in clause (iv) of paragraph (a), and (ii) is performing related work under the supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a).

(13) In determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

(14) The term "health care institution" shall include any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged person.

【29 U.S.C. 152】 Enacted July 5, 1935, ch. 372, sec. 2, 49 Stat. 450; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 137; amended July 26, 1974, P.L. 93–360, sec. 1(a), (b), 88 Stat. 395; amended November 6, 1978, P.L. 95–598, title III, sec. 319, 92 Stat. 2678.

NATIONAL LABOR RELATIONS BOARD

SEC. 3. (a) The National Labor Relations Board (hereinafter called the "Board") created by this Act prior to its amendment by the Labor Management Relations Act, 1947, is hereby continued as an agency of the United States, except that the Board shall consist of five instead of three members, appointed by the President by and with the advice and consent of the Senate. Of the two additional members so provided for, one shall be appointed for a term of five years and the other for a term of two years. Their successors, and the successors of the other members, shall be appointed for terms of five years each, excepting that any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed. The President shall designate one member to serve as Chairman of the Board. Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.

(b) The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise. The Board is also authorized to delegate to its regional directors its powers under section 9 to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot under subsection (c) or (e) of section 9 and certify the results thereof, except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, but such a review shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director. A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof. The Board shall have an official seal which shall be judicially noticed.

(c) The Board shall at the close of each fiscal year make a report in writing to Congress and to the President summarizing significant case activities and operations for that fiscal year.

(d) There shall be a General Counsel of the Board who shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General Counsel of the Board shall exercise general supervision over all attorneys employed by the Board (other than trial examiners and legal assistants to Board members) and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law. In case of a vacancy in the office of the General Counsel the President is authorized to designate the officer or employee who shall act as General Counsel during such vacancy, but no person or persons so designated shall so act (1) for more than forty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted.

【29 U.S.C. 153】 Enacted July 5, 1935, ch. 372, sec. 3, 49 Stat. 451; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 139; amended September 14, 1959, P.L. 86–257, title VII, secs. 701(b), 703, 73 Stat. 542; amended January 2, 1975, P.L. 93–608, sec. 3(3), 88 Stat. 1972; amended December 21, 1982, P.L. 97–375, title II, sec. 213, 96 Stat. 1826.

SEC. 4. (a) Each member of the Board and the General Counsel of the Board shall receive a salary of $12,000 a year, shall be eligible for reappointment, and shall not engage in any other business, vocation, or employment. The Board shall appoint an executive secretary, and such attorneys, examiners, and regional directors, and such other employees as it may from time to time find necessary for the proper performance of its duties. The Board may not employ any attorneys for the purpose of reviewing transcripts of hearings or preparing drafts of opinions except that any attorney employed for assignment as a legal assistant to any Board member may for such Board member review such transcripts and prepare such drafts. No trial examiner's report shall be reviewed, either before or after its publication, by any person other than a member of the Board or his legal assistant, and no trial examiner shall advise or consult with the Board with respect to exceptions taken to his findings, rulings, or recommendations. The Board may establish or utilize such regional, local, or other agencies, and utilize such voluntary and uncompensated services, as may from time to time be needed. Attorneys appointed under this section may, at the direction of the Board, appear for and represent the Board in any case in court. Nothing in this Act shall be construed to authorize the Board to appoint individuals for the purpose of conciliation or mediation, or for economic analysis.

(b) All of the expenses of the Board, including all necessary traveling and subsistence expenses outside the District of Columbia incurred by the members or employees of the Board under its orders, shall be allowed and paid on the presentation of itemized

vouchers therefor approved by the Board or by any individual it designates for that purpose.

[29 U.S.C. 154] Enacted July 5, 1935, ch. 372, sec. 4, 49 Stat. 451; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 139.

SEC. 5. The principal office of the Board shall be in the District of Columbia, but it may meet and exercise any or all of its powers at any other place. The Board may, by one or more of its members or by such agents or agencies as it may designate, prosecute any inquiry necessary to its functions in any part of the United States. A member who participates in such an inquiry shall not be disqualified from subsequently participating in a decision of the Board in the same case.

[29 U.S.C. 155] Enacted July 5, 1935, ch. 372, sec. 5, 49 Stat. 452; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 140.

SEC. 6. The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by the Administrative Procedure Act, such rules and regulations as may be necessary to carry out the provisions of this Act.

[29 U.S.C. 156] Enacted July 5, 1935, ch. 372, sec. 6, 49 Stat. 452; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 140.

RIGHTS OF EMPLOYEES

SEC. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).

[29 U.S.C. 157] Enacted July 5, 1935, ch. 372, sec. 7, 49 Stat. 452; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 140.

UNFAIR LABOR PRACTICES

SEC. 8. (a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: *Provided,* That subject to rules and regulations made and published by the Board pursuant to section 6, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 8(a) of this Act as an

unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later; (i) if such labor organization is the representative of the employees as provided in section 9(a), in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 9(e) within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a).

(b) It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purpose of collective bargaining or the adjustment of grievances;

(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 9(a);

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce

or in an industry affecting commerce, where in either case an object thereof is—

(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by section 8(e);

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 9;

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

*Provided,* That nothing contained in this subsection (b) shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognized under this Act: *Provided further,* That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity other than picketing, for the purposes of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;

(5) To require of employees covered by an agreement authorized under subsection (a)(3) the payment, as a condition precedent to becoming a member of such organization, of a fee

in an amount which the Board finds excessive or discriminatory under all the circumstances. In making such a finding, the Board shall consider, among other relevant factors, the practices and customs of labor organizations in the particular industry, and the wages currently paid to the employees affected;

(6) to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed; and

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(A) where the employer has lawfully recognized in accordance with this Act any other labor organization and a question concerning representation may not appropriately be raised under section 9(c) of this Act,

(B) where within the preceding twelve months a valid election under section 9(c) of this Act has been conducted, or

(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c)(1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this section 8(b).

(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit.

(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms

and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modificatiaons;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

The duties imposed upon employers, employees, and labor organizations by paragraphs (2), (3), and (4) shall become inapplicable upon an intervening certification of the Board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representative of the employees subject to the provisions of section 9(a), and the duties so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract. Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 8, 9, and 10 of this Act, as amended, but such loss of status for such employee shall terminate if and when he is reemployed by such employer. Whenever the collective bargaining involves employees of a health care institution, the provisions of this section 8(d) shall be modified as follows:

(A) The notice of section 8(d)(1) shall be ninety days; the notice of section 8(d)(3) shall be sixty days; and the contract period of section 8(d)(4) shall be ninety days.

(B) Where the bargaining is for an initial agreement following certification or recognition, at least thirty days' notice of the existence of a dispute shall be given by the labor organization to the agencies set forth in section 8(d)(3).

(C) After notice is given to the Federal Mediation and Conciliation Service under either clause (A) or (B) of this sentence, the Service shall promptly communicate with the parties and use its best efforts, by mediation and conciliation, to bring them to agreement. The parties shall participate fully and promptly in such meetings as may be undertaken by the Service for the purpose of aiding in a settlement of the dispute.

(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: *Provided,* That nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: *Provided further,* That for the purposes of this subsection (e) and section 8(b)(4)(B) the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: *Provided further,* That nothing in this Act shall prohibit the enforcement of any agreement which is within the foregoing exception.

(f) It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in section 8(a) of this Act as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 9 of this Act prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or pro-

vides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area: *Provided,* That nothing in this subsection shall set aside the final proviso to section 8(a)(3) of this Act: *Provided further,* That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 9(c) or 9(e).

(g) A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention, except that in the case of bargaining for an initial agreement following certification or recognition the notice required by this subsection shall not be given until the expiration of the period specified in clause (B) of the last sentence of section 8(d) of this Act. The notice shall state the date and time that such action will commence. The notice, once given, may be extended by the written agreement of both parties.

【29 U.S.C. 158】 Enacted July 5, 1935, ch. 372, sec. 8, 49 Stat. 452; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 140; amended October 22, 1951, ch. 534, sec. 1(b), 65 Stat. 601; amended September 14, 1959, P.L. 86–257, title II, sec. 201(e), title VII, secs. 704(a)–(c), 705(a), 73 Stat. 525,542; amended July 26, 1974, P.L. 93–360, sec. 1(c)-(e), 88 Stat. 395, 396.

### REPRESENTATIVES AND ELECTIONS

SEC. 9. (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employees or a group of employees shall have the right at any time at present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercisiong the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided,* That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; or (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation or (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and

other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards.

(c)(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in section 9(a), or (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defind in section 9(a); or

(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in section 9(a);

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

(2) In determining whether or not a question or representation affecting commerce exists, the same regulations and rules of decision shall apply irrespective of the identity of the persons filing the petition or the kind of relief sought and in no case shall the Board deny a labor organization a place on the ballot by reason of an order with respect to such labor organization or its predecessor not issued in conformity with section 10(c).

(3) No election shall be directed in any bargaining unit or any subdivision within which, in the preceding twelve-month period, a valid election shall have been held. Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this Act in any election conducted within twelve months after the commencement of the strike. In any election where none of the choices on the ballot receives a majority, a run-off shall be conducted, the ballot providing for a selection between the two choices receiving the largest and second largest number of valid votes cast in the election.

(4) Nothing in this section shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules of decision of the Board.

(5) In determining whether a unit is appropriate for the purposes specified in subsection (b) the extent to which the employees have organized shall not be controlling.

(d) Whenever an order of the Board made pursuant to section 10(c) is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification and the record of such investigatioon shall be included in the transcript of the entire record required to be filed under section 10(e) or 10(f), and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript.

(e)(1) Upon the filing with the Board, by 30 per centum or more of the employees in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to section 8(a)(3), of a petition alleging they desire that such authority be rescinded, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(2) No election shall be conducted pursuant to this subsection in any bargaining unit or any subdivision within which, in the preceding twelve-month period, a valid election shall have been held.

【29 U.S.C. 159】 Enacted July 5, 1935, ch. 372, sec. 9, 49 Stat. 453; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 143; amended October 22, 1951, ch. 534, sec. 1(c),(d), 65 Stat. 601; amended September 14, 1959, P.L. 86–257, title II, sec. 201(d), title VII, sec. 702, 73 Stat. 525, 542.

PREVENTION OF UNFAIR LABOR PRACTICES

SEC. 10. (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided,* That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statue applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith.

(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be com-

puted from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discertion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to the Act of June 19, 1934 (U.S.C., title 28, secs. 723–B, 723–C). [1]

(c) The testimony taken by such member, agent, or agency or the Board shall be reduced to writing and filed with the Board. Thereafter, in its discretion, the Board upon notice may take further testimony or hear argument. If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act: *Provided,* That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him: *And provided further,* That in determining whether a complaint shall issue alleging a violation of section 8(a)(1) or section 8(a)(2), and in deciding such cases, the same regulations and rules of decisions shall apply irrespective of whether or not the labor organization affected is affiliated with a labor organization national or international in scope. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause. In case the evidence is presented before a member of the Board, or before an examiner or examiners thereof, such member, or such examiner or examiners, as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may

[1] This provision is presently codified in section 2072 of Title 28, United States Code.

authorize, such recommended order shall become the order of the Board and become effective as therein prescribed.

(d) Until the record in a case shall have been filed in a court, as hereinafter provided, the Board may at any time upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it.

(e) The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of title 28, United States Code. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of title 28.

(f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any court of appeals of the United States in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the

District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28, United States Code. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact it supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

(g) The commencement of proceedings under subsection (e) or (f) of this section shall not, unless specifically ordered by the court, operate as a stay of the Board's order.

(h) When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part an order on the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by the Act entitled "An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes", approved March 23, 1932 (U.S.C., Supp. VII, title 29, secs. 101–115).

【(i) Repealed】

(j) The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States (including the United States District Court for the District of Columbia), within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

(k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 8(b), the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

(l) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 8(b), or section 8(e) or section 8(b)(7), the prelimi-

nary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States (including the United States District Court for the District of Columbia) within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: *Provided further,* That no temporary restraining order shall be issued without notice unless a petition alleges that substantial and irreparable injury to the charging party will be unavoidable and such temporary restaining order shall be effective for no longer than five days and will become void at the expiration of such period: *Provided further,* That such officer or regional attorney shall not apply for any restraining order under section 8(b)(7) if a charge against the employer under section 8(a)(2) has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue. Upon filing of any such petition other courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: *Provided further,* That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. The service of legal process upon such officer or agent shall constitute service upon the labor organization and make such organization a party to the suit. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 8(b)(4)(D).

(m) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of subsection (a)(3) or (b)(2) of section 8, such charge shall be given priority over all other cases except cases of like character in the office where it is filed or to which it is referred and cases given priority under subsection (i).

【29 U.S.C. 160】 Enacted July 5, 1935, ch. 372, sec. 10, 49 Stat. 453; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 146; amended May 24, 1949, ch. 139, sec. 127, 63 Stat. 107; amended August 28, 1958, P.L. 85–791, sec. 13, 72 Stat. 945; amended September 14, 1959, P.L. 86–257, title VII, secs. 704(d), 706, 73 Stat. 544; amended November 8, 1984, P.L. 98–620, title IV, sec. 402(31), 98 Stat. 3360.

INVESTIGATORY POWERS

SEC. 11. For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by section 9 and section 10—

(1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing.

(2) In case of contumacy or refusal to obey a subpena issued to any person, any district court of the United States or the United States courts of any Territory or possession, or the United States District Court for the District of Columbia, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

(3) Repealed

(4) Complaints, orders, and other process and papers of the Board, its member, agent, or agency, may be served either personally or by registered or certified mail or by telegraph or by leaving a copy thereof at the principal office or place of business of the person required to be served. The verified return by the individual so serving the same setting forth the manner of such service shall be proof of the same, and the return post office receipt or telegraph receipt therefor when registered or certified and mailed or when telegraphed as aforesaid shall be proof of service of the same. Witnesses summoned before the Board, its member, agent, or agency, shall be paid the same fees and mileage that are paid witnesses in the courts of the United States, and witnesses whose depositions are taken and the persons taking the same shall severally be enti-

tled to the same fees as are paid for like services in the courts of the United States.

(5) All process of any court to which application may be made under this Act may be served in the judicial district wherein the defendant or other person required to be served resides or may be found.

(6) The several departments and agencies of the Government, when directed by the President, shall furnish the Board, upon its request, all records, papers, and information in their possession relating to any matter before the Board.

[29 U.S.C. 161] Enacted July 5, 1935, ch. 372, sec. 11, 49 Stat. 455; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 150; amended May 24, 1949, ch. 139, sec. 127, 63 Stat. 107; amended October 15, 1970, P.L. 91–452, title II, sec. 234, 84 Stat. 930; amended May 21, 1980, P.L. 96–245, sec. 1, 94 Stat. 347.

SEC. 12. Any person who shall willfully resist, prevent, impede, or interfere with any member of the Board or any of its agents or agencies in the performance of duties pursuant to this Act shall be punished by a fine of not more than $5,000 or by imprisonment for not more than one year, or both.

[29 U.S.C. 162] Enacted July 5, 1935, ch. 372, sec. 12, 49 Stat. 456; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 151.

LIMITATIONS

SEC. 13. Nothing in this Act, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right.

[29 U.S.C. 163] Enacted July 5, 1935, ch. 372, sec. 13, 49 Stat. 457; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 151.

SEC. 14. (a) Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this Act shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.

(b) Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

(c)(1) The Board, in its discretion, may, by rule of decision or by published rules abopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

(2) Nothing in this Act shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which

the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction.

【29 U.S.C. 164】 Enacted July 5, 1935, ch. 372, sec. 14, 49 Stat. 457; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 151; amended September 14, 1959, P.L. 86–257, title VII, sec. 701(a), 73 Stat. 541.

SEC. 15. Wherever the application of the provisions of section 272 of chapter 10 the Act enititled "An Act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898, and Act, amendatory thereof and supplementary thereto (U.S.C., title 11, sec. 672), conflicts with the application of the provisions of this Act, this Act shall prevail: *Provided,* That in any situation where the provisions of this Act cannot be validly enforced, the provisions of such other Acts shall remain in full force and effect.

【29 U.S.C. 165】 Enacted July 5, 1935, ch. 372, sec. 15, 49 Stat. 457; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 151.

SEC. 16. If any provision of this Act, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this Act, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

【29 U.S.C. 166】 Enacted July 5, 1935, ch. 372, sec. 16, 49 Stat. 457; amended June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 151.

SEC. 17. This Act may be cited as the "National Labor Relations Act."

【29 U.S.C. 167】 Added June 23, 1947, ch. 120, title I, sec. 101, 61 Stat. 152.

SEC. 18. No petition entertained, no investigation made, no election held, and no certification issued by the National Labor Relations Boards, under any of the provisions of section 9 of the National Labor Relations Act, as amended, shall be invalid by reason of the failure of the Congress of Industrial Organizations to have complied with the requirements of section 9 (f), (g), or (h) of the aforesaid Act prior to December 22, 1949, or by reason of the failure of the American Federation of Labor to have complied with the provisions of section 9(f), (g), or (h), of the aforesaid Act prior to November 7, 1947: *Provided,* That no liability shall be imposed under any provision of this Act upon any person for failure to honor any election or certificate referred to above, prior to the effective date of this amendment: *Provided, however,* That this proviso shall not have the effect of setting aside or in any way affecting judgments or decrees heretofore entered under section 10 (e) or (f) and which have become final.

【29 U.S.C. 168】 Added October 22, 1951, ch. 534, sec. 1(a), 65 Stat. 601.

SEC. 19. Any employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support any labor organization as a condition of employment; except that such employee may be required in a contract between such employees' employer and a labor organization in lieu of periodic dues and initiation fees, to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund exempt from taxation under section 501(c)(3) of title 26 of the Internal Revenue Code, chosen

by such employee from a list of at least three such funds, designated in such contract of if the contract fails to designate such funds, then to any such fund chosen by the employee. If such employee who holds conscientious objections pursuant to this section requests the labor organization to use the grievance-arbitration procedure on the employee's behalf, the labor organization is authorized to charge the employee for the reasonable cost of using such procedure.

【29 U.S.C. 169】 Added July 26, 1974, P.L. 93–360, sec. 3, 88 Stat. 397; amended December 24, 1980, P.L. 96–593, 94 Stat. 3452.