Joy C. Rosenquist, Bar No. 214926
jrosenquist@littler.com
LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
Telephone: 916.830.7200
Facsimile: 916.561.0828

Alex T. MacDonald, *Pro Hac Vice*
amacdonald@littler.com
LITTLER MENDELSON, P.C.
815 Connecticut Avenue NW, Suite 400
Washington, District of Columbia 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011

Attorneys for *Amici*
THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; NATIONAL FEDERATION OF INDEPENDENT BUSINESS (NFIB) SMALL BUSINESS LEGAL CENTER; ASSOCIATED BUILDERS AND CONTRACTORS (ABC); CALIFORNIA CHAMBER OF COMMERCE; AND WASHINGTON LEGAL FOUNDATION

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>Defendants. | Case No. 2:25-cv-02979-TLN-CKD<br><br>**AMICUS BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; NATIONAL FEDERATION OF INDEPENDENT BUSINESS (NFIB) SMALL BUSINESS LEGAL CENTER, INC.; ASSOCIATED BUILDERS AND CONTRACTORS (ABC); CALIFORNIA CHAMBER OF COMMERCE; AND WASHINGTON LEGAL FOUNDATION (WLF)**<br><br>Trial Date: Not Yet Set<br>Complaint Filed: October 15, 2025 |

# TABLE OF CONTENTS

**Page(s)**

INTERESTS OF AMICI……………………………………………………………………7
I. SUMMARY OF ARGUMENT……………………………………………………..8
II. ARGUMENT………………………………………………………………………10
1. The Board has exclusive, primary authority to address matters within its jurisdiction………………………………………………………………………10
2. The Court properly rejected California's challenge to the Board's exclusivity based on an "implied" loss of jurisdiction………………...…………………..11
a. The Board does not cede jurisdiction when it loses a quorum…………...11
b. The Board does not cede jurisdiction because of delay…………………13
c. The Board's jurisdiction has nothing to do with its "historical independence."…………………………………………………………...14
3. The Court also should reject California's other challenges to the Board's jurisdiction…………………………………………….……………...18
a. California cannot encroach on the Board's authority whenever the Board declines jurisdiction……………………………………………....18
b. California cannot encroach on the Board's authority whenever there is a question about a worker's coverage under the Act..…….…………..20
c. California cannot encroach on the Board's authority whenever the Board faces an injunction…………………………………...…………21
CONCLUSION……………………………………………………………….……22

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarado v. Dart Container Corp. of Cal.*,
4 Cal. 5th 542 (2018) ....................................................................................8

*Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd., et al.*,
No. 1:25-cv-05311 (E.D.N.Y. June 30, 2026), ECF No. 75 ........................14

*Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd.*,
No. 25-CV-5311(EK)(MMH), 2026 WL 2085865 (E.D.N.Y. July 20, 2026) ........17

*Beasley v. Food Fair of N. Carolina, Inc.*,
416 U.S. 653 (1974)........................................................................................21

*Bisonnette v. LePage Bakeries Park St., LLC*,
601 U.S. 246 (2024)..........................................................................................8

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1964)........................................................................................20

*NLRB v. California*,
No. 2:25-CV-02979-TLN-CKD, 2025 WL 4677692 (E.D. Cal. Dec. 26, 2025) ............ *passim*

*Chamber of Com. of United States v. NLRB*,
723 F. Supp. 3d 498 (E.D. Tex. 2024).............................................................22

*NLRB v. Comm. of Interns & Residents*,
566 F.2d 810 (2d Cir. 1977)..............................................................................10

*Donahue v. AMN Servs., LLC*,
11 Cal. 5th 58 (2021) ..........................................................................................8

*Ferra v. Loews Hollywood Hotel, LLC*,
11 Cal. 5th 858 (2021) ........................................................................................8

*NLRB v. Food Store Emps. Union, Loc. 347*,
417 U.S. 1 (1974)...............................................................................................14

*Frlekin v. Apple Inc.*,
8 Cal. 5th 1038 (2020) ........................................................................................8

*Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*,
346 U.S. 485 (1953)....................................................................................13, 20

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

*NLRB v. Gullett Gin Co.*,
340 U.S. 361 (1951)....................14

*NLRB v. Hearst, Inc.*,
322 U.S. 111 (1944)....................20

*Hob Nob Hill Rest. v. Hotel Emps. & Rest. Emps. Int'l Union*,
660 F. Supp. 1266 (S.D. Cal. 1987)....................10

*La Crosse Tel. Corp. v. Wis. Emp. Rels. Bd.*,
336 U.S. 18 (1949)....................8

*Leedom v. Kyne*,
358 U.S. 184 (1958)....................22

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....................20

*Machinists & Aerospace Workers v. Wisconsin Empl. Relations Comm'n*,
427 U.S. 132 (1976)....................8

*Margolin v. National Ass'n of Immigration Judges*,
146 S. Ct. 1285 (2026)....................17

*NLRB v. Nash-Finch Co.*,
404 U.S. 138 (1971)....................14

*Nat'l Ass'n of Immigr. Judges v. Owen*,
139 F.4th 293 (4th Cir. 2025)....................17

*New Process Steel, L.P. v. NLRB*,
560 U.S. 674 (2010)....................11, 12

*NLRB v. Noel Canning*,
573 U.S. 513 (2014)....................11, 15

*Olson v. California*,
No. 24-269 (U.S. 2024)....................8

*San Diego Bldg. Trades Council v. Garmon*,
359 U.S. 236 (1959).................... *passim*

*Troester v. Starbucks Corp.*,
5 Cal. 5th 829 (2018)....................8

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026)....................14, 16, 17

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

*Vanderbilt Univ. v. NLRB*,
759 F. Supp. 3d 812 (M.D. Tenn. 2024)....................22

*Viking River Cruises, Inc. v. Moriana*,
142 S. Ct. 1906 (2022)....................8

*Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*,
475 U.S. 282 (1986)....................8

**Statutes**

29 U.S.C. § 151....................16

29 U.S.C. § 152....................20

29 U.S.C. § 152(3)....................21

29 U.S.C. § 153(a)....................11, 15

29 U.S.C. § 153(b)....................11

29 U.S.C. §§ 156....................13

29 U.S.C. § 158(d)....................19

29 U.S.C. §§ 159(c)....................17

29 U.S.C. § 160(a)....................10, 12, 18

29 U.S.C. § 164(c)(1)....................19

29 U.S.C. § 164(c)(2)....................19

Act*passim*

Act: sections 10(a) and 14(c)....................18

Administrative Procedure Act....................22

APA....................22

Cal. Labor Code § 923.1(b)(1)(A)....................20, 21

Cal. Labor Code § 923.1(b)(1)(A)–(B)....................9

Cal. Labor Code § 923.1(b)(1)(A)–(B)(i)....................18

Cal. Labor Code § 923.1(b)(1)(B)....................12, 18, 19

Cal. Labor Code § 923.1(b)(1)(B)(i)....................14

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

Cal. Labor Code § 923.1(b)(1)(B)(ii), (iv) .......... 13
Cal. Labor Code § 923.1(b)(2) .......... 9
Cal. Labor Code § 923.1(e)(1)(D) .......... 19
Civil Service Reform Act .......... 17
CSRA .......... 17
National Labor Relations Act .......... 8
Pub. L. 74-198, § 3(b), 49 Stat. 499, 451 (1935) .......... 11
Pub. Law. 14 (Winter 2016) .......... 12

**Other Authorities**

1st Sess. (1935) .......... 8
202 N.L.R.B. 862 (1973) .......... 19
362 N.L.R.B. 1350 (2015) .......... 19
California Employment Law Council .......... 7
H.R. Rep. No. 80-245 (1947) .......... 21
H.R. Rep. No. 969, 74th Cong., 1st Sess. (1935) .......... 11
*Jurisdictional Standards*, NLRB.gov, https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/jurisdictional-standards .......... 19
Michael J. Berger & Gary J. Edles, *Independent Agencies in the United States: The Responsibility of Public Lawyers* .......... 12
S. Rep. No. 573 .......... 8
*Star Wars: A New Hope*, at 1:59 (1977) .......... 13
U.S. Const. art. II, cl. 2 .......... 15

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

## INTERESTS OF AMICI[1]

The Chamber of Commerce of the United States of America is the world's largest business organization. As the nation's leading advocate for business, the Chamber represents companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The National Federation of Independent Business Small Business Legal Center, Inc. (NFIB Legal Center) is a nonprofit, public interest law firm established to provide legal resources and be the voice for small businesses in the nation's courts through representation on issues of public interest affecting small businesses. It is an affiliate of the National Federation of Independent Business, Inc. (NFIB), which is the nation's leading small business association. NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses. NFIB represents, in Washington, D.C., and all 50 state capitals, the interests of its members.

Associated Builders and Contractors (ABC) is a national construction industry trade association established in 1950 with 67 chapters and 24,000 members. Founded on the merit shop philosophy, ABC helps members offer a robust employee value proposition, develop people, win work, and deliver that work safely, ethically, and profitably for the betterment of the communities in which ABC and its members work. ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors.

The California Employment Law Council (CELC) is a voluntary, non-profit organization that promotes the common interests of employers and the public in fostering the development in California of reasonable, equitable, and progressive rules of employment law. CELC's membership includes roughly 80 private-sector employers in California who collectively employ more than a half-million Californians.

[1] *Amici curiae* state that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

CELC has participated as an *amicus* in many of California's leading employment cases[2] and several cases before the U.S. Supreme Court.[3]

Washington Legal Foundation (WLF) is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. Faithful enforcement of federal preemption is indispensable to each of those commitments: Businesses can invest, plan, and compete in a national market only when federal law means the same thing in every State, and the Supremacy Clause secures that uniformity against local revision. WLF thus regularly appears as *amicus curiae* in cases addressing the preemptive reach of federal regulatory schemes and the proper division of authority between the national government and the States. This case implicates those principles directly. When a State claims power to displace an exclusive federal regime based on its own assessment of federal performance, it threatens the uniformity Congress deliberately built into national labor policy—and offers a template any State could borrow for any federal scheme it finds wanting.

The California Chamber of Commerce (CalChamber) is a non-profit business association with approximately 11,000 members, both individual and corporate, representing 25% of the state's private sector workforce and virtually every economic interest in the state of California. While CalChamber represents several of the largest corporations in California, 70% of its members have 100 or fewer employees. CalChamber acts on behalf of the business community to improve the state's economic and jobs climate by representing business on a broad range of legislative, regulatory, and legal issues.

*Amici* are committed to rational, orderly, and fair systems of law, including labor law. They therefore have grave concerns with California Assembly Bill (AB) 288, which threatens to splinter national cohesion in labor law by transferring federal jurisdiction from the NLRB to a state agency. As this brief explains, such a transfer would contradict the basic design of federal labor policy, which channels labor

---

[2] *See, e.g.*, *Donahue v. AMN Servs., LLC*, 11 Cal. 5th 58 (2021); *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021); *Frlekin v. Apple Inc*., 8 Cal. 5th 1038 (2020); *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018); *Alvarado v. Dart Container Corp. of Cal.*, 4 Cal. 5th 542 (2018).

[3] *See, e.g.*, *Olson v. California*, No. 24-269 (U.S. 2024); *Bisonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (2024); *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).



LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

disputes into a single, orderly, uniform system. The transfer is not only unlawful, but also bad policy: It would sow chaos in national labor markets by opening the door to more state-by-state division. *Amici* submit this brief to help the Court evaluate these risks—risks that already are playing out across the country.

## I. SUMMARY OF ARGUMENT

AB 288 challenges nearly a century of federal labor law. By longstanding precedent, national labor law is governed exclusively by the National Labor Relations Act (Act). And by equally longstanding precedent, the Act assigns exclusive primary jurisdiction to the National Labor Relations Board (Board). Where the Board's authority extends, no state may tread: The Board decides the content of federal labor policy in the first instance. And when states test the Board's authority, federal courts stand ready to enjoin incursions into the Board's exclusive jurisdiction. ***See, e.g.***, ***San Diego Bldg. Trades Council v. Garmon***, 359 U.S. 236, 246 (1959); *Machinists & Aerospace Workers v. Wisconsin Empl. Relations Comm'n*, 427 U.S. 132, 149 (1976); *Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282 (1986); *La Crosse Tel. Corp. v. Wis. Emp. Rels. Bd.*, 336 U.S. 18, 26 (1949). *See also* S. Rep. No. 573, at 85, 74th Cong., 1st Sess. (1935) (explaining that Congress created the Board to have "exclusive jurisdiction to prevent and redress unfair labor practices").

AB 288 tramples those principles. It transfers authority over labor law to the California Public Employment Relations Board (PERB), despite the Act giving that same authority to the Board. AB 288 asserts that in the field of labor relations, federal law is no longer supreme. Where California sees flaws in the federal system, it has decided to step in and fill the perceived gap. *See* AB 288 (Cal. 2025) (amending Cal. Labor Code § 923.1(b)(2) (stating that even when conditions triggering PERB jurisdiction expire, PERB will retain jurisdiction "from that point forward unless ordered by a court of competent jurisdiction to cede its jurisdiction")).

This Court has already rejected that intrusion. In December 2025, the Court enjoined the state from enforcing AB 288's most extreme provisions. It held that California could not transfer authority to the PERB in three situations: (1) when the Board loses its statutory quorum; (2) when the Board takes too long to process a filing; and (3) when the Board loses its "historical independence." *See NLRB v.*



LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

*California*, No. 2:25-CV-02979-TLN-CKD, 2025 WL 4677692, at *8–9 (E.D. Cal. Dec. 26, 2025). The Court held that none of these events ceded the Board's jurisdiction. Each fostered conflict between federal and state officials, so the state could not act in these areas. *See id.* at *10 (finding that these provisions "create a conflict between PERB and the [Board], give PERB authority over conduct subject to the [Act], and allow PERB to stand in the way of the [Board's] administration of the [Act]").

AB288 impermissibly attempts to regulate three other situations, too. Specifically, it also would transfer authority to the PERB: (1) when a worker "loses coverage" under the Act; (2) when the Board expressly declines jurisdiction; and (3) when the Board is enjoined from proceeding in a case. *See* Cal. Labor Code § 923.1(b)(1)(A)–(B). AB 288 treats these events as regulatory gaps, and thus invitations for state regulation. *See id.* (transferring authority to PERB in each situation).

The Court should proceed to the next logical step and enjoin the state from enforcing the entire law. None of these other circumstances invites state regulation. Rather, each involves deliberate choices Congress made when it adopted the Act. And in each, AB 288 creates a conflict between state and federal authority. Each, therefore, should be equally subject to the injunction. *See Garmon*, 359 U.S. at 244 ("Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.").

## II. ARGUMENT

### 1. The Board has exclusive, primary authority to address matters within its jurisdiction.

The Board's role is well established. By design, it is the primary authority on the interpretation and application of federal labor law. *See* 29 U.S.C. § 160(a). When Congress adopted the Act, it envisioned a uniform, nationwide system. It wanted the Act to mean the same thing in Sacramento as it did in Syracuse. But that kind of uniformity would be impossible if interpretation were left to multiple courts or states. A variety of interpreters would produce a variety of interpretations, which in turn would produce confusion and conflict. The solution was to assign primary responsibility to the Board. *Garmon*, 359 U.S. at 244.

The Board's authority is subject to two narrow exceptions. First, under section 10(a), the Board may enter cooperative jurisdictional agreements with state labor boards. 29 U.S.C. § 160(a). But those agreements are valid only under narrow circumstances: The Board and the state must have an agreement,

the agreement may not cover industries central to national commerce, and the state's law must adhere to the Act. *See id.* Second, under section 14(c), a state may assume jurisdiction when the Board affirmatively declines to exercise its own. *Id.* § 164(c). But again, this exception has limits: It applies only when the Board declines jurisdiction according to its 1959 jurisdictional standards. *Id.* It does not apply when the Board declines jurisdiction for other reasons. *See id.* § 164(c)(1)–(2) (allowing a state to intervene when the Board declines jurisdiction in a manner consistent with "the standards prevailing upon August 1, 1959").

Courts have treated these two exceptions as exhaustive. They are the only ways that jurisdiction can be ceded to the states. *See NLRB v. Comm. of Interns & Residents*, 566 F.2d 810, 813 n.3 (2d Cir. 1977). Absent these circumstances, state agencies have no authority to regulate conduct covered by the Act. They cannot adopt contrary or even overlapping regulations simply because they disagree with how the federal system is working—even when the Board chooses not to exercise its own authority. *See, e.g., Hob Nob Hill Rest. v. Hotel Emps. & Rest. Emps. Int'l Union*, 660 F. Supp. 1266, 1268 n.3 (S.D. Cal. 1987) ("[T]he failure of the NLRB to assume jurisdiction over a labor case does not in itself permit the states to regulate conduct they would otherwise be precluded from regulating.").

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

**2. The Court properly rejected California's challenge to the Board's exclusivity based on an "implied" loss of jurisdiction.**

When this Court preliminarily enjoined California from enforcing parts of AB 288, it correctly rejected the state's arguments about "implicit" cessation. *See California*, 2025 WL 4677692, at *8–9. These arguments posited that the Board had ceded its own jurisdiction over certain workers and labor disputes without saying so. None of the arguments had merit then, and none has merit now. *See id.* at *9 (concluding that AB 288 "interrupts the [Board's] administration of the [Act] and so must be preempted"). The Court should reject them again.

**a. The Board does not cede jurisdiction when it loses a quorum.**

First, the Court should hold, again, that the Board does not cede jurisdiction whenever it loses a quorum. The quorum is not an exception to the Act, but part of the Act's design. It is a deliberate check on the Board's policymaking process—no less essential to the Act's design than brakes are to a well-

designed car. *See id.* at *8 ("The quorum requirement, and its consequences, is by design.").

The quorum requirement is not new. The original 1935 Act included a quorum requirement, and it remained there after Congress expanded the Board's roster to five members. *See* Pub. L. 74-198, § 3(b), 49 Stat. 499, 451 (1935) (specifying two-member quorum); H.R. Rep. No. 969, 74th Cong., 1st Sess., at 2901 (1935) (same); *see also* 29 U.S.C. § 153(b). It has always been a prerequisite for Board action, and it has always meant that, at times, the Board would be unable to function at full capacity. *See New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010) (observing that Congress's decision to set a three-member quorum implies practical consequences that cannot be swept aside by courts to accommodate temporary exigencies). Indeed, the entire point of enacting a quorum requirement is to prevent a body, in this case the Board, from acting when that number is not met. Congress knew when it enacted the quorum requirement that doing so meant there might be times when the Board was incapable of implementing its jurisdiction.

That possibility is no defect or surprise: It interlocks with other parts of the Board's design. For example, when Congress wrote the Act, it mandated that Board members serve fixed five-year terms. 29 U.S.C. § 153(a). As these terms expire, vacancies naturally occur. If confirmations are slow, the vacancies can accumulate, dropping the Board below a quorum. That risk—a reality at many points in the Board's history—is a natural result of the deliberate choices made by Congress. *See NLRB v. Noel Canning*, 573 U.S. 513, 520–21 (2014) (describing one such situation in which the Board fell below its statutory quorum and temporarily lost the ability to resolve unfair-labor-practice charges).

California disagrees with those choices. To hear the state tell it, when the Board falls below a quorum, the Act ceases to provide a uniform national policy. It simply turns off, and state authority turns on. *See* Cal. Labor Code § 923.1(b)(1)(B) (allowing PERB to assume authority when Board loses quorum); Cal. Opp'n Br. at 14, ECF 17 (arguing that Congress "could not have intended for all contested labor disputes to come to a standstill" when the Board loses a quorum). But that argument makes no sense. Nothing in the Act suggests that the quorum requirement is a design defect, much less one that implicitly cedes authority to the states. Rather, everything about the Act suggests that the quorum requirement is a deliberate check, as this Court previously concluded. *California*, 2025 WL 4677692, at *8 ("In some

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

respect, the Board's inability to fully function due to the lack of quorum shows the [Act] is operating as intended."); *see New Process Steel*, 560 U.S. at 681–82. The Court should conclude the same thing again.

**b. The Board does not cede jurisdiction because of delay.**

Second, the Court should hold, again, that the Board does not cede jurisdiction simply because time passes. Nothing in the Act caps the Board's time to process a charge or petition. Nor does the Act say that states are free to commandeer the Board's authority if the Board delays making a decision. Such a power grab invites conflict and therefore is preempted. *See Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 490 (1953) ("A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.").

In AB 288, California takes the opposite position. It allows the PERB to take jurisdiction over a case when either (a) six months passes after a charge or petition was filed, or (b) twelve months passes after exceptions were filed with the Board. Cal. Labor Code § 923.1(b)(1)(B)(ii), (iv). In those cases, the state claims, the Board presumptively gives up its authority, and the PERB is free to step in. *See id.*; *see also* Cal. Br. in Opp'n 16 (arguing that Congress did not intend to prevent states from stepping in to address "excessive delay").

That view has no basis in any authority. It has no basis in the Act, which merely assigns responsibility to the Board and leaves to the Board's discretion how to process filings. *See* 29 U.S.C. §§ 156 (giving Board authority to adopt rules and regulations to carry out Act), 160(a) (giving Board exclusive authority to remedy unfair labor practices in the first instance). It has no basis in precedent, which recognizes the Board's discretion over processing matters within its remit. *See NLRB v. Food Store Emps. Union, Loc. 347*, 417 U.S. 1, 9 (1974) ("The integrity of the administrative process demands no less than that the Board, not [some other body], exercise the discretionary judgment which Congress has entrusted to it."). And it has no basis in logic, which recoils at the idea that the Board abandons its heavy national responsibility merely by taking its time. The Board is a federal agency: It is subject to the limits of its budget and the demands of its caseload. It cannot be presumed to have abandoned its responsibility simply because it processes cases more slowly than a state may prefer. *See NLRB v. Gullett Gin Co.*, 340 U.S.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

361, 363 (1951) (explaining that processing charges is a matter of "administrative competence" that should not be lightly second-guessed by courts).

California, to be sure, would be quick to defend its own authority if the roles were reversed. For example, one study from the 2023-2024 term found that the California Supreme Court took an average of 450 total days to resolve a civil case, and over a year from the completion of briefing until oral argument. Surely the State would be quick to defend the jurisdiction of its Supreme Court if parties suggested that this delay (both numbers exceeding what AB 288 tries to implement) meant that parties could bypass its jurisdiction and proceed to the United States Supreme Court due to "excessive delay."

This Court has already held, correctly, that the Board does not cede jurisdiction with the mere passage of time. *See California*, 2025 WL 4677692, at *8 ("[T]ime in and of itself does not prove the [Board] has given up its authority over a matter."). It should hold so again.

**c. The Board's jurisdiction has nothing to do with its "historical independence."**

Third, the Board does not lose its jurisdiction by losing its independence. The Board's primacy comes from its ability to deliver uniform national interpretations of federal labor law. *See NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144 (1971). That ability has nothing to do with its independence from any other federal actor, including the president.

California takes a different view. In AB 288, it asserts that the Board loses its primacy when it loses its independence. *See* Cal. Labor Code § 923.1(b)(1)(B)(i). As evidence, it points to the President's decision in 2025 to fire a member of the Board before her term expired. *See* Cal. Br. in Opp'n 5, 16.[4]

But as this Court has already recognized, the argument relies on a faulty connection that equates restrictions on the president's constitutional removal authority with the Board's independence. But in fact, the Act insulates the Boad through multiple overlapping features. For example, the Board's members serve staggered terms. *See* 29 U.S.C. § 153(a). Those terms ensure that appointments to the Board will stretch

---

[4] Similarly, New York State (which tried a similar power grab) has pointed to *Trump v. Slaughter*, 146 S. Ct. 2283, 2295 (2026), which held that certain restrictions on the president's removal authority were unconstitutional as applied to multi-member independent agencies. *See* Notice of Supplemental Authority, *Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd., et al.*, No. 1:25-cv-05311 (E.D.N.Y. June 30, 2026), ECF No. 75.

across more than one presidential administration. *See id.* Similarly, the Act separates the Board's adjudicatory and prosecutorial functions, assigning the latter to an independently appointed general counsel. *See id.* § 153(d). These limits separate the Board from both any single president and from its own chief prosecutor. And neither depends on the Act's limits on removal. *See California*, 2025 WL 4677692, at *8 (rejecting the notion that the loss of removal protections "equates to a loss of independence").

The Board's independence is also protected by the Constitution's basic structure. Suppose a president decides to fire every member of the Board. The president still cannot unilaterally install a new roster. Instead, his nominees must be confirmed by the U.S. Senate. *See* U.S. Const. art. II, § 2, cl. 2. Each senator is independently elected by an independent political constituency and serves as an independent check on political appointments. *See Noel Canning*, 573 U.S. at 523 (explaining that the Senate's role in the appointments process provides a check on favoritism, prejudice, and personal attachment).

But AB 288's problems run deeper than that. In defending the law, California assumes not only that sweeping removal protections equate to independence, but also that independence is a prerequisite for *Garmon* preemption. That is wrong. *Garmon* preemption is based on uniformity of labor law, not on independence.

In *Garmon*, the Supreme Court reasoned that Congress gave the Board exclusive authority to preserve uniformity of labor law nationwide. *See* 359 U.S. at 241–42. Congress wanted to guarantee stable labor relations throughout the country. To guarantee stable labor relations, it wanted the Act to mean the same thing wherever it applied. And the way to ensure a single meaning was to entrust application of the law to a single federal agency: the Board. The Court recognized that giving states equal authority would risk a kaleidoscope of varying applications in state legislatures and state courts. That kind of equality assuredly would produce conflict:

> We have necessarily been concerned with the potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes. But the unifying consideration of our decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience.

*Id.* (internal citations omitted). Nothing about *Garmon* depends on the Board being somehow independent

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

from the president. In fact, neither "independent" nor "independence" even appears in the opinion. It therefore makes no sense to say that *Garmon* evaporates absent independence. *See California*, 2025 WL 4677692, at *8 (concluding that Board's alleged loss of independence was not an adequate reason to dispense with *Garmon* preemption).

None of that is changed by *Trump v. Slaughter*. There, the Supreme Court merely recognized the well-worn principle that the Constitution vests executive power in the president alone. 146 S. Ct. at 2295. Because the President singularly holds that power, he must be able to control his principal officers. And the power to control includes the power to remove. *See id.* ("Because these officers were subject to the president's superintendence, they had to be removable by him at will."). *Slaughter* has no impact on *Garmon*, which rests on a different set of considerations about the Act ensuring a uniform application of labor law to achieve labor peace. *See* 359 U.S. at 242–43; *see also* 29 U.S.C. § 151 (declaring labor peace a prime goal of the Act).

It is no surprise, then, that other courts have rejected similar arguments. Just last month, the Eastern District of New York found that nothing in *Slaughter* affected *Garmon*. *See Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd.*, No. 25-CV-5311(EK)(MMH), 2026 WL 2085865, at *1–2 (E.D.N.Y. July 20, 2026). The court reasoned that, by its own terms, *Slaughter* said nothing about *Garmon*, the Board, or the uniform application of federal labor law. And whether *Slaughter* might someday require *Garmon* to be revisited, as the state claimed, was a question for the Supreme Court or Congress. *See id.*

Likewise recently in *Margolin v. National Ass'n of Immigration Judges*, 146 S. Ct. 1285, 1290 (2026), a concurring opinion written by Justice Thomas and joined by Justice Barrett explained that whether the president can remove certain officials carries no impact on the meaning of statutes:

> The Fourth Circuit's analysis bears little resemblance to legal interpretation. Neither the President's view that he can remove federal executive officials, nor his having done so, change the meaning of the statute or the binding nature of this Court's interpretation of it. . . . Statutes change only when Congress changes them, not when judges decide that they no longer vindicate Congress's purposes.

*Id.* at 1290 (internal citations omitted).

So it is here. Nothing about *Slaughter* or the President's personnel decisions changes the basic question for this Court: whether the Act continues to assign primary, exclusive jurisdiction to the Board. It does,

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

and *Slaughter* does not change the statute. *See* 29 U.S.C. §§ 159(c) (continuing to give the Board authority to certify the results of union elections), 160(a) (continuing to give the Board authority to remedy unfair labor practices).

**3. The Court also should reject California's other challenges to the Board's jurisdiction.**

California aims to oust the Board in three more scenarios: (a) when the Board expressly declines jurisdiction; (b) when a worker "loses coverage" under the Act; and (c) when the Board is enjoined from proceeding in a case. Cal. Labor Code § 923.1(b)(1)(A)–(B)(i). At the preliminary-injunction stage, this Court declined to enjoin the state from acting in those circumstances because it could not conclude at a preliminary stage that these circumstances put the Board and the state in conflict. But now, at the summary-judgment stage, the Court should grant full relief to the Board. Just like the above scenarios, these put state and federal authorities on a collision course—a course forbidden by *Garmon*. Thus, *Garmon* requires the same relief: California should be enjoined from usurping the Board's jurisdiction.

**a. California cannot encroach on the Board's authority whenever the Board declines jurisdiction.**

California first claims that it can transfer authority to the PERB when the Board has "expressly . . . ceded jurisdiction." Cal. Labor Code § 923.1(b)(1)(B). This claim relies implicitly on sections 10(a) and 14(c) of the Act. But neither section allows California to arrogate to itself this kind of sweeping authority. Instead, they allow states to participate in labor regulation only under limited and specific conditions—none of which California meets. And by purporting to transfer authority outside their scope, AB 288 pits the state against the Board in exactly the way *Garmon* forbids.

Start with section 10(a). That section allows a state to exercise jurisdiction only under three conditions. First, the state must have an agreement with the Board. Second, the agreement cannot cover mining, manufacturing, communications, or transportation except when those industries are "predominantly local in character." And third, the state's law must adhere to the Act. See 29 U.S.C. § 160(a).

Of these conditions, California satisfies none. It has no agreement with the Board. It puts no limits on covered industries. And its law is not tethered to the Act. To the contrary, AB 288 often would mandate inconsistent results. Take one example: AB 288 would allow the PERB to resolve bargaining disputes by



LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

forcing the parties into binding arbitration. See Cal. Labor Code § 923.1(e)(1)(D). That is, if the parties could not agree on a contract, an arbitrator would write one for them. *See id.* That approach is antithetical to the Act, which preserves the parties' right to insist on their own positions even to impasse. See 29 U.S.C. § 158(d) (stating that the duty to bargain in good faith "does not compel either party to agree to a proposal or require the making of a concession"); *see also NLRB v. Mass. Nurses Ass'n*, 557 F.2d 894, 897 (1st Cir. 1977) (explaining that interest arbitration is itself not a mandatory subject of bargaining under the Act (citing Columbus Printing Pressmen Union No. 252, 219 NLRB 268, 270 (1975))).

What is more, AB 288 commands the PERB to follow its "own procedures" and its "own decisions and precedent" for a full range of issues. Cal. Labor Code § 923.1(e)(1), (2). These issues run from certifying election units to fashioning remedies. *Id.* § 923.1(e)(1)(A), (E). And in each case, the PERB's standards are different. For example, the PERB does not follow the Board's test for identifying appropriate election units—a difference that could produce different voting groups and affect election outcomes. *Compare SEIU Local 721 v. County of Riverside*, PERB Decision No. 2119-M, slip op. at 13 (June 24, 2010) (setting out "community of interest" standard), *with Am. Steel*, 372 NLRB No. 23, slip op. at 1 (Dec. 14, 2022) (setting out an "overwhelming community of interest" standard). More dramatically, the PERB can award civil penalties against employers who violate its standards—a remedy unavailable under the Act. *Compare* Cal. Govt. Code § 3558(d)(2) (providing civil penalties up to $10,000 for specified violations), *with* Republic Steel Corp. v. NLRB, 311 U.S. 7, 10 (1940) (explaining that the Act is "remedial" and does not "prescribe penalties or fines"). AB 288, in short, diverges significantly from the Act; it could not support an agreement under section 10(a) even if the Board were inclined to sign one.

Next consider section 14(c). Under subsection 14(c)(1), the Board may decline jurisdiction over certain labor disputes or classes of employers, subject to important constraints. First, the Board must determine that any labor dispute in question is not "sufficiently substantial to warrant the exercise of its jurisdiction." 29 U.S.C. § 164(c)(1). Second, the Board's decision must meet the Board's own 1959 jurisdictional standards, which focus largely on employer size. *Id.*[5] Only under those conditions does

[5] *See also Jurisdictional Standards*, NLRB.gov, https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/jurisdictional-standards (stating monetary jurisdictional standards in various industries).



LITTLER MENDELSON, P.C. 500 Capitol Mall, Suite 2000 Sacramento, California 95814 916.830.7200

section 14(c) allow a state to step in. 29 U.S.C. § 164(c)(2) (providing that a state may exercise jurisdiction when the Board declines jurisdiction "pursuant to paragraph (1) of this subsection").

AB 288 respects neither of these limits. It would allow the PERB to take jurisdiction regardless of whether the Board declines jurisdiction under its 1959 standards. And the Board often declines jurisdiction for reasons outside those standards. For example, in *Northwestern University*, the Board declined jurisdiction over college football players, because it concluded that exercising jurisdiction would not promote stable labor relations. 362 N.L.R.B. 1350, 1350 (2015). Similarly, in *Contract Services*, it declined jurisdiction over employees providing bus service in the Panama Canal Zone to avoid affecting foreign relations. 202 N.L.R.B. 862, 863–64 (1973).

Neither case involved the Board's jurisdictional standards, so neither would trigger section 14(c). Yet in both, AB 288 would allow the PERB to step in. *See* Cal. Labor Code § 923.1(b)(1)(B) (allowing the PERB to take jurisdiction whenever the Board has "expressly . . . ceded jurisdiction" and specifying no other conditions). This is exactly the kind of conflict *Garmon* was designed to prevent. The Court should hold AB 288 is preempted and enjoin its enforcement.

**b. California cannot encroach on the Board's authority whenever there is a question about a worker's coverage under the Act.**

Second, California claims that the PERB can take jurisdiction whenever a worker "loses coverage" under the Act. But that scenario also raises conflict between state and federal authorities. To take jurisdiction, the PERB would first have to determine that a worker is not covered. But whether a worker is covered is an application of the Act, which assigns application to the Board in the first instance. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) (treating worker classification under the Act as a "factual issue" to be addressed by the Board in the first instance). The PERB cannot play that role without usurping the Board's authority.

California's argument starts with a hypothetical: Some worker who was covered under the Act somehow "loses coverage." It then claims that this worker, because he or she has lost coverage, falls outside the Board's jurisdiction. And because the worker falls outside the Board's jurisdiction, the worker necessarily falls within the state's own authority. *See* Cal. Br. in Opp'n 13 ("If a worker is not covered by



LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

the [Act], their activities, by definition, do not implicate conduct that the [Act] protects or prohibits.").

There are two problems with that argument. The first is that it skips over who decides. The Act defines "employee" at a high level of abstraction—it means "any employee" employed by an "employer." 29 U.S.C. § 152. Though some workers are excluded categorically, others can be excluded (or included) only after a detailed factual analysis. This analysis historically has belonged to the Board in the first instance. *See Boire*, 376 U.S. at 481; *see also NLRB v. Hearst, Inc.*, 322 U.S. 111, 130–31 (1944) (cited as an example of the exercise of agency discretion in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370 (2024)).

But AB 288 does not wait for the Board to exercise its discretion. Instead, it allows the PERB to take jurisdiction when the worker "loses coverage." Cal. Labor Code § 923.1(b)(1)(A). That language invites the PERB to leapfrog the Board, creating the kind of conflict the Supreme Court has warned against. *See Garner*, 346 U.S. at 490 (warning against the dangers of leaving the same decision to multiple tribunals).

The second problem is more basic. AB 288 assumes that all workers excluded by the Act are subject to state regulation. That is wrong. Many workers fall outside both federal and state authority. Consider supervisors. Congress excluded supervisors from the definition of "employee" because it judged that employers needed loyal agents to carry out their labor-relations policies. *See* 29 U.S.C. § 152(3); H.R. Rep. No. 80-245, at 15–16 (1947) (explaining that supervisors were excluded because if they were covered, they would have divided loyalties). That exclusion affects not only the Board's jurisdiction, but also a state's: No state can extend *employee* status to supervisors without undercutting federal law. *See Beasley v. Food Fair of N. Carolina, Inc.*, 416 U.S. 653, 661–62 (1974) (holding that state could not apply wrongful-discharge law to supervisors who engaged in union activity because doing so would interfere with federal labor policy).

So it may be with other workers. A worker could "lose coverage" under the Act simply because the Board or a court determines that the worker was deliberately left out by Congress. AB 288 would then transfer jurisdiction to the PERB. But as with supervisors, that transfer may interfere with Congress's deliberate design choices. The law therefore invites conflict between federal and state authorities, and the Court should hold that it is preempted. *See California*, 2025 WL 4677692, at *6 (explaining that *Garmon*

preemption is chiefly concerned with avoiding conflict between the Board and the states).

**c. California cannot encroach on the Board's authority whenever the Board faces an injunction.**

Third, California claims that the PERB can take jurisdiction whenever the Board is enjoined from proceeding. *See* Cal. Labor Code § 923.1(b)(1)(A). It presumes that whenever the Board cannot act, the state can. *See* Cal. Opp'n Br. 15 ("[T]he Board cannot maintain exclusive jurisdiction in circumstances in which its structure or authority are deemed unconstitutional."). But that is incorrect. The mere fact that the Board is enjoined does not mean that the way has been cleared for the state.

The problem is California's starting assumption. The state assumes that if the Board is enjoined from proceeding, it must be because the Act has been found unconstitutional. *See* Cal. Opp'n Br. 5, 15. But that is wrong. The Board is sometimes enjoined from proceeding in discrete cases, and those injunctions often have nothing to do with the Constitution. Instead, they may simply stem from deliberate guardrails set by Congress.

The examples are easy to list. Suppose the Board moves to conduct an election in a unit barred by the Act itself. A court could enjoin the Board without opening the way to states. *Leedom v. Kyne*, 358 U.S. 184, 187–88 (1958) (Board enjoined from certifying unit of both professional and nonprofessional employees). Or suppose the Board moves to conduct an election in a way that ignores other federal statutes. A court could block the Board without tossing jurisdiction to a state agency. *Vanderbilt Univ. v. NLRB*, 759 F. Supp. 3d 812, 857 (M.D. Tenn. 2024) (Board enjoined from processing election under regulations inconsistent with federal student-privacy law). Or perhaps the Board adopts a rule contrary to the Administrative Procedure Act (APA). The Board could be enjoined from enforcing the rule without leaving a loophole for state regulators. *See Chamber of Com. of United States v. NLRB*, 723 F. Supp. 3d 498, 519 (E.D. Tex. 2024) (Board blocked from enforcing rule adopted contrary to the APA).

AB 288 elides all these nuances. It proceeds under the premise that where the Board is enjoined, a state may act. But there are many cases in which the Board may be enjoined yet a state may not proceed. AB 288 ignores these cases, invites federal–state conflict, and is preempted by federal law.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

## CONCLUSION

This Court already has enjoined much of AB 288. The Court correctly has recognized that the law creates an intolerable risk of conflict between state and federal labor authorities. Now, at the summary-judgment stage, the Court should finish the job. It should hold that all of AB 288 pits the PERB against the Board and enjoin the state from enforcing the entire law.

Dated: September 2, 2026

LITTLER MENDELSON, P.C.

*<u>/s/ Joy C. Rosenquist</u>*
Joy C. Rosenquist
Alex T. MacDonald
Attorneys for *Amici*
THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; NATIONAL FEDERATION OF INDEPENDENT BUSINESS (NFIB) SMALL BUSINESS LEGAL CENTER, INC.; ASSOCIATED BUILDERS AND CONTRACTORS (ABC); CALIFORNIA CHAMBER OF COMMERCE; AND WASHINGTON LEGAL FOUNDATION (WLF)