ROB BONTA, State Bar No. 202668
Attorney General of California
LARA HADDAD, State Bar No. 319630
Supervising Deputy Attorney General
JOSEPH H. MEEKER, State Bar No. 336725
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6502
Fax: (916) 731-2124
E-mail: Joe.Meeker@doj.ca.gov
*Attorneys for Defendant State of California, appearing by and through the Labor and Workforce Development Agency*[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **NATIONAL LABOR RELATIONS BOARD,**<br><br>Plaintiff,<br><br>**v.**<br><br>**STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD,**<br><br>Defendants,<br><br>**INTERNATIONAL BROTHERHOOD OF TEAMSTERS,**<br><br>Intervenor-Defendant. | 2:25-cv-02979<br><br>**DEFENDANT STATE OF CALIFORNIA'S COMBINED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 12, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: The Honorable Troy Nunley<br>Trial Date: None<br>Action Filed: 10/15/2025 |

[1] The Complaint names only the State of California. The Labor and Workforce Development Agency, through its attorney, appears on behalf of the State.

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1
BACKGROUND ........ 3
- I. The NLRA and NLRB ........ 3
- II. PERB ........ 4
- III. Challenges Faced by the NLRB ........ 5
  - A. Removal of Member Wilcox and Loss of Quorum ........ 5
  - B. Constitutional Challenges to the NLRB and NLRA ........ 7
  - C. Rising Caseloads and Diminished Resources ........ 8
- IV. AB 288 ........ 9
- V. Procedural History ........ 11

ARGUMENT ........ 12
- I. Legal Standard ........ 12
- II. AB 288 Is Not Preempted by The NLRA ........ 12
  - A. In limited circumstances in which the statutory scheme is not functioning as Congress intended, the NLRA should not be given preemptive effect. ........ 13
  - B. AB 288's triggers apply only in situations where the NLRA does not apply or the NLRB is not fulfilling its role in the statutory scheme. ........ 17
    - 1. The triggers based on a lack of coverage under the NLRA or an express loss of NLRB jurisdiction do not conflict with the NLRA. ........ 17
    - 2. AB 288's triggers based on the NLRB's inability to function as Congress intended do not conflict with the NLRA. ........ 19
      - a. Lack of quorum ........ 19
      - b. Excessive delay ........ 21
    - 3. Congress intended that the NLRB remain an independent agency. ........ 22
  - C. The NLRB may cede its jurisdiction absent express mechanisms if doing so would fulfill congressional intent. ........ 24
  - D. AB 288 furthers the goals of the NLRA by ensuring workers have a forum to vindicate their right to organize. ........ 25
  - E. The court decision enjoining amendments to New York's State Employment Relations Act is distinguishable. ........ 26
- III. The NLRB Is Not Entitled to a Permanent Injunction ........ 27

CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Page**

**CASES**

*ACLU of Nev. v. City of Las Vegas*
466 F.3d 784 (9th Cir. 2006) ........ 12

*Amazon.com Services LLC v. New York State Public Employment Relations Board*
No. 1:25-CV-5311, 2025 WL 3295071 (E.D.N.Y. Nov. 26, 2025) ........ 26

*Aunt Bertha v. NLRB*
No. 4:24-CV-00798-P, 2026 WL 1365028 (N.D. Tex. May 15, 2026) ........ 8

*Bethlehem Steel Co. v. New York State Lab. Rels. Bd.*
330 U.S. 767 (1947) ........ 14

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ........ 12

*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.*
35 Cal. 4th 1072 (2005) ........ 5

*Coal. For Econ. Equity v. Wilson*
122 F.3d 718 (9th Cir. 1997) ........ 28

*Fort Halifax Packing Co. v. Coyne*
482 U.S. 1 (1987) ........ 14

*Gade v. National Solid Wastes Mgmt. Ass'n*
505 U.S. 88 (1992) ........ 13, 24

*Garner v. Teamsters, Chauffeurs & Helpers Local Union*
346 U.S. 485 (1953) ........ 14, 22

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*
598 U.S. 771 (2023) ........ 13

*Hanna Mining Co. v. Dist. 2, Marine Eng'rs Beneficial Ass'n, AFL-CIO*
382 U.S. 181 (1965) ........ 25, 26

*Harris v. Bessent*
160 F.4th 1235 (D.C. Cir. 2025) ........ 6

*Harris v. Bessent*
No. 25-5037, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ........ 4, 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Hines v. Davidowitz*
312 U. S. 52 (1941) ... 13

*Hudson Inst. of Process Rsch. Inc. v. NLRB*
2025 WL 2431645 (E.D. Tex. Aug. 22, 2025) ... 7

*Humphrey's Executor v. United States*
295 U.S. 602 (1935) ... 6

*Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39 v. NLRB*
155 F.4th 1023 (9th Cir. 2025) ... 8

*Kerwin on behalf of NLRB. v. Trinity Health Grand Haven Hosp.*
*174 F.4th 942, 967* ... 20

*Margolin v. Nat'l Ass'n of Immigr. Judges*
146 S. Ct. 1285 (2026) ... 16

*Metro. Life Ins. Co. v. Massachusetts*
471 U.S. 724 (1985) ... 13

*Monsanto Co. v. Geertson Seed Farms*
561 U.S. 139 (2010) ... 12, 27

*National Association of Immigration Judges v. Owen*
139 F.4th 293 (4th Cir. 2025) ... *passim*

*New Process Steel, L.P. v. NLRB*
560 U.S. 674 (2010) ... 4, 5

*NLRB v. Aaron Bros. Corp.*
563 F.2d 409 (9th Cir. 1977) ... 3

*NLRB v. Noel Canning*
573 U.S. 513 (2014) ... 5

*NLRB v. Starbucks Corp.*
159 F.4th 455 (6th Cir. 2025) ... 8

*NLRB. v. Trinity Health Grand Haven Hosp.*
174 F.4th 942 (6th Cir. 2026) ... 20

*Office and Professional Employees International Union v. SpaceX*
No. 25-622 (U.S. Mar. 18, 2026) ... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Pacific Legal Foundation v. Brown*
29 Cal.3d 168 (1981) .... 4

*Puente Arizona v. Arpaio*
821 F.3d 1098 (9th Cir. 2016).... 12

*Red Rock Resorts, Inc v. NLRB*
No. 2:24-cv-01966-ART-BNW (D. Nev. Mar. 31, 2025) .... 7

*Right to Life of Cent. Cal. v. Bonta*
562 F. Supp. 3d 947 (E.D. Cal. 2021).... 29

*Rosenbloom v. Pyott*
765 F.3d 1137 (9th Cir. 2014).... 16

*San Diego Building Trades Council v. Garmon*
359 U. S. 236 (1959).... *passim*

*Sears, Roebuck & Co. v. Carpenters*
436 U.S. 180 (1978).... 24

*Space Exploration Technologies Corp. v. NLRB*
151 F.4th 761, 776-778 (5th Cir. 2025) .... 7

*Superior Court v. Pub. Emp't Relations Bd.*
30 Cal. App. 5th 158 (2018).... 5

*Trump v. Slaughter*
146 S. Ct. 2283 (2026) .... 6

*Trump v. Wilcox*
145 S. Ct. 1415 (2025) .... 6

*United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Emp. Rels. Bd.*
669 F.2d 1249 (9th Cir. 1982).... 17

*United States v. California*
921 F.3d 865 (9th Cir. 2019).... 27

*Wilcox v. Trump*
775 F. Supp. 3d 215 (D.D.C. 2025) .... 6, 21, 22, 23

*Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*
475 U.S. 282 (1986) .... 13

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Yapp USA Auto. Sys. v. NLRB*
748 F. Supp. 3d 497 (2024)........ 7

**STATUTES**

29 U.S.C.
§ 14(c) ........ 24
§ 151........ 3, 25
§ 152(3) ........ 3
§ 153(a) ........ 3, 13
§ 153(b) ........ 4
§ 154(a) ........ 4
§ 159........ 4
§ 159(b) ........ 4
§ 159(c) ........ 4
§ 160(a) ........ 24
§ 160(c) ........ 3, 4
§ 160(e) ........ 4, 19
§ 160 (f)........ 19
§ 164(c)(1)........ 24

Cal. Code Regs.
§ 32305........ 5
§ 32715........ 5
§ 32720........ 5
§ 32724........ 5
§ 32742........ 5
§ 32750........ 5
§ 32980(a) ........ 5
§ 33237........ 5

Cal. Gov. Code
§ 3514.5........ 5
§ 3541(a) ........ 4
§ 3541.3(i)........ 5
§§ 3541.3(a-c) ........ 5
§ 3541.35........ 5

## TABLE OF AUTHORITIES
**(continued)**

**Page**


Cal. Lab. Code
§ 923 ........ 9, 28
§ 923.1 ........ 9
§ 923.1(b)(1)(A) ........ 10, 17, 28
§ 923.1(b)(1)(B) ........ 11, 17
§ 923.1(b)(1)(B)(i) ........ 10, 18, 22
§ 923.1(b)(1)(B)(ii) ........ 10
§ 923.1(b)(1)(B)(iii) ........ 10
§ 923.1(b)(1)(B)(iv) ........ 10
§ 923.1(e)(1) ........ 11
§ 923.1(e)(2) ........ 11
§ 932.1.(b)(1)(B)(i) ........ 19

**UNITED STATES CONSTITUTION**

Seventh Amendment ........ 8, 19

**COURT RULES**

Fed. R. Civ. P.
56(a) ........ 12

**OTHER AUTHORITIES**

29 C.F.R.
§ 102.48(a) ........ 20
§ 102.48(b) ........ 20
§ 102.67(c) ........ 20
§ 102.182 ........ 4

Adrian Vermeule, *Conventions of Agency Independence*, 113 Colum. L. Rev. 1163, 1179 (2013) ........ 22

California Assembly Bill No. 288, 2025 Cal. Legis. Serv. Ch. 139 (A.B. 288) ........ *passim*

Henry H. Drummonds, *Unleashing the States in Labor-Management Relations Policy*, 19 Cornell J.L. & Pub. Pol'y 83, 84 (2009) ........ 14

NLRB, 1 Legislative History of the National Labor Relations Act (1949) ........ 13

NLRB, Election Petitions Up 53%, Board Continues to Reduce Case Processing Time FY22 (Oct. 6, 2022, *available at* https://www.nlrb.gov/news-outreach/news-story/election-petitions-up-53-board-continues-to-reduce-case-processing-time-in ........ 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

NLRB, Unfair Labor Practices Charge Filings Up 10%, Union Petitions Up 3% in Fiscal Year 2023 (Oct. 13, 2023), *available at* https://www.nlrb.gov/news-outreach/news-story/unfair-labor-practices-charge-filings-up-10-union-petitions-up-3-in-fiscal ..... 8

NLRB, Union Petitions Filed with NLRB Double Since FY 2021, Up 27% Since FY 2023 (Oct. 14, 2024), *available at* https://www.nlrb.gov/news-outreach/news-story/union-petitions-filed-with-nlrb-double-since-fy-2021-up-27-since-fy-2023 ..... 9

## INTRODUCTION

California law, like federal law, recognizes that the rights of workers to organize and engage in collective bargaining with their employer are fundamental to a well-organized system of labor relations. Those rights are enshrined in both the National Labor Relations Act (NLRA or "the Act") and in state law. Historically, the primary avenue for most private-sector workers to assert those rights has been the National Labor Relations Board (NLRB). Congress intended that the NLRB, as the federal entity tasked with resolving most private-sector labor disputes, would act as a specially constituted tribunal with certain specific characteristics: namely, Congress intended that the NLRB would operate as an independent agency that could use its expertise to fairly and efficiently resolve labor disputes.

Unfortunately, the NLRB is no longer operating as Congress intended. The agency is struggling to timely process cases, subjecting workers to severe delays and often rendering any eventual relief meaningless to the individual workers who have been harmed. The agency has already functionally lost its independence: last year, the President fired a member of the NLRB's five-member Board without cause, in direct contravention of the NLRA's statutory removal protections for Board members. The D.C. Circuit concluded that those removal protections were unconstitutional, and the Supreme Court has strongly indicated through recent cases that, should the matter come before it, it will agree with that conclusion. The loss of removal protections also means that nothing prevents a President from effectively paralyzing the NLRB by depriving it of its required three-member quorum at any time and for any reason—a possibility that Congress could not possibly have foreseen at the time it passed the NLRA. Nor could Congress have foreseen that the NLRB would be subjected to claims asserting that its structure violates the Constitution, which, if successful, would effectively prohibit the NLRB from functioning in any capacity. These changes and challenges frustrate Congress's intent in creating the NLRB and, more fundamentally, impede workers' ability to vindicate their fundamental labor rights.

To ensure that fundamental labor rights and duties are protected and enforced even in the absence of a functioning NLRB, the California Legislature enacted Assembly Bill 288. The bill

allows private sector California workers to bring labor disputes to the state's Public Employee Relations Board (PERB) under specific enumerated circumstances, including, among other things, when the NLRB has lost its statutory independence, cannot function due to a lack of quorum, or has been enjoined from further prosecuting a case on constitutional grounds. Together, AB 288's "triggers" mean that the statute becomes effective if, and only if, workers are unable to rely on the NLRB for fair and prompt resolution of their cases.

Plaintiff in this suit, the NLRB, contends that despite AB 288's limited scope, it conflicts with the NLRA. The NLRB is wrong. AB 288 does not conflict with the NLRA. Rather, it supplements the NLRA by providing an avenue for workers to vindicate their labor rights when the NLRB cannot fill that role, which is a valid exercise of the State's police power to establish minimum labor standards. Nor is AB 288 preempted under *San Diego Building Trades Council v. Garmon*, 359 U. S. 236, 244 (1959) or under standard obstacle preemption doctrine. In *Garmon* and its progeny, the NLRA's preemptive force was based on Congress centralizing administration and adjudication of labor disputes in a "specific and specially constituted tribunal." *Id*. at 242. But if the NLRB is no longer the specially constituted tribunal that Congress envisioned, it does not frustrate congressional intent to allow workers to vindicate their rights in another forum. To be sure, *Garmon* did not discuss whether circumstances might arise when it no longer made sense to assume that Congress intended the NLRB to be the exclusive arbiter of private-sector labor disputes. But that is unsurprising, because at the time *Garmon* was decided—and in the years that followed—the NLRB *was* operating as Congress intended. That is no longer the case. Because the preemption analysis turns on congressional intent, it is entirely consistent with *Garmon* and its progeny to consider whether Congress would have intended the NLRA to preempt state legislation even if the NLRB no longer resembled the agency Congress imagined when it passed the Act. Indeed, because AB 288's application is limited to specific circumstances where the NLRB is not operating as Congress intended, AB 288 actively furthers congressional intent by allowing workers to receive prompt and fair resolution of labor disputes when the NLRB is no longer capable of doing so. And it furthers the State of California's own interests in providing workers an alternative forum to vindicate their labor rights.

To give effect to Congress's intent in passing the NLRA, this Court should conclude that the NLRA's implied grant of exclusive jurisdiction does not apply under the circumstances identified by AB 288, and hold that AB 288 is not preempted by the NLRA. Accordingly, because there are no disputes of material fact, and because the State of California is entitled to judgment as a matter of law on the NLRB's claims, the Court should deny the NLRB's motion, grant the State of California's motion, and enter judgment for defendants.

## BACKGROUND

### I. The NLRA and NLRB

Congress enacted the NLRA to address "[t]he denial by some employers of the right of employees to organize," among other things. 29 U.S.C. § 151 (Findings and declaration of policy). Recognizing that "protection by law of the right of employees to organize" was crucial to labor peace and the free flow of commerce, the NLRA sought to "encourag[e] the practice and procedure of collective bargaining" and "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing . . . ." *Id.* The protections of the NLRA extend to most private-sector employees, with certain enumerated exceptions. *See* 29 U.S.C. § 152(3).

The NLRB is the agency tasked with administering and enforcing the NLRA. The NLRB is bifurcated between the Board itself,[2] which exercises the NLRB's adjudicative functions, and the office of the General Counsel, which prosecutes and investigates cases. *See NLRB v. Aaron Bros. Corp.*, 563 F.2d 409, 413 (9th Cir. 1977) (per curiam). The Board consists of five members appointed by the President "with the advice and consent of the Senate" for staggered five-year terms. 29 U.S.C. § 153(a). Congress' intent that the Board be independent is reflected in the statute, which provides that members are protected from removal at-will by the President, who may remove a Board member "for neglect of duty or malfeasance in office, but for no other cause." *Id*. Members' duties and powers include adjudicating and issuing agency decisions in unfair labor practice (ULP) cases, 29 U.S.C. § 160(c); petitioning courts for the enforcement of

[2] This brief uses "NLRB" to refer to the agency as a whole and "the Board" to refer to the five-member entity within it, as the NLRB does.

such orders, 29 U.S.C. § 160(e); and conducting and certifying the outcome of representation elections, 29 U.S.C. § 159, among other things.

The Board may delegate some, but not all, of its powers to Regional Directors and Administrative Law Judges ("ALJs"). *See* 29 U.S.C. §§ 153(b), 154(a), 159(b)-(c), 160(a)-(c). Although ALJs initially adjudicate ULP cases, if parties file exceptions to an ALJ's decision, the decision can have no legal effect without a Board order adopting the decision. *See* 29 C.F.R. § 102.48(a)-(b); *Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *47 (D.C. Cir. Mar. 28, 2025), *vacated on reconsideration en banc*, No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) (Millet, J., dissenting) (noting that the Board "cannot delegate the authority to decide cases"). If no exceptions are filed, the ALJ's ruling automatically becomes the decision of the Board. *See* 29 U.S.C.A. § 160(c).

The Board requires a quorum of "three or more members" to operate. *Id.* § 153(b). When the Board is without a quorum, it cannot issue decisions and final orders adjudicating ULP cases. *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 684 (2010); *Harris*, 2025 WL 980278 *47 (Millet, J., dissenting). Without a quorum, the Board also cannot rule on requests for review of the decisions of Regional Directors in representation cases. *See* 29 CFR § 102.182. Although Regional Directors may continue to process requests and issue certifications "notwithstanding the pendency of a request for review," such certifications remain "subject to revision or revocation by the Board" if a request for review is filed. *See id.*

## II. PERB

PERB is "an expert, quasi-judicial administrative agency modeled after the National Labor Relations Board" historically tasked with enforcing collective bargaining rights for public employees in California. *Pacific Legal Foundation v. Brown*, 29 Cal.3d 168, 177 (1981). PERB's Board comprises five members appointed by the Governor to five-year terms. Cal. Gov't. Code § 3541(a). PERB Board members may be removed by the Governor for neglect of duty or malfeasance in office, but no other cause. *Id.* PERB includes an Office of General Counsel

("OGC") responsible for reviewing ULP[3] charges, issuing complaints where appropriate, and seeking compliance with final Board orders. *See Superior Court v. Pub. Emp't Relations Bd.*, 30 Cal. App. 5th 158, 191 (2018); 8 Cal. Code Regs. § 32980(a). Although initially limited to public school employees, the agency's jurisdiction has expanded as the state legislature has enacted laws covering additional categories of public agencies, including employees of the state university system, state trial courts, and the Los Angeles County Metropolitan Transit Authority, among others. *See Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.*, 35 Cal. 4th 1072, 1085 (2005).

Like the NLRB, PERB has the authority to administer union representation proceedings and process ULPs pursuant to the statutes it administers. *See*, *e.g.*, Cal. Gov't. Code § 3541.3(a-c), (i). ULP hearings are generally heard before ALJs. *See* 8 Cal. Code Regs. § 32720. ALJs issue proposed decisions that are then adopted by the Board, subject to consideration of any exceptions to the proposed decision that parties file with the Board. *See id.* at § 32305. In representation cases, PERB may hold hearings on questions raised by the petition, *see id.* at §§ 32715, 33237, order representation elections, *see id.* at § 32724, and issue certifications of representation, *see id.* at § 32750. Contested matters in representation proceedings are generally heard by an OGC hearing officer or an ALJ, whose decisions are then appealable to the Board. *See* Cal. Gov't. Code § 3541.35; 8 Cal. Code Regs. § 32742.

## III. CHALLENGES FACED BY THE NLRB

### A. Removal of Member Wilcox and Loss of Quorum

The NLRB has been without a quorum three times within the last twenty years: 1) from December 2007 until March 2010, *see New Process Steel*, 560 U.S. at 677; 2) from December 2011 to July 2013, *see NLRB v. Noel Canning*, 573 U.S. 513, 520 (2014) (holding that President Obama's 2011 recess appointments were invalid); and 3) most recently, from January 27, 2025, until December 18, 2025. During those periods, the NLRB was unable to issue final orders in

[3] PERB's statutes use "unfair practice" to refer to labor law violations, as opposed to the NLRB's "unfair labor practice" nomenclature. *See*, *e.g.*, Cal. Gov't Code § 3514.5. For consistency, this brief will also refer to these cases as "ULPs."

cases or rule on requests for review from Regional Director decisions in representation proceedings, among other things.

On January 27, 2025, President Trump fired NLRB Board Member Gwynne Wilcox without notice and hearing and without identifying "neglect of duty or malfeasance" on Wilcox's part. *Wilcox v. Trump*, 775 F. Supp. 3d 215, 222 (D.D.C.), *hearing in banc denied sub nom. Harris v. Bessent*, No. 25-5037, 2025 WL 1033740 (D.C. Cir. Apr. 7, 2025), *and cert. denied before judgment*, 146 S. Ct. 76 (2025), *and rev'd sub nom. Harris v. Bessent*, 160 F.4th 1235 (D.C. Cir. 2025), cert. denied, No. 25-1110, 2026 WL 1871323 (U.S. June 30, 2026). The President contends, contrary to tradition and precedent, that the NLRA's statutory limits on removing Board members unconstitutionally infringe on executive authority. *Wilcox*, 775 F. Supp. 3d at 226. Member Wilcox sued to enjoin her removal. *Id.* at 222. Although Wilcox obtained an injunction from the district court, *see id.* at 239-40, the injunction was stayed pending appeal by the U.S. Supreme Court, *Trump v. Wilcox*, 145 S. Ct. 1415, 1416 (2025). On appeal, the D.C. Circuit reversed the district court, concluding that the NLRB's statutory removal protections are unconstitutional. *Harris v. Bessent*, 160 F.4th 1235, 1254 (D.C. Cir. 2025).

Wilcox filed a petition for a writ of certiorari on June 26, 2026. However, just three days later on June 29, the Supreme Court decided *Trump v. Slaughter*, in which the Supreme Court overruled *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) to hold that statutory removal protections for heads of agencies that exercise executive authority violate the separation of powers. *See Trump v. Slaughter*, 146 S. Ct. 2283, 2291 (2026). Although *Slaughter* specifically concerned the Federal Trade Commission, the rule announced in *Slaughter* will likely be applied to *Trump v. Wilcox*. In fact, the Supreme Court observed in its order staying Wilcox's injunction pending appeal that the Government would likely be able to show that the NLRB "exercise[s] considerable executive power," 145 S. Ct. at 1416. And the Government, in its opposition to Wilcox's cert petition, argued that *Slaughter* controls Wilcox's case and that the NLRA's statutory removal protections are unconstitutional. Brief for Respondents in Opposition at 4, *Wilcox v. Trump*, No. 26-5 (U.S. Sept. 14, 2026); *see also Harris v. Bessent*, 160 F.4th at

1259 (Pan, J., dissenting) (noting that "the constitutional arguments before us" in considering NLRB removal protections "mirror those raised in *Slaughter*").

**B. Constitutional Challenges to the NLRB and NLRA**

Loss of a quorum is not the only issue preventing the NLRB from functioning as Congress intended. In recent years, several employers have sought to enjoin enforcement of the NLRA on the grounds that the NLRB's structure is unconstitutional, contending that statutory protections for Board members and the agency's ALJs impermissibly insulate them from presidential oversight. *See*, *e.g.*, *Yapp USA Auto. Sys. v. NLRB*, 748 F. Supp. 3d 497, 502 n. 1 (2024) (collecting cases). In 2025, this argument found purchase with the Fifth Circuit, which concluded in *Space Exploration Technologies Corp. v. NLRB* ("*SpaceX*") that removal protections for Board members and ALJs were unconstitutional. 151 F.4th 761, 776-778 (5th Cir. 2025). The Fifth Circuit went on to enjoin the NLRB's case against SpaceX on the ground that "forcing [] [e]mployers to appear before an unconstitutionally structured agency inflicts irreparable harm." *Id.* at 780.

The NLRB did not seek Supreme Court review of the Fifth Circuit's decision; the Office and Professional Employees International Union sought to intervene in the case for the purposes of seeking a writ of certiorari, but the Fifth Circuit denied the union's motion. *See* Brief for the Government Respondents in Opposition, *Office and Professional Employees International Union v. SpaceX*, No. 25-622 (U.S. Mar. 18, 2026), at I (brief for the U.S. noting that "the government decided not to" seek a writ of certiorari to review the Fifth Circuit's injunction). As a result of the Fifth Circuit's ruling, the NLRB essentially cannot operate in Louisiana, Mississippi, or Texas, denying private sector workers in those states any opportunity to vindicate their labor rights. *See*, *e.g.*, *Hudson Inst. of Process Rsch. Inc. v. NLRB*, 2025 WL 2431645, at *3 (E.D. Tex. Aug. 22, 2025) (enjoining NLRB proceedings against employer pursuant to *SpaceX*).

Despite the existential threat that these challenges pose to the agency's operations, it appears that the NLRB no longer contests the argument that its structure is unconstitutional. *See* *SpaceX*, 51 F.4th at 776 n. 4 ("Since filing suit, the NLRB has withdrawn its position as to the constitutionality of the Board-Member-and-ALJ-removal provisions."); *Red Rock Resorts, Inc v.*

*NLRB*, No. 2:24-cv-01966-ART-BNW, (D. Nev. Mar. 31, 2025) at Dkt. 35 (NLRB position letter stating it is "no longer relying on its previous arguments" that removal restrictions are constitutional).

The NLRB faces another category of constitutional challenges, which undermine the NLRB's ability to provide effective remedies to workers and to operate as intended. These challenges contend that the agency's practice of awarding monetary relief to remedy unfair labor practices runs afoul of the Seventh Amendment right to a jury trial. *See*, *e.g.*, *NLRB v. Starbucks Corp*., 159 F.4th 455, 475 (6th Cir. 2025); *Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39 v. NLRB*, 155 F.4th 1023, 1053 (9th Cir. 2025), cert. denied sub nom. *Macy's Inc. v. NLRB*, No. 25-627, 2026 WL 1717973 (U.S. June 15, 2026). Citing *SEC v. Jarkesy*, 603 U.S. 109 (2024), the Sixth Circuit recently concluded that certain make-whole remedies the NLRB awards for "direct or foreseeable pecuniary harms" resulting from an unfair labor practice resemble consequential damages, and thus cannot be awarded through the NLRB's administrative proceedings. *See Starbucks Corp*, 159 F.4th at 480. A district court in the Fifth Circuit recently reached the same conclusion. *Aunt Bertha v. NLRB*, No. 4:24-CV-00798-P, 2026 WL 1365028, at *4 (N.D. Tex. May 15, 2026), *appeal docketed*, No. 26-10752 (5th Cir. Aug. 18, 2026). This means that the agency, as presently constituted, is prohibited from awarding workers harmed by their employers' illegal actions the relief the Board itself deems necessary to make them whole.

### C. Rising Caseloads and Diminished Resources

In addition to the acute dangers posed by a lack of quorum and legal challenges to the NLRB's structure and independence, an equally pernicious problem has arisen over time from federal decisions not to fund and staff the NLRB consistent with the growing need. From 2021 to 2024, the NLRB saw increases in its caseload every year. *See* Statement of Undisputed Facts (SUF), ¶ 18 (NLRB, *Election Petitions Up 53%, Board Continues to Reduce Case Processing Time in FY22* (Oct. 6, 2022)[4]; *Unfair Labor Practices Charge Filings Up 10%, Union Petitions*

[4] *Available at* https://www.nlrb.gov/news-outreach/news-story/election-petitions-up-53-board-continues-to-reduce-case-processing-time-in.

*Up 3% in Fiscal Year 2023* (Oct. 13, 2023)[5]; *Union Petitions Filed with NLRB Double Since FY 2021, Up 27% Since FY 2023* (Oct. 14, 2024).[6] Despite this increased workload, staffing in field offices shrank by 50% in the two decades preceding 2024. SUF ¶ 19. These delays pose significant obstacles to workers seeking to vindicate their rights, and in some cases prevent them from receiving meaningful relief. Workers terminated for their union activity go for long periods without pay and may be forced to move on to new positions, weaking the potential remedy of reinstatement. For example, as of December 2025, California worker Matthew Wittmer had been waiting on a determination in his case alleging an unlawful termination from his librarian position for over a year and a half. SUF ¶¶ 12-13 (Declaration of Matthew Wittmer, Dkt. 16-6, at ¶¶ 12-13).[7] After months he was finally able to find new employment in a different industry, but his new position pays 60% less than what he was earning as a librarian. SUF ¶ 14 (*Id*. at ¶ 15). And the delays can stymie organizing efforts altogether: Union leader Alexandra Suh worked to organize workers with a union at a grocery store chain for nearly three years. *See* SUF ¶ 16 (Declaration of Alexandra Suh, Dkt. 16-1, at ¶¶ 3-5). But because of NLRB delays in sorting out election objections and processing ULPs related to the employer's retaliation, a majority of the lead worker organizers no longer worked there as of December 2025, and many remaining workers no longer wish to participate in NLRB proceedings. SUF ¶ 17 (*Id*. at ¶ 17-18). These delays cause irreversible damage to workers' cases and prevent them from vindicating their labor rights.

## IV. AB 288

California law recognizes as "necessary" that workers "have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment." Cal. Lab. Code § 923.[8] To ensure that NLRB incapacity would not prevent workers from vindicating their labor rights, in 2025 the Legislature passed, and

[5] *Available at* https://www.nlrb.gov/news-outreach/news-story/unfair-labor-practices-charge-filings-up-10-union-petitions-up-3-in-fiscal.

[6] *Available at* https://www.nlrb.gov/news-outreach/news-story/union-petitions-filed-with-nlrb-double-since-fy-2021-up-27-since-fy-2023.

[7] All declarations referred to in this brief were provided by the Teamsters in its opposition to the NLRB's preliminary injunction motion. *See* attachments to Dkt. 16.

[8] All statutory references are to the California Labor Code unless otherwise noted.

the Governor signed, AB 288, which added Section 923.1 to the California Labor Code. As the Legislature observed in AB 288's legislative findings, "the NLRB's increasing inability to provide meaningful and timely relief negates the very purposes underlying the NLRA" and "[w]orkers are irreparably harmed by either being forced to abandon their efforts to improve their lot, subjecting them to continued exploitation, or by being forced to find ways outside of the NLRA to demand their inalienable rights[.]" AB 288 §1(f).

AB 288 achieves its purpose of protecting labor rights by allowing private sector employees to file unfair labor practice charges and petitions for representation with PERB under specific circumstances. First, it allows workers to file cases with PERB in the first instance if they lose coverage under the NLRA as a result of legislative, executive, or judicial action. § 923.1(b)(1)(A). The statute also allows workers to file charges and petitions with PERB if they have filed a case with the NLRB and the NLRB becomes incapable of fairly and promptly processing the case further. Specifically, for those cases where a certification of election or administrative law judge decision has been issued, or where challenges or objections to a representation election are pending before the Board, a worker can file a case based on the same dispute with PERB if any of the following three conditions are present: 1) the Board lacks a quorum; 2) the NLRB loses its independence as a result of the Supreme Court finding the Board's removal protections are unconstitutional; or 3) the processing of a case is enjoined by a court based on a constitutional challenge to the NLRB's structure or authority. § 923.1(b)(1)(B)(i).

To address these harms, workers who have filed a charge or petition with the NLRB may file a case with PERB if their NLRB case has been subject to significant processing delays, such that NLRB is deemed to have ceded jurisdiction. Specifically, AB 288 applies in the following five circumstances of delay: 1) a case is pending before a regional director for more than six months without issuance of a complaint or certification of an election, § 923.1(b)(1)(B)(ii); 2) after a complaint has been issued, a case is pending for more than six months without an ALJ decision, *id.*; 3) after a certification has been issued, a case is pending for more than six months without a Board decision about the certification, *id.*; 4) for cases where a party seeks review of an ALJ or regional director decision and the Board does not accept or decline review within six

months, § 923.1(b)(1)(B)(iii); and 5) where a case is on review before the Board, the case remains pending for more than 12 months without a final decision, § 923.1(b)(1)(B)(iv).

AB 288 permits PERB to investigate charges and process petitions received pursuant to AB 288 using the same procedures it presently uses to process cases from public-sector workers. *See* § 923.1(e)(1). In PERB's adjudications, it may rely on both its own precedent as well as precedent under the NLRA. § 923.1(e)(2).

## V. PROCEDURAL HISTORY

California Governor Gavin Newsom signed AB 288 into law on September 30, 2025, with most provisions to take effect on January 1, 2026. § 923.1(b)(1)(B). On October 15, 2025, the NLRB filed this lawsuit against PERB and the State of California, seeking to enjoin implementation of AB 288 as preempted by the NLRA. *See* Dkt. 1. Shortly after, the International Brotherhood of Teamsters ("Teamsters") filed an unopposed motion to intervene (Dkt. 4), which was granted (Dkt. 6).

The NLRB moved for a preliminary injunction on November 19, contending that the NLRB would suffer irreparable harm if AB 288 was not enjoined before January 1, 2026. *See* Dkt. 10.

After briefing on the motion, this Court granted the NLRB's motion in part and denied it in part on December 26, 2025. *See* Dkt. 30, at 18. It enjoined defendants from implementing the provisions allowing workers to file with PERB based on a lack of quorum, a loss of NLRB independence, and processing delays. *Id.* However, it did not enjoin the provisions based on a worker's loss of coverage under the NLRA, the NLRB being enjoined on constitutional grounds from further processing a case, and the NLRB expressly ceding its jurisdiction. *Id.* at 11-12, 18.

Defendants timely filed their answers to the complaint on January 8 (PERB, Dkt. 31) and January 9, 2026 (the State, Dkt. 32, and Teamsters, Dkt. 33). Pursuant to this Court's pretrial scheduling order the deadline to complete discovery in this case is January 9, 2027—365 days from the date upon which the last answer is filed—and the deadline to file dispositive motions is 180 days from that date on July 8, 2027. *See* Dkt. 3 at 2, 4. However, after Defendant-Intervenor Teamsters served discovery requests on the NLRB on July 31, 2026 (*see* Dkt. 40-1, ¶ 4), the NLRB informed the parties that it intended to move for summary judgment, contending that the

case could be decided as a matter of law. The NLRB filed its motion for summary judgment on August 26, 2026.[9]

## ARGUMENT

### I. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When parties cross-move for summary judgment, courts "evaluate each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotations and citation omitted).

As a remedy in this case, the NLRB seeks a declaration that AB 288 is preempted as well as a permanent injunction enjoining the majority of AB 288. For the NLRB to receive a permanent injunction, in addition to succeeding on the merits of its claims, it must also show that it will suffer irreparable harm without injunctive relief, remedies at law are inadequate, the balance of equities tips in its favor, and that an injunction is in the public interest. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). Because the NLRB brings facial challenges against the relevant provisions of AB 288, it must establish that no set of circumstances exists under which those challenged provisions would be valid. *See Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (applying this standard to facial preemption challenge).

### II. AB 288 Is Not Preempted by The NLRA

This Court should grant the State of California's motion and deny the NLRB's because there are no disputes of material fact and because as a matter of law, AB 288 is not preempted by the NLRA. The NLRB contends that AB 288 is preempted pursuant to *Garmon*, 359 U.S. at 236,

[9] Although the State takes the position that consideration of this case would be better served by filing coordinated cross-motions for summary judgment at a later date—particularly given that the dispositive motions deadline is nearly 10 months away—to avoid potentially forfeiting its right to file its own dispositive motion, (see Dkt. 41-1, ¶ 3,) the State submits the instant consolidated opposition and cross-motion for summary judgment.

or standard obstacle preemption doctrine. *Garmon* provides that states cannot regulate conduct "that the NLRA protects, prohibits, or arguably protects or prohibits." *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986). Obstacle preemption provides that a state law is invalid if it poses an obstacle to the "purposes and objectives of Congress" in passing a federal law. *Hines v. Davidowitz*, 312 U. S. 52, 67 (1941).

AB 288 is not preempted under either doctrine. Preemption is based on congressional intent, and it is undisputed that Congress intended the NLRB to be a functional and independent agency. *See* 29 U.S.C. §153(a) (limiting President's authority to remove Board members); NLRB, 1 Legislative History of the National Labor Relations Act, at 1427-28 (1949)[10] (noting that the NLRB "should be maintained as an independent agency"). AB 288 applies only to situations where the NLRB is not operating as Congress intended. If the NLRB loses its status as a neutral arbiter or cannot function, allowing states to provide workers an alternative forum furthers, rather than frustrates, Congress's intent to protect workers' rights.

### A. In limited circumstances in which the statutory scheme is not functioning as Congress intended, the NLRA should not be given preemptive effect.

"[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent." *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992) (internal quotation marks and case citations omitted). Although courts have applied *Garmon* preemption broadly, it is not without limits. *See Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*, 598 U.S. 771, 776 (2023). The doctrine is, like other preemption doctrines, based on the Supreme Court's attempt to discern Congress's intent in passing the law. *See Garmon*, 359 U.S. at 240 ("[T]he task that was thus cast upon this Court in carrying out with fidelity the purposes of Congress"); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747–48 (1985) (noting that in determining the NLRA's preemptive effect, "[t]he purpose of Congress is the ultimate touchstone" (internal quotation marks omitted)).

The NLRA has no express preemption provision. *See Bethlehem Steel Co. v. New York State Lab. Rels. Bd.*, 330 U.S. 767, 771 (1947) (noting that Congress has not "seen fit to lay down

[10] A digital scan of the legislative history is available at *https://books.google.com/books?id=NC32xgEACAAJ&pg.*

even the most general of guides to construction of the Act . . . by saying that its regulation either shall or shall not exclude state action"). And the Supreme Court has observed that because "the establishment of labor standards falls within the traditional police power of the State," in that area "preemption should not be lightly inferred." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987). However, in *Garmon*, the Supreme Court concluded that the NLRA preempted state regulation of labor relations—despite the lack of an express preemption provision—primarily on the ground that a key purpose of the NLRA was to ensure uniform application of the nation's labor laws. 359 U.S. at 243. To that end, the Court concluded that Congress sought to centralize administration and adjudication of labor disputes in a "specific and specially constituted tribunal," the NLRB. *Id.* at 242. This congressional purpose also forms the basis of the NLRB's obstacle preemption argument in this case: specifically, the notion that allowing states to implement their own private sector labor policies poses an obstacle to a uniform labor law administered by a centralized, functional, and independent body capable of acting as a neutral arbiter of labor disputes. *See id.*; *see also Garner v. Teamsters, Chauffeurs & Helpers Local Union,* 346 U.S. 485, 490 (1953). Thus, it can be said that *Garmon* rests "on [an] implied 'obstacle' preemption analysis." Henry H. Drummonds*, Beyond the Employee Free Choice Act: Unleashing the States in Labor-Management Relations Policy*, 19 Cornell J.L. & Pub. Pol'y 83, 84 (2009). Although the NLRB frames its arguments as two distinct theories, at bottom, both are based on the notion that Congress intended to centralize labor adjudication in the NLRB, to the exclusion of any other fora.

But because the NLRB is so central to Congress's goals in enacting the NLRA—acting as both a protector of workers' rights and an expert, independent tribunal—Congress's intent is honored only if the NLRB fulfills its role as prescribed by the statute. If the agency at the center of the NLRA is no longer functional or independent, the NLRA's carefully constructed scheme breaks down. Under those circumstances, Congress could not have intended to deprive workers of an alternative forum to resolve their labor disputes.

This reasoning finds support in a Fourth Circuit decision, *National Association of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025), *cert. granted, opinion reversed sub*

*nom. Margolin v. National Association of Immigration Judges*, 608 U.S. 339, 146 S. Ct. 1285 (2026).[11] That case considered whether the Civil Service Reform Act (CSRA) stripped federal courts of jurisdiction to hear claims from federal employees based on certain adverse personnel actions. The test for determining whether a federal statute strips courts of jurisdiction—like the test for whether a federal statute preempts state action—turns on congressional intent. *See id.* at 304. The appellate court explained that Congress intended the CSRA to replace the existing "patchwork" of rules governing the civil service and to consolidate personnel adjudications in the Merit Systems Protection Board (MSPB), which was meant to serve as the exclusive forum for such disputes. *See id.* at 302, 305. Accordingly, prior cases had held that jurisdiction lies only with the MSPB. *Id.* But the *Owen* court concluded that in light of the MSPB's importance to the statutory scheme, to maintain Congress's jurisdictional intent, the MSPB must be able to "fulfill [its] role[] prescribed by the CSRA."[12] *See id.* at 305-06.

The Fourth Circuit then identified two reasons why the MSPB may not be fulfilling its role in the statutory scheme. First, the CSRA was enacted "for the express purpose that the merit system function and that claims be addressed adequately and efficiently." *Id.* at 305. If the MSPB was unable to fulfill that task, "the framework of the CSRA would be thwarted." *Id.* The court further noted that the MSPB was currently without a quorum so it was unclear whether "turning to the MSPB . . . would be futile." *Id.* Second, the CSRA was "designed to protect the independence" of the MSPB. *Id.* at 305-06. To that end, MSPB members were given statutory removal protections. *Id.* at 306. But the court noted that the President had recently removed two members of the MSPB without cause, in violation of the statute. *Id.* at 305. The court reasoned that Congress may have intended to vest the MSPB with exclusive jurisdiction only because "it understood that the President could not exercise unfettered control" over it. *See id.* at 306. Accordingly, the court remanded to the district court to consider "the functionality and

[11] *Owen* was reversed on other grounds by the Supreme Court, but it retains its persuasive authority for reasons explained further below.

[12] In analyzing the jurisdictional issue, the court also considered whether the "Special Counsel" position created by the CSRA was fulfilling its statutory role. This summary focuses on the court's analysis of the MSPB because it is most relevant to this case.

independence of the MSPB" in determining whether Congress intended the MSPB to have exclusive jurisdiction over the plaintiff's case. *Id.* at 307-08.

Although *Owen* arose in a different context, its logic is applicable here. Both cases concern whether Congress intended for a federal agency to serve as the exclusive forum for certain disputes under all circumstances. And the CSRA, like the NLRA, was meant to displace a patchwork of regulations with a uniform law administered by a single agency. Despite this, the court in *Owen* concluded that whether the MSPB's jurisdiction should remain exclusive was contingent on whether the agency was fulfilling its intended role in the statutory scheme. Similarly, it is only when the NLRB fails to operate in the manner Congress intended that AB 288 allows workers an alternative forum.

Contrary to the NLRB's assertions, *see* Pl's. Br., at 1 (citing *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026)), *Owen's* persuasive value is not diminished by the fact that it was reversed on other grounds by the Supreme Court. Specifically, the Supreme Court concluded that the Fourth Circuit violated the "party-presentation principle" because the parties argued only whether plaintiff's specific claims were covered by the CSRA and did not address the theory on which the Fourth Circuit decided the case: "that the CSRA might not—in light of current conditions—channel *any* claims." *Margolin*, 146 S. Ct. at 1288 (emphasis in original). The Supreme Court faulted the appeals court for deciding the case on that basis without giving the parties a chance to address that theory, and remanded the case for further proceedings. *Id.* at 1288-89. Importantly, the Supreme Court's decision did not rebuke—or even address—the Fourth Circuit's substantive reasoning. The only discussion of *Owen*'s merits appeared in the concurrence authored by Justice Thomas and joined by Justice Barrett. *See id.* at 1289 (Thomas, J., concurring). It is well-established in the Ninth Circuit that "decisions vacated for reasons unrelated to the merits may be considered for the persuasive of their reasoning." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1154, n. 14 (9th Cir. 2014). As this Court noted in its injunction order, *Owen*'s logic is "compelling," *see* Dkt. 30, at 14, and the Supreme Court has not undermined *Owen*'s persuasive value.

### B. AB 288's triggers apply only in situations where the NLRA does not apply or the NLRB is not fulfilling its role in the statutory scheme.

AB 288 is carefully drafted to ensure that it does not infringe on the NLRB's exclusive jurisdiction. AB 288 allows workers to file with PERB only if the worker falls outside of the NLRA's statutory scheme, the NLRB has expressly lost or ceded its jurisdiction, or the NLRB is not functioning as Congress intended, which warrants providing an alternative forum. Under the circumstances identified by AB 288, the NLRB loses exclusive jurisdiction over private-sector labor disputes, so AB 288 does not conflict with the NLRA.

#### 1. The triggers based on a lack of coverage under the NLRA or an express loss of NLRB jurisdiction do not conflict with the NLRA.

As for AB 288's triggers based on a lack of coverage or express loss of jurisdiction, this Court has already correctly concluded that those three triggers do not conflict with the NLRA and are not preempted. *See* Dkt. 30, at 12. For the reasons that follow, no argument raised in the NLRB's summary judgment motion disturbs the Court's conclusion as to those three triggers.

First, workers may file with PERB if they were once covered by the NLRA but lose coverage as a result of judicial or executive action. *See* § 923.1(b)(1)(A). If a worker is not covered by the NLRA, their activities, by definition, do not implicate conduct that the NLRA protects or prohibits. It is well established that states can regulate labor relationships for workers who fall outside of the NLRA's definition of employee, such as farmworkers and public employees. *See, e.g., United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Emp. Rels. Bd.*, 669 F.2d 1249, 1256–57 (9th Cir. 1982). Allowing workers who are no longer covered by the NLRA to file charges and petitions with PERB thus does not infringe on the NLRB's jurisdiction. And the NLRB concedes that this trigger does not conflict with the NLRA. *See* Pl's. Br., at 17.

Second, AB 288 allows workers to bring charges to PERB in circumstances where the NLRB has expressly ceded jurisdiction over a labor dispute. § 923.1(b)(1)(B). The NLRB did not challenge that provision at the preliminary injunction stage, *see* Dkt. 30, at 12, and it does not challenge it here at summary judgment. That provision does not conflict with the NLRA, so it is not preempted.

Third, AB 288 provides that workers may go to PERB if the NLRB is enjoined from further processing a case "due to constitutional challenges to the board's structure or authority." *See* § 923.1(b)(1)(B)(i). This Court correctly concluded that "[i]f the NLRB is enjoined from processing a case, it has lost authority over that subject matter," so allowing a worker to go to PERB under those circumstances does not create a conflict with the NLRA. Dkt. 30, at 12. At summary judgment, the NLRB attempts to cabin this Court's conclusion on that point by limiting the trigger to situations where "the NLRB is *permanently* enjoined by a final, non-appealable order from enforcing the Act or processing a case[.]" Pl's. Br., at 17 (emphasis added). But AB 288's language is not so limited: by its terms, the trigger applies to situations where the NLRB is "enjoined," not just when the NLRB is subject to a permanent, non-appealable injunction. *See* § 923.1(b)(1)(B)(i). This makes sense because even if temporarily enjoined, the NLRB has still lost its authority to further process the case, leaving affected workers without any recourse.

In a footnote, the NLRB contends that a preliminary injunction does not preclude the NLRB from regaining jurisdiction "should its position prevail on final judgment." *See* Pl's. Br., at 18 n.7. However, allowing the NLRB to retain exclusive jurisdiction after a finding that the Board's structure or authority is unconstitutional—even a preliminary finding—is both illogical and inequitable. As noted above, under any reasonable understanding of preemption doctrine, the Board cannot maintain exclusive jurisdiction in circumstances in which its structure or authority are deemed unconstitutional, even on a preliminary basis. As this Court observed, after the NLRB has been enjoined, "it has lost authority over that subject matter." Dkt. 30, at 12. And as a practical matter, Congress could not have intended to suspend labor law enforcement while constitutional questions are sorted out on appeal. This is especially so because constitutional issues related to the structure of the entire agency—including whether the provisions found to be unconstitutional are severable—are unlikely to be resolved on a timeline that will allow workers to obtain meaningful relief. The fact that the NLRB may still seek to reassert its jurisdiction later in the case would not change the fact that an injunction paralyzes the NLRB's proceedings, and Congress could not have intended labor rights to simply fall by the wayside in that circumstance.

And, of course, the NLRB's efforts to regain jurisdiction at final judgment may ultimately be unsuccessful, preventing workers from seeking any effective relief in the interim.

**2. AB 288's triggers based on the NLRB's inability to function as Congress intended do not conflict with the NLRA.**

AB 288's remaining "triggers" become effective if the NLRB is no longer operating in the manner that Congress intended. If Congress intended for the NLRB to be the exclusive forum for adjudicating most private sector labor disputes, it expected that the agency would, in fact, be capable of adjudicating those disputes. If the NLRB cannot adequately process cases and petitions, limiting workers to that forum would defeat the statute's primary purpose of protecting labor rights. As Amici Labor Law Professors articulated in their brief in opposition to the NLRB's preliminary injunction motion, "Congress did not intend the mere existence of the NLRB, as it currently operates, to result in blanket preemption of non-conflicting state labor law." Dkt. 26-1, at 13. Rather, states must be permitted to step in when the NLRB is not operating as intended, and, consequently, is failing to protect the rights enshrined in the NLRA. AB 288 has two main function-based triggers that limit the law's application to situations where Congress could not have meant for the NLRB to maintain exclusive jurisdiction, as discussed below.

**a. Lack of quorum**

Pursuant to § 932.1.(b)(1)(B)(i), workers with an existing NLRB case may file a case with PERB if their NLRB matter has reached the stage where it is pending before the Board—where there is a certification of the results of an election, an administrative law judge decision has been issued, or there are challenges or objections to a representation election—and the Board does not have a quorum. Only the Board can resolve exceptions filed in response to an ALJ decision. *See* 29 C.F.R. § 102.48(a)-(b); *Harris*, 2025 WL 980278, *122 (Millet, J., dissenting). And because courts can enforce only final Board orders, *see* 29 U.S.C.A. § 160(e, f), when the Board lacks a quorum, a party can avoid enforcement merely by filing exceptions with the Board, at which point the case sits in limbo—and unlawful conduct may continue—until the Board regains a quorum. For example, an employer that filed exceptions immediately after Member Wilcox was removed in January 2025 would have avoided enforcement for nearly a year before the quorum

was restored. And even then, the Board "presumably must toil through a considerable backlog" of cases to be decided. *Kerwin on behalf of NLRB. v. Trinity Health Grand Haven Hosp*., 174 F.4th 942, 967 (6th Cir. 2026) (Boggs, J., dissenting).

Similarly, only the Board may resolve challenges or objections to Regional Directors' decisions in representation proceedings. *See* 29 CFR § 102.67(c). If a certification of representative issues in the absence of a quorum, an employer can seek review from the Board and refuse to bargain with the union on the ground that it is waiting for the Board to resolve its challenges. *See id.* at § 102.182; *see also* SUF ¶ 5 (Declaration of Gabriel A. Terrasa, Dkt. 16-7, at ¶¶ 8-9). Thus, this provision of AB 288 functions as a backstop for cases that would otherwise be stalled indefinitely because of a lack of Board quorum. Congress could not have intended for all contested labor disputes to come to a standstill right before they are fully resolved, leaving workers without any remedy for their employer's labor law violations.

In its preliminary injunction order, this Court concluded that the NLRA anticipates periods where the Board lacks a quorum, and that "[i]n some respect, the Board's inability to fully function due to the lack of quorum shows the NLRA is operating as intended." Dkt. 30, at 13. However, the State respectfully submits that Congress may not have anticipated that the Board would experience a lack of quorum for extended periods, as it has in recent years. And, more importantly, Congress certainly could not have anticipated that the removal protections for Board members—discussed more thoroughly *infra* at Argument Section II(B)(3)—would be invalidated. This makes it far easier for Presidents to remove Board members and, consequently, makes it much more likely that the Board will be without a quorum—a circumstance that previously would result only after a Board member's term expired or a Board member engaged in misconduct warranting removal for cause. This effectively means that the President "can deprive the NLRB of a quorum at any time, and thereby 'render inoperable, potentially for years on end, [the] board[] that Congress established,' such that 'workers will be trapped with no other place to take their disputes for resolution.'" *See* Dkt. 26-1, at 13 (Brief Amici Curiae of Labor Law Professors (quoting *Harris*, 2025 WL 980278 at *47 (Millet, J., dissenting))). Indeed, this most recent loss of

a quorum was the result of the President firing a Board member without cause, directly contravening Congress's intent and the plain language of the NLRA.

Thus, even if Congress anticipated that the NLRB would sometimes be without a quorum, it could not have intended that the Board would be so readily *susceptible* to a loss of quorum, or that a quorum could be lost for potentially capricious reasons. Under those circumstances—circumstances that Congress could not have foreseen when it implemented the quorum requirement—allowing workers to vindicate their labor rights in alternate fora when the Board is paralyzed by a lack of quorum would not frustrate, but would instead further, Congress's intent.

**b. Excessive delay**

AB 288 has three triggers that allow workers to file cases with PERB if their NLRB case has been subject to excessive delays, as explained in detail above. *See supra* at Background Section IV. If Congress intended the NLRB to protect workers' rights at all, it must have intended the NLRB to process cases on a timeline that would afford workers meaningful relief. But excessive delays—be they caused by a lack of quorum, a constitutional injunction, or merely a lack of resources—can mean by the time relief arrives, it is already too late. In the months or years that it takes the NLRB to process a case, workers move on, organizing efforts flounder, and a return to a pre-ULP status quo is effectively impossible. *See* SUF ¶ 11-17 (describing effects of NLRB delays).

The NLRB observes that the NLRA does not provide deadlines for the NLRB to process its cases. *See* Pl's. Br., at 15. However, that does not mean that Congress intended that the NLRB is entitled to process cases on any timeline, without regard to the effect of delay on workers. Congress intended that the NLRB would be able to provide effective relief to workers and timely resolve labor disputes, as is necessary to protect workers' rights and maintain peaceful labor relations. *See Wilcox*, 775 F. Supp. 3d at 220 ("The NLRB's statutory mandate is not to—at some point in time—operate . . . but rather to have an ongoing, *efficient* administration of the country's labor laws." (emphasis added)). In light of the principles and purposes animating the NLRA, allowing states to provide an alternative forum to timely resolve labor disputes does not frustrate

congressional intent. Thus, AB 288's delay-based triggers are not preempted by the NLRA as a matter of law.

**3. Congress intended that the NLRB remain an independent agency.**

Finally, AB 288 has a trigger that is not function-based, but which activates upon the Board losing its status as an independent agency. Specifically, workers with NLRB cases pending before the Board may file a case with PERB if the Board has "lost its independence as a result of the Supreme Court finding that National Labor Relations Board members are unconstitutionally protected from removal." § 923.1(b)(1)(B)(i). It is clear from the NLRA's structure and legislative history that Congress considered the NLRB's independence a vital aspect of the statutory scheme. The statutory protections providing that Board members may be removed only for cause show that "[t]he Board was designed to be an independent panel of experts that could impartially adjudicate disputes." *Wilcox*, 775 F. Supp. 3d at 221. The NLRA's sponsor, Senator Robert Wagner, stated that "[he] cannot urge too strongly" that the NLRB "should be maintained as an independent agency" and stressed the importance of a tribunal "detached from any particular administration that happens to be in power[.]" NLRB, 1 Legislative History of the National Labor Relations Act, at 1427-28 (1949).

"[T]he legislative history is overwhelmingly clear that the Board's members were originally expected to be impartial and strictly nonpartisan." Adrian Vermeule, *Conventions of Agency Independence*, 113 Colum. L. Rev. 1163, 1179 (2013) (internal quotation marks and citations omitted). Congress clearly intended to vest authority for labor law administration in an *independent* NLRB. The NLRA's removal protections ensure that the NLRB will be guided by expertise—a point emphasized in *Garmon* and *Garner*—as opposed to politics. Thus, if those removal protections were invalidated, centralizing labor administration in the NLRB would arguably frustrate, rather than further, Congress's intent to have disputes heard by a neutral and independent body.

In its order granting the NLRB's request for a preliminary injunction, this Court concluded that although Congress intended for the NLRB to be independent, the Court was bound by caselaw establishing that a primary purpose of the NLRA was ensuring uniformity in labor law

administration. *See* Dkt. 30, at 14-15. Accordingly, the Court reasoned that it could not conclude that the intent that the NLRB be independent "was so dominant as to nullify the Board if independence is lost." *Id.* at 15. The State respectfully submits that Congress centralized labor adjudication in the NLRB not just to promote national uniformity but because Congress understood that only an expert tribunal that is fair, neutral, and structurally independent could faithfully carry out the Act's purposes. As the legislative history shows, and as Amici Labor Law Professors demonstrated in their brief, *see* Dkt. 26-1, independence was not an ancillary concern of the NLRA's drafters; rather, it was a key reason *why* Congress entrusted the NLRB with exclusive jurisdiction over labor adjudication. The NLRB's independence allowed it to function as an impartial, quasi-judicial body rather than as an arm of the Executive Branch. *See id.* at 11 (citing NLRB, 1 Legislative History of the National Labor Relations Act, at 1467 (1949)).

The caselaw intuiting Congress's intent to centralize labor administration in the NLRB, then, was made with the understanding that the NLRB would remain the agency that Congress had envisioned: a "specific and specially constituted tribunal." *Garmon*, 359 U.S. at 242. However, the "loss of the office's independence" changes "the NLRB's character and perception as [a] neutral and expert-driven" agency that Congress "entrusted with making impartial decisions about sensitive labor disputes." *Wilcox*, 775 F.Supp.3d at 236. Thus, it is entirely consistent with *Garmon* and its progeny to conclude that the wishes of Congress are best served by providing workers an alternative forum that aligns with Congress's vision for labor law administration.

In a footnote, the NLRB contends that if the Supreme Court invalidates the NLRA's removal restrictions as unconstitutional, "it would not render the rest of the Act inoperable" because the NLRA includes a severability provision. *See* Pl's. Br., at 16 n.6. But this argument misses the mark. Even if the rest of the NLRA remained after the removal protections were severed, the relevant question is whether Congress still would have intended to make the NLRB the exclusive forum for labor disputes under those circumstances. As the Fourth Circuit in *Owen* observed about the MSPB, Congress may have given the NLRB exclusive jurisdiction in labor adjudication "only because it understood that the President could not exercise unfettered control" over the agency. 139 F. 4th at 307. This court should follow *Owen*'s reasoning and conclude that

if the NLRB loses its status as an independent agency, it also loses exclusive jurisdiction over labor disputes.

### C. The NLRB may cede its jurisdiction absent express mechanisms if doing so would fulfill congressional intent.

The NLRB contends that because the NLRA contains provisions that expressly allow NLRB to decline jurisdiction over certain matters, the NLRB cannot be found to have implicitly ceded its jurisdiction under any other circumstances. *See* Pl's. Br., at 14-15. This argument rests on Section 10(a), which allows the Board to cede jurisdiction over matters by agreement with state agencies, *see* 29 U.S.C. § 160(a), and Section 14(c), which, relevant here, allows the NLRB to decline jurisdiction over matters if the "effect of [a] labor dispute on commerce is not sufficiently substantial to warrant the exercise of [the NLRB's] jurisdiction." 29 U.S.C. § 164(c)(1).

But this argument is unpersuasive, for two main reasons. First, and most fundamentally, as noted above, the preemption analysis turns on congressional intent. *See Gade*, 505 U.S. at 96. And here, the fact that the NLRA contains explicit mechanisms for ceding jurisdiction does not mean that Congress otherwise intended for the NLRB to retain exclusive jurisdiction over labor disputes under all circumstances—including when other aspects of the NLRB's structure and functioning are invalidated. For the reasons explained above, even if Congress intended for the NLRB to have exclusive jurisdiction over labor disputes, that grant of jurisdiction was predicated on the existence of a functioning and independent NLRB.

Second, Supreme Court precedent makes clear that Sections 10(a) and 14(c) are not the exclusive avenues for a state to take jurisdiction over a labor dispute that would be presumptively covered by the NLRA because, as the NLRB itself acknowledges, there exist several other exceptions to *Garmon* preemption that fall outside those statutory provisions. *See* Pl's. Br., at 13. Specifically, *Garmon* does not apply, even when the conduct at issue is arguably covered by the NLRA, when (1) there is no "reasonable opportunity" to "invoke the Board's jurisdiction" to resolve the conduct at issue, *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 201 (1978); (2) the conduct in question is "merely a peripheral concern" of the NLRA, *Garmon*, 359 U.S. at

243; and (3) "the regulated conduct touche[s] interests [] deeply rooted in local feeling and responsibility," *id.* at 244. The existence of these exceptions demonstrates that states can take jurisdiction over a private-sector labor dispute even absent an express cessation of jurisdiction from the NLRB. The NLRB does not explain why these exceptions, not found in the statutory text, are acceptable, while the circumstances that invoke AB 288's provisions are not. Accordingly, the NLRA's express cessation provisions should not prevent this court from concluding that the NLRB effectively cedes its jurisdiction over labor disputes under certain circumstances, including when the NLRB is no longer functioning as Congress intended.

**D. AB 288 furthers the goals of the NLRA by ensuring workers have a forum to vindicate their right to organize.**

Even if the Court determines that Congress did intend for the NLRB to retain exclusive jurisdiction over labor adjudication in the circumstances identified by AB 288, the Court should nevertheless conclude that AB 288 is not preempted pursuant to *Garmon* or obstacle preemption doctrine because AB 288 furthers the NLRA's fundamental purposes. Although one goal of the NLRA is uniform application of the nation's labor laws, that is not the only, or even primary, goal of the Act. As is made clear in the findings to the Act, the statute was meant to "encourage[e] the practice and procedure of collective bargaining" and "protect[] the exercise by workers of . . . self-organization . . . for the purposes of negotiating terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151. Precedent suggests that the NLRA's policy of uniform administration was also intended to further that goal: "[T]he greatest threat against which the *Garmon* doctrine guards" is not regulatory conflict for its own sake but rather "a state's prohibition of activity that the Act indicates must remain unhampered." *Hanna Mining Co. v. Dist. 2, Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 382 U.S. 181, 193 (1965).

Congress's interest in uniform adjudication should not outweigh the NLRA's more fundamental purpose of protecting the right to organize. The NLRB has faced ongoing difficulties that have severely hampered its ability to operate. *See supra* at Background Section III. And regardless of what those challenges mean for the technical scope of the NLRB's jurisdiction, it is clear that they have prevented, and will prevent, workers from effectively vindicating their rights.

Those challenges also endanger the system of dispute resolution that has, for almost a century, largely avoided the widespread economic disruption and violence that plagued labor relations in the late-19th and early 20th centuries. AB 288 furthers rather than conflicts with the underlying purposes of the NLRA by making it easier for workers to vindicate those same rights in another forum. *See* AB 288, Section 1(k). AB 288 does not implicate the "greatest threat against which the *Garmon* doctrine guards," *see Hanna Mining Co.*, 382 U.S. at 193, because it does not prohibit protected activity; rather, it *encourages* protected activity by strengthening enforcement in situations where the NLRB's hands are otherwise tied. In that way, AB 288 furthers, rather than frustrates, Congress's intent in passing the NLRA.

Thus, the NLRB's argument that AB 288's divergent remedies for labor law violations will interfere with the enforcement of national labor law, *see* Pl's. Br. at 19, is unpersuasive. If the NLRB is paralyzed, providing workers alternative remedies through PERB furthers the purposes of the NLRA more effectively than providing no remedies at all. AB 288 therefore serves Congress's intent when the NLRB cannot adequately protect the rights enshrined in the NLRA.

**E. The court decision enjoining amendments to New York's State Employment Relations Act is distinguishable.**

On November 26, 2025, the U.S. District Court for the Eastern District of New York preliminarily enjoined New York state's amendment to its State Employment Relations Act ("SERA"), which gives the state's Public Employment Relations Board ("PERB") authority to accept cases from private-sector workers, as preempted by the NLRA. *See Amazon.com Services LLC v. New York State Public Employment Relations Board*, No. 1:25-CV-5311, 2025 WL 3295071, at *6 (E.D.N.Y. Nov. 26, 2025). The court later granted summary judgment for the plaintiff in that case, Amazon, and concluded that the SERA amendments were preempted. 2026 WL 2085865, at *3 (E.D.N.Y. July 20, 2026). The NLRB contends that this Court should follow the Eastern District of New York and find that AB 288 is similarly preempted. *See* Pl's. Br., at 1.

However, the law at issue in the New York litigation is distinguishable from AB 288. New York's SERA amendment, unlike AB 288, allows private sector workers to file with New York's PERB under *any* circumstance. *See* S. 8034-A (N.Y. 2025); *see Amazon*, 2025 WL 3295071,

at *1 ("SERA now presumptively applies to NLRA-covered employees."). AB 288, by contrast, applies only in limited situations triggered by the failure of the NLRB to fulfill Congress's intent—that is, where the NLRB should be considered to have ceded its exclusive jurisdiction because it is no longer able to protect workers' fundamental labor rights. To the extent that the *Amazon* court suggests that there are no exceptions to Congress's implied grant of exclusive jurisdiction to the NLRB, the State respectfully submits that the Fourth Circuit's logic in *Owen* is more persuasive, as discussed at length *supra* at Argument, II.A.

### III. The NLRB Is Not Entitled to a Permanent Injunction

The NLRB seeks to permanently enjoin the State of California and PERB from implementing the challenged provisions of AB 288. As discussed above, to receive a permanent injunction as a remedy, the NLRB must show that 1) it will suffer irreparable harm without injunctive relief; 2) remedies at law are inadequate; 3) the balance of equities tips in its favor; and 4) that an injunction is in the public interest. *Monsanto*, 561 U.S. at 156-57.

Even if the NLRB prevails on the merits of its case, the balance of equities favors denying NLRB's request for an injunction here. Contrary to its assertions, the NLRB will not be irreparably harmed if AB 288 is not enjoined. Although the United States is presumed to suffer an irreparable injury when a State violates the Supremacy Clause, *see United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019), AB 288 does *not* violate the Supremacy Clause, for the reasons explained above. Thus, that harm is not present here. Further, a "general pronouncement[] [of] a Supremacy Clause violation alone" is not necessarily sufficient to warrant an injunction. See *id.* (noting the U.S. "did not present compelling evidence" that its operations were harmed by the state statute at issue.).

The NLRB's other alleged harms are speculative and do not tilt the balance of equities in its favor. Although the NLRB contends that AB 288 will lead to "two labor authorities vying for primacy," Pl's. Br. at 19, the NLRB cannot show that allowing PERB to hear cases under the narrow circumstances authorized by AB 288—including cases that the NLRB cannot further adjudicate or that have already been subject to severe delays—will lead to such a conflict. If anything, allowing workers recourse through an alternative forum will ameliorate the uncertainty

workers face related to the NLRB's incapacity, lack of independence, and indeterminate case processing timelines. Further, the NLRB contends that workers may miss out on their opportunity to file cases with the NLRB while their cases are pending with PERB. Pl's. Br., at 19. But nearly all of AB 288's triggers require a worker to file with the NLRB before filing a case with PERB. *See supra*, Background Section IV. The provision allowing workers to file with PERB in the first instance applies only to workers who have lost coverage under the NLRA, *see* § 923.1(b)(1)(A); those workers cannot be harmed by not filing with the NLRB.

In contrast to the NLRB, California, its workers, and its businesses will suffer significant harms if AB 288 is enjoined. California suffers its own irreparable injury "whenever an enactment of its people or their representatives is enjoined." *Coal. For Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). And it is established in California law that the state has an interest in ensuring its workers can freely and fully exercise their labor rights. *See* § 923. If AB 288 is enjoined, California workers who have been unable to vindicate their rights before the Board will be prevented from taking advantage of AB 288's alternative forum and experience further delays.

//

//

//

//

//

//

//

//

//

//

//

//

//

**CONCLUSION**

Because there are no disputes of material fact and because AB 288 is not preempted by the NLRA as a matter of law, this Court should deny the NLRB's motion for summary judgment, grant the State's cross-motion for summary judgment, and enter judgment for defendants. If this Court grants summary judgment for the NLRB, any relief pursuant to such an order, including an injunction and/or declaration that AB 288 is unlawful, should be tailored to the specific provisions held to be preempted in light of AB 288's severability clause, *see* AB 288 § 6, consistent with the approach taken in this Court's preliminary injunction order. *See* Dkt. 30, at 18 n.6; *Right to Life of Cent. Cal. v. Bonta*, 562 F. Supp. 3d 947, 967 (E.D. Cal. 2021).

Dated: September 22, 2026.

Respectfully submitted,

ROB BONTA
Attorney General of California
LARA HADDAD
Supervising Deputy Attorney General

/s/ Joe Meeker
JOSEPH H. MEEKER
Deputy Attorney General
*Attorneys for Defendants*
*Labor and Workforce Development Agency*

## CERTIFICATE OF SERVICE

Case Name: **National Labor Relations Board v. State of California, Public Employment Relations Board** Case No. **2:25-cv-02979**

I hereby certify that on September 22, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **Defendant State of California's Combined Memorandum of Law in Support of Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on September 22, 2026, at Los Angeles, California.

| Linda Zamora | /s/ Linda Zamora |
| --- | --- |
| Declarant | Signature |

SA2025305615
68684902